UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

AMERICANS FOR CITIZEN VOTING PAC,

    Plaintiff,

                                  Case No. 2:26-cv-786

v.

MEAGAN WOLFE, ANN S. JACOBS, MARK L.
THOMSEN, CARRIE RIEPL, DON M.
MILLIS, ROBERT F. SPINDELL, JR., and
MARGE BOSTELMANN,

    Defendants.

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTIONS FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Lucas T. Vebber (#1067543)
Daniel P. Lennington (#1088694)
Nathalie E.  Burmeister (#1126820)

1241 N. Franklin Place
Milwaukee, WI 53202
Phone: (414) 727-9455

lucas@will-law.org
dan@will-law.org
nathalie@will-law.org

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................1

BACKGROUND ..................................................................................................2

    A. Ballot access in Wisconsin ..................................................................2

    B. The original Wisconsin residency requirements ............................4

    C. Wisconsin's latest attempt...................................................................5

    D. Plaintiff...................................................................................................6

STATEMENT OF FACTS ..................................................................................7

LEGAL STANDARD...........................................................................................11

ARGUMENT........................................................................................................12

    I. Plaintiff is likely to succeed on the merits........................................12

    II. Plaintiff will suffer irreparable harm if preliminary relief is denied and has no other adequate remedy at law. ................................16

    III. A balance of the harms and the public interest favors granting preliminary relief. ...............................................................................18

RELIEF SOUGHT ..............................................................................................19

CONCLUSION ....................................................................................................20

# INTRODUCTION

Time is of the essence. Through 2025 Wisconsin Act 126 ("Act 126")[1], the State of Wisconsin has imposed an in-state residency requirement on anyone who may collect nomination signatures for candidates for public office, as well as on those who may collect signatures in support of a recall petition for public officeholders. These requirements plainly violate the First Amendment and must immediately be struck down.

Plaintiff Americans for Citizen Voting PAC ("ACV PAC"), a PAC that wishes to work with out-of-state residents to help collect nomination signatures in Wisconsin, is directly harmed by Act 126. Indeed, the residency requirements imposed by Act 126 severely burden Plaintiff's First Amendment rights because Plaintiff wants to engage out-of-state residents to help Wisconsin candidates that it supports gather nomination signatures, but Act 126's residency requirements prevent Plaintiff from doing so and significantly limit the pool of individuals and firms that Plaintiff may work with to advance its mission.

This issue is not unique. In *Krislov v. Rednour*, 226 F.3d 851 (7th Cir. 2000), the Seventh Circuit made clear that such residency requirements (in that case, from the State of Illinois) violate the First Amendment. *Krislov* controls here. And this is not the first time this issue has come up in Wisconsin, either. More than two decades ago, the United States District Court for the Western District of Wisconsin declared

---

[1] Act 126 is available at https://docs.legis.wisconsin.gov/2025/related/acts/126.

the state's *previous* circulator residency requirements unconstitutional. *See Frami v. Ponto*, 255 F. Supp. 2d 962 (W.D. Wis. 2003). This is not a close call, and this Court is now asked to do what was already done two decades ago: protect the First Amendment rights of out-of-state circulators to collect nomination signatures.

This matter is urgent. Candidates for the November 2026 General Election are *currently* collecting nomination signatures: the current collection window opened on April 15 and closes on June 1. On April 29, 2026—before Defendants removed this case to the United States District Court for the Eastern District of Wisconsin—Plaintiff moved for an Ex Parte Temporary Restraining Order and a Temporary Injunction in Waukesha County Circuit Court, which was scheduled for a hearing on May 12, 2026. Now, in this Court, Plaintiff similarly seeks a temporary restraining order and a preliminary injunction to stop the unconstitutional restrictions imposed by Act 126 and to restore Plaintiff's First Amendment right to facilitate the collection of nomination signatures.

Unless this Court acts—and quickly—Plaintiff will continue to be prevented from engaging fully in First Amendment-protected conduct and will continue to suffer irreparable harm.

## BACKGROUND

### A.  Ballot access in Wisconsin

To obtain ballot access in Wisconsin, candidates must—among other things— file four documents by the deadline established for their requisite election: (1) A Declaration of Candidacy; (2) Nomination Papers; (3) A Campaign Restriction

Statement; and (4) A Statement of Economic Interest.[2] Nomination Papers are the focus of this lawsuit.

To successfully complete the Nomination Papers requirement, candidates must collect signatures from electors who reside within the jurisdiction of the position and/or office they seek. *See* Wis. Stat. §§ 8.10(2), (3); 8.15. The number of signatures each candidate must obtain varies by the office sought, but for some positions, the number of required signatures can be as high as 2,000 per candidate (in the case of statewide offices, for example). *See* Wis. Stat. §§ 8.10(3) 8.15(6).[3]

As relevant to this lawsuit, the person responsible for circulating the signature pages must sign a "certification of a qualified circulator" at the bottom of each page of nomination signatures. Wis. Stat. §§ 8.10(3), 8.15(4)(a). Between June 10, 2006, and March 26, 2026, a "qualified circulator" included out-of-state residents who would otherwise be eligible to vote in Wisconsin elections. *See* 2005 Wisconsin Act 451.[4] But under Act 126, only a "qualified elector of this state" may make such a certification, and therefore, only qualified *Wisconsin* electors may collect signatures for nomination papers. Wis. Stat. §§ 8.10(3), 8.15(4)(a), as amended by Act 126. Indeed, the

---

[2] Wisconsin Elections Commission, *Candidate Ballot Access Procedures Nomination Papers* at 2–7 Oct. 2023), available at https://elections.wi.gov/sites/default/files/documents/Ballot%20Access%20Manual%20Oct%202023.pdf

[3] *See also* Wisconsin Elections Commission, *Candidate Ballot Access Procedures Nomination Papers* at 4 (providing examples with statutory citations), available at https://elections.wi.gov/sites/default/files/documents/Ballot%20Access%20Manual%20Oct%202023.pdf.

[4] Available at https://docs.legis.wisconsin.gov/2005/related/acts/451.

signatures on each page that is *not* circulated by a "qualified elector of this state" may not be counted. Wis. Stat. § 9.10(2)(em)2, as amended by Act 126.

In addition to nomination papers, Act 126 likewise requires anyone circulating *recall petitions* to be "a qualified elector of this state." Wis. Stat. §§ 8.40(2)(b) (created by Act 126); 9.10(2)(em)2.

### B.     The original Wisconsin residency requirements

At the time *Krislov* was decided by the Seventh Circuit in the early 2000s, Wisconsin law also imposed a residency requirement on circulators which was substantially similar to Illinois' law. More specifically, the 2001 Wisconsin Statutes required anyone circulating nomination papers to ". . . reside[ ] within the district which the candidate named therein will represent . . ." Wis. Stat. § 8.15(4)(a) (2001).[5] That requirement was challenged in *Frami v. Ponto*, 255 F. Supp. 2d 962 (W.D. Wis. 2003), and there, the United States District Court for the Western District of Wisconsin concluded that the requirement was unconstitutional as a violation of the First Amendment.

As described *supra,* Part A, Wisconsin's residency requirements changed in the Spring of 2006, following the Western District of Wisconsin's decision in *Frami. See* 2005 Wisconsin Act 451.[6] Under the post-Act 451 framework, nomination papers and recall petitions could be circulated by any person who is eligible to vote in Wisconsin, or is a U.S. Citizen age 18 or older who, if he or she were a Wisconsin resident, would

---

[5] Available at https://docs.legis.wisconsin.gov/2001/statutes/statutes/8/15.

[6] Available at https://docs.legis.wisconsin.gov/2005/related/acts/451.

otherwise be eligible to vote in Wisconsin. That framework stayed in place for decades after Act 451 was adopted.

### C.     Wisconsin's latest attempt

On March 27, 2026, Act 126 was signed into law. And as explained above, Act 126 reimplemented new residency requirements for nomination paper circulators after a couple-decade hiatus. Specifically, Act 126 amends state law to provide that, in order to circulate nomination papers for a candidate for public office, or to circulate a recall petition, the circulator must be eligible to vote in Wisconsin. To be eligible to vote in Wisconsin, such a circulator must be a U.S. Citizen, age 18 or older, and must have resided in Wisconsin for at least 28 consecutive days. Wis. Stat. § 6.02. Out of-state residents whom Plaintiff may (and does) wish to work with in Wisconsin, are excluded from this definition because they are not residents of Wisconsin.

Act 126 exempts circulators of candidates for the offices of President and Vice President from the Wisconsin residency requirement. *See* Wis. Stat. § 8.20(3), as amended by Act 126. So, Plaintiff *could* engage out-of-state residents to circulate those particular nomination papers once every four years, but not for any other offices.

Specifically, Act 126 amends Wis. Stat. §§ 8.10(3)(intro.) (regarding nomination papers for Wisconsin's nonpartisan spring elections), 8.15(4)(a) (regarding nomination papers for Wisconsin's partisan fall elections), 8.20(3) (regarding nomination papers for independent candidates), 8.40(2) (regarding petition circulator requirements), and 9.10(2)(em)2. (regarding recall petitions) to

require that circulators must be a "qualified elector" of the State of Wisconsin (unless collecting signatures for President or Vice President, as just explained). Each of these residency requirement changes violates the First Amendment, as explained herein.

### D.     Plaintiff

Plaintiff Americans for Citizen Voting PAC ("ACV PAC") is a federal political action committee registered with the Federal Election Commission as a Hybrid PAC since December 27, 2023. Jacob Decl. ¶¶ 1, 3. It maintains its principal place of business in Fairfax, Virginia. Jacob Decl. ¶ 4. ACV PAC does not accept corporate contributions into its contribution account and is eligible to support candidates for state and federal office in the State of Wisconsin. Jacob Decl. ¶ 5.

ACV PAC's core mission is to promote election integrity by advocating for policies that ensure only U.S. citizens vote in American elections, and this mission includes supporting candidates who advance these goals across the country. Jacob Decl. ¶ 6.

One way ACV PAC seeks to advance its mission is to engage in independent expenditures to support candidates who are aligned with ACV PAC's goals. Jacob Decl. ¶ 7. Gathering nomination signatures for candidates for public office is another way in which ACV PAC advances its mission and supports those candidates. Jacob Decl. ¶ 8.

ACV PAC seeks to make expenditures to hire individuals to help collect nomination signatures for candidates for public office in the State of Wisconsin. Decl. Jacob ¶ 9. And more specifically, ACV PAC seeks to advance its mission by helping

candidates for public office that it supports in the State of Wisconsin gather nomination signatures during the current signature gathering period which opened on April 15, 2026 and ends on June 1, 2026. Decl. Jacob ¶ 10.

The residency requirements imposed by Act 126 require ACV PAC to engage only with Wisconsin electors to accomplish its goals, significantly limiting the pool of individuals and firms ACV PAC can work and associate with in support of its mission. Jacob Decl. ¶ 11–12. As a result, Act 126 directly harms ACV PAC's ability to advance its political beliefs, and to associate with candidates and supporters of its choosing. Jacob Decl. ¶¶ 12–13.

In furtherance of its mission, ACV PAC has entered into a Petition Agreement with DRW Campaigns, Inc. to engage in signature gathering on nominating petitions in support of Wisconsin state candidates. Jacob Decl. ¶ 14. DRW Campaigns, Inc. is based in Michigan and regularly hires petition circulators from around the country who are not qualified electors in Wisconsin. Jacob Decl. ¶ 14. Because of the residency requirements imposed by Act 126, the petition services to be provided by DRW Campaigns, Inc. under the Petition Agreement are contingent upon the issuance of a temporary or permanent injunction enjoining Act 126. Jacob Decl. ¶ 14.

## STATEMENT OF FACTS

On March 27, 2026, Governor Tony Evers signed 2025 Act 126 ("Act 126") into law in Wisconsin. *See* 2025 Wisconsin Act 126.[7] Act 126 reimplements new residency

---

[7] Available at https://docs.legis.wisconsin.gov/2025/related/acts/126.

requirements for nomination paper and recall petition circulators. More specifically, Act 126 amends Wis. Stat. §§ 8.10(3)(intro.), 8.15(4)(a), 8.20(3), 8.40(2), and 9.10(2)(em)2. to require that nomination paper and recall petition circulators be a "qualified elector of this state." *Id.* The only exception to the "qualified elector of this state" requirement imposed by Act 126 is with respect to presidential/vice-presidential nomination papers. *Id.*

Before Act 126, Wisconsin law permitted out-of-state residents who would otherwise be eligible Wisconsin electors if they were Wisconsin residents to circulate nomination papers and recall petitions provided they complied with state law, including certification requirements. *Compare* 2025 Wisconsin Act 126 *with* 2005 Wisconsin Act 451[8].

In addition, Act 126 is not Wisconsin's first attempt at imposing residency requirements on circulators. More than two decades ago, Wisconsin law required that circulators "reside[] within the district which the candidate . . . will represent." Wis. Stat. § 8.15(4)(a) (2001). That requirement was challenged in federal court, deemed unconstitutional, and enjoined. *See Frami v. Ponto*, 255 F. Supp. 2d 962 (W.D. Wis. 2003). Following *Frami*, Wisconsin removed this requirement from the statutes via 2005 Wisconsin Act 451. The requirement remained out of Wisconsin law until Act 126 reinserted it. *Compare* 2025 Wisconsin Act 126 *with* 2005 Wisconsin Act 451.

After Act 126 was enacted, the Wisconsin Elections Commission updated its "Nomination Paper for Partisan Office" template to add "I am a qualified elector of

---

[8] Available at https://docs.legis.wisconsin.gov/2005/related/acts/451.

Wisconsin" to the "Certification of Circulator." *See* Exhibit 1 to Plaintiff's Complaint (Dkt. 1-1:19–20). In addition, the Wisconsin Elections Commission sent a "communication" to "Wisconsin Candidates and Political Parties" explaining that, under Act 126, "Any person who is circulating nomination papers for the 2026 Fall Election cycle must reside in Wisconsin and must be qualified to vote in Wisconsin." *See* Exhibit 2 to Plaintiff's Complaint at 1–2, 4 (Dkt. 1-1:21–22; 24).

Nomination papers for the November 2026 general election began to be circulated on April 15, 2026. *See* Wis. Stat. 8.15(1). On that day, the Wisconsin Elections Commission posted on its X.com social media account (@WI_Elections): "It's go time! Candidates can begin circulating nomination papers today for the Aug. 11 election! FYI: Under a new law, circulators must live in WI & be qualified to vote in the state." *See* Exhibit 3 to Plaintiff's Complaint (Dkt. 1-1:25).

Paul Jacob is the Chairman of Plaintiff Americans for Citizen Voting PAC ("ACV PAC"). Jacob Decl. ¶ 1. ACV PAC is a federal political action committee registered with the Federal Elections Commission as a Hybrid PAC since December 27, 2023. Jacob Decl. ¶ 3. ACV PAC maintains its principal place of business in Fairfax, Virginia. Jacob Decl. ¶ 4. ACV PAC does not accept corporate contributions into its contribution account and is eligible to support candidates for state and federal office in the State of Wisconsin. Jacob Decl. ¶ 5. ACV PAC's core mission is to promote election integrity by advocating for policies that ensure only United States citizens can vote in American elections. Jacob Decl. ¶ 6. This mission includes supporting candidates throughout the country who advance these goals. Jacob Decl. ¶ 6.

One way ACV PAC seeks to advance its mission is to engage in independent expenditures to support candidates who are aligned with ACV PAC's goals. Jacob Decl. ¶ 7. Gathering nomination signatures for candidates for public office is one way in which ACV PAC advances its mission and supports those candidates. Jacob Decl. ¶ 8.

ACV PAC seeks to make independent expenditures to hire individuals to help collect nomination signatures for candidates for public office in the State of Wisconsin. Jacob Decl. ¶ 9. More specifically, ACV PAC seeks to advance its mission by helping candidates for public office that it supports in the State of Wisconsin gather nomination signatures during the current signature gathering period which opened on April 15, 2026 and ends on June 1, 2026. Jacob Decl. ¶ 10.

Because of the changes to Wisconsin law implemented by 2025 Wisconsin Act 126 ("Act 126"), ACV PAC is now required to engage with only Wisconsin electors in collecting nomination signatures and is prohibited from working with out-of-state residents to gather nomination signatures for candidates, significantly limiting the pool of individuals and firms ACV PAC is permitted to work with to advance its mission. Jacob Decl. ¶ 11. These requirements impede ACV PAC's ability to communicate its political messages by limiting its ability to support candidates of its choosing, including by limiting who ACV PAC may associate with to advance its goals. Jacob Decl. ¶ 12. As a result, Act 126 directly harms ACV PAC's ability to advance its political beliefs, and to associate with candidates and supporters of its choosing. Jacob Decl. ¶ 13.

In furtherance of its mission, ACV PAC has entered into a Petition Agreement with DRW Campaigns, Inc. to engage in signature gathering on nominating petitions in support of Wisconsin state candidates. Jacob Decl. ¶ 14. DRW Campaigns, Inc. is based in Michigan and regularly hires petition circulators from around the country who are not qualified electors in Wisconsin. Jacob Decl. ¶ 14. Because of the residency requirements imposed by Act 126, the petition services to be provided by DRW Campaigns, Inc. under the Petition Agreement are contingent upon the issuance of a temporary or permanent injunction enjoining Act 126. Jacob Decl. ¶ 14.

Act 126 severely burdens Plaintiff's First Amendment rights because Plaintiff wants to engage out-of-state circulators to help Wisconsin candidates that it supports gather nomination signatures during the current signature gathering period—but is prohibited from doing so in Wisconsin because of Act 126.

As explained below, petition circulation is core political speech, and Act 126 unlawfully restricts Plaintiff's core political speech and associational rights, which are protected by the First Amendment.

## LEGAL STANDARD

The standards for issuing temporary restraining orders are identical to the standards for preliminary injunctions. *See Long v. Bd. of Educ., Dist.* 128, 167 F. Supp. 2d 988, 990 (N.D. Ill. 2001). A party seeking a temporary restraining order or preliminary injunction must demonstrate "(1) some likelihood of succeeding on the merits, and (2) that it has no adequate remedy at law and will suffer irreparable harm if preliminary relief is denied." *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 11

(7th Cir. 1992) (citation omitted). If a plaintiff meets these factors, the court proceeds to "a balancing phase, where it must then consider: (3) the irreparable harm the non-moving party will suffer if preliminary relief is granted, balancing that harm against the irreparable harm to the moving party if relief is denied; and (4) the public interest, meaning the consequences of granting or denying the injunction to non-parties." *Cassell v. Snyder*s, 990 F.3d 539, 545 (7th Cir. 2021).

In First Amendment cases like this one, "the loss of First Amendment freedoms . . . unquestionably constitutes irreparable injury," *Am. C.L. Union of Illinois v. Alvarez*, 679 F.3d 583, 589 (7th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion), and "injunctions protecting First Amendment freedoms are always in the public interest." *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006). Thus, the likelihood of success "is usually the decisive factor," *Wisconsin Right To Life, Inc. v. Barland*, 751 F.3d 804, 830 (7th Cir. 2014), such that the analysis often "begins and ends with . . . the merits." *Higher Soc'y of Indiana v. Tippecanoe Cty., Indiana*, 858 F.3d 1113, 1116–18 (7th Cir. 2017) (citation omitted).

## ARGUMENT

The residency requirements imposed by Act 126 directly harm ACV PAC by restricting its ability to advance its political beliefs. Plaintiff meets all requirements for an immediate temporary restraining order, as well as a preliminary injunction.

## I. Plaintiff is likely to succeed on the merits.

The First Amendment to the United States Constitution provides that "Congress shall make no law . . . abridging the freedom of speech." U.S. Const. amend.

I. "The First Amendment applies to the states by the Due Process Clause of the Fourteenth Amendment." *Nicodemus v. City of S. Bend,* 137 F.4th 654, 663 n. 7 (7th Cir. 2025) (*citing Gitlow v. New York*, 268 U.S. 652, 666, 45 S.Ct. 625 (1925)).

Circulating petitions is "core political speech" and is where the First Amendment protection is "at its zenith." *Buckley v. American Constitutional Law Found., Inc.* 525 U.S. 182, 186 (1999) (quoting *Meyer v. Grant*, 486 U.S. 414, 422, 425 (1988)). Because residency requirements on petition circulators, like those imposed by Act 126, impose severe burdens on free speech, strict scrutiny applies to residency requirements.

Under the provisions of Act 126, only Wisconsin residents are eligible to circulate nomination papers for candidates for public office. Plaintiff seeks to work with individuals who are not Wisconsin residents in order to collect signatures for candidates that Plaintiff supports in furtherance of its political goals and mission. Jacob Decl. ¶¶ 9–14. But Act 126 prohibits that activity, and prohibits the Plaintiff from associating with individuals of its choosing to advance its political beliefs and goals. Jacob Decl. ¶¶ 11–14. Thus, the residency restrictions imposed by Act 126 severely burden Plaintiff's rights under the First Amendment, and Plaintiff is highly likely to succeed on the merits of this claim.

Since *Buckley*, a number of federal courts have invalidated state law residency requirements like those imposed by Act 126. And as Plaintiff explained earlier, that includes the United States District Court for the Western District of Wisconsin regarding a previous attempt by the State of Wisconsin to impose such a requirement.

*See Frami v. Ponto*, 255 F. Supp. 2d 962 (W.D. Wis. 2003). In addition, the residency requirements imposed by Act 126 have been declared unconstitutional by the Seventh Circuit. *See Krislov v. Rednour*, 226 F.3d 851 (7th Cir. 2000). All Plaintiff asks is for this Court to do exactly what was done more than twenty years ago: declare this latest attempt to impose residency requirements on nomination paper circulators to be unconstitutional.

The Seventh Circuit and the United States District Court for the Western District of Wisconsin are not alone in reaching these conclusions—nearly *every* federal Court of Appeals has come to the same conclusion. *See Lerman v. Board of Elections in City of New York*, 232 F.3d 135 (2nd Cir. 2000) (invalidating New York's residency requirement for witnessing candidate designating petitions as a violation of the First Amendment); *Chandler v. City of Arvada*, 292 F.3d 1236 (10th Cir. 2002) (invalidating a city regulation prohibiting nonresidents from circulating petitions as a violation of the First Amendment); *Yes on Term Limits v. Savage*, 550 F.3d 1023 (10th Cir. 2008) (invalidating Oklahoma's statutory ban on nonresident petition circulators as a violation of the First Amendment); *Nader v. Blackwell*, 545 F.3d 459 (6th Cir. 2008) (striking down a residency requirement for petition circulators as a violation of the First Amendment); *Nader v. Brewer*, 531 F.3d 1028 (9th Cir. 2008) (invalidating Arizona's residency requirement for nomination petition circulators as a violation of the First Amendment); *Pierce v. Jacobsen*, 44 F.4th 853 (9th Cir. 2022) (striking down Montana's residency requirement for petition circulators as a violation of the First Amendment); *Libertarian Party of Va. v. Judd*, 718 F.3d 308 (4th Cir.

2013) (invalidating Virginia's residency requirement for petition circulation as a violation of the First Amendment); *Wilmoth v. Secretary of New Jersey*, 731 Fed. App'x. 97 (3d Cir. 2018) (finding New Jersey's residency requirement for circulators imposed severe burden on First Amendment rights, and remanding for further proceedings); *We the People PAC v. Bellows* 40 F.4th 1 (1st Cir. 2022) (affirming an injunction against Maine's residency requirement for petition circulators on First Amendment grounds); *but see Initiative & Referendum Institute v. Jaeger*, 241 F.3d 614 (8th Cir. 2001) (upholding North Dakota's residency requirement).

Here, and like the many other state laws that have tried to impose residency requirements before, the restrictions imposed by Act 126 are not narrowly tailored to serve a compelling state interest and are therefore unconstitutional. Indeed, the State of Wisconsin can have no compelling state interest to block non-residents from collecting nomination signatures for candidates. As the Seventh Circuit explained: "circulating nomination petitions necessarily entails political speech, it follows that the First and Fourteenth Amendments compel States to allow their candidates to associate with non-residents for political purposes and to utilize non-residents to speak on their behalf in soliciting signatures for ballot access petitions." *Krislov*, 226 F.3d at 866.

And even if the state's interests could be compelling here, they are not narrowly tailored. As the Western District of Wisconsin explained in *Frami*, "because the registration requirement substantially burdens First Amendment rights, only narrowly tailored means can be used to achieve the state's goals . . .". 255 F.Supp.2d

at 970. The Court then went on to explain that the residency requirements challenged there were not "narrowly tailored to facilitate the state's ability to locate out-of-state petition circulators and discourage fraud." *Id.* Nor were they narrowly tailored to "insuring that residents of other states who circulate petitions are subject to the state's judicial processes . . ." *Id.* Nor were they narrowly tailored to prevent any alleged fraud from occurring. *Id.* at 970–71.

Wisconsin's latest attempt to impose residency requirements is substantially similar to what the Western District of Wisconsin considered in *Frami* and the analysis should be the same here. These provisions are not narrowly tailored to any compelling government interest.

Plaintiff is substantially likely to succeed on the merits of its claim that the challenged residency requirements imposed by Act 126 violate the First Amendment, and so this factor of the test is met.

## II. Plaintiff will suffer irreparable harm if preliminary relief is denied and has no other adequate remedy at law.

In First Amendment cases like this one, "the likelihood of success on the merits will often be the determinative factor," such that "the analysis begins and ends with" its discussion. *Higher Soc'y of Indiana v. Tippecanoe Cnty., Indiana*, 858 F.3d 1113, 1116 (7th Cir. 2017) (first quoting *Am. Civil Liberties Union of Ill. v. Alvarez*, 679 F.3d 583, 589 (7th Cir. 2012), then quoting *Korte v. Sebelius*, 735 F.3d 654, 666 (7th Cir. 2013)). This is because "even short deprivations of First Amendment rights constitute irreparable harm, and 'the balance of harms normally favors granting preliminary injunctive relief because the public interest is not harmed by

preliminarily enjoining the enforcement of [an ordinance] that is probably unconstitutional.'" *Id.* (quoting *Am. Civil Liberties Union*, 679 F.3d at 589-90; *see also, e.g.*, *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006) ("The loss of First Amendment freedoms is presumed to constitute an irreparable injury for which money damages are not adequate, and injunctions protecting First Amendment freedoms are always in the public interest.").

Indeed, constitutional violations constitute "*proof* of an irreparable harm." *Preston v. Thompson*, 589 F.2d 300, 303, n.3 (7th Cir. 1978). And here, Plaintiff's constitutional rights have been, and are continuing to be, denied by Act 126 which is administered and enforced by Defendants. Again, nomination papers for the November 2026 General Election began circulating in Wisconsin on April 15, 2026, and can only be circulated through June 1, 2026. Wis. Stat. § 8.15(1). Plaintiff seeks to make expenditures to hire individuals to help collect nomination signatures for candidates for Wisconsin public office, but because of Act 126, Plaintiff cannot work with out-of-state residents to gather nomination signatures for the Wisconsin candidates it supports, significantly limiting the pool of individuals and firms Plaintiff can work with to advance its mission. Jacob Decl. ¶¶ 9–13. This First Amendment violation subjects the Plaintiff to irreparable harm.

Lastly, Plaintiff has no other adequate remedy at law. The statutes do not allow Plaintiff to engage out-of-state residents to collect valid signatures on behalf of Wisconsin candidates, so without an injunction, Plaintiff will not be able to work with out-of-state circulators (including those supplied by DRW Campaigns, Inc., with

whom ACV PAC has entered into a Petition Agreement) to participate in the current signature collecting period. Jacob Decl. ¶¶ 9–14. Plaintiff's only option is to seek a judicial remedy, which Plaintiff is doing with this action.

### III. A balance of the harms and the public interest favors granting preliminary relief.

"Implicit in the First Amendment freedoms of speech, assembly, and petition is the freedom to gather together to express ideas—the freedom to associate." *Christian Legal Society v. Walker*, 453 F.3d 853, 861 (7th Cir. 2006) (citing cases). That is exactly what Plaintiff seeks to do: associate with candidates and supporters of its choosing by facilitating the circulation of nomination papers.

Courts have recognized that "[a]ssociating for the purpose of placing a candidate on the ballot is one of the actions protected by the First Amendment; indeed the circulation of petitions for ballot access 'involves the type of interactive communication concerning political change that is appropriately described as 'core political speech'.'" *Krislov,* 226 F. 3d at 858 (quoting *Meyer,* 486 U.S. at 421–22). In addition, and applying *Krislov*, Judge Crabb wrote in *Frami*—before striking the down Wisconsin's previous residency requirements—that *Krislov* casts serious doubt on the constitutional validity of the Wisconsin [residency requirements] challenged in [that] case." *Frami*, 255 F. Supp. 2d at 967. Furthermore, "[i]t is 'always in the public interest to prevent the violation of a party's constitutional rights.'" *Faust v. Vilsack*, 519 F. Supp. 3d 470, 477 (E.D. Wis. 2021) (quoting *Déjà vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson Cty.,* 274 F.3d 377, 400 (6th Cir. 2001)).

A temporary restraining order or an injunction will not cause *any* harm to Defendants. With respect to Defendants, the "government suffers no harm from an injunction that merely ends unconstitutional practices and/or ensures that constitutional standards are implemented." *Doe v. Kelly*, 878 F.3d 710, 718 (9th Cir. 2017); *Chabad of S. Ohio & Congregation Lubavitch v. City of Cincinnati*, 363 F.3d 427, 436 (6th Cir. 2004) ("[N]o substantial harm can be shown in the enjoinment of an unconstitutional policy.").

Plaintiff, on the other hand, is unable to work with individuals of its choosing to collect signatures in Wisconsin, and Plaintiff's First Amendment rights are being denied. See Jacob Decl. ¶¶ 9–14. Issuing the temporary relief requested herein would simply preserve the status quo and allow Wisconsin's current signature collection period to operate exactly as previous signature collection periods have operated for the past two decades, harming no one. The balancing of the equities weighs heavily in favor of the injunction.

### RELIEF SOUGHT

For all of the reasons explained above, this Court should immediately grant Plaintiff's motion for a temporary restraining order while it considers Plaintiff's motion for a preliminary injunction. The factors for granting such relief are clearly met here: the residency requirements imposed by Act 126 are a direct violation of Plaintiff's First Amendment rights, and because such violations cause irreparable harm for which there is no other adequate remedy at law, Plaintiff's request for injunctive relief is in the public interest.

As Plaintiff's Complaint makes clear, this lawsuit seeks permanent declaratory and injunctive relief against Act 126. *See* Dkt. 1-1,10–25. But time is of the essence here because the current window for circulating nomination papers runs from April 15 to June 1. Accordingly, it is imperative that this Court immediately issues a temporary restraining order while it considers Plaintiff's request for a preliminary injunction until the merits of the case—though clearly in favor of Plaintiff—can be fully addressed.

## CONCLUSION

Plaintiff respectfully asks this Court to immediately issue a temporary restraining order while it considers Plaintiff's request for a preliminary injunction for the pendency of this litigation.

Given the short timeframes involved, and the unpredictable nature of this litigation, Plaintiff reserves the right to request further relief with the Court, which may include extending the June 1 deadline. Finally, Plaintiff respectfully requests that if this Court is not inclined to grant temporary relief, that it denies both motions quickly to permit Plaintiff time to seek emergency review at the Seventh Circuit.

Dated: May 4, 2026.

 Respectfully Submitted,

WISCONSIN INSTITUTE FOR LAW & LIBERTY

*Electronically signed by Nathalie E. Burmeister*
Lucas T. Vebber (#1067543)
Daniel P. Lennington (#1088694)
Nathalie E.  Burmeister (#1126820)

1241 N. Franklin Place
Milwaukee, WI 53202

Phone: (414) 727-9455

lucas@will-law.org
dan@will-law.org
nathalie@will-law.org

*Attorneys for Plaintiff*

Case 2:26-cv-00786-SCD     Filed 05/04/26     Page 23 of 23     Document 6-1