Troutman Pepper Locke LLP
111 South Wacker Drive, Suite 4100
Chicago, IL 60606

troutman.com

**troutman
pepper locke**

**Misha Tseytlin**
D 608.999.1240
misha.tseytlin@troutman.com

May 8, 2026

**VIA E-FILING**

The Honorable Lynn Adelman
United States Courthouse Room 364
517 East Wisconsin Avenue
Milwaukee, WI 53202

**Re:     *Americans for Citizen Voting PAC v. Wolfe, et al.*, No.2:26cv786 (E.D. Wis.)**

Dear Judge Adelman,

I represent the Wisconsin State Legislature (hereinafter, "Legislature"), which intends to move to intervene as a defendant in this lawsuit to defend the constitutionality of 2025 Wisconsin Act 126. Act 126 requires individuals who circulate election-nomination papers (except for the Offices of President and Vice President) or recall petitions in Wisconsin to be eligible electors in Wisconsin. Wisconsin is currently in the middle of an election-nomination-paper-circulation period for the November General Election, which period began on April 15, 2026 and will close on June 1, 2026. *See* Wis. Elections Comm'n, *Calendar Of Election Events (Nov. 2025 – Nov. 2027).*[1] Given the exigencies created by Plaintiff's May 4, 2026 Emergency Motion For Temporary Restraining Order ("TRO Motion") And Preliminary Injunction Against Act 126, Dkt.6, and this Court's order setting today as the deadline for responses to the TRO Motion, Dkt.8, the Legislature respectfully submits this letter opposing Plaintiff's TRO Motion while it continues to prepare its forthcoming intervention papers. For the reasons discussed below, the Legislature respectfully requests that this Court deny Plaintiff's TRO Motion and instead set an appropriate briefing schedule on Plaintiff's request for preliminary-injunctive relief.

As a threshold matter, the Supreme Court's "*Purcell* principle" prohibits this Court from awarding Plaintiff its requested TRO. *See Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 589 U.S. 423, 424–25 (2020) (per curiam) (citing *Purcell v. Gonzalez*, 549 U.S. 1 (2006) (per curiam)). Under the *Purcell* principle, "lower federal courts should ordinarily not alter the election rules on the eve of an election," *id.* at 424 (citations omitted), given that "[c]ourt orders affecting elections . . . can themselves result in voter confusion," *Purcell*, 549 U.S. at 4–5; *see also Republican Nat'l Comm.*, 589 U.S. at 424. Here, Plaintiff's TRO Motion challenges Act 126's

---

[1] Available at https://tn.siren.wi.gov/wp-content/uploads/2025/2026ElectionInfo.pdf (all websites last visited May 8, 2026).



qualifications for circulators of nomination papers for Wisconsin elections, Dkt.6 at 1–2, and Wisconsin is in the middle of an election-nomination-paper-circulation period now, *supra* p.1. Therefore, Plaintiff's TRO Motion seeks to "alter the election rules" *in the middle of an on ongoing election*, *Republican Nat'l Comm.*, 589 U.S. at 424 (citations omitted), which even more powerfully counsels against this Court entering any "order[ ] affecting elections," *Purcell*, 549 U.S. at 4, than requests to "alter the election rules on the eve of an election," *Republican Nat'l Comm.*, 589 U.S. at 424 (citations omitted).

There is yet another timing-related reason to deny Plaintiff's TRO request: Plaintiff had over a month to bring this lawsuit after Act 126's enactment, and yet now seeks emergency relief when an immediate lawsuit would have at least permitted the Court and the parties to proceed in the preliminary injunction posture. A plaintiff seeking a TRO against a new election regulation has the duty to act "'expeditiously' to afford the district court 'sufficient time in advance of an election to rule without disruption of the electoral cycle.'" *Jones v. Markiewicz-Qualkinbush*, 842 F.3d 1053, 1061 (7th Cir. 2016) (citations omitted); *see also Ideal Indus., Inc. v. Gardner Bender, Inc.*, 612 F.2d 1018, 1025 (7th Cir. 1979). Further, a plaintiff is presumed to have knowledge of an election law immediately upon its "passage and publication," as those public acts are "notice to the world of [the law's] existence." *Jones*, 842 F.3d at 1061. Here, the sponsors of the bill that would become Act 126 introduced it on April 23, 2025; then, over the ensuing 11 months, the Legislature publicly debated that bill and held two public hearings; the Legislature passed the bill on February 11, 2026; and finally, on March 27, 2026, Wisconsin Governor Evers signed that bill into law as Act 126. *See* Wisconsin State Legislature, Assembly Bill 223;[2] 2025 Wis. Act 2026. Plaintiff could have brought this lawsuit and its TRO Motion immediately upon Act 126's publication in March 2026, and—given Plaintiff's duty to act "expeditiously"—it should have brought that lawsuit at that time. *Jones*, 842 F.3d at 1061 (citations omitted). Instead, *Plaintiff delayed for over a month, choosing to file this case in the middle of an election-nomination-paper-circulation period to which Act 126 applies.* *See* Dkt.1-1 at 8–18. That unjustified delay alone defeats Plaintiff's TRO Motion. *See Jones*, 842 F.3d at 1060–61.

These timing points aside, this Court should look skeptically on Plaintiff's ability to show a likelihood of success on the merits of its First Amendment claims, *see id.* at 1058, although full briefing in a preliminary-injunction posture is necessary to develop that issue. Plaintiff's challenge to Act 126 triggers the *Anderson*/*Burdick* balancing framework. *Burdick v. Takushi*, 504 U.S. 428, 434 (1992); *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983); *see also Luft v. Evers*, 963 F.3d 665, 671–72 (7th Cir. 2020). Under that framework, the Seventh Circuit's controlling *Luft* decision explains, a minimal level of scrutiny applies to laws that impose only reasonable burdens on election activity, viewing "the state's election code *as a whole.*" 963 F.3d at 671. And when that minimal scrutiny applies, the State's interests in election integrity and orderly election administration will typically carry the day. *See Stone v. Bd. of Election Comm'rs for City of Chi.*, 750 F.3d 678, 681 (7th Cir. 2014); *accord Krislov v. Rednour*, 226 F.3d 851, 866 n.7 (7th Cir. 2000). If, however, "voting rights have been severely restricted" by a State's election code, *Luft*

---

[2] Available at https://docs.legis.wisconsin.gov/2025/proposals/ab223.



explains that the State must "have [a] compelling interest[ ] and [a] narrowly tailored rule[ ]" to justify that restriction under the *Anderson/Burdick* framework. *Luft*, 963 F.3d at 672 (citations omitted).

The Seventh Circuit has applied the *Anderson/Burdick* framework—albeit as articulated before *Luft*—to an Illinois circulator-qualification law in *Krislov*, 226 F.3d 851. The Illinois law there limited circulators to individuals who resided within the relevant electoral district, which could be an individual state district. *Krislov*, 226 F.3d at 855, 859–60. *Krislov* held that the Illinois law triggered exacting scrutiny under *Anderson/Burdick* because the "record indicate[d] that," due to the law, "ballot access took a lot of time, money and people, which cannot be characterized as minimally burdensome." *Id.* at 860. *Krislov* then held that the Illinois circulator-qualification law failed this exacting-scrutiny review in part because it was not sufficiently tailored to combating demonstrated instances of fraud. *Id.* at 865–66. However, *Krislov* made clear that it did "not" hold "that a State could never regulate non-citizen circulators" consistent with *Anderson/Burdick*'s exacting standard of review. *Id.* at 866 & n.7. "If the use of non-citizens were shown to correlate with a high incidence of fraud, a State might have a compelling interest in further regulating noncitizen circulators." *Id.* at 866 n.7; *accord Initiative & Referendum Inst. v. Jaeger*, 241 F.3d 614, 616–17 (8th Cir. 2001).

Here, Act 126 triggers only minimal *Anderson/Burdick* scrutiny. Under Act 126, *any* qualified elector within Wisconsin may be a circulator, regardless of whether they are actually registered to vote. *See* 2025 Wis. Act 126 (codified at Wis. Stat. §§ 8.10(3), 8.15(4)(a), 8.20(3), 8.40(2), and 9.10(2)(em)2.); Peggy Hurley, Act Memo, Wisconsin Legislative Council (Mar. 30, 2026).[3] Thus, for any election in which Act 126 applies, Act 126 only requires those seeking to circulate nomination papers to find *any* individuals who are U.S. citizens aged 18 or older and who have resided in Wisconsin for 28 consecutive days before any election. *See* Wis. Stat. § 6.02(1) (listing "[q]ualifications" for an "eligible elector"). And, cognizant of the national character of elections for President and Vice President, Act 126 excludes those elections from its requirements. *See* 2025 Wis. Act 126. This is not an unreasonable burden that would trigger heightened *Anderson/Burdick* scrutiny. *Compare Krislov*, 226 F.3d at 855, 859–60 (recognizing that the challenged Illinois law limited circulators to district residents).

There is good reason to believe that Act 126 survives this minimal *Anderson/Burdick* scrutiny applicable here, given the State's interests in election integrity, and as the parties can develop in more detail during the preliminary injunction briefing. *See Stone*, 750 F.3d at 681; *Krislov*, 226 F.3d at 866 n.7; *accord Jaeger*, 241 F.3d at 616–17. Immediately prior to the passage of Act 126, Wisconsin experienced significant fraud in the circulation of recall petitions by out-of-state circulators. As a sponsor of Act 126 explained in his supporting testimony, "[d]uring a recent recall attempt . . . [r]oughly two-thirds of the individuals who circulated recall petitions were from out of state," and these collection efforts yielded "allegedly forged signatures" and "duplicate and questionable signatures." Rep. Jim Piwowarczyk, *Testimony Before The*

---

[3] Available at https://docs.legis.wisconsin.gov/2025/related/lcactmemo/act126.



*Assembly Committee On Campaign And Elections* (June 3, 2025).[4] The Wisconsin Elections Commission received a verified complaint related to that recall attempt and, in February of this year, found probable cause that multiple out-of-state circulators had falsified signatures on the recall petitions that they had circulated or falsified their residential address. Wis. Elections Comm'n, *Letter Re: Robin Vos v. Matthew Snorek et al (EL-2450)* (Feb. 27, 2026).[5] Accordingly, the Wisconsin Elections Commission referred the matter for criminal prosecution. *Id.* By requiring circulators of recall petitions and nomination papers be eligible Wisconsin electors, Act 126 furthers Wisconsin's indisputable interests in ensuring that this type of election fraud does not happen again. *See Stone* 750 F.3d at 681; *Krislov*, 226 F.3d at 866 n.7; *accord Jaeger*, 241 F.3d at 616–17.

Finally, to the extent *Krislov*'s application of the *Anderson/Burdick* framework survives the Seventh Circuit's more recent decision in *Luft*, *Krislov* would not require application of exacting *Anderson/Burdick* scrutiny to Act 126, regardless. As noted above, *Krislov* applied exacting *Anderson/Burdick* scrutiny because the "record indicate[d] that," due to the challenged Illinois circulator-qualification law, "ballot access took a lot of time, money and people, which cannot be characterized as minimally burdensome." 226 F.3d at 860. Here, however, Plaintiff has failed to develop a similar record, as is its burden to trigger application of exacting scrutiny. *Compare id.* Instead, Plaintiff submitted only a single, short declaration stating that Act 126 requires it to use qualified Wisconsin electors as circulators and asserting in a conclusory manner that this limits those whom Plaintiff can work with as circulators. *See* Dkt.6-5. That declaration does not explain why Plaintiff must use circulators from outside of Wisconsin or why using Wisconsin-based circulators is overly burdensome. *Contra Krislov*, 226 F.3d 851 at 859–60.

For the above reasons, the Court should deny Plaintiff's request for an emergency TRO and set an appropriate briefing schedule on Plaintiff's request for preliminary-injunctive relief.

Sincerely,

*/s/Misha Tseytlin*
Misha Tseytlin

CC:    All Counsel of Record (via e-filing)

---

[4] Available at https://docs.legis.wisconsin.gov/misc/lc/hearing_testimony_and_materials/2025/ab223/ab0223_2025_06_03.pdf.

[5] *See* J.R. Ross, *Elections Commission Recommends Charges Against 13 Involved In Failed Vos Recall*, State Affairs (Feb. 27, 2026) (linking to letter).