IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

AMERICANS FOR CITIZEN VOTING PAC,

      Plaintiff,

  v.                                      Case No. 26-CV-0786

MEAGAN WOLFE, et al.,

      Defendants.

## DECLARATION OF ROBERT KEHOE

I, Robert Kehoe declare pursuant to 28 U.S.C. § 1746 and under the penalty of perjury, that the following is true and correct.

1. I am an adult resident of the State of Wisconsin and am presently in Dane County.

2. Since June 2022, I have served as the Deputy Administrator of the Wisconsin Elections Commission (the "Commission"). I previously served as the Technology Director of the Commission, from October 2018 until my appointment as Deputy Administrator.

3. The Commission is a governmental agency responsible for administering and enforcing election laws in Wisconsin. As the Commission's Deputy Administrator, I assist the Administrator, who serves as Wisconsin's chief elections officer. I am additionally responsible for day-to-day supervision

of the agency's election administration, information technology, and elections security staff.

4. I make this declaration based upon my personal knowledge and in response to Plaintiff's motion for an ex parte temporary restraining order and preliminary injunction.

5. On April 29, 2026, Plaintiff, Americans for Citizen Voting PAC, filed a complaint in state court raising constitutional challenges to 2025 Wisconsin Act 126 ("Act 126"), enacted on March 27, 2026. The case has now been removed to federal court.

6. Act 126 amended provisions of Wisconsin law to require a circulator of nomination papers and recall petitions to be a "qualified elector of this state," except as to nomination papers for presidential/vice-presidential candidates and referenda petitions.

7. A circulator subject to Act 126's requirements is a person who obtains the required number of signatures for a candidate's nomination papers, for the candidate to be placed on the ballot for a particular office, or for a recall election to occur.

8. If a circulator is a qualified elector of the candidate's district, or of an incumbent official's district for a recall petition, the circulator may also sign the nomination paper or petition.

2

9. Act 126's provisions, where applicable, now require a circulator to be a person who is qualified to vote in Wisconsin. The person does not have to be registered to vote in Wisconsin to be a circulator; rather, the person just must be someone who could vote in Wisconsin.

10. Following enactment of Act 126, on April 6, 2026, the Commission approved a memo regarding Act 126 and updated nomination paper templates to reflect Act 126's changes. That memo is attached to Plaintiff's complaint as Exhibit 2.

11. Additionally, one of the updated nomination paper templates approved following Act 126's enactment, the Nomination Paper for Partisan Office, is attached to Plaintiff's complaint as Exhibit 1.

12. Wisconsin has a Partisan Primary Election on August 11, 2026, and a General Election on November 3, 2026.

13. The 2026 General Election includes elections for Governor, Lieutenant Governor, Attorney General, Secretary of State, Treasurer, U.S. House of Representatives, Wisconsin State Senate, Wisconsin State Assembly, and county officers other than supervisors and county executives. Additionally, municipalities and counties with vacancies may hold elections on the day of the General Election, with any primary occurring on the day of the Partisan Primary.

3

14. Pursuant to Wisconsin law, potential candidates for the 2026 Fall Partisan Primary and General Election were able to start circulating nomination papers on April 15, 2026. Wis. Stat. §§ 8.15(1) (partisan candidates), 8.20(8)(a) (independent candidates).

15. The circulation period for Wisconsin's 2026 Fall Partisan Primary and General Election has thus already been underway for over two weeks. There are roughly 130 state and congressional offices and over 150 county offices for which elections will be held in these upcoming elections, where Act 126's circulator requirements apply.

16. Pursuant to Wisconsin law, the nomination papers for those elections must be filed by June 1, 2026, or 72 hours thereafter if an incumbent fails to file nomination papers and a declaration of candidacy by June 1. Wis. Stat. §§ 8.15(1), 8.20(8)(a).

17. Wisconsin law requires that for state offices and offices in the U.S. Senate and House of Representatives, nomination papers must be filed with the Commission. For county offices, they must be filed with the county clerk or, in Milwaukee County, with the county board of election commissioners. Wis. Stat. §§ 8.15(8), 8.20(7); *see also* Wis. Stat. § 5.02(23).

18. So, nomination papers for county offices for the upcoming 2026 Partisan Primary and General Election will not be filed with the Commission but rather with the respective county clerks.

4

19. Wisconsin statutes and regulations impose specific requirements, including certifications, as to nomination papers and recall petitions. *See generally* Wis. Stat. §§ 8.15, 8.20, 9.10(2)(em); Wis. Admin. Code EL § 2.05. These include a required circulator certification statement. *See id.*

20. Both before and after Act 126, Wisconsin law has required that nomination papers include a certification of a qualified circulator, providing the following, with a signature and date:

 a. his or her residence with street and number, if any;

 b. attesting that he or she personally circulated the nomination paper and personally obtained each of the signatures;

 c. that he or she knows that they are electors of the ward, aldermanic district, municipality or county, as the nomination papers require;

 d. that he or she knows they signed the paper with full knowledge of its content;

 e. that he or she knows their respective residences given;

 f. that he or she knows each signer signed on the date stated opposite his or her name;

 g. that he or she intends to support the candidate; and

 h. that he or she is aware that falsifying the certification is punishable under Wisconsin law (Wis. Stat. § 12.13(3)(a)).

*See* Wis. Stat. §§ 8.15(4)(a), 8.20(3).

21. After Act 126, that certification must be the certification of a qualified circulator "who is a qualified elector of this state." 2025 Wis. Act 126, §§ 2–3.

22. Under Wisconsin law both before and after Act 126, a person may only circulate nomination papers for one candidate per office per election. Wis. Stat. § 8.04.

23. And each candidate for public office bears the responsibility for assuring that their nomination papers are prepared, circulated, signed, and filed in compliance with applicable law and administrative code requirements. Wis. Admin. Code EL § 2.05(3)(a).

24. As to recall petitions, both before and after Act 126, Wisconsin law also provided that no signature may be counted if the circulator fails to sign the certification of circulator or if the circulator was not qualified to be a circulator. Wis. Stat. §§ 9.10(2)(em), 8.40(2). Unlike the nomination paper certification, the recall petition circulator signature does not require any attestation of support. Like the circulator certification for nomination papers, the circulator certification for a recall petition requires the circulator to sign and date a certification attesting that he or she: personally circulated the petition and obtained each signature; knows that they are electors of the jurisdiction or district in which the petition is circulated; knows that they signed with full knowledge of its content; knows their respective residences given; knows that each signer signed on the date opposite his or her name; and knows that falsifying the certification is punishable under Wis. Stat. § 12.13(3)(a). Wis. Stat. § 8.40(2).

25. After Act 126, the circulator must now be a "qualified elector of this state" to be a circulator and for the signatures on a recall petition to, in turn, be counted. 2025 Wis. Act 126, § 6.

26. Wisconsin law has also long provided how many signatures are required on nomination papers for the respective offices, including, for example:

    a. For statewide offices, 2,000 to 4,000 elector signatures are required, Wis. Stat. § 8.15(6)(a);

    b. For U.S. Representatives, 1,000 to 2,000 elector signatures are required, Wis. Stat. § 8.15(6)(b);

    c. For Wisconsin State Senators, 400 to 800 signatures are required, Wis. Stat. § 8.15(6)(c);

    d. For Wisconsin State Assembly Representatives, 200 to 400 elector signatures are required, Wis. Stat. § 8.15(6)(d); and

    e. For a petition to recall a state officer, signatures of electors equal to at least 25% of the vote cast for the Office of Governor at the last election within the same district or territory as that of the officeholder being recalled, Wis. Stat. § 9.10(1)(b).

27. Additionally, prior to and after Act 126, for an elector's signature to be valid and thus counted towards the total signatures, the signing elector—not the circulator, but a person signing nomination papers to be counted as one of the required elector signatures—must live within the county, district, or jurisdiction that the candidate seeks to represent, or in which the recall petition is circulated. Wis. Stat. §§ 8.10(4)(a), 8.15(3), 8.20(5), and 9.10(2)(e)5.; Wis. Admin. Code EL § 2.05(6)(h)5.

7

28. As a practical matter, Wisconsin law did not and does not prevent others from accompanying a circulator while the circulator is obtaining signatures, or limit whether persons accompanying a circulator must be qualified to vote in or otherwise even reside in Wisconsin. Any additional person could be present during the circulation of the nomination papers or recall petitions to advocate for a candidate or for the recall petition, whether or not they are qualified to vote or reside in Wisconsin.

29. Challenges may be made to the validity of nomination papers and recall petitions. Wis. Admin. Code EL §§ 2.07, 2.11; *see also* Wis. Stat. § 8.07.

30. For nomination papers, such challenges must be made by the third calendar day after the filing deadline for the challenged papers; for recall petitions, a challenge must be made within 10 days of the petition being offered for filing. Wis. Admin. Code EL § 2.07(3)(b); Wis. Stat. § 9.10(3)(b), (4)(a). So, as to nomination papers filed by June 1, 2026, for the 2026 Partisan Primary and General Election, that would mean that challenges must be made by June 4, 2026. Wis. Admin. Code EL § 2.07(3)(b).

31. Challenges to nomination papers must be filed with the respective filing officer: for state and federal offices, this means with the Commission, and for county offices, this means the county clerk. Wis. Admin. Code EL §§ 2.07(2), 2.05(1)(i).

8

32.    Any order on a challenge to nomination papers made by a county filing officer may be appealed to the Commission. Wis. Admin. Code EL § 2.07(7).

33.    Issues related to circulator certifications on nomination papers have been a common basis for challenges to nomination papers filed with the Commission. Issues related to the dating of the circulator signature are particularly common, as, for example, no signature on a nomination paper may be counted if the signature is dated after the date of the circulator certification. *See* Wis. Admin. Code EL § 2.05(6)(g).

34.    Challenges must be decided by the filing officer not later than the date for certifying candidates to the ballot. Wis. Admin. Code EL § 2.07(3)(h). For the 2026 Partisan Primary and General Election, the Commission must certify the candidates to the ballot by June 10, 2026.

35.    The Commission is also required to provide a notice to each county clerk, certifying the list of candidates for the Partisan Primary and General Election, as soon as possible after the deadline for determining ballot arrangement on June 10, 2026. Wis. Stat. § 10.06(1)(h).

36.    If the provisions of Act 126 were to be temporarily enjoined but then reinstated during the period prior to June 10, 2026, it would create significant confusion as to whether Act 126's requirements were or were not

valid at the time a circulator was collecting signatures for the 2026 Partisan Primary Election.

37. It could lead to confusion amongst circulators, who may wonder whether they do or do not need to be a qualified elector in Wisconsin to circulate nomination papers. It could lead to confusion among candidates, who may question whether their nomination papers are in compliance with the legal requirements.

38. It could also lead to confusion amongst persons who may wish to file challenges with the Commission or other applicable county filing officer.

39. Additionally, as Plaintiff has brought suit against only Administrator Meagan Wolfe and the Commission, a preliminary injunction may also cause confusion amongst county filing officers—who are not defendants—as to whether any injunction against the Commission's enforcement of Act 126's provisions would also apply to their determinations. It is possible that different filing officers could make different determinations on circulator statement sufficiency, if different language requirements were in effect at different periods within the circulation period.

40. I am also aware that Plaintiff has indicated that they may ask the Court to extend the June 1, 2026, deadline for nomination papers. Extending that deadline would cause highly disruptive and cascading effects.

41. As noted, Wisconsin law requires that candidates for the 2026 Partisan Primary be certified to the ballot by June 10, 2026. If the June 1, 2026, deadline for filing of nomination papers were delayed, that would in turn delay the already narrow timeframe for any challenges to those nomination papers—which must be decided prior to June 10, 2026. This would reduce the time that challengers have to file challenges against nomination papers, and also reduce the time for candidates to respond to those challenges, leaving all parties with less time to compose sufficient briefs to address potentially valid issues regarding the sufficiency of nomination papers. Depending on the length of any extension, it could also, in turn, undermine the Commission's ability to meet the June 10, 2026, ballot deadline. That, in turn, would delay the Commission's ability to provide its statutorily required notice to county clerks as to who would appear on the ballot, and likely the production of ballots themselves for the 2026 Partisan Primary. Any delay printing ballots would jeopardize state and federal deadlines to mail absentee ballots.

42. County clerks have an extremely narrow window to provide ballots for the 2026 Partisan Primary Election. After receiving the certifications from the Commission no later than June 10, 2026, regarding what state and federal offices must appear on the Partisan Primary ballot, they must arrange to have those ballots printed and delivered to each municipal clerk in the county by June 24, 2026. Wis. Stat. § 7.10(1)(a), (2), (3)(a). In turn, the municipal clerks

must send absentee ballots to the voters with an absentee ballot request on file by June 25, 2026. Wis. Stat. § 7.15(1)(cm). Notably, this includes military and overseas voters. *See* Wis. Stat. §§ 7.22, 7.24; 52 U.S.C. § 20302(a)(8). County clerks receiving the certified list of candidates after June 10, 2026, jeopardize these deadlines. Consequently, voters, and notably overseas voters depending on returning their ballots by international mail, may have less time than they are allotted to return ballots.

43. The Commission's statutory authority and duty to administer Wisconsin laws relating to elections includes authority to investigate violations of Wisconsin's election laws upon the filing of complaints with the Commission. Wis. Stat. §§ 5.05, 5.06.

44. This investigative authority, for example, includes authority to subpoena persons and records and to retain a special investigator. Wis. Stat. § 5.05(1)(b), (2m)(c)4.–5. The Commission also has authority to initiate civil prosecutions related to such violations, and refer such violations for potential criminal prosecutions. Wis. Stat. § 5.05.

45. The Commission may also investigate compliance with election laws by local election officials after receiving a complaint or on its own motion. Wis. Stat. § 5.06. Regarding ballot access, such a complaint must be filed within 10 days of the action of the local election official. *See* Wis. Stat. § 5.06(3). If the Commission finds probable cause of a violation, it may issue a corrective

order to the official. Wis. Stat. § 5.06(6). If the standards regarding circulator qualification requirements change during the circulation period, this could lead to a larger number of complaints being appealed to the Commission. Any decision made by the Commission could then be appealed to a circuit court, which could further delay candidates being timely certified to appear on the ballot. Wis. Stat. § 5.06(8).

46. In 2024, there were multiple unsuccessful petitions to recall Speaker of the Wisconsin State Assembly, Robin Vos.

47. Attached as Exhibit A is a verified challenge to a recall petition from Speaker Vos to the Commission, dated March 21, 2024.

48. Attached as Exhibit B is a verified challenge to a recall petition from Speaker Vos to the Commission, dated June 7, 2024.

49. Separately, as reflected in a letter issued by the Commission on February 27, 2026, that is subject to public disclosure and attached to this declaration as Exhibit C, in May of 2025, the Commission under Wis. Stat. § 5.05(2m)(c)4. found probable cause to believe that persons had, among other things, falsely listed an address that was not their residence on the circulator certification of a petition to recall Speaker Vos that they signed.

50. As further reflected in that February 27, 2026, letter, the Commission also found probable cause to believe that multiple persons violated Wis. Stat. § 12.13(3)(a), which prohibits falsifying or fraudulently defacing or

13

destroying a recall petition, among other documents. Credible evidence was submitted to the Commission from several individuals who attested that they did not actually sign the recall petition, without rebuttal from the involved circulators.

51.    As a general matter, it can be more difficult for the Commission to discern the veracity of information about individuals who do not reside in Wisconsin. For example, Commission staff are able to use official state and county resources to look up a Wisconsin address. For any out of state address, the Commission, as well as any local filing officer, would need to rely on other publicly available resources, such as Google Maps. The same would likely be true for any individual who believes that a circulator's certification is invalid and subject to challenge. For example, while criminal conviction records are generally easy to research in Wisconsin through Wisconsin's Consolidated Court Automation Programs (CCAP) website, other states may not have comparable resources.

52.    As a general matter, investigations that involve persons who do not reside in Wisconsin may also become more challenging. For example, a potential complainant under Wis. Stat. § 5.05(2m) may have the same difficulty as a challenger in verifying information about a circulator. A circulator who was not qualified to circulate a petition or who forged information may all but vanish after turning in the pages. While the

14

Commission could potentially seek a warrant regarding an individual residing in Wisconsin, someone residing outside of the state would be much harder to contact or potentially subpoena in an investigation by the Commission. *See* Wis. Stat. 5.05(2m)(c)4. And given the very short timeframe for deciding challenges to nomination papers, for example, any such additional hurdles in verifying information impedes the Commission's ability to consider challenges and address potentially incorrect or fraudulent papers.

*Pursuant to 28 U.S.C. § 1746, I verify under penalty of perjury that the statements in the declaration are true and correct and based upon my personal knowledge.*

Executed May 8, 2026.

_____
ROBERT KEHOE