| STATE OF WISCONSIN | WISCONSIN ELECTIONS COMMISSION | |
|---|---|---|

In RE: the matter of:

May 28, 2024 Recall Petition Filed against
Representative Vos

## REPRESENTATIVE ROBIN VOS' VERIFIED CHALLENGE
## TO THE RECALL PETITION FILED MAY 28, 2024

### INTRODUCTION

The recall petition filed against Speaker of the Assembly Robin Vos fails for the following reasons.

First, the recall was initiated in the old 63rd Assembly District. Based on the Wisconsin Supreme Court's injunction against the prior Legislative maps, no election may occur utilizing these districts. Indeed, a special election has already been scheduled for July 30, 2024, using the new Legislative maps. As such, the recall was initiated in the incorrect Assembly District and fails.

Second, the recall effort once again has fallen short of the threshold of 6,850 signatures. Of the estimated 9,055 signatures submitted, nearly 2,000 were from outside the 63rd Assembly District. The number dips much lower once the remaining signature pages are stricken for circulators who failed to provide a valid address, signatures collected after the deadline, duplicate signatures, signatures that post-date the circulator signature date, and signers with missing or incomplete address information.

Third, once again the recall effort was filled with fraud and election law violations. The Vos campaign has identified numerous fraudulent signatures, signers who were lied to about the

purpose of the recall, and out-of-state felons who were brought in to circulate petitions. Because of the wild allegations made by the Recall Committee that Vos hired out-of-state felons to collect signatures against him in the first recall, WEC should conduct an evidentiary hearing to determine how it came to be that felons from stretching from Arizona to Maryland came to southern Wisconsin to collect signatures for a State Assembly recall race.

## BACKGROUND

On January 10, 2024, Matthew Snorek submitted to WEC a "Statement of Intent to Circulate Recall Petition" against Speaker Vos. The basis for the recall was:

> Vos is blocking fair elections in WI. Vos mislead [sic] the WI Assembly in the impeachment process of Meghan [sic] Wolfe. Vos said he will "try as hard as I can to make sure Donald Trump is not the nominee in 2024. Vos supported the unlawful drop boxes. Wisconsin must move "Forward" without Vos in power.

The recall petition template indicated that it was for "Robin Vos 63rd Assembly District" and that all of the qualified electors were from the 63rd Assembly District.

Under Wis. Stat. § 9.10(1)(b), "a petition for recall of an officer shall be signed by electors equal to at least 25 percent of the vote cast for the office of governor at the last election within the same district or territory as that of the officeholder being recalled." WEC determined that the number of signatures necessary to trigger a recall election in the old 63rd Assembly District is 6,850. On April 11, WEC determined that the recall petition fell short of the 6,850 signatures requirement for the 63rd Assembly District.

Not only did the first recall petition fall woefully short of the required signatures, but it was plagued with fraud and election law crimes. For example, out-of-state felons circulated petitions using fake addresses to hide their identities. At least 23 individuals had their names fraudulently added to the recall petition, including children. Recall circulators lied to voters about the basis for the recall, and even cornered a woman in a parking lot and intimidated her into signing

Exhibit B

R-14

a petition for "women's rights." The circulators also submitted signatures from an incapacitated woman, a non-citizen, and an inmate. All of these crimes were outlined in Vos' challenge to the recall petition in March. Vos subsequently filed a verified complaint with WEC on May 23 against Snorek and the other circulators who participated in the election law violations. That complaint remains pending.

Sensing that he was hoisted with his own petard in the first recall, Snorek did not even bother waiting until WEC made a final determination before initiating a second recall on March 27. The basis for the second recall had a different rationale, though no less understated:

> Robin Vos should be recalled for his tacit support of the Chinese Communist Party (CCP), acceptance of money and trips from the CCP, failure to protect Wisconsin farmland from the CCP, lack of commitment to election integrity, blocking lower prescription drug costs, and flagrant disrespect for his own constituents by calling them "whack-jobs, morons, and idiots."

In its Campaign Registration Statement, the Racine Recall Committee provided that it was seeking to recall Vos in the 63rd Assembly District, which is the District that Vos was elected to in 2022. However, Speaker Vos no longer resides in the 63rd Assembly District. Based on new Legislative maps that became effective on February 20, 2024, Vos now resides in the 33rd Assembly District.

In a Memorandum issued March 28, WEC Chief Legal Counsel Jim Witecha alluded to the Wisconsin Supreme Court's injunction in *Clarke v. Wisconsin Elections Comm'n*, 2023 WI 79, 410 Wis. 2d 1, 998 N.W.2d 370, in which the supreme court enjoined further use of the Legislative maps that were in place in the 2022 elections. Attorney Witecha cautioned that WEC "has NOT yet formulated its opinion on recall and circulation district viability in light of *Clarke*." On April 3, the Wisconsin Supreme Court declined WEC's request to offer guidance on which legislative maps applied to recall elections.

On May 28, Snorek submitted 1,491 pages of recall petitions with an estimated 9,055 signatures.

## ARGUMENT

**I.     Because the Wisconsin Supreme Court Has Enjoined Any Election From Occurring in the Old 63rd Assembly District, the Recall Was Improperly Initiated and Cannot Proceed**

On December 22, 2023, the Wisconsin Supreme Court held that the Legislative districts which were in place in the 2022 elections violated the Wisconsin Constitution's contiguous-territory requirement. *Clarke v. Wisconsin Elections Comm'n*, 2023 WI 79, ¶¶ 34, 77, 410 Wis. 2d 1, 998 N.W.2d 370. As a remedy, the court enjoined WEC from using the then-current maps "in all future elections." *Id.*, ¶¶ 56, 77. The court further provided the remedial maps must be adopted prior to the 2024 elections. *Id.* The decision did not provide any exceptions, and the statewide injunction remains in effect today, prohibiting any elections under the maps which have been determined unconstitutional.

On February 19, 2024, Governor Evers signed Senate Bill 488, which created new legislative districts. *See* 2023 Wis. Act 94 (published February 20, 2024). As to "regular elections," the new maps apply "to offices filled at the 2024 general election." *Id.*, §2(1). Likewise, as to "special or recall elections," the new maps apply "to offices filled or contested concurrently with the 2024 general election." *Id.*, §2(2).

We have already entered the 2024 general election stage, as the deadline for the submission of nomination papers for the August 13 partisan primary was June 3. *See* Wis. Stat. § 8.15(1). WEC has until June 28, 2024, to certify this recall petition. *See* Wis. Stat. § 9.10(3)(b). Assuming this recall is certified, it would result in the recall taking place on August 6 or even August 13 (the date of the partisan primary). *See* Wis. Stat. § 9.10(3)(b). If there is a primary, it would occur on

August 6 or 13, with the general election four weeks after that. *See* Wis. Stat. § 9.10(3)(f). As such, we have already reached the stage where the recall is running "concurrently" with the 2024 general election.

This is no longer a hypothetical scenario. On May 14, 2024, Governor Evers signed an Executive Order calling for a special election in the 4th Senate District. Executive Order #225. The election shall be held on July 30, 2024, with any potential primary occurring on July 2, 2024. *Id.* The order calls for use of the new maps under 2023 Act 94. *Id.* No legal challenge has been filed to this order, and nomination papers were due June 4. *Id.* Barring any court order that the Executive Order was unlawful, a special election will run under the new legislative maps *prior* to this potential recall election. It is inconceivable that WEC could certify a special election on July 30 under the current legislative maps, but then flip back and certify a recall election in August or September under the old legislative maps.

The Attorney General's Office has reached the same conclusion in a prior redistricting dispute. Following the 1980 census, the Wisconsin Legislature and the Governor were unable to agree on new legislative district boundaries. The matter went to litigation before a three-judge federal panel, and on February 22, 1982, the court "entered an order declaring the current reapportionment scheme unconstitutional and enjoining the defendant state Elections Board from preparing for or administering any elections using the current Senate and Assembly districts." *Wisconsin State AFL-CIO v. Elections Bd.*, 543 F. Supp. 630, 632 (E.D. Wis. 1982). The court subsequently dissolved the injunction and entered a final order with new legislative maps. *Id.* at 639. The court's order was to "be effective for the 1982 legislative elections and thereafter until such time as a valid constitutional redistricting plan is enacted into law." *Id.*

Following the court's decision, Senate President Fred Risser requested a formal opinion from Attorney General Bronson La Follette on how the old district map would be applied to elections held before November 1982. The Attorney General issued a formal opinion on August 19, 1982, that answered the following two questions thusly:

> 1. Are the electors of the old district or the electors of the new district required to sign petitions to recall a holdover senator?
>
> Answer: Electors of the new district.
>
> 2. Are the electors of the old district or those of the new district entitled to vote in a special election to fill a vacancy in the office of a holdover senator?
>
> Answer: Only electors of the new district.

No. OAG 48-82, 1982 WL 188344, at *1 (Wis. A.G. Aug. 19, 1982). As the Attorney General opined, "the old districts cannot be utilized for purposes of nomination and election after June 17, 1982 [the date of the federal court's order]. For purposes of nomination and election, the new legislative district lines became effective that date." *Id.* The Attorney General further determined that "neither recall elections nor elections to fill a vacancy can be based on an apportionment plan which has been found unconstitutional." *Id.* at *3.

As to the question of whether potential recall signatures must come from the district lines used in the 1980 elections or the ones to be used in the 1982 elections, the Attorney General was emphatic:

> In regard to recall petitions, the state constitution provides that '[s]uch petition shall be signed by electors . . . in the . . . district from which such officer is to be recalled.' It does not require signatures by electors in the district from which the officer was elected although the districts would in the usual event be identical.

*Id.*

The *Clarke* injunction combined with 2023 Wis. Act 94 means that the old 63rd Assembly District cannot be used for the recall election. Based on the new legislative maps, Speaker Vos' current residence places him in the 33rd Assembly District. This is the only District in which a recall election could take place.

Because the recall cannot proceed in the 63rd Assembly District, the recall was improperly initiated and must be rejected out of hand.

**II.     No Recall Election Can Proceed in the New 33rd Assembly District Because the Recall Petitions Never Referenced this District**

For the reasons stated above, the recall cannot occur under the prior 63rd Assembly District. But conducting a recall election in the new 33rd Assembly District is just as problematic, if for different reasons. The recall petitions all state that that the signatories are "qualified electors of the 63rd Assembly District." The signatories (at least those who actually were in old 63rd Assembly District) in effect attested to a recall for an Assembly District that no longer exists.

WEC cannot transform the recall petitions into something they are not. Petitioner Snorek never sought a recall election for the 33rd Assembly District, and not a single elector attested that he or she was supporting a recall in the 33rd. As such, WEC cannot certify a recall for the new 33rd Assembly District.

**III.    Thousands of Signatures Must be Stricken**

Because the recall was initiated for an Assembly District that can no longer be used for elections, this second recall effort must be dismissed out of hand. Alternatively, even if the 63rd Assembly District is utilized for the recall, the effort fails because, once again, Snorek's petition has fallen short. This section identifies thousands of signatures that must be stricken for a variety of reasons, which results in the petition falling well short of the 6,850 required for certification.

7

Exhibit B

R-19

**A. Signatures From Outside of the 63rd Assembly District Must be Stricken**

Although WEC has yet to perform a preliminary review of signatures that fall outside of the 63rd Assembly District, the Vos campaign's initial review identified 1,922 signatures that fall outside of the District. (Fernholz Aff., Ex. 1.)

**B. Numerous Circulators Provided False or Incomplete Address Information**

Recall circulators must provide their "residence with street and number" on each circulated petition. Wis. Stat. § 8.40(2). A violation is a Class I felony. *See* §§ 8.40(2), 12.13(3)(a), 12.60(1)(a). Numerous circulators violated this provision by providing incomplete or outright false address information.

Several circulators listed non-existent addresses:

- Justin Gracier lists an address of 14695 Lorring Road, Colorado Springs, Colorado 80908. Per the local County Assessor's office, this address does not exist.

- John Adamson at 50 Caviler Lane in Elizabethtown, Pennsylvania.

- Gabriela Brumar at 2152 Rugler Road in Glenview, Illinois.

(Mrioued Aff., ¶¶ 7-8.)

Other circulators provided an address that they are no longer residing at, a parent's address, or a completely irrelevant address to where they currently reside:

- Dax Brown provided an address of 2983 E. Millen Way in Fresno, California. Based upon information provided by his bank record, it would appear that Brown actually resides at 6346 N. Selland Avenue in Clovis, California. Indeed, Brown even provides the City of Clovis as his location in his LinkedIn profile.

8

Exhibit B

R-20

- Doug Bricker, provided an address of 1877 Fruitwood Avenue in Batavia, Illinois. Based on a PeopleMap search, Mr. Bricker resides at 45491 Muirfield Drive, in Canton, Michigan.

- Gary Alan Feldman's correct address is 1026 Knorr Street in Philadelphia, PA. However he provided a house address of 626 Knorr Street in Philadelphia, PA.

- Joshua Foss provided an address of 12241 State Highway 27 in Ferryville, Wisconsin. However, all records show that he presently resides at E3656 Sandy Bay Road in Kewaunee, Wisconsin.

- Michael Kim provided an address of 1441 E. Germann Road, Apartment 2135 in Chandler, Arizona. The Vos campaign was not able to locate anyone by that name living at this apartment complex.

(Mrioued Aff., ¶¶ 12-16.)

Finally, the following circulators reside in an apartment complex but failed to provide their apartment numbers: Grace Huff, Ambriel Six, Justin Moser, Brandon Hawks, Kimimila Webster Thunder, and Jordon Flynn. (Mrioued Aff., ¶ 6.)

Each page submitted by the circulators identified in this section must be stricken.

## C. Circulation Pages Collected After May 26, 2024 Must be Stricken

Pursuant to Wis. Stat. § 9.10, a petition for the recall of an officer cannot be circulated until after the registration under Wis. Stat. § 11.0902 has been completed. § 9.10(2)(d). The petition must be filed by 5:00 p.m. on the 60th day after registration. *Id.* No signature may be counted unless the date of the signature is within the period described in § 9.10(2)(d). *Id.*; *see also* § 9.10(2)I2. Once the recall petition has been offered for filing, no name may be added or removed. *Id.*

9

Exhibit B

R-21

When computing time provided by statute, "[t]he time within which an act is to be done . . . shall be computed by excluding the first day and including the last; and when any such time is expressed in hours the whole of Sunday and of any legal holiday, from midnight to midnight, shall be excluded." Wis. Stat. § 990.001(4)(a). "If the last day within with an act is to be done . . . falls on a Sunday or legal holiday the act may be done . . . on the next secular day." § 990.01(4)(b).

The requirements for circulating a recall petition are discussed in Wisconsin Elections Commission's Recall of Congressional, County, and State Officials Manual, which provides:

> Circulation of the recall petition must be completed within 60 days after the petitioner files a campaign registration statement and intent to circulate a recall petition with the filing officer. The completed petition must be offered for filing (submitted to the filing officer), no later than 5:00 p.m. on the 60th day after the date of registration. Any signature on a recall petition that is dated either before the date of registration or more than 60 days after the registration date is invalid.[1]

> If the deadline for submitting the petition falls on a weekend or holiday, the petition must be filed by the next business day, **but valid signatures may not be dated outside of the 60-day circulation window**.

Wisconsin Elections Commission, *Recall of Congressional, County and State Officials*, Aug. 2020, at 2 (emphasis added). Similarly, the instructions for preparing recall petitions that are included with the recall petition form provides: "the petition shall be filed no later than 5:00 p.m. on the 60th day after registration of the recall committee. After the petition is filed, no name may be added or removed. Any signature obtained before registration or after the appropriate circulation period may not be counted. Individuals or committees seeking to recall elected officials should carefully review Wis. Stat. § 9.10(2)(e) concerning the validity of signatures on recall petitions." Wisconsin Elections Commission Form EL-170 Instructions.

---

[1] Measuring 60 days from the date of registration results in 61 actual days during which petition signatures are valid.

Here, the Statement of Intent to Circulate was filed on March 27, 2024, which made the petition due by 5:00 p.m. on May 26.  However, because May 26th was a Sunday and May 27th was a holiday, the petitioners were able to file the petition by 5:00 p.m. on May 28th.  Yet the 60-day circulation window still ended at 5:00 p.m. on May 26.[2]  Therefore, any signatures collected after the 26th are invalid.

The Vos campaign has identified 347 signatures from May 27 and 28 which must be stricken.  (Fernholz Aff., Ex. 2.)

**D.** **Additional Signatures That Failed to Comply With Wisconsin Law**

While information included in a petition is "entitled to a presumption of validity," signatures of individuals are subject to challenge.  Wis. Admin. Code EL 2.05(4).[3]  For example, "[o]nly one signature per person for the same office is valid."  EL 2.05(11).  The Vos campaign has identified 416 duplicate signatures.  (Fernholz Aff., Ex. 3.)

A signer must provide a "complete address, including municipality of residence for voting purposes, and the street and number, if any, of the residence."  Wis. Admin. Code EL 2.05(12).  If the address of the signer "is missing or incomplete," it cannot be counted, "unless residency can be determined by the information provided on the nomination paper."  EL 2.07(15)(c).  Sixty-three signers did not provide valid or complete address information.  (Fernholz Aff., Ex. 4.)  "No signature may be counted when the residency of the circulator cannot be determined by the information given on the nomination paper."  EL 2.05(14).  Accordingly, Vos challenges these signatures.

---

[2] While the circulation window ends at 5:00 p.m., as the Recall Petition does not require time, it would be impossible to tell what signatures, if any, where collected after that time.

[3] While Wis. Admin. Code EL 2.05 applies to nomination papers, the same standards are incorporated into recall petitions.  Wis. Admin. Code EL 2.09(5).

Finally, Wisconsin law provides that a "signature on a petition sheet may not be counted if . . . . [t]he signature is dated after the date of the certification contained on the petition sheet." Wis. Stat. § 9.10(2)(e)3. The Vos campaign has identified 26 signatures which were dated after the circulator's signature date. (Fernholz Aff., Ex. 5.) Vos challenges all signatures on these petitions in which the date of the signer post-dates the date of the circulators' signature.[4]

## IV. Once Again, the Recall Effort Was Plagued By Fraud and Criminality

The shambolic nature of the first recall effort was well-documented and is the subject of a formal complaint that was filed by Vos against Snorek and other circulators on May 23. While counsel for the Recall Committee blamed the criminal behavior in the first recall on vague and unsubstantiated allegations of "outside infiltrators from New York and Florida," the recallers assured the public that this time around would be different. It appears that the second recall is nothing more than a bad remake.

As set forth below, the Vos campaign has uncovered evidence of circulators forging names and signatures on the recall petitions, out-of-state felons who circulated petitions, and individuals who were told they were signing not a recall petition, but a petition to prevent the Chinese Communist Party from purchasing Wisconsin farmland. And this was all uncovered in the span of just 10 days, making it likely this is a mere sample of Snorek and the recallers' underhanded efforts at election fraud. Apparently, some lessons need to be learned twice.

### A. At Least Four Circulators Forged Names on Petitions

Vos retained Eileen Page, a court-recognized expert witness on handwriting, to review a sample of suspicious signature pages submitted by the Recall Committee. Page's report and

---

[4] Exhibit 5 to the Fernholz affidavit also identifies a handful of signatures with no date listed. (Fernholz Aff., Ex. 5.) These should likewise be stricken.

curriculum vitae are enclosed with this challenge.  Although Page reviewed just a small number of recall petitions, her findings were alarming.

Page examined nine petition pages that were circulated by Josias Andujar, Gail Golec, Vlad Litvin, and Larry Grafanakis.  Page's assessment of these nine pages is as follows:

### Writing Comparison: Exhibit A (2pp)

1. 04/21/2024 – Page No. 655 – Josias Andujar, circulator (10 signatures)
   - Illustrates similarities that are unique idiosyncrasies that show ownership of style. An example would be the lower case "t" in "burlington." In row #1 & 2. It starts at the top and descends to form a loop that ascends and is eventually used to form the t-bar. That unique characteristic referred to as an idiosyncrasy, is also found in row #4 and #6. This is a good example of the same person writing all 4 words.

### Writing Comparison: Exhibit B (3pp)

2. 05/16/2024 – Page No. 1071 – Gail Golec, circulator (6 signatures)
   - Illustration of too many extremes in a writing style.
   - Illustration of unnatural differences in one set of cursive signatures combined with too many unexplained similarities in the second set of cursive signatures.
   - Illustration of similar writing styles that were probably done by the same writer.

### Writing Comparison: Exhibit C (2pp)

3. 05/20/2024 – Page No. 1209 – Vlad Litvin, circulator (6 signatures)
   - Illustrates an obvious example of the same person writing all the signatures and additional information in all five rows.

### Writing Comparison: Exhibit D (3pp)

4. 05/23/2024 – Page No. 1344 – Gail Golec, circulator (7 signatures w/3 crossed out)
   - Illustrates the misuse of tremulous writing. There are examples of writing with tremors and some without supporting the argument that the writing has been disguised and is therefore not authentic.
   - Illustrates some examples of writing style differences and similarities.

13

Exhibit B

R-25

## Writing Comparison: *Exhibit E* (3pp)

5. 05/25/2024 – Page No. 1347 – Gail Golec, circulator (8 signatures)
   - Illustrates examples of comfort level and discomfort in writing cursive. The top signature is authentic while the two tremulous signatures below it are fabricated and therefore are not considered authentic signatures.
   - Illustrates unexplained differences because there are too many variations in one style of writing to be considered authentic.
   - Illustrate strong similarity indicating that one writer wrote "Burlington" on all 5 lines and one writer wrote all the dates.

## Writing Comparison: *Exhibit F* (2pp)

6. 05/25/2024 – Page No. 1373 – Gail Golec, circulator (8 signatures)
   - Illustrate examples of similarities indicating one writer even when the alleged cursive signatures are illegible scribbles.

## Writing Comparison: *Exhibit G* (2pp)

7. 05/27/2024 – Page No. 1375 – Gail Golec, circulator (10 signatures)
   - Illustration of extreme signature discrepancies. This vast miss-match of writing styles is an example of fraudulent activity.

## Writing Comparison: *Exhibit H* (2pp)

8. 05/27/2024 – Page No. 1376 – Gail Golec, circulator (10 signatures)
   - Illustration of unexplained differences among all the writing styles. .there is too many variables in line quality, legibility, pressure patterns and letter formations and proportions.
   - Illustration at the bottom of the page is another example of extreme differences in the names of the signer and the strong similarities in the printed information.

## Writing Comparison: *Exhibit I* (2pp)

9. 05/27/2024 - Page No. 1389 – Larry Grafanakis (10 signatures)
   - Illustrates a misuse of tremors to disguise the person's writing style.

Case 2:26-cv-00786-LA     Filed 05/08/26     Exhibit B     Page 14 of 22     Document 15-2     R-26

Page concluded, "[a]fter a careful and thorough examination of all the evidence provided, it is my expert opinion with a reasonable degree of professional certainty that there is an abundance of fraudulent activity that occurred throughout" the petition pages she reviewed. The examples were:

- **Similar characteristics** were identified in the various writing styles in the signatures, addresses and numbers. The prevalence of such similarities ultimately determined that it is highly probable that one person wrote more than one signature and potentially the corresponding information in that row.

- **Differences** that were evident were unnatural and unexplainable and therefore have been determined that it is highly probable that the writer attempted to disguise his/her writing style so that identifying ownership of style would be hampered.

- **Tremulous strokes** were also used intermittently to disguise style ownership. However, that strategy makes fraudulent activity more obvious because tremors are a consistent process when they are authentic.

- **Mix and match writing styles** were used to camouflage letter formations and overall legibility. Although that does happen on occasion, the changes that occur in a person's writing under those conditions are usually subtle and still maintain characteristics that determine ownership. When the changes are drastic in appearance and extreme in occurrence, they are categorized as fraudulent activity.

- **Illegible letters** were used in the form of angular lines, circular motions, or a combination of chaotic lines going in various directions. Over the years, there has been an increase in signatures that look more like an illegible scribble; however, when a scribbled signature has a particular motion, slant, size, pressure pattern, and line quality, those characteristics are implemented into the printed and/or cursive writing in a more legible form. Many of the scribbled signatures on the petitions were erratic and had too many unexplained variations from the other writing in the row to be considered authentic. Verification could be strengthened with a comparison to the known exemplars.

It is a felony to forge a signature on a recall petition. *See* Wis. Stat. §§ 8.40(2), 12.13(3)(a), 12.60(1)(a). All nine of these pages must be stricken.

15

Exhibit B    R-27

This also calls into question every single petition submitted by these four individuals. As described more fully below, WEC should conduct an evidentiary hearing before it accepts any signature pages submitted by these four individuals. This requirement is especially warranted given that Snorek submitted numerous fraudulent signatures in the first recall attempt.

**B. Once Again, the Recall Committee Relied on Out-of-State Felons to Circulate Nomination Papers**

Wisconsin does not permit convicted felons to vote, unless they have completed the term of their sentence, including probation or extended supervision. Wis. Stat. §§ 6.03(1)(b), 304.078(3). Anyone who is not eligible to vote is likewise not eligible to circulate recall petitions. Wis. Stat. § 8.40(2).

Set forth below are 14 circulators with confirmed criminal records:

1. Stephen Wright, Saline County, Arkansas, has been charged with:

   i. Possession Controlled Substance Sch I, II
   ii. Possession Controlled Substance Sch VI
   iii. Possession of Drug Paraphernalia

2. D. Reed Porter, Walworth County, convictions for:

   i. Battery, Domestic Abuse
   ii. Disorderly Conduct, Domestic Abuse

3. Jonathan Korte, Brown County, conviction for:

   i. Felony 2nd Degree Sexual Assault of Child

4. Michael Morin, Baltimore, Maryland, conviction for:

   i. Several charges and convictions of Assault in the 2nd degree
   ii. Order of protection granted against Morin on December 24, 2023

5. Timothy LaRose, Baltimore, Maryland, conviction for:

   i. Failure to return to & remain at scene of accident
   ii. 2019 arrested on felony fugitive warrant in Florida

16

6. Jesus Aguilera, Baltimore, Maryland, charges of:

      i. Possession with intent to deliver narcotics (non-marijuana)
    ii. Possession of a firearm during a drug trafficking crime

7. Alex Iten, Baltimore, Maryland:

      i. Two charges for assault

8. Laura Lolya, Brevard County, Florida, convictions for:

      i. DWI
    ii. Possession of Marijuana
   iii. May 10, 2024, DUI causing damage

9. Kelly Walker, Arizona, charges for:

      i. Fighting
    ii. Disorderly conduct
   iii. Breach of peace
   iv. Interference with an educational institution
    v. Refuse order to leave educational property
   vi. Walker failed to appear in court. It is believed, based upon the information found, that there is presently a warrant for her arrest.

10. Brittany Baker, North Carolina:

      i. Pending criminal charges in North Carolina from a January 30, 2024 DWI arrest.

11. Jason Zehe, Waukesha County:

      i. Pending OWI with PAC >=0.15 from April 4, 2024 (24-TR-1656)

12. Elvira Brooks, Milwaukee, conviction for:

      i. Child Abuse – Neglecting a Child, Found Guilty at Court Trial

13. Mark Harry Gabriel, Texas, Ohio, and Wisconsin, convictions for:

      i. Criminal Trespass, Fort Worth, Texas
    ii. Criminal Trespass, Cleveland, Ohio
   iii. Criminal Trespass, Dallas, Texas
   iv. Obstruction, Wisconsin

14. Eric Paige, Illinois, convictions for:

Exhibit B

R-29

<ol type="i">
<li>Resisting – Obstructing Officer</li>
<li>Unlawful Possession of Drug Paraphernalia</li>
<li>Reckless Conduct</li>
<li>Disorderly Conduct/Assault</li>
</ol>

(Mrioued Aff., ¶¶ 17-32.)

For the out-of-state felons, it is difficult to determine if all of them have completed their sentences. If these circulators had not completed the terms of their sentences, they would be prohibited from voting in Wisconsin, and thus prohibited from serving as circulators. As such, WEC should verify whether each of these individuals would be eligible to vote in Wisconsin, and thus eligible to serve as circulators. *See* Wis. Stat. § 9.10(2)(em)2.

This is especially important given the Recall Committee's stated concern that the first recall effort was "sabotaged" by criminals from out of state. Was Snorek aware that all of these individuals were circulating recall petitions? If not, how did they come to circulate petitions? Such questions provide a reasonable basis for WEC to conduct an evidentiary hearing.

### C. Once Again, Individuals Were Misled Prior to Signing the Recall

It is a felony for a circulator to fraudulently procure signatures by misrepresenting the nature of the recall petition. *See* Wis. Stat. § 8.40(2) (Circulator must attest that he "knows that [signers] signed the paper with full knowledge of its content."). Once again, the recall effort relied on false pretenses to obtain signatures. Three individuals were falsely told that the recall petition was a petition to prevent farmland from being sold to Communist China. (*See* Affidavits of Leann Pomeroy, Kent Schneider, and Jessica Rodriguez.)

There are likely additional signers who signed under false pretenses. The Vos campaign retained a communications firm, FLS Connect, that texted 2,927 individuals who may have signed the recall petition with the following: "Friends and neighbors of Robin Vos here. Our records

indicate that you may have signed a petition to recall Republican Robin Vos.  Because of reports of fraud, we are texting to confirm you are not a victim."  (Berkley Aff., ¶¶3-4.)  FLS asked recipients the following:

- Text 1 back to confirm you signed the petition.

- Text 2 back to confirm you signed this petition but were not aware of its purpose.  For example, some believed they were signing to save farmland or better fund education.

- Text 3 back to confirm you do not believe you signed this petition and you do not support a recall election.

(Id., ¶4.)  Between June 4 and June 5, FLS received 24 responses of "Text 2" and 24 responses of "Text 3."  (Id., ¶5.)

**D.      WEC Should Conduct an Evidentiary Hearing to Determine the Full Scope of Election Fraud Committed by Snorek and the Recall Committee**

This challenge has set forth a substantial amount of election fraud committed by the second recall effort.  However, given the tight statutory time constraints imposed for challenging the roughly 9,000 signatures, much work remains and many questions are left unanswered.  WEC should exercise its authority to order an evidentiary hearing.

"Any challenge to the sufficiency of a petition required to comply with s. 8.40, Stats., shall be made by verified complaint filed with the appropriate filing officer.  The form of the complaint, the filing of the complaint and the legal sufficiency of the complaint shall comply with the requirements of ch. EL 20; the procedure for resolving the complaint, including filing deadlines, shall be governed by this section and not by ch. EL 20."  Wis. Admin. Code EL § 2.11(2)(a).  "After the deadline for filing a response to a challenge, the filing officer shall decide the challenge with or without a hearing."  EL § 2.11(3).

Wisconsin Admin. Code EL § 20.06, which governs hearings, provides, in pertinent part:

R-31

(1) Before issuing a final decision or order on the merits of a complaint filed with the commission under this chapter, the commission or its administrator shall conduct an evidentiary hearing, under ch. 227, Stats., if either of the following occurs:

> (a) In the commission's judgment, a hearing is necessary in the interest of justice and a material question of fact exists.

> (b) A hearing is expressly required by statute.

(2) Before issuing a final decision or order on the merits of a complaint filed with the commission under this chapter, the commission or its administrator may conduct an evidentiary hearing, under ch. 227, Stats., when:

> (a) The commission concludes that facts exist which have not been presented and which may tend to resolve the dispute.

> (b) The commission, in its discretion, determines an evidentiary hearing is appropriate.

EL § 20.06 (1)-(2).  Because EL § 2.11(3) permits the filing officer to decide the challenge with or without a hearing, which ultimately pertains to the sufficiency of the verified complaint/challenge to the recall petition, EL § 20.06 gives WEC the authority to conduct an evidentiary hearing on a challenge to a recall petition.

At the April 11 hearing on the first recall petition, counsel for the recall committee raised concerns that the first recall had been "sabotaged" and "infiltrated" by "outsiders from New York and Florida," possibly "at the behest of Robin Vos or on his behalf."  Whether that assertion was based on evidence or was a fevered dream has not been determined.  But given the involvement of out-of-state criminals in the second recall effort, it seems plausible that the Recall Committee will again try and blame their own election fraud on Vos and his campaign.  Given the stakes and the allegations of fraud, an evidentiary hearing would be appropriate, where recall circulators could testify under oath and be subject to cross-examination.  *See Matter of Recall of Redner*, 153 Wis. 2d 383, 394 n.6, 450 N.W.2d 808 (Ct. App. 1989) ("One instance where it may be proper to hold an evidentiary hearing [in a recall challenge] is when significant fraud or misrepresentation is alleged by the challenger . . . .").

## **CONCLUSION**

For the reasons set forth herein, WEC should decline to certify the recall petition.

Dated at Waukesha, Wisconsin this 7th day of June, 2024.

CRAMER MULTHAUF LLP
Attorneys for Respondent, Robin Vos

BY: *Electronically signed by Matthew M. Fernholz*
Matthew M. Fernholz, SBN: 1065765
Janna L. Sorgatz, State Bar No. 1124583

CRAMER MULTHAUF LLP
1601 East Racine Avenue • Suite 200
P.O. Box 558
Waukesha, WI 53187-0558
(262) 542-4278
mmf@cmlawgroup.com
jls@cmlawgroup.com

21

Exhibit B

R-33

# **VERIFICATION**

I, Matthew M. Fernholz, being first duly sworn upon oath, state that I am counsel for Representative Robin Vos and I personally read the Verified Challenge to the Recall Petition, and that the information contained therein is true and correct based on my personal knowledge, or where not based upon personal knowledge, I believe the information to be true based upon information and belief. I reserve the right to supplement or change any information provided in the Verified Challenge to the Recall Petition based upon new information or evidence that becomes available to me.

_____
Matthew M. Fernholz
State Bar No. 1065765

Subscribed and sworn to before me
this 7th day of June, 2024

_____
Notary Public, State of Wisconsin
Commission expires: 04/30/2026