**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

_____

AMERICANS FOR CITIZEN
VOTING PAC,
        **Plaintiff,**

    **v.**                             **Case No. 26-CV-786**

MEAGAN WOLFE, et al.,
        **Defendants.**

_____

## ORDER

## I.    BACKGROUND

Wisconsin requires candidates seeking nomination for political office to collect a certain number of signatures to appear on the ballot. _See_ Wis. Admin. Code EL § 2.05. Signatures may be collected by a "qualified circulator." Until recently, a "qualified circulator" could be either a "qualified elector of this state" _or_ someone who would be a qualified elector "if he or she were a resident" of Wisconsin. 2005 Wisconsin Act 451. On March 27, 2026, Governor Tony Evers signed into law 2025 Wisconsin Act 126 ("Act 126"), which struck the latter clause. In other words, circulators in Wisconsin must now be eligible to vote in Wisconsin and, therefore, must be residents of the state of Wisconsin.[1]

Plaintiff Americans for Citizen Voting ("ACV"), a Political Action Group, sued the Administrator and Commissioners of the Wisconsin Elections Commission, all in their official capacities, claiming this law violates the First and Fourteenth Amendments.

_____

[1] This provision does not apply to nomination papers prepared for presidential and vice-presidential candidacies.

Specifically, ACV alleges that it "wants to support and associate with candidates for public office" that support its mission to "promote election integrity" by working with out of state-residents to collect nomination signatures. Compl. ¶¶ 11–14. Act 126's prohibition on doing so infringes on its First Amendment right to association, it says. ACV now moves for an emergency order temporarily restraining Act 126.

## II.     ANALYSIS

Courts generally apply the same framework in analyzing temporary restraining orders and preliminary injunctions. *Kinetec USA, Inc. v. Medenvision BV, et al.*, Case No. 26-cv-442, 2026 WL 1179960 at *1 (E.D. Wis. Apr. 30, 2026). To obtain a preliminary injunction, the plaintiff bears the burden of first demonstrating that (1) it would suffer irreparable harm absent the relief, (2) traditional legal remedies would be inadequate, and (3) it has some likelihood of prevailing on the merits of its claims. *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020). After such a showing is made, the court "proceeds to a balancing analysis," weighing the harm to the plaintiff of denying the temporary restraining order against the harm to the defendant of granting it. *Id*.

Candidates began collecting signatures for the November 2026 election on April 15, 2026, after Act 126 went into effect. The window to obtain the necessary number of signatures closes on June 1, 2026. ACV argues that, absent a temporary restraining order, it will be irreparably and permanently harmed because it will not be able to participate in circulation efforts for this election cycle. Indeed, "the loss of First Amendment freedoms . . . unquestionably constitutes irreparable injury." *Am. C.L. Union of Ill. v. Alvarez*, 679 F.3d 583, 589 (7th Cir. 2012) (internal citations omitted). Because

the alleged harm is the ability to participate in circulation for signatures, traditional legal remedies are clearly inadequate.

ACV avers that it has also sufficiently demonstrated a likelihood of success on the merits. Specifically, it points to a decision by the United States District Court for the Western District of Wisconsin invalidating a similar Wisconsin law over two decades ago. *Frami v. Ponto*, 255 F.Supp.2d 962 (W.D. Wis. 2003). That decision was based upon the Seventh Circuit's rejection of a nearly identical Illinois law. *Krislov v. Rednour*, 226 F.3d 851 (7th Cir. 2000). According to the ACV, these two cases alone are enough to conclusively establish that Act 126 violates the First Amendment and must therefore be struck down. Defendants, however, contend that those cases are distinguishable because the laws in question required circulators to be residents of and registered to vote in the political subdivision where candidates sought election, rather than merely residents of the state as a whole.

In any case, I need not decide this issue now because, even assuming ACV has demonstrated a likelihood of success, I find that the balance of equities weighs in favor of preserving the status quo. "An injunction is an equitable remedy, and such relief may be inequitable if it is issued shortly before an election, when candidates, election officials, and voters have relied on the rules in place at that time." *Malliotakis v. Williams*, 607 U.S. ---, 146 S.Ct. 809, 811 (2026) (Alito, J., concurring). The Supreme Court "has repeatedly stated that federal courts ordinarily should not enjoin a state's election laws in the period close to an election." *Merrill v. Milligan*, 142 S.Ct. 879, 880 (Kavanaugh, J., concurring).

The elections at issue in this case will not take place for many months. However, the process that ACV is challenging is ongoing. Defendants filed a sworn declaration by

3

Robert Kehoe, Deputy Administrator to the Wisconsin Elections Commission. ECF No. 15. In it, Kehoe explains that the circulation period for nominations for the 2026 fall elections has been underway for several weeks. Kehoe Decl. ¶ 15. Nomination papers including signatures must be received by June 1, 2026 or 72 hours after under certain circumstances. *Id.* ¶ 16. Challenges to nomination papers must be made by the third calendar day after the filing deadline, or June 4, 2026, to the respective state or county election officials. *Id.* ¶¶ 30–31. Those challenges must be decided by June 10, 2026. ¶ 34. Accordingly, we are in a tight timeframe, and I agree with Deputy Administrator Kehoe that changing the rules now could create significant confusion among circulators, candidates, people wishing to file challenges, and election administrators themselves.

ACV proposes deadline extensions to deal with the compressed timeline. But extending deadlines is unworkable. In addition to the deadlines above, ballots for the Partisan Primary Election must be printed and delivered to each municipal clerk in each county by June 24, 2026, who must then send absentee ballots. Kehoe Decl. ¶ 42. Some of those ballots must be sent abroad to military and overseas voters. *Id*. A change to one deadline would necessarily affect the others. The cascading effects would at a minimum be unwieldy if not much worse.

Furthermore, although the Act went into effect on March 27, 2026 ACV did not file this suit until April 29, 2026, over one month later and two weeks after the circulation period began. "[I]n election law cases as elsewhere," "a party requesting a preliminary injunction must generally show reasonable diligence." *Benisek v. Lamone*, 585 U.S. 155, 159 (2018). Unnecessary delays may be considered when a court balances the equities in determining whether to grant a preliminary injunction. *Id*. at 160.

My decision to preserve the status quo could be read as an invocation of the *Purcell* principle. *See Purcell v. Gonzalez*. 549 U.S. 1 (2006) (*per curiam*). ACV argues that cases affecting first amendment rights—particularly "[a]nti-speech laws" are not affected by *Purcell*. But this is not true. More than one district court has refused to issue a preliminary injunction based on the *Purcell* principle, despite finding that the contested laws implicate—and likely violate—First Amendment free speech principles. *See In re Georgia Senate Bill 202*, 622 F.Supp.3d 1312, 1342–1346 (N.D. Ga. 2022); *West v. Pa. Dep't of State*, 753 F.Supp.3d 424, 431 (W.D Pa. 2024).

Moreover, there is no reason to believe the *Purcell* principle applies differently when the election law impacts First Amendment speech rights rather than First Amendment voting rights or any other federal right. Election regulations "often will directly or otherwise burden core political speech and associational rights." *Buckley v. Am. Const. L. Found., Inc.*, 525 U.S. 182, 206 (Thomas, J., concurring). In fact, the Supreme Court has expressly recognized that although it is "the unusual case" for a court not to enjoin unconstitutional laws, "under certain circumstances, such as where an impending election is imminent and a State's election machinery is already in progress, equitable considerations might justify a court in withholding the granting of immediately effective relief." *Reynolds v. Sims*, 377 U.S. 533, 585 (1964).

ACV cites two cases arguing that that *Purcell* is applies only to laws affecting election "processes or machinery." *See Feldman v. Ariz. Sec'y of State's Off.*, 843 F.3d 366, 368 (9th Cir. 2016); *Am. Encore v. Fontes*, 152 F.4th 1097, 1121 (9th Cir. 2025). But the recent Supreme Court *Purcell* decisions I am bound by focus on the potential for "disruption" and "unanticipated and unfair consequences for candidate, political parties,

5

and voters, among others," not "processes or machinery." *Milligan*, 142 S. Ct. at 881; Feldman, 843 F.3d at 368.

To be clear, the *Purcell* principle is not a hard-and-fast rule. The Supreme Court has intimated that the *Purcell* principle might "be overcome" when

> (i) the underlying merits are entirely clearcut in favor of the plaintiff; (ii) the plaintiff would suffer irreparable harm absent the injunction; (iii) the plaintiff has not unduly delayed bringing the complaint to court; and (iv) the changes in question are at least feasible before the election without significant cost, confusion, or hardship.

*Milligan*, 142 S.Ct. at 881. ACV meets almost none of these factors. First, it is not clear that the underlying merits "are entirely clear cut." Defendants raise at least an arguable point that there is a significant distinction between the laws that were previously found unconstitutional in Wisconsin and Illinois and the one ACV challenges now. Second, I am concerned by plaintiff's timeline for bringing the suit. Finally, I have already explained why the proposed change would create significant confusion and hardship to the nomination process that is already in motion.

With that said, I am not issuing a ruling today on whether the law is, in fact, unconstitutional, and I reserve judgment on the issue. I only find that granting the temporary restraining order would go against the balance of equities. Nonetheless, I find that additional briefing is warranted to resolve the motion for a preliminary injunction. I will order a scheduling conference to discuss a full briefing schedule. The parties should also be prepared to discuss whether an evidentiary hearing is warranted.

### III. CONCLUSION

For the reasons stated, **IT IS ORDERED** that plaintiff's motion for a temporary restraining order (ECF No. 6) is **DENIED**.

6

**IT IS FURTHER ORDERED** that a telephonic scheduling conference is scheduled for **May 14, 2026, at 3:00 p.m.** The parties should be prepared to discuss what, if any, additional briefing is needed, a proposed schedule for such briefing, and the potential need for the Court to hold an evidentiary hearing. The parties may, but are not required to, submit a joint letter proposing a schedule by May 14, 2026, at 10:00 a.m. The parties shall call the Court's Zoom conference line at 669-254-5252 and use Meeting ID 161 8470 1401 and Passcode 187773 to join the call and may be placed on hold until the Court accesses the call. Parties should call in prior to the time that the hearing is scheduled to begin so that there is no disruption to the court proceeding. *The participation of the attorney who will be handling the case is required and their telephone number should be provided by email to AdelmanPO@wied.uscourts.gov.*

Dated at Milwaukee, Wisconsin, this 12th day of May, 2026.


s/Lynn Adelman_____
LYNN ADELMAN
United States District Judge

7