# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

AMERICANS FOR CITIZEN VOTING PAC,

    *Plaintiff,*

    v.

MEAGAN WOLFE, ANN S. JACOBS, MARK L. THOMSEN, CARRIE RIEPL, DON M. MILLIS, ROBERT F. SPINDELL, JR., *and,* MARGE BOSTELMANN, *in their official capacities as Wisconsin Elections Commissioners,*

    *Defendants.*

Case No. 2:26-cv-786

---

## THE WISCONSIN STATE LEGISLATURE'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO INTERVENE

---

## INTRODUCTION

The Wisconsin State Legislature ("Legislature") is entitled to intervene as a matter of right in this challenge to the validity of 2025 Wisconsin Act 126 ("Act 126") (codified at Wis. Stat. §§ 8.10(3), 8.15(4)(a), 8.20(3), 8.40(2), and 9.10(2)(em)2.), because the Legislature satisfies all four elements of Federal Rule of Civil Procedure 24(a)(2), as further developed in the legislative-intervention context by the Supreme Court in its recent decision of *Berger v. North Carolina State Conference of the NAACP*, 597 U.S. 179 (2022). As *Berger* held, States possess the "prerogative to select which agents may defend its laws and protect [these] interests" in federal court, 597 U.S. at 197, and, here, Wisconsin has "authorize[d] its [L]egislature to litigate on the

State's behalf," *id.* at 192 (citation modified), in federal court in the defense of the constitutionality of its laws, *see* Wis. Stat. § 803.09(2m); *see also id.* § 13.365. Accordingly, the Legislature has an interest in this action, sufficient for intervention, as the duly authorized "agent[ ]" of Wisconsin to defend State law in court. *Berger*, 597 U.S. at 197. The Legislature also has its own unique interest for purposes of intervention in defending its own constitutional powers, including its power to enact laws generally, *see* Wis. Const. art. IV, § 1, and in the election context specifically, *see* Wis. Const. art. III, § 2; Wis. Const. art. XIII, § 12(7). Further, as *Berger* makes clear, no other party can adequately represent the Legislature's interests—including Defendants, who are individual members of the Wisconsin Elections Commission, sued in their official capacities (collectively, "WEC")—given Wisconsin's sovereign choice to "select" the Legislature as its "agent[ ]" to "defend it laws and protect its interest." *Berger*, 597 U.S. at 197–98; *accord Liebert v. WEC*, 345 F.R.D. 169, 172 (W.D. Wis. 2023) (granting the Legislature's motion to intervene in a case involving WEC as defendant). Alternatively, this Court should exercise its discretion to grant the Legislature permissive intervention under Rule 24(b), including to further the interests of federal-State comity and to recognize the "sovereign choice" of the "people of [Wisconsin]." *Berger*, 597 U.S. at 200.

Counsel for the Legislature has conferred with counsel for Plaintiff and counsel for WEC on this Motion. Counsel for Plaintiff has stated that it opposes the Legislature's Motion at this point but reserves the right to change that position after

seeing the Legislature's intervention filing. Counsel for WEC has stated that it opposes the Legislature's Motion.

This Court should grant the Legislature's Motion To Intervene.

**INTEREST OF PROPOSED INTERVENOR**

Plaintiff's lawsuit challenges a Wisconsin law that requires the circulators of nomination papers and recall petitions in Wisconsin to be "qualified [Wisconsin] electors"—which includes being a Wisconsin resident. *See* 2025 Wis. Act 126; Dkt.1-1 at 17.[1] This challenge directly implicates the Legislature's sovereign interests in two respects.

First, Plaintiff's lawsuit threatens the Legislature's interests in the enforcement of the requirement that circulators of nomination papers and recall petitions in Wisconsin be "qualified electors" and, thus, Wisconsin residents. As the Supreme Court stated in *Berger*, "States possess a legitimate interest in the continued enforce[ment] of [their] own statutes." 597 U.S. at 191 (citations omitted). Therefore, States "must be able to designate agents to represent [them] in federal court" to protect this interest "and may authorize [their] legislature[s] to litigate on the State's behalf, either generally or in a defined set of cases"—with that "choice belong[ing] to the sovereign State." *Id.* at 192 (internal quotations and citations omitted). Accordingly, where a lawsuit attacks the validity of a State's law and the State's duly authorized representative seeks to intervene in that lawsuit to defend that law, "federal courts should rarely question that [the] State's interests will be

---

[1] "Dkt." citation pincites are to the ECF-generated pagination in the document.

practically impaired or impeded if its duly authorized representatives are excluded from participating in [the] federal litigation challenging [the] state law." *Id.* at 191.

Consistent with *Berger*, Wisconsin law designates the Legislature—the body "vested" with the "legislative power" of the State, Wis. Const. art. IV, § 1—as an agent that may litigate on the State's behalf in defense of the State's interests in the validity of the State's laws, *see Berger*, 597 U.S. at 191–92. Section 803.09(2m) of the Wisconsin Statutes specifies that, "[w]hen a party to an action challenges . . . the constitutionality of a statute, facially or as applied . . . *the legislature* may intervene as set forth under [Section] 13.365." Wis. Stat. § 803.09(2m) (emphasis added); *see Berger*, 597 U.S. at 191–92. The Wisconsin Supreme Court specifically addressed the Legislature's intervention in federal court in a certified question from the Seventh Circuit, interpreting Section 803.09(2m) and determining that the Legislature is permitted to intervene where, like here, a party "otherwise challenges the . . . validity of a statute, as part of a claim or affirmative defense." *Democratic Nat'l Comm. v. Bostelmann*, 949 N.W.2d 423, 426 (Wis. 2020) (quoting Wis. Stat. § 803.09(2m)); *see Berger*, 597 U.S. at 191–92. After the Wisconsin Supreme Court provided that answer to the certified question, the Seventh Circuit granted the Legislature's intervention to defend the challenged Wisconsin laws in the case before it. *See Democratic Nat'l Comm. v. Bostelmann*, 977 F.3d 639, 641 (7th Cir. 2020).

Second, Plaintiff's lawsuit also directly implicates the Legislature's interest in its own constitutional powers, which is an additional interest that is separate and distinct from the enforcement-of-state-law interest recognized most recently in

*Berger*.  *See Wis. Legislature v. Palm*, 942 N.W.2d 900, 908 (Wis. 2020); *Serv. Emps. Int'l Union, Loc. 1 ("SEIU") v. Vos*, 946 N.W.2d 35, 54–57 (Wis. 2020), *overruled in part on other grounds by Evers v. Marklein*, 22 N.W.3d 789 (Wis. 2025).  Wisconsin's Constitution vests the legislative power in the Legislature, which may "[e]nact . . . laws."  Wis. Const. art. IV, § 17.  This legislative power extends to the power to pass election laws specifically.  *See* Wis. Const. art. III, § 2, *see also* 2025 Wis. Act 126, Wis. Stat. § 8.15(4)(a); Wis. Const. art. XII, § 12(7).  Thus, it is a "rule" "that legislation on the subject of elections is within the constitutional power of the legislature."  *League of Women Voters of Wis. Educ. Network, Inc. v. Walker*, 834 N.W.2d 393, 412 (Wis. Ct. App. 2013) (citation omitted).  For this reason, the Legislature has a core interest in defending against claims, such as Plaintiff's claims here, that threaten to undermine the efficacy and integrity of the Legislature's constitutional authority to enact laws governing the parameters of the nomination-petition and recall processes.  *See Palm*, 942 N.W.2d at 908.

STATEMENT

### A.    Legal Background

The Legislature has enacted multiple statutory provisions governing the process for nominating candidates for elective office in the State and determining how they may obtain access to the ballot.  *See generally* Wis. Stat. §§ 8.01 *et seq.*  As WEC[2] has explained, these statutory provisions require candidates to, among other things,

---

[2] Wis. Stat. § 8.07 charges WEC with the duty to "promulgate rules under this chapter for use by election officials in determining the validity of nomination papers and signatures thereon."

submit "four primary documents" by a set deadline prior to an election in order "to gain a place on the ballot." *See* WEC, *Candidate Ballot Access Procedures: Nomination Papers* at 3 (Oct. 2023);[3] Wis. Stat. §§ 8.15, 8.16.

As particularly relevant here, the documents that a candidate must submit to obtain access to the ballot include nomination papers, which a candidate completes by "circulat[ing] signature petitions and collect[ing] a specific number of signatures, as required by law, from qualified electors residing in the jurisdiction or district [the candidates] wish to serve." WEC, *Candidate Ballot Access Procedures*, *supra*, at 3; *see* Wis. Stat. §§ 8.15, 8.16. The minimum number of required signatures for nomination papers varies from 200 to 4,000, depending on the level of office for which a candidate is seeking to run (*i.e.*, municipal, State, or federal, and district-specific or statewide). *See* Wis. Stat. §§ 8.15, 8.16. The period of circulation to collect those signatures spans either from December 1 to the first Tuesday in January, for spring elections, or from April 15 to June 1, for fall elections. *See* WEC, *Candidate Ballot Access Procedures, supra*, at 3–4 (citing Wis. Stat. §§ 8.10(2), (3), 8.15(6)). The qualified electors who sign a candidate's nomination papers must "complete their portion of the nomination papers by providing their signature, printed name, residential address, municipality of residence, and the date on which they signed." *Id.* at 6. The "circulator"—"the person responsible for [the nomination papers'] circulation"—must "closely observe the signing process to ensure that each elector

---

[3] Available at https://elections.wi.gov/sites/default/files/documents/Ballot%20Access%20Manual%20Oct%202023.pdf. (all webpages last accessed May 13, 2026).

correctly provides all required information," must personally circulate the papers, must personally witness each qualified elector's signature, and must sign and "complete a certification for each page they circulate." *Id.* at 6–7; *see* Wis. Stat. § 8.15(4)(a). The circulator's certification requires the circulator to provide his or her name; address (including the street number, street name, and municipality); the date on which the page was completed; and signature. WEC, *Candidate Ballot Access Procedures*, *supra*, at 6.

Candidates do not have to circulate their own nomination papers themselves; instead, they may use a "qualified circulator" to collect signatures on their behalf. *See id.* at 6–7; Wis. Stat. § 8.15(4)(a). In 2001, the Legislature had enacted the prior version of Wis. Stat. § 8.15(4)(a) to provide that a "qualified circulator" of a nomination paper must "reside[ ] within the district which the candidate named therein will represent, if elected" and must be either "the candidate or any qualified elector." Wis. Stat. § 8.15(4)(a) (2001). In 2003, the U.S. District Court for the Western District of Wisconsin held that the version of Wis. Stat. § 8.15(4)(a) at issue there violated the First Amendment "to the extent it prevents Wisconsin residents from circulating nomination papers outside the political subdivision in which they reside and to the extent it prevents persons who reside outside of Wisconsin from circulating nomination papers on behalf of Wisconsin candidates." *Frami v. Ponto*, 255 F. Supp. 2d 962, 971 (W.D. Wis. 2003). The Legislature then amended Wis. Stat. § 8.15(4)(a) (2001) with 2005 Wisconsin Act 451, "remov[ing] the residency requirement by providing that a circulator of a nomination paper or petition must be

a qualified elector of this state or a U.S. citizen age 18 or over who, if he or she were a resident of the state, would not [otherwise] be disqualified from voting." 2005 Wis. Act 451.

Following this change in the law, Wisconsin experienced increased fraud with circulators, particularly circulators who were out-of-state residents. In 2024, Wisconsin experienced out-of-state election fraud during a recent recall attempt of Wisconsin Assembly Speaker Robin Vos. Dkt.15 at ¶¶ 46–50. During that recall attempt, "[r]oughly two-thirds of the individuals who circulated recall petitions were from out of state," and these collection efforts yielded "allegedly forged signatures" and "duplicate and questionable signatures." Rep. Jim Piwowarczyk, *Testimony Before The Assembly Comm. On Campaign And Elections* (June 3, 2025).[4] WEC received a verified complaint related to that recall attempt and ultimately found probable cause that multiple out-of-state circulators had falsified signatures on the recall petitions they had circulated or falsified their residential addresses. WEC referred the matter for criminal prosecution in early 2026. WEC, *Letter Re: Robin Vos v. Matthew Snorek et al (EL-2450)* (Feb. 27, 2026);[5] *see also* Dkt.15-3.

This prompted the Legislature to again amend Wisconsin's circulator-qualification law, now to its current form, in 2026 with Act 126. Act 126 amends

---

[4] Available at https://docs.legis.wisconsin.gov/misc/lc/hearing_testimony_and_ materials/2025/ab223/ab0223_2025_06_03.pdf.

[5] *See* J.R. Ross, Elections Commission Recommends Charges Against 13 Involved In Failed Vos Recall, State Affairs, (Feb. 27, 2026), available at https://pro.stateaffairs.com/wi/news/elections-commission-recommends-charges-against-13-involved-in-failed-vos-recall (linking to letter).

several statutory provisions governing the candidate-nomination process to now require any qualified circulator to be "a qualified elector of this state," *see* 2025 Wis. Act 126; Wis. Stat. §§ 8.10(3), 8.15(4)(a), 8.20(3), and to certify as such with a certificate attached to any nomination paper that the circulator is submitting, Wis. Stat. §§ 8.10(3), 8.15(4)(a), 8.20(3). Under existing Wisconsin law, a "qualified elector" is any "U.S. citizen age 18 or older who has resided in an election district or ward for 28 consecutive days before any election where the citizen offers to vote." Wis. Stat. § 6.02(1). To be "qualified elector," an individual need not actually be registered to vote. *See id.*; *Frami*, 255 F. Supp. 2d at 965. Act 126 extends its requirements to circulators of "a recall petition" as well, Wis. Stat. §§ 8.40(2)(a)–(b); Wis. Stat. § 9.10, but does not apply to circulators of other petitions, such as recount petitions, *see* Wis. Stat. § 9.01; 2025 Wis. Act 126. Act 126 also does not apply to circulators of nomination papers "for candidates for the offices of president and vice president." Wis. Stat. § 8.20(3); 2025 Wis. Act 126. Finally, any nomination papers submitted by a "[non-]qualified elector" for applicable nominations or petitions is deemed invalid. *Id.* § 9.10(2)(em)2. Act 126 was published on March 28, 2026, *see* 2025 Wis. Act 126,[6] and took effect on March 29, 2026, Act Memo, Wis. Legislative Counsel (Mar. 30, 2026).[7]

---

[6] Available at https://docs.legis.wisconsin.gov/2025/related/acts/126.

[7] Available at https://docs.legis.wisconsin.gov/2025/related/lcactmemo/act126.pdf.

### B. Factual And Procedural Background

Wisconsin has a partisan primary election on August 11, 2026, and a general election on November 3, 2026. *See* Dkt.15 at 3. The period for circulators to obtain nomination signatures on behalf of candidates seeking to gain access to the ballots for these elections began on April 15, 2026, and will end on June 1, 2026. *See id.* at 4; *see also* Wis. Admin. Code EL § 2.05. Given Act 126's March 29, 2026 effective date, Act 126's definition of a "qualified circulator" applies to the circulators for the current, ongoing circulation period. *See* 2025 Wis. Act 126.

On April 29, 2026—during the current circulation period—Plaintiff filed its Complaint in the Wisconsin Circuit Court for Waukesha County, challenging Act 126 as a violation of the First Amendment (as incorporated against the States by the Fourteenth Amendment). Dkt.1-1 at 10–18. Plaintiff named as defendants WEC's Administrator and Commissioners, in their official capacities. *See id.* Plaintiff's Complaint alleges that Plaintiff "wants to work with out-of-state residents seeking to collect nomination signatures in Wisconsin," but that it is unable to do so because of Act 126. *Id.* at 12. Accordingly, Plaintiff claims, Act 126's "residency requirements" for circulators violate the First Amendment by "unlawfully restrict[ing] core political speech and associational rights." *Id.* at 11. Plaintiff's Complaint requests "immediate temporary relief" *id.* at 12, as well as permanent relief, declaring Act 126's residency requirements unconstitutional and enjoining Defendants from enforcing those requirements, *id.* at 17–18. On May 4, 2026, Defendants filed a Notice Of Removal, removing the case to this Court. Dkt.1. Then, on the same day, Plaintiff filed a Motion For Temporary Restraining Order and a Motion For

Preliminary Injunction. Dkt.6. On May 8, 2026—the deadline this Court had set for responses to Plaintiff's request for a temporary restraining order, Dkt.8—the Legislature filed a letter with the Court disclosing its intent to intervene and asking the Court to deny Plaintiff's request for a temporary restraining order and instead set an appropriate briefing schedule on Plaintiff's preliminary-injunction request, Dkt.13. Also on May 8, 2026, Defendants filed their Opposition To Plaintiff's Motion For Temporary Restraining Order Or Preliminary Injunction. Dkts.14, 15.

On May 12, 2026, the Court denied Plaintiff's Motion For Temporary Restraining Order, and scheduled a status conference on May 14, 2026 to determine the briefing schedule for Plaintiff's Motion For Preliminary Injunction. Dkt.17.

ARGUMENT

## I. The Legislature Is Entitled To Intervene As A Matter Of Right Under Rule 24(a)(2)

Federal Rule of Civil Procedure 24(a)(2) provides that, "[o]n timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Rule 24(a)(2) contains four elements for intervention as of right: "(1) the motion is timely; (2) the moving party has an interest relating to the property or transaction at issue in the litigation"; "(3) that interest may, as a practical matter, be impaired or impeded by disposition of the case"; and (4) the "existing parties" do not "adequately represent [the moving parties'] interests." *Driftless Area Land*

*Conservancy v. Huebsch*, 969 F.3d 742, 746 (7th Cir. 2020).  The Legislature satisfies all these elements here.

1.  *The Legislature's Motion Is Timely*.  Courts "look to four considerations" when "evaluating [the] timeliness" of a motion to intervene: "(1) the length of time the intervenor knew or should have known of his interest in the case; (2) the prejudice caused to the original parties by the delay; (3) the prejudice to the intervenor if the motion is denied; and (4) any other unusual circumstances."  *Cook Cnty. v. Texas*, 37 F.4th 1335, 1341 (7th Cir. 2022), *cert. denied*, 143 S. Ct. 565 (2023).  The "most important consideration in deciding whether a motion for intervention is untimely is whether the delay in moving for intervention will prejudice the existing parties to the case."  *Lopez-Aguilar v. Marion Cnty. Sheriff's Dep't*, 924 F.3d 375, 389–90 (7th Cir. 2019) (citation omitted).  The Legislature's Motion is timely because the Legislature "move[d] promptly to intervene as soon as it kn[ew] . . . that its interests might be adversely affected" by this litigation and less than a month after Plaintiff filed its Complaint, with this lawsuit still in its early stages and with no responsive pleadings on file.  *Cook Cnty.*, 37 F.4th at 1341 (citation omitted).  Federal courts have held that similarly timed intervention motions were timely.  *See, e.g., Taylor v. Milwaukee Election Comm'n*, No.2:20cv545, 2020 U.S. Dist. LEXIS 83267, at *2–3  (E.D. Wis. May 12, 2020); *Hunter v. Bostelmann*, No.21-cv-512, 2021 WL 4592659, at *3 (W.D. Wis. Oct. 6, 2021) (five weeks); *Edwards v. Vos*, No.20-cv-340, 2020 WL 6741325, at *1 (W.D. Wis. June 23, 2020) (eight weeks); *Donald J. Trump for President, Inc. v. Northland Television, LLC*, No. 20-cv-385, 2020 WL 3425133, at *1

(W.D. Wis. June 23, 2020) (eight weeks); *Lac Courte Oreilles Band of Lake Superior Chippewa Indians of Wis. v. United States*, No.02-C-0553-C, 2002 WL 32350046, at *2 (W.D. Wis. Nov. 20, 2002) (more than two months). No party could plausibly claim prejudice from this Court granting the Legislature's intervention, whereas the Legislature itself would be substantially prejudiced if this Court were to exclude it as a party in light of its significant interests at stake.

2. *The Legislature Has An Interest In This Litigation.* Under Rule 24(a)(2), a proposed intervenor must "claim[ ] an interest relating to the property or transaction that is the subject of the action[.]" *Berger*, 597 U.S. at 190 (citation omitted). This interest must "be direct, significant, and legally protectable," but the Seventh Circuit has "interpreted statements of the Supreme Court as encouraging liberality in the definition of an interest." *Lopez-Aguilar*, 924 F.3d at 391–92 (citations omitted). The Seventh Circuit has interpreted "the term 'interest' [ ] to be broadly construed" in favor of intervention. *Meridian Homes Corp. v. Nicholas W. Prassas & Co.*, 683 F.2d 201, 204 (7th Cir. 1982).

The Legislature here possesses two independently sufficient interests justifying its intervention as of right.

First, as the Supreme Court stated in *Berger*, States have "a legitimate interest in the continued enforce[ment] of [their] own statutes," 597 U.S. at 191 (citations omitted), and thus "a strong interest" in litigation "seek[ing] to attack a state law on the ground that it is inconsistent with the Federal Constitution," *id.* at 184. States may empower "duly authorized representatives" to "participat[e] in federal litigation

challenging state law" to protect that interest—"either generally or in a defined set of cases"—as determined by "the sovereign State." *Id.* at 191–92 (citations omitted). And, highlighting the importance of this interest, the Supreme Court has directed federal courts to "rarely question that a State's interests will be practically impaired or impeded if its duly authorized representatives are excluded from participating in federal litigation challenging [a] state law." *Id.* at 191.

Here, Plaintiff seeks an order declaring that Wisconsin's "qualified elector" residency requirement for circulators violates federal law, *supra* pp.5–11, which implicates Wisconsin's "strong" sovereign interest in the "continued enforceability of [its] own statutes"—including, as directly relevant here, the processes for candidate nominations and recall petitions, *Berger*, 597 U.S. at 184 (citation omitted); *see Hollingsworth v. Perry*, 570 U.S. 693, 709–10 (2013) (citation omitted); *Lopez-Aguilar*, 924 F.3d at 392. Wisconsin, like all States, possesses the "prerogative to select which agents may defend its laws and protect [these] interests," *Berger*, 597 U.S. at 197, and Sections 13.365 and 803.09(2m) demonstrate Wisconsin's sovereign choice to "authorize *its legislature* to litigate on the State's behalf" to defend the State's interests in State law. *Id.* at 192–93 (emphasis added) (citation omitted). So, "[w]hen a party to an action challenges . . . the constitutionality of a statute, facially or as applied . . . *the legislature* may intervene as set forth under [Section] 13.365." Wis. Stat. § 803.09(2m) (emphasis added). Thus, the Legislature unquestionably has an interest here, sufficient for mandatory intervention. *Berger*, 597 U.S. at 191–93; *see Bostelmann*, 949 N.W.2d at 426–28; *accord Bostelmann*, 977 F.3d at 641.

Second, the Legislature also has an independent interest in defending the efficacy and integrity of its own constitutional authority to make laws for the State of Wisconsin, *see Palm*, 942 N.W.2d at 908—which is the "authority over a State's most fundamental political processes," *Berger*, 597 U.S. at 192 (quoting *Alden v. Maine*, 527 U.S. 706, 751 (1999)). The Wisconsin Constitution vests the legislative power in the Legislature, which may "[e]nact[ ] . . . laws", Wis. Const. art. IV, § 17, including election laws, *see* Wis. Const. art. III, § 2, *see also* Wis. Const. art. XIII, § 12(7); 2025 Wis. Act 126; Wis. Stat. 8.15(4)(a); *Walker*, 834 N.W.2d at 412. In particular, the Wisconsin Constitution provides that the Legislature "may" enact laws for "suffrage," Wis. Const. art. III, § 2, and the Legislature exercised that power in enacting Act 126's "qualified elector" requirements for the circulators of nomination papers and recall petitions, *see* 2025 Wis. Act 126; *accord Eu v. S.F. Cnty. Democratic Cent. Comm.*, 489 U.S. 214, 231 (1989); *Crawford v. Marion Cnty. Election Bd.,* 553 U.S. 181, 196 (2008) (controlling plurality of Stevens, J.). Further, the Legislature has a particular interest here because the nomination-paper and recall-petition processes that Plaintiff challenges relate directly to the composition of the legislative body itself. *Accord Powell v. McCormack*, 395 U.S. 486, 548 (1969) ("Unquestionably, Congress has an interest in preserving its institutional integrity"). Plaintiff claims that Act 126's requirement that circulators be qualified Wisconsin electors and thus reside in Wisconsin violates federal law and, therefore, is unenforceable in Wisconsin for purposes of circulating nomination papers and recall petitions. *Supra* pp.10–11. That challenge directly implicates the Legislature's

strong interest in defending the effective use of its own constitutional powers, *see Palm*, 942 N.W.2d at 908, including especially its authority to enact laws governing "suffrage," Wis. Const. art. III, § 2.

3. *This Lawsuit Directly Impairs The Legislature's Interests*. The third element of intervention as of right under Rule 24(a)(2) is that the action "is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest." *Berger*, 597 U.S. at 190 (citation omitted). In this case, granting Plaintiff's request to invalidate Act 126's "qualified elector" residency requirement for circulators would directly impair both of the Legislature's interests, as noted above. Again, Wisconsin has a sovereign interest in defending the constitutionality of its own election laws, *Berger*, 597 U.S. at 190–91, and the State has designated the Legislature as its agent to defend this interest on behalf of the State in federal court, under *Berger*, *see* Wis. Stat. §§ 13.365, 803.09(2m); *supra* pp.3–5. Plaintiff's lawsuit here, if successful, would directly impair that interest by prohibiting the enforcement of Act 126's "qualified elector" residency requirement for circulators altogether. *See Berger*, 597 U.S. at 190–91; *accord Lopez-Aguilar*, 924 F.3d at 385. And, if Plaintiff were successful here, this would also impair the Legislature's interest in the efficacy and integrity of its own constitutional power to enact procedures governing the State's election-nomination and recall-petition processes for the same reason, as any relief for Plaintiff on its claim would thwart those powers. *See* Wis. Const. art. III, § 2.

4. *No Other Party Adequately Represents The Legislature's Interest*. The last requirement for intervention as of right under Rule 24(a)(2) is that no "existing defendant already 'adequately represent[s]' the same interests a proposed intervenor seeks to vindicate." *Berger*, 597 U.S. at 195 (citation omitted). Where a proposed intervenor's interest is "similar to, but not identical with, that of one of the parties," the proposed intervenor's burden in establishing that its interests are not adequately represented "should be treated as minimal," as the possession of similar interests alone "normally is not enough to trigger a presumption of adequate representation." *Id.* at 196–97 (citation omitted); *see Driftless Area Land Conservancy*, 969 F.3d at 748 ("[I]t's not enough that a defense-side intervenor 'shares the same goal' as the defendant in the brute sense that they both want the case dismissed."). The "rais[ing]" of "[d]ifferent defenses," for example—even where all parties are "mount[ing] a vigorous defense"—satisfies that minimal burden. *Driftless*, 969 F.3d at 749. Further, State entities often "may pursue 'related' state interests" in litigation without being "fairly presumed to bear 'identical' ones." *Berger*, 597 U.S. at 197 (quoting *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 (1972)). Therefore, "a presumption of adequate representation is inappropriate when a duly authorized state agent seeks to intervene to defend a state law," and it is "*especially* inappropriate when wielded to displace a State's prerogative to select which agents may defend its laws and protect its interests." *Id.* at 197. Ultimately, "a State's chosen representatives should be greeted in federal court with respect, not adverse presumptions," and "duly designated state agents seeking to vindicate state law"

should only face "a 'minimal' burden" to establish inadequacy of representation rather than "some higher hurdle." *Id.* at 197–98.

Here, the Legislature exceeds its "'minimal' burden" to show that the existing parties do not adequately represent its interests—which "'minimal' burden" applies because the Legislature is one of Wisconsin's "duly designated state agents seeking to vindicate state law," *id.* at 198, and because its interests are "similar to, but not identical with, that of [Defendant WEC]," *id.* at 197 (citation omitted). As an initial matter, Plaintiff is obviously adverse to the Legislature's interests, in that it seeks to invalidate Act 126's "qualified elector" residency requirement for circulators, duly enacted by the Legislature pursuant to its State constitutional authority. *Supra* pp.3–5. Thus, Plaintiff cannot possibly represent the Legislature's interests.

Defendants—WEC's Administrator and its Commissioners—do not adequately represent the Legislature's interests either.

Under *Berger*, States have a sovereign right to choose their representatives in federal court, and any presumption of adequacy of *other* parties in the litigation is inappropriate. *See* 597 U.S. at 195–97. Here, Wisconsin has chosen the Legislature as its agent, Wis. Stat. § 803.09(2m), so this Court should respect that choice by granting the Legislature's intervention, regardless of WEC's own advocacy in this case. *See Berger*, 597 U.S. at 197–98. The Legislature has its own "tactical choice[s]" that "give voice to [its] different perspective" on the State's behalf, meaning that WEC's representation is not adequate to protect the Legislature's own interests. *Berger*, 597 U.S. at 198–99 ("[T]his litigation illustrates how divided state

governments sometimes warrant participation by multiple state officials in federal court."); *accord Driftless*, 969 F.3d at 748 ("[I]t's not enough that a defense-side intervenor 'shares the same goal' as the defendant in the brute sense that they both want the case dismissed.").

While *Berger*'s binding holding alone decides the adequacy-of-representation issue in favor of the Legislature's intervention as of right, the Legislature also satisfies the adequacy-of-representation element because WEC's representation is inadequate even beyond *Berger*'s minimal threshold. Most directly, the Legislature intends to "raise[ ]" "[d]ifferent defenses" here than WEC, which alone demonstrates WEC's inadequacy vis-à-vis the Legislature—without casting any doubt on whether WEC intends to "mount [its own] vigorous defense." *Driftless*, 969 F.3d at 749. Specifically, the Legislature intends to argue that the Seventh Circuit's recent decision in *Luft v. Evers*, 963 F.3d 665 (7th Cir. 2020), supplies the controlling articulation of the *Anderson/Burdick* framework applicable to Plaintiff's claim here. *Luft* requires "weigh[ing]" an alleged burden from an election law "against the state's interests" in the law and the burdens of "the whole electoral system." 963 F.3d at 671–72. Further, *Luft* holds that a State can "offset" the "more stringent" burdens from one election law with more "liberal" features of others. *Id.* at 671. So, to decide Plaintiff's claim here under *Luft*, the Court must consider Plaintiff's alleged burdens from Act 126 against Wisconsin's significant election-integrity interests in that provision and all of the more permissive features of Wisconsin's nomination-paper-circulation process—such as the reasonable number of signatures required, Wis. Stat.

§§ 8.15, 8.16, and the lack of a requirement that a circulator actually be registered to vote, *see id.* § 6.02(1); *Frami*, 255 F. Supp. 2d at 965. WEC, for its part, has not raised this *Luft*-based argument, as evidenced by its already filed Brief In Opposition To Motion For Temporary Restraining Order Or Preliminary Injunction. Dkt.14 (failing to cite *Luft*). Instead, WEC rests its defense largely upon pre-*Luft* decisions, such as *Krislov v. Rednour*, 226 F.3d 851 (7th Cir. 2000). *See* Dkt.14 at 10–28. That "[d]ifferent defenses have been raised" by WEC and the Legislature also decides the adequacy-of-representation element in the Legislature's favor. *Driftless*, 969 F.3d at 749.

The presence of different defenses raised by the WEC and the Legislature was key to Judge Peterson's grant of intervention as of right to the Legislature in *Liebert v. WEC*, 345 F.R.D. 169 (W.D. Wis. 2023). There, Judge Peterson explained that "[t]he legislature"—as proposed-intervenor-defendant—"identifi[ed] several issues it wishe[d] to raise that [WEC] ha[d] not raised." *Id.* at 172. Those "different issues raised by the legislature" demonstrated that WEC's representation of the Legislature's interest may be inadequate there, "just as in *Driftless*." *Id.*[8]

Finally, while also not necessary to decide the adequacy-of-representation element in the Legislature's favor, the Legislature respectfully notes that WEC has an inconsistent history of defending Wisconsin's election laws when named as a

---

[8] Judge Peterson also concluded in *Liebert* that, regardless of the intervention-as-of-right analysis, the Legislature deserves "permissive intervention . . . under Rule 24(b)" because the "other parties"—including WEC—"will [not] be unfairly prejudiced by the legislature's presence" and there were "significant differences" between the Legislature's and WEC's arguments. 345 F.R.D. at 172.

defendant in lawsuits challenging such laws. Sometimes WEC does not defend challenged election laws at all. For example, in cases challenging the validity of Wisconsin's redistricting maps, WEC has declined to defend those maps in any respect. *See, e.g.*, *Bothfeld v. WEC*, 27 N.W.3d 508 (Wis. 2025) (noting that WEC filed a statement of no position in response to a redistricting challenge). And in *Democratic National Committee v. Bostelmann*, No.3:20-cv-00249 (W.D. Wis. 2020), WEC declined to defend Wisconsin's challenged photo-ID law, disclosing without explanation that it was "unable to state a position on [the] issue," Defs' Resp. To Mot. For Preliminary Injunction & Reconsideration, *Democratic Nat'l Comm. v. Bostelmann*, No.3:20-cv-00249, Dkt.48 at 16 (W.D. Wis. Mar. 30, 2020); *accord Bostelmann*, 977 F.3d 639, 643–44 (7th Cir. 2020) (Rovner, J., dissenting) (noting that WEC "acceded" to parts of the district court's "injunction"). Other times, WEC does defend the challenged election laws at the trial court, but then does not pursue meritorious appeals. *See Disability Rts. Wis. v. WEC*, 20 N.W.3d 790, 793 (Wis. Ct. App. 2025) (successful preliminary-injunction appeal involving only the Legislature as intervenor, although WEC had participated below); *Rise, Inc. v. WEC*, 11 N.W.3d 241, 249 (Wis. Ct. App. 2024) (similar, with respect to partially successful summary-judgment appeal). The Legislature respectfully submits that WEC's inconsistent and inexplicable (or, at least, unexplained) practice in fully defending Wisconsin's election laws also shows that WEC's representation may be inadequate to protect the Legislature's interests here.

## II. Alternatively, This Court Should Grant The Legislature Permissive Intervention Under Rule 24(b)(1)(B)

If the Court disagrees that the Legislature can intervene as of right, then the Legislature respectfully requests that the Court exercise its discretion to grant permissive intervention under Rule 24(b)(1)(B), including when the Legislature "has . . . reserved to itself some authority to defend state law on behalf of the State." *Berger*, 597 U.S. at 194.

*First*, the Legislature satisfies the only two requirements for permissive intervention: the Legislature "timely" filed its intervention motion and "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1). As explained above, the Legislature's motion is timely. *Supra* pp.12–13. Further, the Legislature has filed an attached proposed Answer raising defenses to the claims in Plaintiff's Complaint and so "shares [a question of law] with the main action." Fed. R. Civ. P. 24(b)(1). The Legislature also intends to file an Opposition to Plaintiff's Motion For Preliminary Injunction according to whatever schedule this Court sets. *See* Dkt.17.

The Legislature also satisfies other applicable permissive-intervention factors as well. The district court has a "wholly discretionary" determination to consider other factors, *see Liebert*, 345 F.R.D. at 172, including factors such as federal-state comity and the State's choice in who will "defend its sovereign interests in federal court," *Berger*, 597 U.S. at 192–93 (citation omitted).

Here, the Legislature's intervention is essential for this Court to enjoy full adversarial briefing against an action seeking to set aside State election law, so as to

"avoid[ ] setting aside duly enacted state law based on an incomplete understanding of relevant state interests." *Berger*, at 192. As explained above, WEC is not required to defend robustly the State or the Legislature's interests in the continued enforceability of Wisconsin's election laws when facing a federal challenge, while the Legislature is the State's duly authorized representative to do so. *See supra* pp.17– 21. The Legislature also intends to invoke *Luft*, among other unique defenses, which WEC does not invoke. *See supra* pp.19–21. Thus, "[c]asting aspersions on no one," the Legislature alone will present a full, robust defense against Plaintiff's claims, reflective of its own "tactical choice[s]" that "give voice to [its] different perspective." *Berger*, 597 U.S. at 198–99; *accord Driftless*, 969 F.3d at 748.

*Second*, granting the Legislature intervention would advance the needs of "State . . . sovereign interests" by affording "[a]ppropriate respect" for the State's choice of its "duly authorized representatives . . . in federal litigation challenging state law." *Berger*, 597 U.S. at 191–92 (citation omitted). As *Berger* recognized, where, as here, a State has opted "to divide its sovereign authority among different officials and authorize their participation in a suit challenging state law, a full consideration of the State's practical interests may require the involvement of different voices with different perspectives." *Id.* at 195. Thus, the Court may not "presume a full overlap of interests when state law more nearly presumes the opposite," as this "would make little sense and do much violence to our system of cooperative federalism." *Id.* at 197.

*Third,* permitting the Legislature to intervene would pose no practical difficulties, but would, instead, allow for full adversarial litigation in this important case from State officials authorized by State law to defend the State's interests in Court. Indeed, "federal courts routinely handle cases involving multiple officials sometimes represented by different attorneys taking different positions," and the Legislature fully expects here that, "[w]hatever additional burdens adding the legislative leaders to this case may pose, those burdens [will] fall well within the bounds of everyday case management." *Id.* at 199–200 (citations omitted).

*Finally,* none of the existing parties "will be unfairly prejudiced by the legislature's presence." *Liebert,* 345 F.R.D. at 172. As noted above, the Legislature has sought to intervene in the earliest stages of this litigation, and it disclosed this intent to the Court and the parties even before filing this Motion, with its May 8, 2026, letter. *See* Dkt.13. Moreover, the Legislature will "cooperate with the existing parties and abide by [any] scheduling order." *Liebert,* 345 F.R.D. at 172.

## CONCLUSION

This Court should grant the Legislature's Motion to Intervene.


Dated: May 13, 2026.

Respectfully submitted,

/s/ *Misha Tseytlin*
MISHA TSEYTLIN
*Counsel of Record*
(State Bar No. 1102199)
KEVIN M. LEROY
(State Bar No. 1105053)
TROUTMAN PEPPER LOCKE LLP
111 S. Wacker Dr., Suite 4100
Chicago, IL 60606
(608) 999-1240 (MT)
(312) 759-1938 (KL)
(312) 443-0336 (fax)
misha.tseytlin@troutman.com
kevin.leroy@troutman.com

*Counsel for the Wisconsin State
Legislature*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 13th day of May, 2026 a true and accurate copy of the foregoing was served via the Court's CM/ECF system upon all counsel of record.

/s/ Misha Tseytlin
MISHA TSEYTLIN
TROUTMAN PEPPER LOCKE LLP
111 S. Wacker Dr., Suite 4100
Chicago, IL 60606
(608) 999-1240 (MT)
(312) 443-0336 (fax)
misha.tseytlin@troutman.com