IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

AMERICANS FOR CITIZEN VOTING PAC,

      Plaintiff,

    v.                                   Case No. 26-CV-0786

MEAGAN WOLFE, et al.,

      Defendants.

## DEFENDANTS' BRIEF IN OPPOSITION TO LEGISLATURE'S MOTION TO INTERVENE

JOSHUA L. KAUL
Attorney General of Wisconsin

CHARLOTTE GIBSON
Assistant Attorney General
State Bar #1038845

HANNAH S. JURSS
Assistant Attorney General
State Bar #1081221

Attorneys for Defendants

Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 957-5218 (Gibson)
(608) 266-8101 (Jurss)
charlie.gibson@wisdoj.gov
hannah.jurss@wisdoj.gov

## INTRODUCTION

Plaintiff Americans for Citizen Voting PAC seeks a declaration invalidating a Wisconsin elections law. Defendants are the Wisconsin Elections Commission Administrator, Meagan Wolfe, and the individual commissioners in their official capacities. They are represented by the Attorney General. The Wisconsin State Legislature moves to intervene, asserting interests in seeing laws upheld and its power to enact laws. This Court should deny the motion.

Under the Wisconsin constitution's separation of powers, the Legislature rarely has a constitutional role in representing the State in litigation. This case is not one of those rare exceptions. Intervention would allow the Legislature to intrude upon the execution of the law and veto the executive branch's choices— exactly what the Wisconsin Supreme Court has said in the past two terms that it may not do. Regardless of whether the Legislature invokes Rule 24(a)(2) or (b), intervention here would violate Wisconsin's constitution.

Beyond that constitutional failing, the Legislature also fails to satisfy Rule 24(a)(2)'s and (b)'s requirements: it fails to satisfy the second and fourth prongs of Rule 24(a)(2), and under Rule 24(b), its presence will only add delay and complexity to the case.

## BACKGROUND

This matter challenges elections laws enacted under 2025 Wis. Act 126, concerning qualifications for candidate petition circulators. The Legislature seeks to intervene as a defendant, arguing that it has an interest in seeing enacted laws upheld.

The Legislature's theory of "interest" stems from a statute passed during the Legislature's December 2018 "lame duck" session, held after the election of Governor Evers and Attorney General Kaul but before they took office. 2017 Wis. Act 369. Act 369 included a wide swath of new provisions; several sought to impose legislative "litigation control" over the executive branch's litigation and settlement of court actions. *Serv. Emps. Int'l Union, Loc. 1 v. Vos* ("*SEIU*"), 2020 WI 67, ¶¶ 3, 50–51, 393 Wis. 2d 38, 946 N.W.2d 35, *overruled in part on other grounds by Evers v. Marklein* ("*Evers II*"), 2025 WI 36, 417 Wis. 2d 453, 22 N.W.3d 789.

One form of litigation control involved legislative intervention; the Legislature had previously had only limited power to intervene in litigation involving the State. *SEIU*, 393 Wis. 2d 38, ¶ 51. Act 369 allowed the Legislature's Joint Committee on Legislative Organization to authorize the Legislature, or one house thereof, to intervene as the Legislature, Assembly, or Senate in certain circumstances. Wis. Stat. § 13.365(3). It also provided that, in the types of cases authorized by Wis. Stat. § 13.365(3), the assembly, the

senate, or the Legislature "may intervene . . . at any time in [an] action." Wis. Stat. § 803.09(2m); *see also* Wis. Stat. § 13.365(1)–(2) (allowing intervention by the assembly or senate). To pay outside counsel for that purpose, the Joint Committee has an unlimited, sum sufficient appropriation. Wis. Stat. § 13.365(1)–(2) (citing appropriation under Wis. Stat. § 20.765(1)(a), (b)).

After the law's passage, the Legislature intervened in a multitude of cases, particularly election-related cases. As of mid-2025, the Legislature had reportedly spent $25 million in taxpayer funds on private law firms to oppose executive orders, defend statutes including election provisions, and other similar matters.[1] This included almost $2 million in 2020 on involvement in election lawsuits against the Commission alone.[2] The top-paid firm has been the Legislature's counsel here, Troutman Pepper, which, according to recent publicly available data, has made $10.6 million representing the Legislature since 2017.[3]

---

[1] Francesca Pica, et al., *Wisconsin Legislature Spent $26.2 Million in Taxpayer Money on Private Attorneys Since 2017*, Milwaukee J. Sentinel (July 17, 2025), https://www.jsonline.com/story/news/politics/2025/07/17/gop-legislature-paid-millions-to-lawyers-on-gableman-maps-cases/84230957007/.

[2] Patrick Marley, *Republicans Spend Nearly $2 million in Taxpayer Money to Fight Election Lawsuits*, Milwaukee J. Sentinel (Oct. 15, 2020), https://www.jsonline.com/story/news/politics/2020/10/15/gop-spends-nearly-2-million-taxpayer-money-fight-election-suits/3654160001/.

[3] Pica, et al.*, supra* note 1.

3

After passage of Act 369, parties brought a series of cases challenging provisions in that Act and earlier laws on separation of powers grounds. Particularly in the last two terms, the resulting Wisconsin Supreme Court decisions have clarified Wisconsin's separation of powers doctrine as it applies to legislative incursions into the power of the executive branch.

## ARGUMENT

The Court should deny the Wisconsin Legislature's motion for intervention. Aside from the requirements of Rule 24, intervention would violate the Wisconsin Constitution: the Legislature cannot constitutionally intervene to defend an enacted law that the Attorney General and executive branch are defending. In its most recent two terms, the Wisconsin Supreme Court has made clear that (1) the Legislature cannot execute the law in lieu of the executive branch, and (2) handling litigation for the State is part of executing the law, a task entrusted to the executive branch.

Even aside from that constitutional failing, the Legislature fails the test for intervention under Rules 24(a)(2) and (b): it fails to satisfy the second and fourth prongs of Rule 24(a)(2), and for Rule 24(b), its presence will only add to the work and complexity of the case.

## I. Intervention by the Legislature would violate the Wisconsin Constitution's separation of powers.

The Legislature asserts that it has an interest in ensuring that a Wisconsin law is upheld (Dkt. 20:13–14) and is entitled to intervene

4

even though the Attorney General and Commission defendants are vigorously defending the case. It also claims it has an interest in its power in "enacting" laws, (Dkt. 20:15–16), although it doesn't articulate how a law's constitutionality under the First Amendment goes to a state legislature's power to enact a law. Neither of these interests implicates a constitutional role for the Legislature that entitles it to litigate this case.

Regardless of the intervention rule the Legislature proceeds under, intervention would violate Wisconsin's constitutional separation of powers because it would allow the Legislature to execute the law. As the Wisconsin Supreme Court recognized unanimously last year in *Kaul v. Legislature*, 2025 WI 23, 416 Wis. 2d 322, 21 N.W.3d 513, handling litigation is a predominately core power of the executive branch: the Legislature may not intrude unless the particular litigation implicates a constitutional role of the Legislature.

### A. Wisconsin's separation of powers divides governmental power among the three branches and allows the Legislature to make laws, not to execute them.

Like the U.S. Constitution, the Wisconsin Constitution divides governmental power among the three branches of government: the legislative, which makes the law; the executive, which executes the law; and the judiciary, which resolves disputes over what the law means. To preserve this balance of

power, the legislative branch's constitutional role ends when a bill becomes law; thereafter, the executive branch implements the enacted law.

### 1. The Wisconsin Constitution guards against the concentration of power in a single branch.

Wisconsin's separation of powers derives from three constitutional vesting clauses that divide the core powers of government among three branches. State administrative agencies (like the Commission) are "part of the executive branch" and carry out executive functions. *SEIU*, 393 Wis. 2d 38, ¶ 60; *see also* Wis. Stat. §§ 15.61 (creation of elections commission; part of subch. III ("Independent Agencies") of Wis. Stat. ch. 15 ("Structure of the Executive Branch"); 15.01(9) ("'Independent agency' means an administrative agency within the executive branch created under subch. III"); 15.02 ("independent agency" is a "principal administrative unit of the executive branch").

Separating these powers provides the "central bulwark of our liberty," *SEIU*, 393 Wis. 2d 38, ¶ 30, by guarding against the "concentration of governmental power" in a single branch. *Gabler v. Crime Victims Rights Bd.*, 2017 WI 67, ¶ 4, 376 Wis. 2d 147, 897 N.W.2d 384. Through this separation, the constitution "ensure[s] that each branch will act on its own behalf and free from improper influence by the others." *Id.* ¶ 32.

Because the legislative branch writes the laws, the separation of powers doctrine is especially wary of its stripping away power from co-equal branches through legislation. The legislative usurpation of executive power poses a particular danger because it results in the "same persons who have the power of making laws"—that is, legislators—"also [having] in their hands the power to execute them." *Id.* ¶ 5 (quoting John Locke, *The Second Treatise of Civil Government*, § 143 (1764)).

### 2. The legislative branch's power is to make laws, not to execute them.

The legislative branch "may not 'invest itself or its Members with either executive power or judicial power.'" *Metro. Wash. Airports Auth. v. Citizens for Abatement of Aircraft Noise, Inc.*, 501 U.S. 252, 274 (1991) (citation omitted). Policing this principle requires distinguishing between executive and legislative power. This task is "not always easy," *SEIU*, 393 Wis. 2d 38, ¶ 34, but some basic principles lie beyond debate.

Generally, "[l]egislative power, as distinguished from executive power, is the authority to make laws, but not to enforce them." *Koschkee v. Taylor*, 2019 WI 76, ¶ 11, 387 Wis. 2d 552, 929 N.W.2d 600 (citation omitted). More specifically, the Legislature has constitutional authority "to declare whether or not there shall be a law; to determine the general purpose or policy to be achieved by the law; and to fix the limits within which the law shall operate."

7

*Id.* (citations omitted). So, when the legislative branch wants to achieve a policy goal, it may enact statutes that empower the executive branch to administer a new program and tell the executive branch how to do so.

After the lawmaking process is complete, the baton passes to the executive branch to execute the law. *Evers v. Marklein* ("*Evers I*"), 2024 WI 31, ¶ 15, 412 Wis. 2d 525, 8 N.W.3d 395; *SEIU*, 393 Wis. 2d 38, ¶ 95. In *Evers I*, the Wisconsin Supreme Court emphasized that the "executive branch's role is to effectuate the policies passed by the legislature." 412 Wis. 2d 525, ¶ 15. When "executing the law, the executive branch must make decisions about how to enforce and effectuate the laws": to decide what the law requires and how to apply it. *Id.* ¶¶ 15−16.

*Evers I* struck down statutes giving the Legislature's Joint Committee on Finance the power to veto program decisions of the Department of Natural Resources because they allowed a legislative body to execute the law. The court held that the challenged statutes "effectively create a legislative veto," allowing the Legislature to

> interfere with and even override the executive branch's core power of executing the law . . . The review process ultimately permits the members of the JFC to serve as gatekeeper to the exercise of a core executive function. . . . This unfettered interference by the committee oversteps the boundaries of legislative authority by arrogating the executive branch's core power to choose which conservation projects best carry out the statutory purposes of the Program.

*Id.* ¶ 24. The court held that once the statutes are enacted, the Legislature may not "insert itself into the machinery of the executive branch in an attempt to control the executive branch's ability to carry out the law." *Id.* ¶ 23.

Because the power to execute the law is vested in the executive branch, only the executive branch may exercise it. Neither the Legislature nor the executive branch may "possess directly or indirectly, an overruling influence over the other in the administration of their respective powers." *Id.* ¶ 16 (citation omitted). If the Legislature wishes to influence how its laws are carried out, it may pass legislation.

It matters not that the Legislature believes that its choices are better than those the executive branch may make. Is "entirely irrelevant" whether "[t]he legislature may see itself as a benign gatekeeper." *SEIU*, 393 Wis. 2d 38, ¶ 107.

**B.      The defense of this litigation constitutes core executive power, implicating no legislative power.**

The Attorney General and Commission Defendants' defense of the law here constitutes core executive power. The Legislature has no constitutional role to defend the state's interest in litigation here, and so intervention would unconstitutionally interfere with the executive branch's exercise of its own power.

9

### 1. Litigating on behalf of the state is an executive power unless a specific constitutional role for the Legislature is impacted.

Last term, in *Kaul*, the Wisconsin Supreme Court applied the principles of *Evers I* to a constitutional challenge to a companion provision of the Act 369 intervention provision at issue here. The Attorney General sought a declaration that section 26 of Act 369, which required the Department to obtain permission to settle all plaintiff's-side civil actions, violated the separation of powers as to two broad categories of cases: civil enforcement violations and executive agency administration actions. *See Kaul*, 416 Wis. 2d 322, ¶¶ 1–3. The supreme court agreed.

*Kaul* emphasized that "[l]itigation on behalf of the state is chiefly a core executive function." *Id.* ¶ 27. And where the Legislature empowers the Department to represent the state in particular claims, "it necessarily confers discretion on how to pursue the claims to completion, through settlement or otherwise." *Id.* ¶ 23. The court held that conducting litigation is not a core executive power only where a constitutional power of the Legislature is implicated. *Id.* ¶ 28. The *Kaul* court rejected the Legislature's suggestion that representing the state in litigation is a shared power between the executive and legislative branches. *Id.* ¶¶ 26–27.

10

While *Kaul* involved the Department's resolution of plaintiff's-side cases, the same principles apply here. The Attorney General is a "high constitutional executive officer." *SEIU*, 393 Wis. 2d 38, ¶ 60 (citation omitted); Wis. Const. art. VI, § 3. He is statutorily charged with defending state agencies named in civil litigation. Wis. Stat. § 165.25(6). Since 1849, the Attorney General has exercised the executive powers traditionally held by a state's chief legal officer, including representing the state and its entities in litigation. *See* Wis. Rev. Stat. ch. 9, §§ 36–41 (1849). The Attorney General carries that law into effect when it defends executive agency clients in litigation. How he conducts that litigation, like the litigation in *Kaul*, is a core executive function into which the Legislature may not intrude.

The Legislature can constitutionally be a litigant in cases impacting its own constitutional powers, but those cases are rare exceptions. It can challenge a gubernatorial veto, for example, because that veto affects the Legislature's constitutional role in passing bills. *SEIU*, 393 Wis. 2d 38, ¶ 72 n.21 (listing cases brought by Legislature challenging Governor's veto of passed budget bills). But that role no longer exists once a law is enacted: it is then up to the executive branch to carry out the law, including by defending it. *See Evers I*, 412 Wis. 2d 525. In such cases, permitting the Legislature to defend the law alongside the Attorney General transfers core executive branch power to the Legislature.

Intervention gives the Legislature the power to control the strategy, handling, and disposition of the case: an intervening party is a full participant in the lawsuit with all the rights of a party. *See Solid Waste Agency of N. Cook Cnty. v. U.S. Army Corps of Eng'rs*, 101 F.3d 503, 508 (7th Cir. 1996). The Wisconsin constitution gives that power to the executive branch, not to the Legislature.

Courts in other states have recognized that allowing the legislature to direct litigation violates the separation of powers. *See, e.g., Arizona v. Block*, 942 P.2d 428, 429–31 (Ariz. 1997) (en banc) (striking down state law that gave a legislatively-controlled committee the power to hire outside counsel and pursue litigation relating to any federal law, regulation or order); *State Through Bd. of Ethics v. Green*, 545 So. 2d 1031, 1036 (La. 1989) (striking a statute that allowed the Louisiana legislature to file a lawsuit to collect penalties, on separation of powers grounds); *Stockman v. Leddy*, 129 P. 220, 223 (Colo. 1912), *overruled on other grounds by Denver Ass'n for Retarded Children, Inc. v. Sch. Dist. No. 1*, 535 P.2d 200, 204 (1975) (striking a statute that gave the legislature the power to bring cases for certain purposes, on separation of powers grounds).

In the first Wisconsin case since *Kaul* deciding whether the Legislature can intervene in litigation that the executive branch is defending, a Wisconsin circuit court held that it would violate *Kaul* and the Wisconsin separation of

powers for the Legislature to intervene. *Disability Rights Wisconsin v. Wisconsin Elections Commission* involved a challenge to a Wisconsin elections statute regulating how voters receive and return absentee ballots. *See DRW v. WEC,* No. 24-CV-1141 (Wis. Cir. Ct. Dane Cnty. Jan. 26, 2026). The court denied the Legislature's motion to intervene because it would violate the separation of powers under *Kaul*:

> In light of [*Kaul*], WEC contends that "[a]llowing the [l]egislature to intervene here gives it the same power to control the handling of litigation rejected in Kaul."
>
> I agree. The present case will require WEC, through its counsel DOJ, to litigate whether the elections code unlawfully denies the plaintiffs some kind of right. Just as in *Kaul*, "DOJ's litigation in these categories of cases is, rather straightforwardly, the execution of laws enacted by the Legislature." Allowing the legislature to intervene under § 803.09(2m) would be to give the legislature a part of that core executive power to execute the laws. The separation of powers prohibits this and, accordingly, I conclude § 803.09(2m) is unconstitutional as applied to the specific facts of this case. I therefore deny the legislature's motion to intervene under §803.09(2m).

(Decl. of Charlotte Gibson, Ex. 1:15 (citation omitted).) The Legislature has appealed that ruling,[4] but the trial court's holding was a straightforward application of *Kaul.*

---

[4] *Disability Rights Wisconsin v. WEC* Appeal Number 2026AP535, Wis. Ct. Sys. Sup. Ct. & Ct. App. Access, https://wscca.wicourts.gov/case/2026AP000535 (last visited June 4, 2026).

13

Like the types of litigation at issue in *Kaul* and *Disability Rights*, the case before this Court impacts no constitutional power of the Legislature. Allowing the Legislature to intervene would give it the same power to control the handling of the litigation that the Wisconsin Supreme Court rejected in *Kaul*. It is not the Legislature's constitutional role to litigate this case alongside the executive branch.

### 2. *SEIU*, *Bostelmann*, and *Berger* do not support its claim to intervene here.

The Legislature points to *SEIU* and *Democratic National Committee v. Bostelmann*, 2020 WI 80, 394 Wis. 2d 33, 949 N.W.2d 423, from the Wisconsin Supreme Court, and *Berger v. North Carolina State Conference of the NAACP*, 597 U.S. 179 (2022), from the U.S. Supreme Court, to argue that it has an "interest" to participate in litigation to ensure that statutes continue to be enforced. (Dkt. 20:4–5, 14, 16, 18.) Those cases do not resolve the constitutional problem here.[5]

*SEIU*, brought soon after passage of 2017 Wis. Act 369, challenged numerous provisions of the Act in full, including the new intervention provision. Because the case was a facial challenge, the court saw its job as

---

[5] The Legislature also cites *Liebert v. WEC*, 345 F.R.D. 169 (W.D. Wis. 2023), where a district court granted the Legislature's motion to intervene in a challenge to a state law. (Dkt. 20:20.) That motion was decided before *Evers I* and *Kaul*, and the court did not decide whether intervention would violate Wisconsin's separation of powers.

evaluating whether there could be *any* constitutional applications of each challenged provision. 393 Wis. 2d. 38, ¶ 4. Applying that standard, the court denied the facial challenge to Wis. Stat. § 803.09(2m).

The court identified one application where the Legislature's intervention would be constitutional: in a case challenging a governor's power to veto bills the Legislature passed. *See SEIU,* 393 Wis. 2d. 38, ¶ 72 n.21 (listing cases). That type of case, however, involved the Legislature's defense of its institutional power to *pass* a law, not to defend an *enacted* law.

After *SEIU*, the Legislature attempted to characterize *SEIU* as recognizing a broader constitutional role for the Legislature, pointing to the court's comment that "[w]hile representing the State in litigation is predominately an executive function, it is within those borderlands of shared powers, most notably in cases that implicate an institutional interest of the legislature." *Id.* ¶ 63. But in *Kaul,* the supreme court rejected that interpretation; the court clarified that representing the State is a shared power *only* where a constitutional power of the Legislature is implicated. *Kaul*, 416 Wis. 2d 322, ¶¶ 26–28.

*Bostelmann* gets the Legislature no further. That case addressed the statutory scope of Wis. Stat. § 803.09(2m), not the statute's constitutionality under the separation of powers. The court stated that it did not address separation of powers concerns because of the rushed nature of that

15

proceeding—a certification question from the Seventh Circuit about the type of "interest" conferred by Wis. Stat. § 803.09(2m) for purposes of Rule 24(a)(2)'s "interest" prong. 394 Wis. 2d 33, ¶ 4 n.2 (question not a "wide-ranging constitutional inquiry," and noting lack of time for parties to address the separation-of-powers issue), ¶ 26 (Dallet, J., dissenting) (flagging separation-of-powers question for future cases).

For the limited task of statutory interpretation, and in a situation where no executive branch official was defending the law, [6] *Bostelmann* held that Wis. Stat. § 803.09(2m) gave the Legislature a statutory interest not only where its legislative interests were implicated, but in defending state statutes. *Bostelmann*, 394 Wis. 2d 33, ¶ 8. Construing the scope of Wis. Stat. § 803.09(2m) is a separate inquiry from determining the statute's constitutionality under the separation of powers, however, and the court expressly declined to take up the latter question.

*Berger* also decided no state constitutional law question. It was about the criteria for intervention under Rule 24(a)(2), not whether a legislature's intervention would violate a state constitution's separation of powers doctrine.

---

[6] The Attorney General had withdrawn as the defendants' counsel due to a conflict, and the appointed special counsel declined to appeal an adverse ruling. *Democratic Nat'l Comm. v. Bostelmann*, 2020 WL 1505640, *1 (W.D. Wis. Mar. 28, 2020) (Attorney General withdrawing and replaced with outside counsel); *Democratic Nat'l Comm. v. Bostelmann*, 977 F.3d 639 (7th Cir. 2020) (Legislature only appealing party).

16

The Court considered whether North Carolina legislators satisfied the "interest" prong of Rule 24(a)(2) where a state statute authorized them to intervene in litigation "as agents of the State." 597 U.S. at 193 (citation omitted). In answering that question, the Court relied on the scope of the state statute, not the law's constitutionality under state law.

*Berger* mentioned North Carolina's separation of powers only as a waived argument. North Carolina officials had argued alternatively that the law violated that State's separation of powers doctrine, but the Court treated the question as waived because the officials had agreed to permissive intervention—and intervention would present the same constitutional concerns regardless of whether it was mandatory or permissive. *Id.* at 194.

Neither *SEIU*, *Bostelmann*, nor *Berger* supports that legislative intervention to defend state laws would comport with Wisconsin's separation of powers doctrine.

\* \* \* \* \*

As in *Kaul* and *Disability Rights*, intervention by the Legislature here would violate Wisconsin's separation of powers doctrine. This Court should deny the Legislature's motion on that basis.

## II. The Legislature also does not justify intervention under Rule 24(a)(2) or (b).

The constitutional problem resolves the motion against the Legislature, since intervention would violate the Wisconsin constitution's separation of powers regardless of whether it occurred under Rule 24(a)(2) or 24(b). But independently of that infirmity, the Legislature also fails to satisfy the second and fourth prong of Rule 24(a)(2), and it fails to justify permissive intervention under Rule 24(b), as well.

### A. The Legislature does not satisfy the fourth prong required for mandatory intervention under Rule 24(a)(2).

A party seeking intervention must meet all four of Rule 24(a)(2)'s elements: "(1) timely application; (2) an interest relating to the subject matter of the action; (3) potential impairment, as a practical matter, of that interest by the disposition of the action; and (4) lack of adequate representation of the interest by the existing parties to the action." *Bost v. Ill. State Bd. of Elections*, 75 F.4th 682, 686 (7th Cir. 2023) (quoting *State v. City of Chicago*, 912 F.3d 979, 984 (7th Cir. 2019)); Fed. R. Civ. P. 24(a)(2). The movant bears the burden of establishing its entitlement to intervene as of right, and the failure to meet any of the elements requires denial of the motion. *Keith v. Daley*, 764 F.2d 1265, 1268 (7th Cir. 1985). Here, the Legislature cannot show the second and fourth factors: (1) a cognizable interest in the proceeding and

18

(2) that any interests it has will not be adequately represented by the existing parties.

### 1. The Legislature does not have a cognizable interest where other parties are defending the laws.

First, the Legislature does not have an interest under Rule 24(a)(2)'s second prong where the executive branch is defending the law.

The U.S. Supreme Court has recognized a cognizable interest for state legislative bodies, whether for standing or intervention purposes, only where they act as an agent for the State, not where they represent a legislative interest in seeing a law upheld. *Compare Berger*, 597 U.S. at 193 (legislators had an interest under Rule 24(a)(2) where state law authorized them to act as an agent for the State), *with Virginia House of Delegates v. Bethune-Hill*, 587 US. 663–64 (2019) (Virginia house did not have a cognizable interest where Virginia law did not authorize them to act as the state). To determine the capacity in which a legislature acts, the Court has looked at a state's laws. *Berger*, 597 U.S. at 193; *Va. House of Delegates*, 587 U.S. at 663.

As to Wisconsin's relevant law, Wis. Stat. § 803.09(2m), *Bostelmann* construed it as empowering the Wisconsin legislature to act for the State in the context of a case that no other party was defending. It was not asked to address an ordinary situation where the executive branch and Attorney General are defending challenged statutes. *Bostelmann*, 394 Wis. 2d 33, ¶ 25 (Dallet, J.,

dissenting) ("The majority appears troubled by the notion that the attorney general or appointed special counsel could discharge its duty to represent the state's interests by declining to pursue an appeal."); ¶ 25 n.3 (Dallet, J., dissenting) (discussing absurdity of construing statute to include situations where executive branch is present).

### 2. The Legislature fails to show that the existing defendants and Attorney General are inadequately representing any interests the Legislature may have.

Separately, the Legislature cannot show that any interests it may have are inadequately represented for purposes of Rule 24(a)(2)'s fourth prong. Relying on *Berger*, the Legislature says that there is no presumption of adequacy, as there would be in a situation where a private party sought to intervene and the Attorney General were defending a law. *See Bost*, 75 F.4th at 690. But the Legislature takes *Berger* too far, suggesting that it need not show inadequacy at all. (Dkt. 20:19.) That is incorrect.

*Berger* did not stop once it decided that the presumption of adequacy did not apply: it explained why the Board defendant's representation there did not adequately protect the interest in defending the law. In the course of the case, the defendant Board (1) offered no witness affidavits, even though the other side did; (2) did not seek a stay of the trial court's initial order; (3) described its job not as defending the law, but instead "obtaining guidance about" which version of the law would be in place; and (4) potentially had a conflict, since

20

the members' appointing authority (who could apparently remove them) filed an amicus brief asserting that the law was unconstitutional. *Berger*, 597 U.S. at 198, 187, 189.

Here, no such facts are in play. The Commission and Attorney General swiftly responded to Plaintiff's motion for a temporary restraining order with a 30-page brief comprehensively addressing the relevant First Amendment merits and other injunction factors, as well as a declaration that addressed both the harms presented by a temporary injunction and compelling reasons for the law. (Dkt. 16–17.) Indeed, the Legislature's motion cites from those materials in describing the case. (Dkt. 20:8.) The Legislature, in contrast, filed a letter indicating that it planned to move to intervene and asking for a briefing schedule for a preliminary injunction motion. (Dkt. 13).

In light of those filings, inadequacy is nowhere in sight. The Legislature offers two ideas: (1) Defendants' brief did not mention *Luft v. Evers*, 963 F.3d 665 (7th Cir. 2020), a case applying *Anderson/Burdick* in the voter ID context, and (2) in a few other cases, the Elections Commission has employed litigation strategies the Legislature disagrees with. (Dkt. 20:19–21.) Those points do not come close to showing inadequacy. Whether Defendants chose to cite a particular case in their TRO opposition says nothing about the strength of the filing. And litigation strategies in other cases say nothing about an adequate defense in the case at hand.

The Legislature fails the second and fourth prongs of the intervention test and is not entitled to intervene as of right.

**B.**  **The Legislature also fails to justify permissive intervention under Rule 24(b).**

The Legislature also fails to justify permissive intervention under Rule 24(b). The Rule provides that a court may permit intervention as a matter of discretion if (1) the motion is timely and (2) the movant "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). The court, in exercising its discretion, must consider "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). Thus, a court may deny permissive intervention where "adding the proposed intervenors could unnecessarily complicate and delay all stages of this case." *One Wis. Inst., Inc. v. Nichol*, 310 F.R.D. 394, 399 (W.D. Wis. 2015).

Here, even if the Legislature had a defense that shares common questions with the main action, permissive intervention would be inappropriate because adding more defendants would only complicate and delay this case. This election law case should be streamlined and decided quickly without unnecessarily using up the court's time and resources with redundant defendants and process. The Legislature's asserted interests are

closely aligned with those of the Commission, such that its addition as a party would add little substance.

This is a case about the constitutionality of non-partisan election statutes. The Commission and its counsel are defending those laws, and adding additional defendants with the same goals would only complicate the litigation. If the Legislature believes it has arguments that no other party will make, this Court could grant it leave to participate as an amicus.

## CONCLUSION

This Court should deny the Wisconsin Legislature's motion to intervene.

Dated this 4th day of June 2026.

Respectfully submitted,

JOSHUA L. KAUL
Attorney General of Wisconsin

s/ Charlotte Gibson
CHARLOTTE GIBSON
Assistant Attorney General
State Bar #1038845

HANNAH S. JURSS
Assistant Attorney General
State Bar #1081221

Attorneys for Defendants

Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 957-5218 (Gibson)
(608) 266-8101 (Jurss)
(608) 294-2907 (Fax)
charlie.gibson@wisdoj.gov
hannah.jurss@wisdoj.gov

23

## CERTIFICATE OF SERVICE

I certify that on June 4th, 2026, I electronically filed the foregoing Defendants' Brief in Opposition to Legislature's Motion to Intervene with the clerk of court using the CM/ECF system, which will accomplish electronic notice and service for all participants who are registered CM/ECF users.

Dated this 4th day of June 2026.

s/ Charlotte Gibson
CHARLOTTE GIBSON
Assistant Attorney General