**FILED**
**01-26-2026**
**CIRCUIT COURT**
**DANE COUNTY, WI**
**2024CV001141**

BY THE COURT:

DATE SIGNED: January 26, 2026

<u>Electronically signed by Judge Everett D. Mitchell</u>
Circuit Court Judge

STATE OF WISCONSIN          CIRCUIT COURT          DANE COUNTY
BRANCH 4

DISABILITY RIGHTS WISCONSIN, et al.,

        Plaintiffs,

        v.                                                    Case No.          2024cv1141

WISCONSIN ELECTIONS
COMMISSION, et al.,

        Defendants.

# DECISION AND ORDER
## DENYING THE LEGISLATURE'S MOTION TO INTERVENE

## INTRODUCTION

Disability Rights Wisconsin ("DRW") brings this action seeking a declaratory judgment that Wisconsin's absentee voting laws deny blind citizens the right to cast a secret ballot. The legislature[1] now moves to intervene as a matter of right under Wis. Stat. § 803.09(1), as a matter of permission under § 803.09(2), or under a bespoke intervention statute that applies only to the legislature under § 803.09(2m). I deny the legislature's motion because it fails to show it is entitled to intervene under any of these theories.

---

[1] The parties refer to the proposed intervenor as "the Legislature" or the "Wisconsin State Legislature." I use the title "legislature," not to be informal but rather to remain consistent with our constitutional text. Wis. Const. art. IV, §§ 6, 7, 11, 12, etc. (defining "the legislature").

1

Gibson Decl. Ex. 1:1

To intervene as a matter of right, a movant must show, among other things, "that the existing parties do not adequately represent" their interest. *Helgeland v. Wisconsin Muns.*, 2008 WI 9, ¶38, 307 Wis. 2d 1, 745 N.W.2d 1. The legislature fails to make this showing because it has the exact same interest as the defendant, the Wisconsin Elections Commission ("WEC") and because the legislature simply guesses that counsel for WEC, the Wisconsin Department of Justice ("DOJ"), might exercise bad judgment.

For similar reasons, the legislature also fails to show it is entitled to intervene as a matter of permission. To intervene under § 803.09(2), the legislature had to show their intervention will add something of value to the parties' debate. *Rise, Inc. v. WEC*, No. 22AP1838, unpublished slip op., ¶¶48-50 (WI App Jul. 7, 2023). So far, the legislature's briefing has been thorough and informative. But the same is true of the other parties' briefing. The legislature does not identify any particular reason why a circuit judge might benefit from many sets of equally informative briefing and, therefore, I conclude the legislature fails to show its intervention will meaningfully contribute to this action above and beyond the representation already provided by DOJ.

Finally, the text of § 803.09(2m) plainly authorizes the legislature's intervention. But that is only because the statute is written so broadly as to encompass near every case imaginable—it says the legislature can intervene whenever a party "challenges the construction … of a statute." There may be many other cases in which § 803.09(2m) allows the legislature to intervene but, as applied to the facts of this case, the legislature cannot use § 803.09(2m) to intervene because it would violate the separation of powers. This case is a challenge to several elections statutes. WEC, and its counsel DOJ, are executing the law by defending those statutes. In this way, this case is about how the executive executes Wisconsin's election code; our constitutional system of shared powers affords the legislature no institutional interest of its own in how the executive does so.

2

Gibson Decl. Ex. 1:2

The legislature's motion to intervene under Wis. Stat. §§ 803.09(1), (2), and (2m) is denied for these reasons. For now, I express no opinion about the merits of the parties' dispute or whether the legislature may continue to provide information concerning that dispute as an amicus curia.

## I.     BACKGROUND

On April 16, 2024, DRW commenced this action by filing a summons and complaint alleging Wisconsin's absentee voting laws deny blind citizens their constitutional right to cast a secret ballot. Dkt. 9. On May 1, 2024, DRW moved for a temporary injunction commanding WEC, the governmental body which administers elections in Wisconsin, to provide to blind voters "an option to request and receive an electronic absentee ballot that can be marked electronically using an at-home accessibility device." Dkt. 43.

Between May and August 2024, the parties litigated several matters that, ultimately, the court of appeals would later remand back to this court. Notably, on May 24, 2024, the legislature moved to intervene. Dkt. 51. I granted that motion to intervene, Order (June 25, 2024), dkt. 103, but the court of appeals reversed my order, *DRW v. WEC*, no. 2024ap1347, unpublished slip op. (July 1, 2025) (per curiam). Also of note, the legislature moved to stay an injunction I granted in DRW's favor. I denied the legislature's motion to stay but the court of appeals granted its own stay and then reversed this order, too. *DRW v. WEC*, no. 2024ap1298, unpublished order granting stay (Aug. 19, 2024); *DRW v. WEC*, 2025 WI App 27, 416 Wis. 2d 151, 20 N.W.3d 790. In the wake of these rulings, the court of appeals has remitted this matter to the circuit court. Dkt. 202. Now, the court of appeals directs me as follows: "We believe that a decision from the trial court setting forth legal reasoning and factual findings would assist us in fully and fairly deciding the complex issues presented in this case." *DRW*, no. 2024ap1347, slip op., *5.

The court of appeals has thus reversed my order granting the legislature's motion to

3

intervene and also reversed by order granting DRW's motion for temporary injunctive relief. In this way, the parties find themselves in essentially the same place they were one year ago. With additional briefing, and in consideration of a few changed circumstances over the past year (primarily the lack of urgency over an upcoming election), the legislature once again seeks an order allowing it to intervene in this matter under Wis. Stat. § 803.09(1), (2), and (2m).

## II.     LEGAL STANDARD

The legislature seeks to intervene under three different theories. First, to intervene as a matter of right under Wis. Stat. § 803.09(1),[2] a movant must satisfy four requirements. "The movant must show":

> (A) that the movant's motion to intervene is timely;
>
> (B) that the movant claims an interest sufficiently related to the subject of the action;
>
> (C) that disposition of the action may as a practical matter impair or impede the movant's ability to protect that interest; and
>
> (D) that the existing parties do not adequately represent the movant's interest.

*Helgeland,* 2008 WI 9, ¶38 (notes omitted). "A movant must meet each of these four criteria to claim a right of intervention." *Id.* ¶39. In applying these requirements, "[t]he analysis is holistic, flexible, and highly-fact specific." *Id.* ¶40 (notes omitted).

Second, to intervene as a matter of permission under Wis. Stat. § 803.09(2),[3] an intervenor

---

[2] Wis. Stat. § 803.09(1) reads, in full:

> Upon timely motion anyone shall be permitted to intervene in an action when the movant claims an interest relating to the property or transaction which is the subject of the action and the movant is so situated that the disposition of the action may as a practical matter impair or impede the movant's ability to protect that interest, unless the movant's interest is adequately represented by existing parties.

[3] Wis. Stat. § 803.09(2) reads, in full:

4

again must make a "timely motion." The movant then must show a "claim or defense and the main action have a question of law or fact in common," after which the court "shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." *Id.* Even if a movant satisfies these requirements, "the circuit court has discretion to decide whether a movant may be permitted to intervene …." *Helgeland,* 2008 WI 9, ¶120; *Rise, Inc.*, No. 22AP1838, ¶¶48-50 (intervention denied where "nothing beneficial would be accomplished by permitting them to intervene under § 803.09(2).").

The legislature's third avenue for intervention is Wis. Stat. § 803.09(2m). That statute applies whenever a party "challenges the construction or validity of a statute …." Within that very broad category of cases—all those cases where a party "challenges the construction" of a statute— the legislature "may intervene … at any time in the action as a matter of right by serving a motion upon the parties …." Wis. Stat. § 803.09(2m).

### III.    DISCUSSION

**A.    The legislature fails to show it may intervene as a matter of right because it fails to show the Wisconsin Department of Justice is inadequate.**

I turn, first, to the legislature's motion to intervene as a matter of right under § 803.09(1). To prevail, the legislature must satisfy the four factors set forth in *Helgeland,* 2008 WI 9, ¶38. Ordinarily, "[f]ailure to establish one element means the motion must be denied." *Olivarez v. Unitrin Prop. & Cas. Ins. Co.,* 2006 WI App 189, ¶12, 296 Wis. 2d 337, 723 N.W.2d 131. Because

---

Upon timely motion anyone may be permitted to intervene in an action when a movant's claim or defense and the main action have a question of law or fact in common. When a party to an action relies for ground of claim or defense upon any statute or executive order or rule administered by a federal or state governmental officer or agency or upon any regulation, order, rule, requirement or agreement issued or made pursuant to the statute or executive order, the officer or agency upon timely motion may be permitted to intervene in the action. In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

failure to satisfy any one element is dispositive, for purposes of this decision, I assume the legislature can satisfy the first three factors. I deny the legislature's motion under § 803.09(1) because the legislature plainly fails to satisfy the fourth factor—the legislature fails to show that the existing parties do not adequately represent the movant's interest.

As a starting point, an intervention movant's adequate representation is presumed when the movant and the existing party both have "the same ultimate objective." *Helgeland*, 2008 WI 9, ¶90 n.80. This case is a challenge to several parts of Wisconsin's election code. In opposing the challenge, the legislature and WEC both have the same ultimate objective—they both want the challenge to fail. I must therefore begin my analysis by presuming that the legislature's interest will be adequately represented by WEC.

The legislature may still overcome that presumption. It can do so in several ways: "if there is a showing of collusion between the representative and the opposing party; if the representative fails in the fulfillment of this duty; or if the representative's interest is adverse to that of the proposed intervenor." *Id.*, ¶87; *see Armada Broad., Inc. v. Stirn*, 183 Wis. 2d 463, 476, 516 N.W.2d 357 (1994) (articulating the same ways to overcome the presumption of adequate representation).[4]

The legislature does not attempt to make any of these showings. It instead leans on *Wolff v. Town of Jamestown*, 229 Wis. 2d 738, 747, 601 N.W.2d 301 (Ct. App. 1999), for the proposition that a movant need only show "representation of his interest 'may be' inadequate …." (quoted source omitted). As best I can tell, the legislature believes representation by WEC and/or DOJ "may be" inadequate "because the Attorney General declined to appeal" an earlier issue in this case. Legislature Br., dkt. 203:32. According to the legislature, "failure to appeal is a quintessential

---

[4] Wisconsin courts are not alone in setting a high bar for the presumption of adequate representation. Judge Diane Sykes thoroughly examines the analogous federal requirement in *Planned Parenthood of Wisconsin, Inc. v. Kaul,* 942 F.3d 793, 804-810 (Sykes, J., concurring).

means of rebutting the presumption [of adequate representation]." *Id.* at 33.

This argument is not persuasive because *Wolff* does not help the legislature. Nine years after *Wolff* described what adequate representation means, our supreme court revisited that precise issue in *Helgeland*. Nothing in that case is consistent with the legislature's proposed test about vaguely identifying what "may be" inadequate. Rather, *Helgeland* sets forth specific ways to determine adequate representation:

> In determining whether an existing party adequately represents a movant's interest, we look to see if there is a showing of collusion between the representative and the opposing party; if the representative fails in the fulfillment of his duty; or if the representative's interest is adverse to that of the proposed intervenor.

*Helgeland*, 2008 WI 9, ¶87 (collecting authority in a note). I will not add into this list the new factor relied upon by the legislature just because the court of appeals did so in *Wolff*, nine years beforehand; to do so would require me to ignore the supreme court's instruction in *Helgeland. See Cook v. Cook*, 208 Wis. 2d 166, ¶53, 560 N.W.2d 246. Because the test of inadequate representation proposed by the legislature is divorced from the controlling text of *Helgeland*, I do not consider the legislature's test.

But even if I could consider the Attorney General's decision to not appeal, I would not agree with the legislature that it has overcome the presumption of adequate representation. As WEC observes, the "Attorney General's decision" to not appeal a temporary injunction was really WEC's decision. WEC made that decision because "[it] considered the workability of the required changes on a tight timeline … [WEC] thought it could meet the injunction's directives and believed that it was imperative to avoid uncertainty going into the elections …." WEC Resp. Br., dkt. 216:38. In other words, WEC disagreed with the injunction, just like the legislature, but simply preferred an alternative strategy for vindicating its disagreement.

7

Taken to the logical extreme, the legislature's contention about inadequate representation would require circuit courts to dive into an infinite realm of litigation decision making that, for the most part, may have little to no effect on the outcome of a case. Suppose, for example, WEC concludes the most efficient way to litigate DRW's claims would be to participate in discovery and then seek summary judgment. If the legislature preferred to litigate a motion to dismiss (and perhaps, if it lost that motion, to also pursue all manner of interlocutory remedies), then can the legislature use this kind of disagreement about litigation strategy to show WEC's representation is inadequate? Or, even more simply, how about if the DOJ concludes it should cite cases A and B in support of its argument, but the legislature prefers to cite cases C and D? If individual strategy decisions taken in pursuit of a common goal must be scrutinized, as the legislature contends, then must the circuit court consider even comically mundane strategy decisions like the choice of font in a legal brief?

I think the answer is "no." I therefore focus my attention, as *Helgeland* requires, on comparing the objective of the legislature with the objective of WEC. The objective for both is the same: dismissal of the plaintiffs' claims. WEC can pursue that objective and, at the same time, reasonably disagree with the legislature about whether to file interlocutory appeals of nonfinal rulings. In addition, the legislature makes no showing about *Helgeland*'s other factors—the legislature says nothing about collusion between DRW and WEC, failure to fulfill any duty owed by WEC, or the adverse interests of any of WEC's representatives.

In sum, the legislature does not show WEC will inadequately represent its interest just because WEC chose to not pursue one particular kind of interlocutory appeal. And, because the legislature does not show WEC will inadequately represent its interest, the legislature does not show it is entitled to intervene as a matter of right. I deny the legislature's motion to intervene

8

under § 803.09(1).

**B.     The legislature fails to show it may intervene as a matter of permission because it fails to show intervention would accomplish some kind of benefit.**

The legislature also seeks to intervene as a matter of permission under § 803.09(2). Under this section, "the circuit court has discretion to decide whether a movant may be permitted to intervene …." *Helgeland,* 2008 WI 9, ¶120. This means, as the court of appeals has explained, that a movant's request to intervene may be denied where "nothing beneficial would be accomplished by permitting them to intervene under § 803.09(2)." *Rise, Inc.*, no. 22AP1838, ¶¶48-50. I assume the legislature can satisfy the other elements of a motion to intervene under § 803.09(2) and nevertheless deny the legislature's motion because it fails to show intervention would accomplish any benefit.

The legislature does not specifically focus on why its participation in this matter would accomplish any benefit. Its argument instead hews tightly to the other factors for permissive intervention, including the timeliness of the motion and the fact that it will not delay the proceedings.[5]

At least impliedly, however, the legislature does focus on is how it "has assisted the courts in performing their constitutional duty to say what the law is." Legislature Br., dkt. 203:16 (quoting *Tetra Tech EC, Inc. v. DOR*, 2018 WI 75, ¶54, 382 Wis. 2d 496, 914 N.W.2d 21 (Kelly, J., op.)). This argument about "assisting the courts" is not persuasive because the legislature supports it by misleadingly citing a non-binding part of Justice Kelly's concurring opinion in *Tetra Tech.* The

---

[5] In both its oral argument and its briefing, DRW faulted the legislature for delaying this matter with its interlocutory appeal despite promising the circuit court that it would not cause any delay. DRW Resp. Br., dkt. 217:15-16. I do not consider any delay caused by the interlocutory appeal. It is true that the interlocutory appeal did delay DRW's claims. But that appeal followed from DRW's demand that the court adjudicate its rights to preliminary injunctive relief. The legislature did not "delay" adjudication of that right by promptly seeking adjudication in the manner prescribed by Wisconsin's rules of civil procedure.

9

justices authored a series of fragmented opinions in that case. The fragment of the opinion on which the legislature relies, ¶54, falls in Section II.A.3. of Justice Kelly's opinion. But no majority of justices assented to Section II.A.3—rather, as the *Tetra Tech* court explained, "this opinion announces the opinion of the court with respect to Sections I., II.A.1, II.A.2., II.B., and III." *Tetra Tech*, 2018 WI 75, ¶3 n.4. Although the legislature does not develop a strong argument to explain why its participation will assist the circuit court, the legislature is correct about the court's duty to say what the law is. *Marbury v. Madison*, 5 U.S. 137, 177 (1803). The problem here is only that the legislature fails to show it will help the court to discharge that duty by misleadingly citing what the law is not.

Moreover, the legislature cites no authority in support of the proposition that its ability to obtain interlocutory relief somehow was of assistance to the court system. As noted above, WEC did not somehow "fail" to obtain that kind of relief, it just chose a different, but still reasonable, strategy in pursuit of the legislature's goal. I will not develop an argument for the legislature on this point, either. Courts do "not step out of our neutral role to develop or construct arguments for parties." *Serv. Emps. Int'l Union, Local 1 (SEIU) v. Vos*, 2020 WI 67, ¶24, 393 Wis. 2d 38, 946 N.W.2d 35.

The legislature makes one final argument. It contends that permissive intervention might be appropriate because, if its motion is granted as a matter of permission under § 803.09(2), then the circuit court need not consider the constitutionality of the legislature's motion under § 803.09(2m). In the legislature's words, "granting permissive intervention would allow the courts to avoid the constitutional sideshow that the Attorney General seeks to inject into this case." Legislature Br., dkt. 203:18.

This argument, too, is unpersuasive. The doctrine of constitutional avoidance has no place

10

here because WEC argues that *any* kind of intervention would be unconstitutional. It says that "regardless of which intervention statute [applies] … intervention here would violate the separation of powers." WEC Resp. Br., dkt. 216:2. So, sideshow or not, there is no avoiding the constitutional question raised by WEC's brief in opposition to the legislature's motion.[6]

**C.     The legislature fails to show it may intervene under § 803.09(2m) because that section, as applied, violates the separation of powers.**

The third and final theory under which the legislature seeks intervention is § 803.09(2m). Intervention, according to the text of this statute, requires nothing further than a case in which someone has challenged the "construction" of a statute. This is plainly one of those cases so, plainly, the statute authorizes the legislature to intervene.

The legislature correctly anticipated separation of powers concerns arising from this kind of intervention procedure. Legislature Br., dkt. 203:18. Before turning to the legislature's defense of its intervention under § 803.09(2m), I pause to set forth principles surrounding Wisconsin's constitutional system of the separation of powers.

"The Wisconsin Constitution divides government into three separate branches, each vested with a specific power." *Kaul v. Wisconsin State Legislature*, 2025 WI 23, ¶10, 416 Wis. 2d 322, 21 N.W.3d 513 (citing Wis. Const. art. IV, § 1, art. V, §1, and art. VII, § 2). The legislature's power "is the power to make the law, to decide what the law shall be." *Id.* (quoted source omitted). In contrast, "[t]he executive branch is vested with the power to execute or enforce the law as enacted." *Id.* (quoted source omitted). "Where the constitution has conferred power on a single

---

[6] This decision promotes the doctrine of constitutional avoidance by addressing intervention under the statutory factors separately from WEC's argument about separation of powers. Said differently, by independently addressing and rejecting the legislature's intervention arguments under §§ 803.09(1) and (2), I do not need to conclude, as WEC suggests, that *any kind of intervention* would violate the separation of powers. Instead, I avoid constitutional questions to the greatest possible extent by determining nothing more than, under the circumstances here and where intervention is otherwise improper, that intervention under § 803.09(2m) violates the separation of powers.

11

branch, that is considered a core constitutional power of that branch." *Id.*, ¶11. Identifying "core powers" is crucial to the separation of powers because, "when core powers are involved, '*any* exercise of authority by another branch of government is unconstitutional.'" *Id.* (emphasis in original, quoting *In re Complaint Against Grady*, 118 Wis. 2d 762, 776, 348 N.W.2d 559 (1984); *Evers v. Marklein*, 2024 WI 31, ¶10, 412 Wis. 2d 525, 8 N.W.3d 395).

The legislature must therefore show it does not violate the separation of powers by intruding on the core power of the executive to execute the law as enacted. To do this, the legislature relies most heavily on *SEIU*, 2020 WI 67, in which our supreme court rejected a facial challenge to § 803.09(2m). In a facial challenge to a statute, "the challenging party must show that the statute cannot be enforced under any circumstances." *SEIU*, 2020 WI 67, ¶38. This "is the most difficult of constitutional challenges and an uphill endeavor." *Id.*, ¶39 (quoted sources omitted). Applying this framework—"the statute cannot be enforced under any circumstances"—*SEIU's* facial challenge failed because the supreme court identified some circumstances in which § 803.09(2m) might be constitutional. Specifically, *SEIU* identified two such circumstances: "litigation implicating the public purse" and where the legislature "request[s] the attorney general's participation in litigation:

> The legislature may have an institutional interest in litigation implicating the public purse or in cases arising from its statutorily granted right to request the attorney general's participation in litigation. These institutional interests are sufficient to allow at least some constitutional applications of these laws, and the facial challenge asking us to declare the laws unenforceable under any circumstances necessarily fails.

*SEIU*, 2020 WI 67, ¶10. In other words, when the legislature has an "institutional interest" in some particular litigation, then the executive has no exclusive core power to litigate. Intervention in this kind of case poses no threat to the separation of powers.

12

Gibson Decl. Ex. 1:12

The legislature believes it has exactly this kind of institutional interest. However, and although it writes at tremendous length about general separation of powers issues, the legislature never specifies what, exactly, its institutional interest in this case might be. As best I can tell, the legislature's briefing identifies its interest as "maintaining the efficacy of its own constitutional powers," Legislature Br., dkt. 203:22, or perhaps a different kind of interest in "ensuring the continued validity of its duly enacted statutes," *id.* at 23. At oral argument, the legislature perhaps intended to identify a third institutional interest based on helping the judiciary to say what the law is.

The legislature does not cite authority to support the proposition that "maintaining efficacy," "ensuring validity," or "helping the judiciary" are the kind of institutional interests that might warrant intrusion into the executive's core power to execute laws. The only authority the legislature cites in support of any institutional interest in this litigation is *SEIU*, 2020 WI 67, ¶¶71-72, but those paragraphs are silent on the kinds of interests asserted here. Read with even the barest context, it is clear that those paragraphs continue a discussion that began a few paragraphs earlier of a different kind of institutional interest: "the general power to spend the state's money by enacting laws." *Id.*, ¶69.[7]

To bolster its attempt to shape an institutional interest out of "maintaining efficacy," "ensuring validity," and "helping the judiciary," the legislature also cites what it believes to be analogous intervention statutes from other states. It contends that "several States have also enacted laws authorizing … legislative leaders to intervene on the State's behalf," but "[t]o the

---

[7] The supreme court made the same observation about the legislature's overbroad reading of *SEIU* in *Kaul*, 2025 WI 23, ¶¶37-38 ("Trying one more tack, the Legislature analogizes … [to] the interest recognized in *SEIU* in litigation involving 'requests for the state to pay money to another party.' … *SEIU*'s application … is limited to money flowing out of the public fisc ….").

Gibson Decl. Ex. 1:13

[l]egislature's knowledge, no court in the country has held that any of these statutes are unconstitutional." Legislature Br., dkt. 203:26 (citing statutes from Arizona, Indiana, Nevada, and Oklahoma).

WEC has the better argument on this point, too. Even assuming some states have statutes that might allow intervention in the way the legislature prefers, the bare existence of those statutes is not particularly convincing. Far more convincing are the many cases WEC cites in its opposition brief which have concluded that the legislation about which branch of government ought to participate in litigation violates the separation of powers. WEC Resp. Br., dkt. 216:15-16 (citing *Arizona v. Block*, 942 P.2d 428 (Ariz. 1997); *Louisiana ex rel. Bd. of Ethics v. Green*, 545 So. 2d 1031 (La. 1989); *Stockman v. Leddy*, 129 P. 220 (Colo. 1912)*, overruled on other grounds, Denver Ass'n for Retarded Children, Inc. v. Sch. Dist. No. 1*, 535 P.2d 200 (Co. 1975); and *In re Op. of Justices*, 27 A.3d 859 (N.H. 2011)).

For its part, WEC's separation of powers argument relies mostly on the Wisconsin Supreme Court's most recent explanation of the relationship between the branches, *Kaul v. Legislature*, 2025 WI 23.n That case was "a constitutional challenge to a law that prohibits the Department of Justice … from settling most civil cases unless and until it approves the approval of [the legislature]." *Id.*, ¶1. The supreme court sided with DOJ; it held that "settling these two categories of cases is withing the core powers of the executive branch, and the statutory requirement to obtain [the legislature's] approval prior to settling these cases violates the Wisconsin Constitution's separation of powers." *Id.*, ¶3. Primarily, this conclusion followed from the court's observation that "DOJ's litigation in these categories of cases is, rather straightforwardly, the execution of laws enacted by the Legislature. We said as much in *SEIU*, calling litigation on behalf of the state 'predominately an executive function.'" *Id.*, ¶22 (quoting

14

*SEIU*, 2020 WI 67, ¶63). In light of this new authority from the Wisconsin Supreme Court, WEC contends that "[a]llowing the [l]egislature to intervene here gives it the same power to control the handling of litigation … rejected in *Kaul* …." WEC Resp. Br., dkt. 216:17.

I agree. The present case will require WEC, through its counsel DOJ, to litigate whether the elections code unlawfully denies the plaintiffs some kind of right. Just as in *Kaul*, "DOJ's litigation in these categories of cases is, rather straightforwardly, the execution of laws enacted by the Legislature." Allowing the legislature to intervene under § 803.09(2m) would be to give the legislature a part of that core executive power to execute the laws. The separation of powers prohibits this and, accordingly, I conclude § 803.09(2m) is unconstitutional as applied to the specific facts of this case. I therefore deny the legislature's motion to intervene under § 803.09(2m).

## ORDER

For these reasons,

IT IS ORDERED that the legislature's motion to intervene is denied.

**This is a final order for purpose of appeal.**

Gibson Decl. Ex. 1:15