# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

---

AMERICANS FOR CITIZEN VOTING PAC,

      *Plaintiff,*

    v.

MEAGAN WOLFE, ANN S. JACOBS, MARK L. THOMSEN, CARRIE RIEPL, DON M. MILLIS, ROBERT F. SPINDELL, JR., *and* MARGE BOSTELMANN, *in their official capacities as Wisconsin Elections Commissioners,*

      *Defendants.*

Case No. 2:26-cv-786

---

## THE WISCONSIN STATE LEGISLATURE'S REPLY IN SUPPORT OF MOTION TO INTERVENE

---

MISHA TSEYTLIN
*Counsel of Record*
(State Bar No. 1102199)
KEVIN M. LEROY
(State Bar No. 1105053)
TROUTMAN PEPPER LOCKE LLP
111 S. Wacker Dr., Suite 4100
Chicago, IL 60606
(608) 999-1240 (MT)
(312) 759-1938 (KL)
(312) 443-0336 (fax)
misha.tseytlin@troutman.com
kevin.leroy@troutman.com

*Counsel for the Wisconsin State Legislature*

## INTRODUCTION

The Wisconsin State Legislature ("Legislature") moved to intervene in this case to offer a unique and robust defense of 2025 Wisconsin Act 126 ("Act 126"). The State of Wisconsin decided that this is how it wants its laws defended in court when it enacted Wis. Stat. § 803.09(2m) ("Section 803.09(2m)"), which is the type of statute that *Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179 (2022), determined federal courts must respect in these circumstances.

Defying *Berger*, the Administrator and the Commissioners of the Wisconsin Elections Commission ("WEC") urge this Court to deny Wisconsin the prerogative that the Supreme Court has said that every State is entitled to. The basis for WEC's argument is that standard separation-of-powers principles prohibit legislatures from defending statutes they enacted in court. WEC does not point to any aspect of the Wisconsin Constitution's separation-of-powers doctrine that makes legislative defense of state law disfavored. Rather, WEC cites generic separation-of-powers principles that would apply to any State that has a legislative branch and an executive branch (that is, all the States). WEC's position finds no support in any Wisconsin case (or, indeed, in any federal case or even any state case, from any other State), and, if accepted, it would render *Berger* a nullity.

This Motion To Intervene should be easy under *Berger*. Per *Berger*, this Court must give respect to Wisconsin's choice in Section 803.09(2m) as a matter of comity. *Berger* admits of no "presumption of adequate representation" by WEC, as "a State's chosen representatives should be greeted in federal court with respect, not adverse

presumptions." 597 U.S. at 197. But if any further inquiry were needed, WEC's failure to respond substantively to the Legislature's invocation of *Luft v. Evers*, 963 F.3d 665 (7th Cir. 2020), or to the Legislature's arguments regarding WEC's erratic decisions of when it will or will not defend state election laws, Dkt.25 ("WEC.Opp.") at 20–21; Dkt.20 ("Mot.") at 20–21, suffices to show inadequacy.

Alternatively, if this Court does not wish to confront the *Berger* issue, it can simply grant the Legislature permissive intervention under Rule 24(b), as Judge Peterson did in materially indistinguishable circumstances in *Liebert v. WEC*, 345 F.R.D. 169 (W.D. Wis. 2023). While WEC briefly asserts, WEC.Opp.5, that even permissive intervention would violate the Wisconsin Constitution, that position is obviously wrong. This Court's authority to grant permissive intervention flows from federal law, so even if WEC's position had any grounding in the Wisconsin Constitution—which it clearly does not—this would not constrain this Court's permissive-intervention authority under the Rules Enabling Act and the Supremacy Clause.

## ARGUMENT

### I. WEC's Argument That This Court Should Deny The Legislature's Intervention As Of Right Under Rule 24(a) Asks This Court To Defy The Supreme Court's Decision In *Berger*

A. The Legislature satisfies each of the four elements for intervention as of right under Rule 24(a). Mot.11–21. First, the Legislature's Motion is timely. Mot.12–13. Second, the Legislature has an interest in this litigation, which challenges the constitutionality of Act 126. Mot.13–16. Wisconsin has statutorily authorized the Legislature to litigate as its agent in defense of state law in federal court, Wis. Stat.

§ 803.09(2m), and—as the Supreme Court held in *Berger*—a State possesses the "prerogative to select which agents may defend its laws and protect [these] interests" in federal court, 597 U.S. at 197; Mot.13–14. Separately, the Legislature has an independent interest in defending the efficacy and integrity of its own constitutional authority to make laws, including Act 126. Mot.15–16. Third, this litigation impairs the Legislature's sovereign interests by challenging Act 126 on federal-constitutional grounds. Mot.16. Finally, no other party adequately represents the Legislature's interests. Mot.17–21. Plaintiff is adverse, given that it seeks a declaration that Act 126 is unconstitutional. Mot.18. WEC does not adequately represent the Legislature either. Mot.17–21. As *Berger* holds, this Court should give respect to Wisconsin's sovereign choice to "select" the Legislature as its "agent[ ]," meaning that other agents of the State are not adequate representatives even if they possess similar interests. 597 U.S. at 197; Mot.18–19. And while not required, given *Berger*, the Legislature intends to raise different defenses than WEC regarding the impact of *Luft*, 963 F.3d 665, on the controlling standard here. Mot.19–20. WEC's inconsistent history of defending Wisconsin's election laws also shows that it is an inadequate representative in the present case. Mot.20–21.

B. In its Opposition, WEC primarily argues that the Legislature's intervention to defend a duly enacted law would violate the separation-of-powers principles found in the Wisconsin Constitution. WEC.Opp.4–17. WEC is asking this Court to defy *Berger*, which requires federal courts to honor state statutes just like Section 803.09(2m), and that is reason enough to disregard this argument. *See infra*

pp.4–6.  If, however, this Court does consider WEC's state-constitutional arguments, notwithstanding *Berger*, those arguments are without merit.  *See infra* pp.6–10.  And to the extent that any further "adequacy" analysis is appropriate in light of *Berger* and Section 803.09(2m), WEC's failure to engage with the substance of Legislature's lack-of-adequacy arguments makes this an easy issue as well.  *See infra* pp.10–12.

1.  *Berger* refutes WEC's argument that this Court should not honor Section 803.09(2m).  *See* WEC.Opp.4–5.  In *Berger,* the Supreme Court held 8-1 that North Carolina legislative leaders had a right to intervene under Rule 24(a) because state law authorized them to defend that State's statutes.  597 U.S. at 185–87, 200. As *Berger* explained, States may statutorily "allocate authority [to defend state law] among different officials who do not answer to one another" without violating traditional separation-of-powers principles because the executive branch does not hold "a constitutional monopoly on representing" the State and, absent such statutes, state law may go undefended.  *Id*. at 191–94.  States "may authorize [their] legislature[s] 'to litigate on the State's behalf, either generally or in a defined class of cases.'"  *Id*. at 192 (citations omitted).  Wisconsin did exactly what *Berger* endorsed with Section 803.09(2m), authorizing "the assembly, the senate, and the legislature [to] intervene" in "challenges in . . . federal court [to] the constitutionality of a statute."  Wis. Stat. § 803.09(2m).  That "expressly authorize[s] [Wisconsin's] legislative leaders to defend the State's practical interests in litigation of this sort." 597 U.S. at 193.

WEC argues that Wisconsin cannot enact the type of statute that *Berger* endorses because defending duly enacted law is only an "executive" function. WEC.Opp.7–14. WEC suggests that *Berger* is inapplicable because it "decided no state constitutional law question," but rather "was about the criteria for intervention under Rule 24(a)(2)" by "agents of the state." WEC.Opp.16–17 (citation omitted). But *Berger* considered whether "the statutes authorizing the legislative leaders to participate [t]here violate the State Constitution by usurping authority vested in the executive branch." 597 U.S. at 193–94. The Court found those arguments unpersuasive, given that the proponent there—like WEC here—did not "identify anything to support its suggestion that the State's executive branch holds a constitutional monopoly on representing [the State's] practical interests in court." *Id.* at 194. What is more, *Berger* provided four pages discussing a State's right to pass an intervention statute authorizing legislative intervention. *Id.* at 191–95. Thus, the Court did not simply "mention[ ]" "a waived argument," WEC.Opp.17, but rather endorsed constitutional systems permitting intervention by state-legislative branches, *see id.* at 191–95. Given this binding authority, as well as WEC's failure to identify anything that suggests that the Wisconsin Constitution is different in a material respect, this Court need not further consider WEC's arguments.

Endorsing WEC's arguments would render *Berger* a nullity. In making its separation-of-powers arguments against Section 803.09(2m), WEC does not cite anything even arguably unique about Wisconsin's separation-of-powers framework suggesting that the Legislature's defense of state law in court impedes the executive's

authority to execute those laws. *See generally* WEC.Opp.4–17. Instead, WEC recites generic separation-of-powers principles that could apply in any State that has a legislative branch and executive branch (that is, every State), *see, e.g.*, WEC.Opp.5–9, thereby rendering *Berger* meaningless. WEC even invokes a *federal* separation-of-powers case, WEC.Opp.7 (citing *Metro. Wash. Airports Auth. v. Citizens for Abatement of Aircraft Noise, Inc.*, 501 U.S. 252 (1991)), further highlighting that its arguments have nothing to do with Wisconsin in particular.[1]

2. If this Court nevertheless concludes that it needs to engage with WEC's state-constitutional arguments, notwithstanding *Berger*, it should reject those arguments because Section 803.09(2m) does not violate the Wisconsin Constitution.

The separation-of-powers analysis in Wisconsin "begins by determining if the power in question is [a] core" power of a single branch or a "shared" power among the branches. *Service Emps. Int'l Union, Loc. 1 v. Vos* ("*SEIU*"), 946 N.W.2d 35, 47, 54 (Wis. 2020); *State ex rel. Kaul v. Prehn*, 976 N.W.2d 821, 833–34 (Wis. 2022) (citations omitted). Core powers are "zones of authority constitutionally established for each branch . . . upon which any other branch of government is prohibited from intruding."

---

[1] WEC's three out-of-state cases only shows how unprecedented its theory is. WEC.Opp.12. None of those cases even arguably suggest that *defending* state law in court is only an executive function; rather, they considered a legislature's agency-like execution of laws. So, in *State ex rel. Woods v. Block*, 942 P.2d 428 (Ariz. 1997), the Arizona statute at issue permitted the Arizona legislature to "maintain[ ] control over an executive agency." *Id.* at 435. Similarly, in *Stockman v. Leddy*, 129 P. 220 (Colo. 1912), the Colorado Legislature had appropriated money to itself to pursue agency-like investigation of Colorado's streams and rivers. *See id.* at 221–23. And the law at issue in *State Through Board of Ethics for Elected Officials v. Green*, 545 So. 2d 1031 (La. 1989), granted the legislature agency-like powers relating to investigations, rulemaking, and collection of fines. *See id.* at 1034.

*League of Women Voters of Wis. v. Evers*, 929 N.W.2d 209, 221 (Wis. 2019) (citation omitted). "Shared powers" "are those that lie at the intersections of these exclusive core constitutional powers," and each branch "may exercise [the] power" provided that no branch "unduly burden[s] or substantially interfere[s] with another." *SEIU,* 946 N.W.2d at 47, 54 (citation omitted). The Legislature's core powers include "vast" "legislative power" to "make laws," which "encompasses the ability to determine whether there shall be a law, to what extent the law seeks to accomplish a certain goal, and any limitations on the execution of the law." *Evers v. Marklein ("Evers I")*, 8 N.W.3d 395, 402 (Wis. 2024) (citations omitted). The "quintessential core power belonging to the executive branch is the power to take care that the laws be faithfully executed." *Kaul v. Wis. State Legislature*, 21 N.W.3d 513, 520 (Wis. 2025) (citation omitted).

Defending state law is a shared power under the Wisconsin Constitution, and thus the Legislature may constitutionally exercise that power under Section 803.09(2m). The Legislature has "constitutional institutional interest[s]" in certain cases that justify its intervention. *SEIU*, 946 N.W.2d at 51–56. Those "constitutional institutional interest[s]," *id.* at 56, include defense of the Legislature's core power to "make laws," *Evers I*, 8 N.W.3d at 402, as the Legislature has a "legitimate interest in the continued enforcement of [its] own statutes," *Berger*, 597 U.S. at 191 (brackets altered). Cases challenging the constitutionality of statutes duly enacted by the Legislature threaten the Legislature's "ability to determine whether there shall be a

law," *Evers I*, 8 N.W.3d at 402, giving the Legislature a "constitutional institutional interest" supporting its intervention in such cases, *SEIU*, 946 N.W.2d at 56.

WEC argues that intervention here would violate the Wisconsin Constitution's separation of powers, WEC.Opp.4–9, but WEC has no coherent explanation as to *how* the Legislature defending state law in court violates WEC's (or any other executive body's or officer's) constitutional authority. To "defend" a law means "to support or uphold by speech or argument;" to "deny, repel, oppose (the plaintiff's plea)." *See* 4 Oxford English Dictionary 377 (J.A. Simpson & E.S.C. Weiner, eds. 2d ed. 1989). To "execute" a law means to "follow out" the law or "carry" it "into effect." *Id.* at 520. WEC paradoxically argues that intervention would allow the Legislature to "execute" (*i.e.*, "carry into effect") the law, WEC.Opp.5, while the Legislature in fact "defends" the law. While WEC asserts that litigation as a general matter is a "core" executive power that the Legislature cannot pursue absent a "specific constitutional role," WEC.Opp.9–14, WEC offers no explanation of how defending the constitutionality of a law is "executing" that same law. Instead, as *Berger* explained, "a State is free to empower multiple officials to defend its sovereign interests in federal court," and "[p]ermitting the participation of lawfully authorized state agents promotes informed [ ]court decisionmaking and avoids the risk of setting aside duly enacted state law based on an incomplete understanding of relevant state interests." 597 U.S. at 192.

WEC asserts that the Legislature lacks a "constitutional . . . interest" in preventing its enactments from being invalidated, *see* WEC.Opp.9–17, but it is difficult to conceive of a circumstance more directly affecting the Legislature's

constitutional interests. When a court enjoins duly enacted state law, the law "cease[s] to be valid" and is effectively nullified. *State ex rel. Reynolds v. Zimmerman*, 126 N.W.2d 551, 554, 565 (Wis. 1964). That squarely implicates the Legislature's "institutional interest" in "whether there shall be a law." *SEIU*, 946 N.W.2d at 56.

WEC's discussion of *Kaul*, 21 N.W.3d 513, does not help it. WEC.Opp.10–17. *Kaul* considered an "as-applied . . . challenge" to the Legislature's exercise of its statutory approval power over proposed settlements in "two categories of civil cases": "civil actions prosecuted by the Attorney General to enforce state laws" and civil actions prosecuted "at the request of 'the head of any department of the state government.'" 21 N.W.3d at 519–21 (citations omitted). The Wisconsin Supreme Court held that, "[w]ithin th[ose] two categories of cases," "the Legislature ha[d] not identified a constitutional interest for itself" justifying its statutory review authority. *Id.* at 527–28. *Kaul* does not aid WEC because it did not address whether the Legislature has an interest in *defending* the constitutionality of its statutes. *See id.* at 521–22. Neither of the case categories that *Kaul* addressed involved those types of challenges, *see id.* at 519–21, and, indeed, **the Attorney General (the plaintiff in *Kaul*) *expressly* disclaimed in *Kaul* any challenge to the Legislature's involvement in plaintiff-side settlements that conceded the unconstitutionality of statutes**. *See* Decl. Of Kevin M. LeRoy ("LeRoy Decl."), June 11, 2026, Ex.A at 31 n.5.

WEC's invocation of *Evers I* is even more puzzling. WEC.Opp.8–9. *Evers I* involved a challenge to what the court found to be a "legislative veto" of executive

action, *see* 8 N.W.3d at 408–10, and has nothing to do with the defense of a duly enacted law against a constitutional challenge in court.

3. WEC also makes a perfunctory argument that the Legislature does not satisfy the interest or adequacy-of-representation elements for mandatory intervention due to the WEC's own defense of Act 126 here. WEC.Opp.20–21. But under *Berger*, the Legislature easily satisfies these elements. Mot.13–14, 18–21. *Berger* concluded that statutorily authorized legislative leaders had an interest in defending a challenged state law, notwithstanding the presence of another authorized state agent. 597 U.S. at 191–95. *Berger* also concluded that even state officials with "closely aligned" interests should not be considered to have "identical" interests, such that the "burden" imposed by the adequacy element "should be treated as minimal" (albeit not eliminated). *Id.* at 196.[2]

A duly authorized state official ordinarily satisfies that minimal burden because the State's choice for its "representatives should be greeted in federal court with respect, not adverse presumptions." *Id.* at 197. Thus, the Legislature has met that minimal burden here under *Berger*.

---

[2] That is also why Plaintiff's suggestion that the Legislature does not have a "per se right" to intervene under *Berger*, Dkt.24 at 2, misses the mark. Plaintiff's further suggestion that the Legislature is "effectively in control" of members of WEC is risible. *Id.* at 3. While certain legislative leaders play an important role in appointing WEC Commissioners, they have no authority to control WEC's actions after such appointment. For example, the Legislature could not require WEC to make the *Luft* arguments that WEC is unwilling to make in this case, nor could the Legislature require WEC to stop its practice of inexplicably refusing to defend, or dropping its defense of, duly enacted statutes when WEC is sued. *See infra* p.12.

The Seventh Circuit has addressed this issue in closely analogous circumstances. In *Democratic National Committee v. Bostelmann*, 977 F.3d 639 (7th Cir. 2020), the Seventh Circuit was considering an emergency appeal from the Legislature that sought to overturn a preliminary injunction against certain state election laws, and the Seventh Circuit ultimately certified to the Wisconsin Supreme Court the question of whether the Legislature had the authority to speak on behalf of the State in defense of state law, in a case where WEC was the named defendant. The Wisconsin Supreme Court answered the question in *Democratic National Committee v. Bostelmann*, 949 N.W.2d 423 (Wis. 2020), holding that Section 803.09(2m) "unmistakably grants the Legislature an interest in defending the validity of state law when challenged in court," without anywhere conditioning that authoritative interpretation on the *absence* of an executive-branch official also defending the law. *Id.* at 426. The Seventh Circuit then honored that decision in full by allowing the Legislature to appear on behalf of the State in federal court. 977 F.3d at 641. WEC attempts to ignore this history by citing the *dissent* in *Bostelmann*, WEC.Opp.19–20, but a "dissenting opinion is generally not the best source of legal advice on how to comply with the majority opinion," *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 230 (2023).

Even if this Court concluded that a more searching lack-of-adequacy inquiry were required, the Legislature still satisfies this element. As in *Liebert*, 345 F.R.D. 169, the Legislature intends to pursue meritorious arguments in support of a state statute that WEC has chosen not to present—namely, its argument based on *Luft*.

Mot.19–20.  WEC misrepresents the Legislature as merely criticizing WEC for failing to cite *Luft*.  WEC.Opp.21.  But the Legislature's position is that *Luft* fundamentally changes the applicable *Anderson/Burdick* framework and makes Plaintiff's burden heavier (indeed, impossible) to carry.  Mot.19–20.  WEC, for its part, just rests on the *Anderson/Burdick* standard, pre-*Luft*.  Dkt.14 at 10–11, 19–20.  Additionally, as the Legislature explained, WEC's erratic history of defending Wisconsin law, including through appeal, also establishes the inadequacy of its representation here.  Mot.20–21.  Remarkably, WEC offers no explanation at all for why it only sometimes chooses not to defend the election laws based upon the assertion that its role is to solely administer (not defend) such laws, *see, e.g.*, LeRoy Decl. Exs.B–C, but otherwise does defend other election laws in materially indistinguishable circumstances.  All WEC can muster is the assertion that this "say[s] nothing about an adequate defense at the case at hand," WEC.Opp.21, but that is just a tacit admission that even WEC cannot reconcile its position as to when it will and will not defend state election laws.

II.     **The Court Should Grant The Legislature Permissive Intervention Under Rule 24(b)(1)(B), Like The Court In *Liebert*, Which Would Avoid The Constitutional Issues That WEC Raises**

A. This Court can also grant permissive intervention under Rule 24(b)(1)(B).  The Legislature meets all factors for permissive intervention.  Mot.22–24; Fed. R. Civ. P. 24(b)(1).  The Legislature's Motion is timely, and its proposed Answer asserts defenses that share common questions of law with the main action.  Fed. R. Civ. P. 24(b)(1); *see* Dkt.19.  In exercising its "wholly discretionary" authority, the Court may consider federal-state comity and the State's choice of who will "defend its sovereign interests in federal court."  *Berger*, 597 U.S. at 192–93 (citation omitted); *see Liebert*,

- 12 -

345 F.R.D. at 172. The Legislature's participation is essential to provide full adversarial briefing. Mot.11–24. Nor would permissive intervention pose practical difficulties, because as *Berger* explained, "federal courts routinely handle cases involving multiple officials sometimes represented by different attorneys taking different positions" and "[w]hatever additional burdens adding the legislative leaders to this case may pose, those burdens [will] fall well within the bounds of everyday case management." *Id.* at 199–200 (citations omitted). And none of the existing parties "will be unfairly prejudiced by the legislature's presence" because the Legislature sought to intervene at the earliest stages, disclosed its intent in its May 8, 2026 letter, and will "cooperate with the existing parties and abide by [any] scheduling order." *Liebert*, 345 F.R.D. at 172; *see* Dkt.13.

B. WEC opposes the Legislature's request for permissive intervention on two grounds. First, that the Legislature appearing even via permissive intervention in this federal case to defend state law would violate the Wisconsin Constitution, which, somehow, precludes this Court from permitting the Legislature to intervene. WEC.Opp.4–5. Second, that the Legislature's presence here would allegedly complicate and delay this case. WEC.Opp.22–23. Both arguments are wrong.

*First*, while WEC argues that even the Legislature's permissive intervention violates the Wisconsin Constitution, WEC.Opp.4–5, this Court granting the Legislature permissive intervention under Rule 24(b) renders this argument irrelevant. This Court granting the Legislature permissive intervention has nothing to do with the Wisconsin Constitution because the authority under which this Court

would be acting is grounded in Rule 24, the Rules Enabling Act, 28 U.S.C. §§ 2071–77, and Article III of the U.S. Constitution. Federal courts have wide discretion to grant permissive intervention upon a showing that a party has a "claim or defense that shares with the main action a common question of law or fact" and "timely" intervened. Rule 24(b); *see Liebert*, 345 F.R.D. at 171. Thus, even if Wisconsin courts were to hold that the Wisconsin Constitution limits Wisconsin courts' authority to grant permissive intervention to the Legislature (itself a meritless position[3]) that would not impact this Court's federal authority, including in light of the U.S. Constitution's Supremacy Clause. U.S. Const. art. VI.

Judge Peterson addressed the same situation in *Liebert*. There, the Legislature moved to intervene permissively and as a matter of right. *Liebert*, 345 F.R.D. at 171. WEC opposed, including by arguing that Section 803.09(2m) violated the Wisconsin Constitution. *Id*. at 171–72. *Liebert* granted permissive intervention to the Legislature, given that "[i]t makes sense to allow the legislature to participate in the litigation in light of the significant differences between the legislature's and other defendants' arguments," while appropriately declining to address at all the Attorney General's state-constitutional arguments, given their irrelevance to the federal permissive-intervention analysis. *Id*. In its Opposition here, WEC attempts

---

[3] In fact, Wisconsin courts have wide discretion under the Wisconsin Constitution to permit parties to intervene because they have the "duty to say what the law is," *Tetra Tech EC, Inc. v. Wis. Dep't of Revenue*, 914 N.W.2d 21, 45 (Wis. 2018) (citation omitted), and permissive intervention is part of a court's exercise of that responsibility, allowing it to decide the case by "involving as many apparently concerned persons as is compatible with efficiency and due process," *Bilder v. Delavan Twp.*, 334 N.W.2d 252, 547 (Wis. 1983) (citation omitted).

to distinguish *Liebert* in a single footnote, stating only that *Liebert* was decided before *Evers I* and *Kaul* and so it "did not decide whether intervention would violate Wisconsin's separation of powers." WEC.Opp.14 n.5. While *Evers I* and *Kaul* do not support WEC's argument that Section 803.09(2m) violates the Wisconsin Constitution, *supra* pp.7–10, this claim is irrelevant for permissive intervention, as explained immediately above, *see supra* pp.13–14.

*Second*, WEC makes only a brief argument that granting the Legislature permissive intervention would "complicate and delay this case," WEC.Opp.22, but this too is wrong. As *Berger* explained, "federal courts routinely handle cases involving multiple officials sometimes represented by different attorneys taking different positions," and "[w]hatever additional burdens adding the legislative leaders to [a] case may pose, those burdens fall well within the bounds of everyday case management." 597 U.S. at 199–200. WEC's Opposition ignores this directly on-point instruction from *Berger* and identifies no historical example in which the Legislature's frequent participation as an intervenor in defense of state law has "complicat[ed] [or] delay[ed]" any case. *See, e.g.*, WEC.Opp.3 ("Legislature [has] intervened in a multitude of cases, particularly election-related cases"). Consistent with *Berger*, and just like in *Liebert*, permitting the Legislature to intervene will not delay or complicate this case.

## CONCLUSION

This Court should grant the Legislature's Motion to Intervene.

Dated: June 11, 2026.

<div style="margin-left:50%">

Respectfully submitted,

/s/ *Misha Tseytlin*
MISHA TSEYTLIN
*Counsel of Record*
(State Bar No. 1102199)
KEVIN M. LEROY
(State Bar No. 1105053)
TROUTMAN PEPPER LOCKE LLP
111 S. Wacker Dr., Suite 4100
Chicago, IL 60606
(608) 999-1240 (MT)
(312) 759-1938 (KL)
(312) 443-0336 (fax)
misha.tseytlin@troutman.com
kevin.leroy@troutman.com

*Counsel for the Wisconsin State Legislature*

</div>

**CERTIFICATE OF SERVICE**

I hereby certify that on the 11th day of June, 2026, a true and accurate copy of

the foregoing was served via the Court's CM/ECF system upon all counsel of record.

/s/ Misha Tseytlin
MISHA TSEYTLIN
TROUTMAN PEPPER LOCKE LLP
111 S. Wacker Dr., Suite 4100
Chicago, IL 60606
(608) 999-1240 (MT)
(312) 443-0336 (fax)
misha.tseytlin@troutman.com