# EXHIBIT A

**FILED**
**06-08-2021**
**CIRCUIT COURT**
**DANE COUNTY, WI**
**2021CV001314**
**Honorable Susan M. Crawford**
**Branch 1**

STATE OF WISCONSIN   CIRCUIT COURT   DANE COUNTY
BRANCH ___

JOSH KAUL, in his official capacity
as Attorney General, Wisconsin
Department of Justice
17 West Main Street
Madison, WI 53703

WISCONSIN DEPARTMENT
OF JUSTICE,
17 West Main Street
Madison, WI 53703

TONY EVERS, in his official capacity
as Governor
115 East, State Capitol,
Madison, WI 53702

JOEL BRENNAN, in his official capacity
as Secretary of the Department of
Administration
101 East Wilson, 10th Floor
Madison, WI 53703

      Plaintiffs,

      v.

WISCONSIN STATE LEGISLATURE
Wisconsin State Capitol
2 East Main Street
Madison, WI 53703

WISCONSIN STATE LEGISLATURE
JOINT COMMITTEE ON FINANCE
Wisconsin State Capitol
2 East Main Street
Madison, WI 53703

Case No. 2021-CV-_____
Declaratory Judgment:  30701
Injunctive Relief:  30704

CHRIS KAPENGA, in his official capacity
as President of the Wisconsin Senate
Wisconsin State Capitol, Room 220 South
Madison, WI 53707

DEVIN LEMAHIEU, in his official
capacity as the Majority Leader of the
Wisconsin Senate,
Wisconsin State Capitol, Room 211 South
Madison, WI 53707

ROBIN VOS, in his official capacity as
the Speaker of the Wisconsin Assembly
Wisconsin State Capitol, Room 217 West
Madison, WI 53708

JIM STEINEKE, in his official capacity
as the Majority Leader of the Wisconsin
Assembly
Wisconsin State Capitol, Room 115 West
Madison, WI 53708

HOWARD L. MARKLEIN, in his official
capacity as a Co-Chair of the Joint
Committee on Finance
Wisconsin State Capitol, Room 316 East
Madison, WI 53707

MARK BORN, in his official capacity as a
Co-Chair of the Joint Committee on
Finance
Wisconsin State Capitol, Room 308 East
Madison, WI 53708

DUEY STROEBEL, in his official
capacity as a Vice Chair of the Joint
Committee on Finance
Wisconsin State Capitol, Room 18 South
Madison, WI 53707

And

AMY LOUDENBECK, in her official
capacity as a Vice Chair of the Joint
Committee on Finance,
Wisconsin State Capitol, Room 304 East
Madison, WI 53708

      Defendants.

---

## SUMMONS

---

THE STATE OF WISCONSIN,

To each person named above as a Defendant:

You are hereby notified that the Plaintiffs named above have filed a lawsuit or other legal action against you. The Complaint, which is attached, states the nature and basis of the legal action.

Within 45 days of receiving this Summons, you must respond with a written answer, as that term is used in chapter 802 of the Wisconsin Statutes, to the Complaint. The Court may reject or disregard an answer that does not follow the requirements of the statutes. The answer must be sent or delivered to the Court, whose address is Dane County Clerk of Courts, Dane County Courthouse, 215 South Hamilton St., Madison, Wisconsin 53703, and to Assistant Attorney General Hannah S. Jurss, Plaintiffs' attorney, whose address is Wisconsin Department of Justice, Special Litigation and Appeals

Unit, 17 West Main Street, Post Office Box 7857, Madison, Wisconsin 53707-7857.  You may have an attorney help or represent you.

If you do not provide a proper answer within 45 days, the Court may grant judgment against you for the award of money or other legal action requested in the Complaint, and you may lose your right to object to anything that is or may be incorrect in the Complaint.  A judgment may be enforced as provided by law.  A judgment awarding money may become a lien against any real estate you own now or in the future, and may also be enforced by garnishment or seizure of property.

Dated this 8th day of June 2021.

Respectfully submitted,

JOSHUA L. KAUL
Attorney General of Wisconsin

Electronically signed by:

s/ Hannah S. Jurss
HANNAH S. JURSS
Assistant Attorney General
State Bar #1081221

COLIN T. ROTH
Assistant Attorney General
State Bar #1103985

THOMAS C. BELLAVIA
Assistant Attorney General
State Bar #1030182

Attorneys for Plaintiffs

Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 266-8101 (HSJ)
(608) 264-6219 (CTR)
(608) 266-8690 (TCB)
(608) 294-2907 (Fax)
jursshs@doj.state.wi.us
rothct@doj.state.wi.us
bellaviatc@doj.state.wi.us

**FILED**
**06-08-2021**
**CIRCUIT COURT**
**DANE COUNTY, WI**
**2021CV001314**
**Honorable Susan M.**
**Crawford**
**Branch 1**

STATE OF WISCONSIN    CIRCUIT COURT    DANE COUNTY
BRANCH ___

---

JOSH KAUL, IN HIS OFFICIAL
CAPACITY AS ATTORNEY GENERAL,
WISCONSIN DEPARTMENT OF
JUSTICE, TONY EVERS, IN HIS
OFFICIAL CAPACITY AS GOVERNOR,
AND JOEL BRENNAN, IN HIS
OFFICIAL CAPACITY AS SECRETARY
OF THE DEPARTMENT OF
ADMINISTRATION,

    Plaintiffs,

    v.

WISCONSIN STATE LEGISLATURE,
WISCONSIN STATE LEGISLATURE
JOINT COMMITTEE ON FINANCE,
CHRIS KAPENGA, IN HIS OFFICIAL
CAPACITY AS PRESIDENT OF THE
WISCONSIN SENATE, DEVIN
LEMAHIEU, IN HIS OFFICIAL
CAPACITY AS THE MAJORITY
LEADER OF THE WISCONSIN
SENATE, ROBIN VOS IN HIS
OFFICIAL CAPACITY AS THE
SPEAKER OF THE WISCONSIN
ASSEMBLY, JIM STEINEKE, IN HIS
OFFICIAL CAPACITY AS THE
MAJORITY LEADER OF THE
WISCONSIN ASSEMBLY, HOWARD L.
MARKLEIN, IN HIS OFFICIAL
CAPACITY AS A CO-CHAIR OF THE
JOINT COMMITTEE ON FINANCE,
MARK BORN, IN HIS OFFICIAL
CAPACITY AS A CO-CHAIR OF THE
JOINT COMMITTEE ON FINANCE,

Case No. 2021-CV-_____
Declaratory Judgment:  30701
Injunctive Relief:  30704

DUEY STROEBEL, IN HIS OFFICIAL
CAPACITY AS A VICE CHAIR OF THE
JOINT COMMITTEE ON FINANCE,
AND AMY LOUDENBECK, IN HER
OFFICIAL CAPACITY AS A VICE
CHAIR OF THE JOINT COMMITTEE
ON FINANCE,

     Defendants.

---

## COMPLAINT

---

## INTRODUCTION

1.     Through 2017 Wis. Act 369 ("Act 369"), the Wisconsin Legislature granted to the legislative branch a fundamentally unconstitutional role in the executive function of resolving plaintiff-side civil litigation involving the State. Under Wisconsin's separation of powers doctrine, the legislative branch makes the laws and the executive branch executes them. One way the executive branch does so is by prosecuting civil litigation on behalf of the State, much like how criminal prosecutors pursue violations of Wisconsin's criminal laws. In both plaintiff-side civil litigation and criminal prosecutions, the decision to initiate cases and end them through negotiated resolutions—whether plea bargains or settlements—are quintessential executive functions.

2.     Act 369 transferred a key piece of that executive function to the legislative branch, after the election of the new Attorney General and Governor

2

but before they took office. It did so by amending Wis. Stat. § 165.08 to provide that the Wisconsin Department of Justice (the "Department")—led by the Attorney General, an elected constitutional executive officer—cannot settle most plaintiff-side civil actions it prosecutes without first obtaining consent from the Legislature's Joint Committee on Finance (JCF).

3.     This case challenges the constitutionality of that transfer of executive power to the legislative branch as applied to two categories of plaintiff-side civil actions. Specifically, Act 369's amendment to Wis. Stat. § 165.08 categorically violates the constitutional separation of powers as applied to: (1) civil enforcement actions brought under statutes that the Attorney General is charged with enforcing, such as environmental or consumer protection laws; and (2) civil actions the Department prosecutes on behalf of executive-branch agencies relating to the administration of the statutory programs they execute, such as common law tort and breach of contract actions.

4.     Because settling these plaintiff-side civil cases represents a quintessential executive function in which the legislative branch has no legitimate institutional interest, transferring this executive authority to JCF violates the constitutional separation of powers—the "central bulwark of our liberty." *Serv. Emps. Int'l Union, Local 1 v. Vos*, 2020 WI 67, ¶ 30, 393 Wis. 2d 38, 946 N.W.2d 35 ("*SEIU*").

5.      The targeted, as-applied nature of this challenge means that the Wisconsin Supreme Court's decision in *SEIU* did not resolve the issues presented here. There, the court declined to grant facial relief invalidating *all* the litigation settlement restrictions imposed by Act 369. It reasoned that the legislative branch could have a legitimate institutional interest in some cases—specifically, where the Department represents a legislative entity in litigation, the Legislature is the principal authorizing the Department's representation, or defense-side cases "involv[ing] requests for the state to pay money to another party." *Id.* ¶¶ 69, 71–72. The court implied that Act 369 may violate the separation of powers as applied to categories of cases where these interests do not exist or are insignificant. *Id.* ¶ 73.

6.      Plaintiff-side civil actions prosecuted by the Department in the two categories at issue here do not implicate those legislative interests.

7.      Because settling the plaintiff-side civil actions at issue here is an executive power, transferring that power from the executive branch to JCF violates the constitutional separation of powers. Plaintiffs ask this Court to declare that this revision to Wis. Stat. § 165.08 by Act 369 is unconstitutional as applied to the two categories of civil actions described more fully below.

4

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over the subject matter of this dispute pursuant to Article VII, Section 8 of the Wisconsin Constitution and Wis. Stat. § 753.03, which provide for subject-matter jurisdiction over all civil matters within this State.

9.      Defendants, as State officers, are subject to this Court's jurisdiction. *See Lister v. Bd. of Regents of Univ. of Wis. Sys.*, 72 Wis. 2d 282, 303, 240 N.W.2d 610 (1976).

10.      Venue is proper in Dane County because it is the county where the claims arose. Wis. Stat. § 801.50(2)(a).

## PARTIES

11.      Plaintiff Josh Kaul is the Wisconsin Attorney General, the elected constitutional officer under Wis. Const. art. VI, § 1, who directs the activities of the Wisconsin Department of Justice. *See* Wis. Stat. § 15.25. The Act 369 provisions at issue here restrict the Attorney General's ability to resolve plaintiff-side civil actions prosecuted by the Department on behalf of the State or state entities. He sues in his official capacity as the Attorney General and director and supervisor of the Department.

5

12. Plaintiff Wisconsin Department of Justice[1] is the executive agency charged with prosecuting civil enforcement actions on behalf of the State and plaintiff-side civil actions upon the request of the heads of executive branch state agencies. The Act 369 provision at issue here restricts the Department's ability to resolve litigation in such cases. The Department is located at 17 West Main Street, Madison, WI 53703.

13. Plaintiff Tony Evers is the Governor of Wisconsin, the elected constitutional officer under Wis. Const. art. V, § 1. The Act 369 provision at issue here altered the Governor's executive authority regarding the settlement of cases prosecuted by the Department.

14. Plaintiff Joel Brennan is the Secretary of the Department of Administration (DOA) and directs its activities. *See, e.g.*, Wis. Stat. § 16.004. The Act 369 provisions at issue here restrict Secretary Brennan's ability to bring and resolve plaintiff-side civil actions prosecuted by the Department on behalf of DOA. He sues in his official capacity.

---

[1] All subsequent references to the "Department" in this Complaint refer to both the Department and the Attorney General, in his official capacity as an elected constitutional officer and director and supervisor of the Department.

15.     Defendant Wisconsin State Legislature is vested with the legislative power of the state by Wis. Const. art. IV, § 1. The Legislature assembles at the Wisconsin State Capitol, 2 East Main Street, Madison, WI 53703.

16.     Defendant Wisconsin State Legislature Joint Committee on Finance is a standing committee of the Wisconsin Legislature. *See* Wis. Stat. § 13.09. Act 369 empowers JCF to approve or reject certain case resolutions proposed by the Department.

17.     Defendant Chris Kapenga is the President of the Wisconsin Senate. He is sued in his official capacity.

18.     Defendant Devin LeMahieu is the Majority Leader of the Wisconsin Senate. He is sued in his official capacity.

19.     Defendant Robin Vos is the Speaker of the Wisconsin Assembly. He is sued in his official capacity.

20.     Defendant Jim Steineke is the Majority Leader of the Wisconsin Assembly. He is sued in his official capacity.

21.     Defendant Senator Howard L. Marklein is a Co-Chair of JCF. He is sued in his official capacity.

22.     Defendant Representative Mark Born is a Co-Chair of JCF. He is sued in his official capacity.

23.    Defendant Senator Duey Stroebel is a Vice-Chair of JCF. He is sued in his official capacity.

24.    Defendant Representative Amy Loudenbeck is a Vice-Chair of JCF. She is sued in her official capacity.

25.    Compliance with Wis. Stat. § 893.825 will occur with service of the Complaint on the above defendants.

## FACTUAL ALLEGATIONS

### I.    The Department prosecutes various civil actions on the State's behalf.

26.    This matter concerns two categories of civil actions that the Department prosecutes on behalf of the State and state executive agencies.

27.    First, the Department prosecutes civil enforcement actions in which Wisconsin statutes authorize the Department to exercise its own initiative and discretion in deciding whether to file the action. These cases involve enforcement of consumer protection statutes, environmental protection statutes, and the like.

28.    Second, the Department prosecutes civil actions on behalf of executive-branch agencies relating to the administration of the statutory programs they execute, such as common law tort and breach of contract actions.

8

29.     Act 369's amendment to Wis. Stat. § 165.08 gives the legislative branch—acting through JCF—power over whether and how civil actions prosecuted by the Department in these two categories may be resolved through a negotiated settlement.[2]

### A.     The Department prosecutes civil enforcement cases on behalf of the State.

30.     The Department is charged with enforcing state statutes in areas including consumer protection, environmental protection, and other areas of public interest. To enforce these civil regulatory statutes, the Department has statutory authority to initiate civil enforcement actions at its discretion.

### 1.     Civil regulatory statutes that the Attorney General or Department is charged with enforcing.

31.     The     Department     prosecutes     violations     of     Wisconsin's environmental laws. *See* Wis. Stat. §§ 30.03, 299.95. These statutes designate the Department as the executive agency responsible for enforcing Wisconsin's environmental protection laws through civil litigation.

32.     The Department prosecutes environmental protection actions against people or businesses who violate chapters 30–31 of the Wisconsin Statutes (which regulate Wisconsin's navigable waters), chapter 281 (which

---

[2] For the sake of brevity, this Complaint will refer to the "compromise[ ] or discontinu[ance]" of a "civil action" under Wis. Stat. § 165.08 as "settling" or a "settlement." The terms "settling" and "settlement" as used here do not refer to any other kind of negotiated resolution of contemplated or pending litigation.

9

sets water quality and sewage disposal standards), chapter 283 (which regulates pollution discharge into the State's water supply), chapter 285 (which regulates air pollution and air quality), chapter 289 (which regulates solid waste facilities), chapter 291 (which regulates hazardous waste management), chapter 293 (which regulates nonferrous metallic mining), chapter 295 (which regulates nonmetallic mining, oil and gas, and ferrous metallic mining), and chapter 299 (which contains other miscellaneous environmental regulations).

33.     These environmental statutes give the Department various remedial tools, including injunctive-type relief (for example, orders to cease discharging pollutants or to engage in affirmative remediation or restoration efforts), monetary forfeitures, cost recovery for investigating and prosecuting agencies, and court-imposed surcharges.

34.     The Department also prosecutes violations of Wisconsin's consumer protection laws. *See* Wis. Stat. § 165.25(4)(ar). This statute designates the Department as the executive agency responsible for enforcing Wisconsin's consumer protection laws through civil litigation.

35.     Consumer protection actions prosecuted by the Department cover areas such as fraudulent representations (Wis. Stat. § 100.18), fraudulent drug advertising (Wis. Stat. § 100.182), unfair methods of business competition and trade practices (Wis. Stat. § 100.20), false statements related to

10

telecommunications services (Wis. Stat. § 100.207), selling goods at excessive prices during a declared economic emergency (Wis. Stat. § 100.305), and many others.[3]

36.    These consumer protection statutes provide the Department with several remedial tools, including injunctive relief (for instance, orders directing the cessation of unlawful marketing or sales practices), monetary forfeitures, restitution to injured parties, and cost recovery for investigating and prosecuting agencies.

37.    The Department similarly represents the State as a plaintiff to prosecute violations of Wisconsin's financial regulatory laws. *See* Wis. Stat. §§ 202.18(1), 220.04(10), 220.12, 221.1005, 224.06(7), 426.104(1)(a), 426.301(1). These statutes designate the Department as the executive agency responsible for enforcing Wisconsin's financial regulatory laws through civil litigation.

38.    These financial regulatory laws, enforceable by the Department, regulate licensed lenders under Wis. Stat. § 138.09; insurance premium finance companies under Wis. Stat. § 138.12; payday loans under Wis. Stat. § 138.14; charitable solicitations under chapter 202 of the Wisconsin Statutes; check sales under chapter 217; consumer sales financing under chapter 218;

---

[3] *See also* Wis. Stat. §§ 91.68, 93.73, 100.171, 100.173, 100.174, 100.175, 100.177, 100.178, 100.185, 100.195, 100.205, 100.209, 100.21, 100.28, 100.37, 100.42, 100.50, 100.51, 100.55, 846.45; Wis. Stat. chs. 126, 136, 704, 707, and 779.

11

banking regulations under chapters 220 through 224; and consumer transaction regulations under chapters 421 through 427 and 429.

39.     These financial regulatory statutes provide for various remedies, including injunctive-type relief, monetary forfeitures (sometimes called "fines" or "penalties"), rescission of unlawful acts, appointment of receivers, bank dissolutions, and cost recovery for investigating and prosecuting agencies.

40.     The Department represents the State as a plaintiff to prosecute civil Medicaid fraud cases under Wis. Stat. §§ 49.485, 49.49, and 20.931. These statutes designate the Department as the executive agency responsible for enforcing prohibitions on false claims for medical assistance and other medical assistance offenses.

41.     Through these civil Medicaid fraud actions, the Department may obtain monetary forfeitures, damages for injured parties (including the Wisconsin Department of Health Services), and cost recovery for investigating and prosecuting agencies.

42.     Other civil enforcement actions the Department may prosecute include alcoholic beverages law violations (Wis. Stat. § 125.145), beverage, cigarette, and tobacco tax law violations (Wis. Stat. §§ 139.26, 139.45, 139.86, 995.10, 995.12), burial site preservation actions (Wis. Stat. § 157.70(7)), enforcement of charitable and curative institution regulations (Wis. Stat. § 46.16(7)), regulation of condemnation authorities (Wis. Stat. § 32.26), the

12

dissolution and liquidation of cooperatives (Wis. Stat. §§ 185.72–73), credit union charter revocations (Wis. Stat. § 186.235), endurance contest restrictions (Wis. Stat. § 175.15), restraints on foreign limited partnerships (Wis. Stat. § 179.89), franchise investment law violations (Wis. Stat. § 553.54), hospital regulation violations (Wis. Stat. § 50.39), enforcement of insurance laws (Wis. Stat. § 601.12(2)), insurance license fee or tax actions (Wis. Stat. § 76.68), enforcement of insurance policyholder rights (Wis. Stat. § 601.71), unlawful prize forfeitures (Wis. Stat. § 945.10), violation of medical practice regulations (Wis. Stat. § 448.11), migrant labor camp regulations (Wis. Stat. § 103.92), mining reclamation act violations (Wis. Stat. § 293.87), motion picture exhibition regulations (Wis. Stat. § 134.45), motor vehicle fuel tax violations (Wis. Stat. § 78.81), motor vehicle rustproofing warranty regulations (Wis. Stat. § 100.205), motor vehicle dealer, salesperson, and sales finance company regulations (Wis. Stat. § 218.0162), natural area heritage regulations (Wis. Stat. § 23.29), genetically engineered organism release notice requirements (Wis. Stat. § 146.60), public nuisance violations (Wis. Stat. § 823.02), actions on official bonds (Wis. Stat. § 19.015), oil inspection regulations (Wis. Stat. § 168.17), open meetings law violations (Wis. Stat. § 19.97), public records law violations (Wis. Stat. § 19.37), public utility and telecommunication provider regulations (Wis. Stat. § 196.44), quo warranto actions (Wis. Stat. § 784.04), racing and on-track pari-mutuel wagering

13

regulations (Wis. Stat. § 562.125), railroad and water carrier regulations (Wis. Stat. § 195.07), savings institution incorporation or license revocations (Wis. Stat. §§ 215.02–03), secret rebate violations (Wis. Stat. § 133.05), recruitment of strikebreaker violations (Wis. Stat. § 103.545), teacher discrimination violations (Wis. Stat. § 118.20), unarmed combat sports regulations (Wis. Stat. § 444.16), unclaimed property regulations (Wis. Stat. § 177.32), and utility tax nonpayment (Wis. Stat. § 76.14).

43.    These statutes provide for remedies available to the Department on the State's behalf, including injunctive-type relief and forfeitures.

44.    One example of the Department's myriad civil enforcement prosecutions is *State of Wisconsin v. The Mandatory Poster Agency, Inc., and Steven J. Fata*, No. 13-CX-2 and 2A (Wis. Cir. Ct. Dane Cty.), a past consumer protection prosecution where the Department asserted claims for fraudulent misrepresentation under Wis. Stat. § 100.18(1). (*See* Ex. A.) The matter resolved in a consent judgment mid-trial. (Ex. B.) Another example of the Department's civil enforcement prosecutions is *State of Wisconsin v. Williams*, No. 20-CX-3 (Wis. Cir. Ct. Chippewa Cty.), a current environmental protection case asserting claims related to an unlawful dam under Wis. Stat. § 31.25. (*See* Ex. C). The *Williams* matter is set for trial on November 9, 2021.

14

### 2. How civil enforcement cases originate and how the Department resolves them.

45. Civil enforcement cases prosecuted by the Department typically originate in referrals from state agencies, including the Department of Natural Resources, the Department of Agriculture, Trade, and Consumer Protection, and the Department of Financial Institutions. Some enforcement matters originate in the Department and involve no agency referral.

46. In all such cases, the Department must decide whether to initiate an enforcement action. Just like criminal prosecutors who evaluate a potential criminal prosecution, the Department performs the executive task of considering the strength of the potential civil prosecution, the gravity of the alleged harms, the Department's available resources, and the overall public interest that prosecution would serve.

47. If the Department decides to pursue litigation and file a civil enforcement action, it also exercises its executive judgment and discretion in deciding when and how to resolve the case. The Department must consider on an ongoing basis whether the public interest favors litigation through final judgment or a settlement. Litigation may reveal weaknesses in an enforcement action that increase the risk of an adverse final judgment; the Department may decide that those risks should be avoided through a settlement. Or the

15

defendant may decide that more litigation is not in its best interest and offer to settle the matter on terms favorable to the State.

48. As part of this calculus, the Department must also exercise executive judgment and discretion in considering the impact of pursuing a case to a litigated judgment on the resources of the Department and referring agencies. The Department has limited resources to prosecute violations of, for instance, the State's consumer and environmental protection laws. Each enforcement action entails a cost in terms of the resources required to investigate and, if necessary, litigate the action. Continuing to litigate against one defendant may mean that another potential defendant cannot be pursued.

49. When the Department decides that a pending civil enforcement case should be resolved through settlement, determining the timing of the settlement—for example, whether quick action is needed—is an important component of the Department's executive discretion.

50. Litigation often reaches a critical moment best suited for consensual decision-making, a window of opportunity that may remain open only for a short time. The Department has recently litigated enforcement matters where a settlement window was open only for a day or less. And delayed settlements necessarily defer monetary (and other) relief that Wisconsin citizens would otherwise receive earlier.

16

51.     The Department performs a quintessentially executive function when it promptly and efficiently resolves cases in the public interest, ends ongoing violations of the law, and obtains relief for injured individuals and entities.

52.     The Department also must exercise its executive judgment and discretion when selecting the remedies in any settlement.

53.     Wisconsin law provides for many possible remedies in civil enforcement actions, including injunctive-type relief, forfeitures, rescission of unlawful acts, and cost recovery for investigating and prosecuting agencies.

54.     The Department must choose the measures that best address the violations at issue, accounting for the defendant's particular situation, the need for quick action, the time needed to effectuate a particular remedy, and the trade-offs of different solutions.

55.     Prior to Act 369, the Department used its executive discretion, in consultation with referring agencies, to bring and resolve civil enforcement claims in the State's best interests through either settlements or litigated judgments.

**B.     The Department prosecutes civil actions on behalf of state executive agencies related to their statutory programs.**

56.     The Department also prosecutes civil actions on behalf of executive-branch agencies relating to the administration of the statutory

17

programs they execute. *See* Wis. Stat. § 165.25(2) (heads of executive agencies may ask the Department to prosecute civil actions on their behalf in "any matter connected with . . . their departments").[4]

57.    These matters involve disputes between state agencies and individuals or entities with which the agencies interact, such as contractual disputes with vendors of goods and services or tort claims against individuals who have damaged state property managed by the agency.

58.    Current matters in which the Department is representing agency clients include referrals of tort claims by the Department of Transportation against drivers who have damaged state highway bridges managed by DOT and contractual disputes between the Department of Administration and other state agencies and vendors with whom the agencies have contracted.

59.    The Department and client agency exercise executive functions when deciding whether to bring and settle matters on behalf of the agency in this category.

60.    The Department and client agency must decide whether the public interest favors litigation and, if so and in consultation with the agency client, whether and when a settlement is appropriate and what remedies should be

---

[4] This Complaint does not address cases in which a legislative- or judicial-branch entity asks the Department to represent it in prosecuting a civil action on the entity's behalf.

18

obtained. In so doing, the Department and client agency consider how a particular resolution could affect agency operations that are connected with the specific dispute.

61.    The Department is currently considering referrals from other agencies of potential cases in this category, but the Department must preserve the confidentiality of those matters to maintain the attorney-client privilege and attorney work-product protections.

62.    A past example of a case in this category is *Board of Regents v. Adidas America*, No. 12-CV-2775 (Wis. Cir. Ct. Dane Cty.), a declaratory judgment claim on behalf of the Board of Regents regarding Adidas America's contractual obligations to provide benefits to workers producing goods for the University of Wisconsin. (Ex. D).

63.    Prior to Act 369, the Department and client agencies exercised executive discretion to bring and resolve such civil claims on the agencies' behalf in the State's best interest.

## II.    Act 369 transfers the executive function of resolving plaintiff-side civil actions to the legislative branch.

64.    Prior to Act 369, Wis. Stat. § 165.08 authorized the Department, in all plaintiff-side civil actions it prosecuted, to compromise or discontinue the action at the direction of the state official or entity that authorized the Department to initiate the case. *See* Wis. Stat. § 165.08 (2015–16). The

19

legislative branch had no power over that decision in any particular case. *See id.*

65.　　Now, after Act 369, the Department cannot settle many of these plaintiff-side cases without first obtaining consent from the legislative branch. Specifically, section 26 of Act 369 amended Wis. Stat. § 165.08 to provide that the Department now cannot "compromise or discontinu[e]" plaintiff-side "civil actions" without approval from JCF:

> Any civil action prosecuted by the department by direction of any officer, department, board, or commission, or any civil action prosecuted by the department on the initiative of the attorney general, or at the request of any individual may be compromised or discontinued . . . by submission of a proposed plan to the joint committee on finance for the approval of the committee. ***The compromise or discontinuance may occur only if the joint committee on finance approves the proposed plan***.

Wis. Stat. § 165.08.

66.　　This new veto power gives the legislative branch control not just over whether the Department can enter into settlements covered by Wis. Stat. § 165.08, but also over the timing and terms of any such settlement.

67.　　Since this JCF consent provision took effect, the Department has sought JCF approval for settlements in several cases, primarily in consumer and environmental protection actions that would obtain monetary and remedial relief on the State's behalf. JCF never convened to consider some of these cases; for others, it scheduled a hearing, but only weeks after the Department's request.

20

68.     JCF handles review of proposed settlements under Wis. Stat. § 165.08 using the procedural requirements of Wis. Stat. § 13.10. Those procedures include noticed public hearings (Wis. Stat. § 13.10(3)), roll call votes (Wis. Stat. § 13.10(4)), scheduling if and when the JCF's cochairs decide to meet (Wis. Stat. § 13.10(1)), and waiting periods after any vote (Wis. Stat. § 13.10(4)).

69.     The Department is currently handling dozens of matters in the two categories at issue here, where, depending on the course of the litigation, the settlement restrictions in Wis. Stat. § 165.08 will apply.

## CLAIMS FOR AS-APPLIED RELIEF

### COUNT I

**Wisconsin Stat. § 165.08's JCF consent provision violates the Wisconsin Constitution's separation of powers as applied to the compromise or discontinuance of civil enforcement cases the Department can prosecute on its own initiative.**

### (Declaratory and Injunctive Relief Sought)

70.     Plaintiffs reallege and incorporate herein by reference each and every foregoing paragraph of this Complaint as if set forth here in full.

71.     Any court of record in this State is authorized to enter a declaratory judgment declaring that a statutory provision, or an application of a statutory provision, is unconstitutional. *See* Wis. Stat. § 806.04(1). Further

21

relief based on a declaratory judgment, including injunctive relief, may also be granted whenever necessary or proper. *See* Wis. Stat. § 806.04(8).

## A.    Wisconsin separation of powers principles divide the areas of executive and legislative power.

72.    The Wisconsin Constitution separates the powers of state government into three branches: "The legislative power shall be vested in a senate and assembly," "[t]he executive power shall be vested in a governor," and "[t]he judicial power of this state shall be vested in a unified court system." Wis. Const. art. IV, § 1, art. V, § 1, art. VII, § 2.

73.    Each branch of government has exclusive core constitutional powers that reflect zones of authority upon which no other branch may intrude. *State v. Horn*, 226 Wis. 2d 637, 643, 594 N.W.2d 772 (1999); *League of Women Voters of Wis. v. Evers*, 2019 WI 75, ¶ 34, 387 Wis. 2d 511, 929 N.W.2d 209. When dealing with core powers, "any exercise of authority by another branch of government is unconstitutional." *Tetra Tech EC, Inc. v. DOR*, 2018 WI 75, ¶ 48, 382 Wis. 2d 496, 914 N.W.2d 21 (citation omitted).

74.    Relatedly, the constitutional separation of powers bars any part of the government from exercising authority that would create an improper concentration of power in a single branch. *Panzer v. Doyle*, 2004 WI 52, ¶ 52, 271 Wis. 2d 295, 680 N.W.2d 666; *see also Gabler v. Crime Victims Rights Bd.*, 2017 WI 67, ¶¶ 4–5, 376 Wis. 2d 147, 897 N.W.2d 384 (doctrine prevents the

22

concentration of power in the same hands). This anti-aggrandizement principle guards against the "danger[ ] of congressional usurpation of Executive Branch functions." *Bowsher v. Synar*, 478 U.S. 714, 727 (1986); *see also Mistretta v. United States*, 488 U.S. 361, 382 (1989) (noting instances when the court "invalidated attempts by Congress to exercise the responsibilities of other Branches"). The legislative branch therefore "cannot interfere with, or exercise any powers properly belonging to the executive department." *State ex rel. Warren v. Nusbaum*, 59 Wis. 2d 391, 448, 208 N.W.2d 780 (1973).

75.    "'Legislative power, as distinguished from executive power, is the authority to make laws, but not to enforce them.' Powers constitutionally vested in the legislature include the powers: 'to declare whether or not there shall be a law; to determine the general purpose or policy to be achieved by the law; [and] to fix the limits within which the law shall operate.'" *Koschkee v. Taylor*, 2019 WI 76, ¶ 11, 387 Wis. 2d 552, 929 N.W.2d 600 (alteration in original) (citations omitted). "Following enactment of laws, the legislature's constitutional role as originally designed is generally complete." *Wisconsin Legislature v. Palm,* 2020 WI 42, ¶ 182, 391 Wis. 2d 497, 942 N.W.2d 900 (Hagedorn, J., dissenting); *see also Bowsher*, 478 U.S. at 733–34 ("[O]nce Congress makes its choice in enacting legislation, its participation ends. Congress can thereafter control the execution of its enactment only indirectly—by passing new legislation." (citation omitted)).

76. Executive power, by comparison, is "power to execute or enforce the law as enacted." *SEIU*, 393 Wis. 2d 38, ¶ 1; *see also Myers v. United States*, 272 U.S. 52, 117 (1926) ("the power to execute the laws"). The essence of execution of the law thus is to put into effect a mandate prescribed in *previously enacted* legislation. *See SEIU*, 393 Wis. 2d 38, ¶ 95 ("The distinction between [legislative and executive power] has been described as the difference between the power to prescribe and the power to put something into effect.") This executive implementation of the legislative mandate includes interpreting the law and exercising executive judgment and discretion in applying and implementing it. *See id.* ¶ 96 (*citing Tetra Tech*, 382 Wis. 2d 496, ¶ 53); *see also Palm*, 391 Wis. 2d 497, ¶ 183 (Hagedorn, J., dissenting) ("The executive branch generally has broad authority to execute the laws, and to use judgment and discretion in so doing.").

77. In contrast to making general laws of prospective application—the core legislative function—the day-to-day application and enforcement of the law is squarely an executive function. *See SEIU*, 393 Wis. 2d 38, ¶ 96 (the legislative power to prescribe does not make the executive "a legislatively-controlled automaton"); *see also Palm*, 391 Wis. 2d 497, ¶ 218 (Hagedorn, J., dissenting) ("Our constitution's commitment to the separation of powers means the legislature should not, as a general matter, have a say in the executive branch's day-to-day application and execution of the laws. The legislature gets

24

to make the laws, not second guess the executive branch's judgment in the execution of those laws.") Allowing the legislative branch to "control the execution of the law itself" would "demote the executive branch to a wholly-owned subsidiary of the legislature." *SEIU*, 393 Wis. 2d 38, ¶ 107; *see also Palm*, 391 Wis. 2d 497, ¶ 218 (Hagedorn, J., dissenting) ("subjecting executive branch enforcement of enacted laws to a legislative veto . . . turns our constitutional structure on its very head.").

78.    Civil enforcement actions represent one type of state litigation that involves core executive functions in which the legislative branch has no constitutional role.

**B.    Wisconsin Stat. § 165.08's JCF consent provision unconstitutionally transfers an executive power to the legislative branch when applied to this category of cases.**

79.    Wis. Stat. § 165.08's JCF consent provision, as applied to the civil enforcement claims that the Department can commence on its own initiative described above in paragraphs 30 through 55, represents an unconstitutional legislative usurpation of executive power. That provision transfers the authority to resolve specific civil enforcement cases from the executive branch to the legislative branch.

80.    Specifically, Wis. Stat. § 165.08's JCF consent provision transfers from the executive to the legislative branch the executive powers, among others, of deciding (1) whether to resolve a particular civil enforcement action

25

through a settlement rather than a litigated final judgment; (2) the proper timing of civil enforcement settlements; and (3) the remedies contained in civil enforcement settlements.

81. The Legislature has no institutional interest in the compromise or discontinuance of specific civil enforcement claims in the categories described in paragraphs 30 through 55 above.

82. Those statutes charge the Attorney General and Department with enforcing the underlying laws through civil enforcement claims, and the Legislature is not the principal that authorizes the Department to represent the State. The State, not the Legislature, is the plaintiff. And because the State is the plaintiff in these civil enforcement cases, it obtains relief on behalf of the State.

83. The Department's authority to decide whether, when, and how to resolve civil enforcement actions is quintessentially executive in nature. Applying Wis. Stat. § 165.08's JCF consent provision to this category of actions allows a legislative committee to unconstitutionally usurp that executive power.[5]

---

[5] Apart from the JCF consent provision in Wis. Stat. § 165.08, different provisions in Act 369 require the approval of the Joint Committee on Legislative Organization (JCLO) if the Department seeks to enter into a settlement that concedes the unconstitutionality or other invalidity of a state statute. *See* Wis. Stat. §§ 165.08, 165.25(6). Plaintiffs do not believe that the Department could ever effectively concede

26

## COUNT II

**Wisconsin Stat. § 165.08's JCF consent provision violates the Wisconsin Constitution's separation of powers as applied to the compromise or discontinuance of civil actions the Department prosecutes on behalf of executive-branch agencies relating to the administration of the statutory programs they execute.**

### (Declaratory and Injunctive Relief Sought)

84. Plaintiffs reallege and incorporate herein by reference each and every foregoing paragraph of this Complaint as if set forth here in full.

85. Wisconsin Stat. § 165.08's JCF consent provision, as applied to civil actions described above in paragraphs 56 through 63 in which the Department prosecutes civil actions on behalf of executive-branch agencies relating to the administration of the statutory programs they execute represents an unconstitutional legislative usurpation of executive power. That provision transfers the executive power to resolve civil actions filed on behalf of executive state agencies from the executive branch to the legislative branch.

86. Specifically, Wis. Stat. § 165.08's JCF consent provision transfers from the executive to the legislative branch the executive powers, among others, of deciding (1) whether to resolve a particular civil action brought on a client agency's behalf through a settlement rather than a litigated final

---

the invalidity of state law as a plaintiff in these two categories of cases. But to the extent that could ever happen, the Complaint does not challenge the application of Wis. Stat. § 165.08 to any settlements that would seek to do so.

27

judgment; (2) the proper timing of those settlements; and (3) the remedies contained in those settlements. It can also compromise the client agency's ability to engage in the executive function of litigation by denying it confidentiality in its communications with its Department attorneys about potential case resolutions.

87.     The Legislature has no institutional interest in the compromise or discontinuance of common law claims described above in paragraphs 56 through 63 that the Department prosecutes on behalf of injured state executive agencies.

88.     A client agency, not the Legislature, is both the entity authorizing the Department to prosecute these cases and the plaintiff. And because client agencies are the plaintiffs bringing these claims, settlements in these cases obtain relief for those agencies.

89.     Therefore, when the Department prosecutes claims in this category on an agency's behalf, applying Wis. Stat. § 165.08's JCF consent provision allows a legislative committee to unconstitutionally usurp executive power.[6]

---

[6] Again, while Plaintiffs do not believe that settlements of these civil actions on behalf of state agencies could concede the invalidity of state law, this lawsuit does not challenge the application of Wis. Stat. § 165.08 to such settlements, assuming they could ever exist.

28

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully ask this Court to enter a judgment in their favor and against Defendants, consisting of:

(a)    A temporary injunction preventing enforcement of Wis. Stat. § 165.08's JCF consent provision as applied to settlements of the cases described in Counts I and II; and

(b)    A declaratory judgment pursuant to Wis. Stat. § 806.04, declaring that Wis. Stat. § 165.08's JCF consent provision is unconstitutional as applied to settlements of the cases described in Counts I and II; and

(c)    Any such other relief as the Court may deem just and proper.

Dated this 8th day of June 2021.

Respectfully submitted,

JOSHUA L. KAUL
Attorney General of Wisconsin

Electronically signed by:

s/ Hannah S. Jurss
HANNAH S. JURSS
Assistant Attorney General
State Bar #1081221

COLIN T. ROTH
Assistant Attorney General
State Bar #1103985

THOMAS C. BELLAVIA
Assistant Attorney General
State Bar #1030182

Attorneys for Plaintiffs

29

Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 266-8101 (HSJ)
(608) 264-6219 (CTR)
(608) 266-8690 (TCB)
(608) 294-2907 (Fax)
jursshs@doj.state.wi.us
rothct@doj.state.wi.us
bellaviatc@doj.state.wi.us

30