UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

AMERICANS FOR CITIZEN VOTING PAC,

Plaintiff,

Case No. 2:26-cv-786

v.

MEAGAN WOLFE, et al.,

Defendants.

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

WISCONSIN INSTITUTE FOR
LAW & LIBERTY

Lucas T. Vebber (#1067543)
Daniel P. Lennington (#1088694)
Nathalie E. Burmeister (#1126820)

1241 N. Franklin Place
Milwaukee, WI 53202
Phone: (414) 727-9455

lucas@will-law.org
dan@will-law.org
nathalie@will-law.org

*Attorneys for Plaintiff*

## TABLE OF CONTENTS

INTRODUCTION ....................................................................................................3

BACKGROUND ....................................................................................................4

A. Ballot Access in Wisconsin ....................................................................................................4

B. The Original Wisconsin Residency Requirements ....................................................................................................5

C. Wisconsin's Latest Attempt ....................................................................................................6

D. Plaintiff ....................................................................................................7

STATEMENT OF FACTS ....................................................................................................9

LEGAL STANDARD ....................................................................................................16

ARGUMENT ....................................................................................................16

I. Act 126's Residency Requirements Impose a Severe Burden on Core, Protected Political Speech That is Subject To Strict Scrutiny ....................................................................................................18

II. Act 126's Residency Requirements Are Not Narrowly Tailored to Serve Any Compelling State Interest ....................................................................................................22

III. Plaintiff Continues to Suffer Injury and Permanent Injunctive Relief is Warranted ....................................................................................................29

CONCLUSION ....................................................................................................30

## INTRODUCTION

The First Amendment prohibits the State of Wisconsin from categorically excluding an entire class of speakers from core political speech. This issue was settled by the Seventh Circuit and the Western District of Wisconsin more than two decades ago. But now, through 2025 Wisconsin Act 126 ("Act 126")[1], the State of Wisconsin has reimposed an in-state residency requirement on anyone who collects nomination signatures on behalf of candidates for public office, as well as anyone who collects signatures in support of a recall petition. Such requirements plainly violate the First Amendment and must be struck down.

Plaintiff Americans for Citizen Voting PAC ("ACV PAC") seeks to work with out-of-state residents to help collect nomination signatures on behalf of candidates it supports in Wisconsin and is directly harmed by Act 126. Indeed, the residency requirements imposed by Act 126 severely burden Plaintiff's First Amendment rights because Plaintiff wants to engage out-of-state residents to help Wisconsin candidates that it supports gather nomination signatures, but Act 126's residency requirements prevent Plaintiff from doing so, significantly limiting the pool of individuals and firms that Plaintiff may work with to advance its mission.

This issue is not unique. Both the Seventh Circuit and the Western District of Wisconsin have struck down practically identical residency requirements as violative of the First Amendment. *See Krislov v. Rednour*, 226 F.3d 851 (7th Cir. 2000), cert.

[1] Available at https://docs.legis.wisconsin.gov/2025/related/acts/126.

denied, 531 U.S. 1147 (2001); *Frami v. Ponto*, 255 F. Supp. 2d 962 (W.D. Wis. 2003). What's more, the material facts are undisputed, and controlling precedent compels the conclusion that Act 126's residency requirements are unconstitutional. Indeed, as explained in more detail below, Act 126's residency requirements impose a severe burden on core, protected political speech, that is not narrowly tailored to any compelling state interest.

Accordingly, Plaintiff is entitled to judgment as a matter of law and respectfully asks this Court to grant summary judgment in its favor, declare Act 126's residency requirements unconstitutional under the First and Fourteenth Amendments, and permanently enjoin Defendants from enforcing them.

## BACKGROUND

### A. Ballot Access in Wisconsin

To obtain ballot access in Wisconsin, candidates generally must—among other things—collect signatures on nomination papers from electors who reside within the jurisdiction or district of the position and/or office they seek. *See* Wis. Stat. §§ 8.10, 8.15, 8.20; Wis. Admin. Code § EL 2.05. The number of signatures each candidate must obtain varies by the office sought, but for some positions, the number of required signatures can be as high as 2,000 per candidate. *See* Wis. Stat. §§ 8.10(3) 8.15(6), 8.20(4).

As relevant to this lawsuit, the person responsible for circulating the signature pages must sign a "certification of a qualified circulator" at the bottom of each page of nomination signatures. Wis. Stat. §§ 8.10(3), 8.15(4)(a), 8.20(3). Between June 10,

2006, and March 26, 2026, a "qualified circulator" included out-of-state residents who would otherwise be eligible to vote in Wisconsin elections. *See* 2005 Wisconsin Act 451.[2] But under Act 126, only a "qualified elector of this state" may make such a certification, and therefore, only qualified *Wisconsin* electors may collect signatures for nomination papers. Wis. Stat. §§ 8.10(3), 8.15(4)(a), 8.20(3) (with the exception discussed *infra*, Part C), as amended by Act 126. Indeed, signatures on pages that are *not* circulated by a "qualified elector of this state" may not be counted. *E.g.,* Wis. Stat. § 9.10(2)(em)2, as amended by Act 126.

In addition to nomination papers, Act 126 likewise requires anyone circulating recall petitions to be "a qualified elector of this state." Wis. Stat. §§ 8.40(2)(b) (created by Act 126); 9.10(2)(em)2.

### B. The Original Wisconsin Residency Requirements

At the time *Krislov* was decided by the Seventh Circuit in the early 2000s, Wisconsin law also imposed a residency requirement on circulators which was substantially similar to Illinois' law. More specifically, the 2001 Wisconsin Statutes required anyone circulating nomination papers to "… reside[ ] within the district which the candidate named therein will represent …". Wis. Stat. § 8.15(4)(a) (2001).[3] That requirement was challenged in *Frami v. Ponto*, 255 F. Supp. 2d 962 (W.D. Wis. 2003), and there, the United States District Court for the Western District of

[2] Available at https://docs.legis.wisconsin.gov/2005/related/acts/451.

[3] Available at https://docs.legis.wisconsin.gov/2001/statutes/statutes/8/15.

Wisconsin concluded that the requirement was unconstitutional as a violation of the First Amendment.

As described *supra,* Part A, Wisconsin's residency requirements changed in the Spring of 2006, following the Western District of Wisconsin's decision in *Frami*. *See* 2005 Wisconsin Act 451.[4] Under the post-Act 451 framework, nomination papers and recall petitions could be circulated by any person who is eligible to vote in Wisconsin, or is a U.S. Citizen age 18 or older who, if he or she were a Wisconsin resident, would otherwise be eligible to vote in Wisconsin. *Id*. That framework stayed in place for decades, until Act 126 was signed into law earlier this year.

### C. Wisconsin's Latest Attempt

On March 27, 2026, Act 126 was signed into law. And as explained above, Act 126 reimplemented new residency requirements for nomination paper circulators after a couple-decade hiatus. Specifically, Act 126 amends state law to provide that, in order to circulate nomination papers for a candidate for public office, or to circulate a recall petition, the circulator must be eligible to vote in Wisconsin. To be eligible to vote in Wisconsin, such a circulator must be a U.S. Citizen, age 18 or older, and must have resided in Wisconsin for at least 28 consecutive days. Wis. Stat. § 6.02. Out-of-state residents whom Plaintiff may (and does) wish to work with in Wisconsin are excluded from this definition because they are not residents of Wisconsin.

Act 126 exempts circulators of candidates for the offices of President and Vice President from the Wisconsin residency requirement. *See* Wis. Stat. § 8.20(3), as

[4] *See supra*, n. 2.

amended by Act 126. So, Plaintiff *could* engage out-of-state residents to circulate those particular nomination papers once every four years, but not for any other offices.

Specifically, Act 126 amends Wis. Stat. §§ 8.10(3)(intro.) (regarding nomination papers for Wisconsin's nonpartisan spring elections), 8.15(4)(a) (regarding nomination papers for Wisconsin's partisan fall elections), 8.20(3) (regarding nomination papers for independent candidates), 8.40(2) (regarding petition circulator requirements), and 9.10(2)(em)2. (regarding recall petitions) to require that circulators must be a "qualified elector" of the State of Wisconsin (unless collecting signatures for President or Vice President, as just explained). Each of these residency requirement changes violates the First Amendment, as explained herein.

**D. Plaintiff**

Plaintiff Americans for Citizen Voting PAC ("ACV PAC") is a federal political action committee registered with the Federal Election Commission as a Hybrid PAC since December 27, 2023. Second Jacob Decl. ¶ 3. ACV PAC maintains its principal place of business in Fairfax, Virginia. Second Jacob Decl. ¶ 4. ACV PAC does not accept corporate contributions into its contribution account and is eligible to support candidates for state and federal office in the State of Wisconsin. Second Jacob Decl. ¶ 5.

ACV PAC's core mission is to promote election integrity by advocating for policies that ensure only United States citizens can vote in American elections, and

this mission includes supporting candidates who advance these goals. Second Jacob Decl. ¶ 6.

One way ACV PAC advances its mission is by engaging in independent expenditures to support candidates who are aligned with ACV PAC's goals. Second Jacob Decl. ¶ 7. Gathering nomination signatures for candidates for public office is another way in which ACV PAC advances its mission and supports those candidates. Second Jacob Decl. ¶ 8.

In the State of Wisconsin, ACV PAC seeks to make expenditures to hire out-of-state residents to help collect nomination signatures for candidates for public office that it supports. Second Jacob Decl. ¶ 9. During the Spring of 2026, ACV PAC wanted to work with out-of-state residents to collect nomination signatures on behalf of Wisconsin candidates during the signature-gathering period for the 2026 Partisan Primary, but the residency requirements imposed by Act 126 prohibited ACV PAC from doing so. Second Jacob Decl. ¶ 10. ACV PAC now seeks to advance its mission by helping candidates for public office that it supports in the State of Wisconsin gather nomination signatures, including during the next signature gathering period (for the Spring 2027 Election) which opens on December 1, 2026, and ends on January 5, 2027. Second Jacob Decl. ¶ 11.

The residency requirements imposed by Act 126 require ACV PAC to engage only with Wisconsin electors to accomplish its goals, significantly limiting the pool of individuals and firms ACV PAC can work and associate with in support of its mission. Second Jacob Decl. ¶¶ 12–13. As a result, Act 126 directly harms ACV PAC's ability

to advance its political beliefs, and to associate with candidates and supporters of its choosing. Second Jacob Decl. ¶¶ 14–15.

In furtherance of its mission and in anticipation of the possibility of a favorable decision in this case, ACV PAC has entered into a Petition Agreement with DRW Campaigns, Inc., to engage in signature gathering on nomination papers in support of Wisconsin state candidates for the Spring 2027 Election. Second Jacob Decl. ¶ 16. DRW Campaigns, Inc. is based in Michigan and regularly hires petition circulators from around the country who are not qualified electors in Wisconsin. Second Jacob Decl. ¶ 16. The signature-gathering services to be provided under ACV PAC's Petition Agreement with DRW Campaigns, Inc., for the gathering period commencing December 1, 2026, are contingent upon the issuance of an order enjoining Act 126. Second Jacob Decl. ¶ 17.

## STATEMENT OF FACTS

To obtain ballot access, candidates for Wisconsin public office generally must collect signatures on nomination papers from electors who reside within the jurisdiction or district of the position and/or office they seek. *See* Wis. Stat. §§ 8.10, 8.15, 8.20; Wis. Admin. Code § EL 2.05; Plaintiff's Statement of Proposed Material Facts, ¶ 1. The number of signatures each candidate must obtain varies by the office sought, but for some positions, the number of required signatures can be as high as 2,000 per candidate. *See* Wis. Stat. §§ 8.10(3) 8.15(6), 8.20(4); Plaintiff's Statement of Proposed Material Facts, ¶ 2.

2025 Wisconsin Act 126 ("Act 126") was signed into law by Governor Tony Evers on March 27, 2026, and published on March 28, 2026. *See* 2025 Wisconsin Act 126.[5] *See also* Dkt. 1-1:11, ¶ 6; 13, ¶ 21; Dkt. 30:2, ¶ 6; 5, ¶ 21; Plaintiff's Statement of Proposed Material Facts, ¶ 3.[6] Act 126 amends Wis. Stat. §§ 8.10(3)(intro.), 8.15(4)(a), 8.20(3), 8.40(2), and 9.10(2)(em)2. to require that any nomination paper and/or recall petition circulators be a "qualified elector of this state." *See* 2025 Wisconsin Act 126; Plaintiff's Statement of Proposed Material Facts, ¶ 4.

The only exception to the "qualified elector of this state" requirement imposed by Act 126 is with respect to presidential/vice-presidential nomination papers. *See* Wis. Stat. § 8.20(3), as amended by 2025 Wisconsin Act 126; Plaintiff's Statement of Proposed Material Facts, ¶ 5. Under Wis. Stat. § 6.02, a "qualified elector" of Wisconsin is a U.S. citizen, age 18 or older, who has resided in Wisconsin for at least 28 consecutive days before any election. *See* Wis. Stat. § 6.02; Plaintiff's Statement of Proposed Material Facts, ¶ 6.

In 2001, Wis. Stat. § 8.15(4)(a) required nomination-paper circulators to "… reside[ ] within the district which the candidate named therein will represent …". Wis. Stat. § 8.15(4)(a).[7] *See also* Dkt. 1-1:14, ¶¶ 25–26; Dkt. 30:6–7, ¶¶ 25–26; Plaintiff's Statement of Proposed Material Facts, ¶ 7. That prior residency requirement was challenged in federal court, held unconstitutional, and enjoined in

---

[5] *See supra*, n. 1

[6] Throughout this brief, Plaintiff refers to the Electronic Case File ("ECF") page numbers.

[7] *See supra*, n. 3

*Frami v. Ponto*, 255 F. Supp. 2d 962 (W.D. Wis. 2003). *Id.;* Plaintiff's Statement of Proposed Material Facts, ¶ 8. Following *Frami*, Wisconsin removed the circulator residency requirement from its statutes via 2005 Wisconsin Act 451, and the requirement remained out of Wisconsin law until Act 126 reinserted it. *Compare* 2005 Wisconsin Act 451[8] *with* 2025 Wisconsin Act 126; *See also* Dkt. 1-1:13–14, ¶¶ 20, 27; Dkt. 30:5, 7, ¶¶ 20, 27; Plaintiff's Statement of Proposed Material Facts, ¶ 9.

The Wisconsin Elections Commission is charged with implementing Wisconsin's election statutes, including the provisions of Act 126, and with supporting Wisconsin's municipal and county clerks. Dkt. 1-1:13, ¶ 16; 17, ¶ 42; Dkt. 30:4, ¶ 16; 10, ¶ 42; Plaintiff's Statement of Proposed Material Facts, ¶ 10. Defendant Meagan Wolfe is the Administrator of the Wisconsin Elections Commission and is sued in her official capacity. Dkt. 1-1:13, ¶ 15; Dkt. 30:4, ¶ 15; Plaintiff's Statement of Proposed Material Facts, ¶ 11. Defendants Ann S. Jacobs, Mark L. Thomsen, Carrie Riepl, Don M. Millis, Robert F. Spindell, Jr., and Marge Bostelmann are Commissioners of the Wisconsin Elections Commission and are sued in their official capacities. Dkt. 1-1:13, ¶ 16; Dkt. 30:4, ¶ 16; Plaintiff's Statement of Proposed Material Facts, ¶ 12.

After Act 126 was enacted, the Wisconsin Elections Commission updated its "Nomination Paper for Partisan Office" template to add "I am a qualified elector of Wisconsin" to the "Certification of Circulator." Dkt. 1-1:14–15, ¶ 28; 19–20 (Ex. 1); Dkt. 30:7, ¶ 28; Plaintiff's Statement of Proposed Material Facts, ¶ 13. Exhibit 1 to

[8] *See supra*, n. 2

Plaintiff's Complaint is a true and correct copy of that template. *Id.*; Plaintiff's Statement of Proposed Material Facts, ¶ 14. In addition, the Wisconsin Elections Commission sent a "communication" to "Wisconsin Candidates and Political Parties" explaining that, under Act 126, "Any person who is circulating nomination papers for the 2026 Fall Election cycle must reside in Wisconsin and must be qualified to vote in the state." Dkt. 1-1:15, ¶ 29; 21–24 (Ex. 2); Dkt. 30:7–8, ¶ 29; Plaintiff's Statement of Proposed Material Facts, ¶ 15. Exhibit 2 to Plaintiff's Complaint is a true and correct copy of that memorandum. *Id.*; Plaintiff's Statement of Proposed Material Facts, ¶ 16.

Nomination papers for the November 2026 general election began to be circulated on April 15, 2026. Dkt. 1-1:15, ¶ 30; Dkt. 30:8, ¶ 30; Plaintiff's Statement of Proposed Material Facts, ¶ 17. On that day, the Wisconsin Elections Commission posted on its X.com account (@WI_Elections): "It's go time! Candidates can begin circulating nomination papers today for the Aug. 11 election! FYI: Under a new law, circulators must live in WI & be qualified to vote in the state." Dkt. 1-1:15, ¶ 31; 25 (Ex. 3); Dkt. 30:8, ¶ 31; Plaintiff's Statement of Proposed Material Facts, ¶ 18. Exhibit 3 to Plaintiff's Complaint is a true and correct copy of that post (as displayed on X.com). *Id.*; Plaintiff's Statement of Proposed Material Facts, ¶ 19.

Defendants have enforced and will continue to enforce the residency requirements of Act 126 against nomination paper and recall petition circulators. Dkt. 1-1:14–15, ¶¶ 28–31; 17, ¶ 42; 19–25 (Exs. 1–3); Dkt. 30:7–8, ¶¶ 28–31; 10, ¶ 42; Plaintiff's Statement of Proposed Material Facts, ¶ 20. The next signature gathering

period (for Wisconsin's Spring 2027 Election) opens on December 1, 2026, and ends on January 5, 2027. *See* Wis. Stat. § 8.10(2)(a); Plaintiff's Statement of Proposed Material Facts, ¶ 21.

Paul Jacob is the Chairman of Plaintiff Americans for Citizen Voting PAC ("ACV PAC"). Second Jacob Decl. ¶ 1; Plaintiff's Statement of Proposed Material Facts, ¶ 22. In this role, Paul Jacob oversees all aspects of ACV PAC. Second Jacob Decl. ¶ 2; Plaintiff's Statement of Proposed Material Facts, ¶ 23. ACV PAC is a federal political action committee registered with the Federal Elections Commission as a Hybrid PAC since December 27, 2023. Second Jacob Decl. ¶ 3; Plaintiff's Statement of Proposed Material Facts, ¶ 24. ACV PAC maintains its principal place of business in Fairfax, Virginia. Second Jacob Decl. ¶ 4; Plaintiff's Statement of Proposed Material Facts, ¶ 25. ACV PAC does not accept corporate contributions into its contribution account and is eligible to support candidates for state and federal office in the State of Wisconsin. Second Jacob Decl. ¶ 5; Plaintiff's Statement of Proposed Material Facts, ¶ 26. ACV PAC's core mission is to promote election integrity by advocating for policies that ensure only United States citizens can vote in American elections, and this mission includes supporting candidates throughout the country who advance these goals. Second Jacob Decl. ¶ 6; Plaintiff's Statement of Proposed Material Facts, ¶ 27.

One way ACV PAC advances its mission is by engaging in independent expenditures to support candidates who are aligned with ACV PAC's goals. Second Jacob Decl. ¶ 7. Plaintiff's Statement of Proposed Material Facts, ¶ 28. This activity

is advanced through its non-contribution account. Second Jacob Decl. ¶ 7. Plaintiff's Statement of Proposed Material Facts, ¶ 29. Gathering nomination signatures for candidates for public office is another way in which ACV PAC advances its mission and supports those candidates. Second Jacob Decl. ¶ 8; Plaintiff's Statement of Proposed Material Facts, ¶ 30.

In the State of Wisconsin, ACV PAC seeks to make independent expenditures to hire out-of-state residents to help collect nomination signatures on behalf of candidates for public office that it supports. Second Jacob Decl. ¶ 9; Plaintiff's Statement of Proposed Material Facts, ¶ 31. During the Spring of 2026, ACV PAC wanted to work with out-of-state residents to collect nomination signatures on behalf of Wisconsin candidates during the signature-gathering period for the 2026 Partisan Primary, but the residency requirements imposed by Act 126 prohibited ACV PAC from doing so. Second Jacob Decl. ¶ 10; Plaintiff's Statement of Proposed Material Facts, ¶ 32. ACV PAC now seeks to advance its mission by helping candidates for public office that it supports in the State of Wisconsin gather nomination signatures, including during the next signature gathering period (for the Spring 2027 Election) which opens on December 1, 2026, and ends on January 5, 2027. Second Jacob Decl. ¶ 11; Plaintiff's Statement of Proposed Material Facts, ¶ 33.

Because of the changes to Wisconsin law implemented by 2025 Wisconsin Act 126 ("Act 126"), ACV PAC is required to engage with only Wisconsin electors in collecting nomination signatures and is prohibited from working with out-of-state residents to gather nomination signatures for candidates, including for the upcoming

Spring 2027 Election. Second Jacob Decl. ¶ 12; Plaintiff's Statement of Proposed Material Facts, ¶ 34. As a result, Act 126 significantly limits the pool of individuals and firms ACV PAC is permitted to work with to advance its mission. Second Jacob Decl. ¶ 13; Plaintiff's Statement of Proposed Material Facts, ¶ 35.

The residency and registration requirements imposed by Act 126 impede ACV's ability to communicate its political messages by limiting its ability to support candidates of its choosing, including by limiting who ACV PAC may associate with to advance its goals. Second Jacob Decl. ¶ 14; Plaintiff's Statement of Proposed Material Facts, ¶ 36. As a result, Act 126 directly harms ACV PAC's ability to advance its political beliefs, and to associate with candidates and supporters of its choosing. Second Jacob Decl. ¶ 15; Plaintiff's Statement of Proposed Material Facts, ¶ 37.

In furtherance of its mission and in anticipation of the possibility of a favorable decision in this case, ACV PAC has entered into a Petition Agreement with DRW Campaigns, Inc., to engage in signature gathering on nomination papers in support of Wisconsin state candidates for the Spring 2027 Election. Second Jacob Decl. ¶ 16; Plaintiff's Statement of Proposed Material Facts, ¶ 38. DRW Campaigns, Inc. is based in Michigan and regularly hires petition circulators from around the country who are not qualified electors in Wisconsin. Second Jacob Decl. ¶ 16; Plaintiff's Statement of Proposed Material Facts, ¶ 39. The signature-gathering services to be provided under ACV PAC's Petition Agreement with DRW Campaigns, Inc., for the gathering period commencing December 1, 2026, are contingent upon the issuance of an order

enjoining Act 126. Second Jacob Decl. ¶ 17; Plaintiff's Statement of Proposed Material Facts, ¶ 40.

## LEGAL STANDARD

Summary judgment is proper when there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, a court must make all reasonable inferences and view the evidence in the light most favorable to the non-moving party. *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 812 (7th Cir. 2017). Summary judgment is warranted where the party opposing the motion "'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Austin v. Walgreen Co.*, 885 F.3d 1085, 1087–88 (7th Cir. 2018) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

Summary judgment is appropriate here. The material facts are not in dispute; The only point of contention is whether Act 126's residency requirements are unconstitutional as a matter of law. For the reasons explained herein, Act 126's residency requirements are unconstitutional, and Plaintiff is entitled to judgment as a matter of law.

## ARGUMENT

Courts must "be vigilant . . . to guard against undue hindrances to political conversations and the exchange of ideas." *Buckley v. Am. Const. L. Found.*, 525 U.S. 182, 192 (1999). This is one such case where state law imposes an undue hindrance

to political conversations and the exchange of ideas. And this is not the first time Wisconsin has tried to restrict out-of-state residents from engaging in political activity in the state. Just over two decades ago, the Western District of Wisconsin struck down a similar state law imposing a similar restriction. *Frami v. Ponto*, 255 F. Supp. 2d 962 (W.D. Wis. 2003). In *Frami*, the Western District of Wisconsin did exactly what Plaintiff asks this Court to do here: it applied *Krislov v. Rednour*, 226 F.3d 851 (7th Cir. 2000) and determined that a Wisconsin law imposing residency requirements on circulators violated the First Amendment. 255 F.Supp.2d at 965, 968–71. *Krislov* controls here, too.

To determine whether a law violates the First Amendment, Courts assess the "character and magnitude of the burden [imposed by the state election law] and the extent to which the law serves the State's interests." *Krislov*, 226 F.3d at 859. "Laws imposing severe burdens must be narrowly tailored to serve compelling state interests, but lesser burdens receive less exacting scrutiny." *Id.*

Here, Act 126's residency requirements violate the First Amendment and are unconstitutional. Indeed, and as explained in more detail below, the residency requirements imposed by Act 126 are a severe restriction on core, protected political speech, and are not narrowly tailored to any compelling state interest.[9]

[9] Defendants did not file a motion to dismiss challenging Plaintiff's standing to bring this action, and therefore, Plaintiff does not brief the issue here but will address it if raised in Defendants' cross-motion for summary judgment.

## I. Act 126's Residency Requirements Impose a Severe Burden on Core, Protected Political Speech That is Subject To Strict Scrutiny

Act 126's residency requirements severely burden Plaintiff's ability to engage in core, protected political speech. The First Amendment to the United States Constitution provides that "Congress shall make no law . . . abridging the freedom of speech." U.S. Const. amend. I. "The First Amendment applies to the states by the Due Process Clause of the Fourteenth Amendment." *Nicodemus v. City of S. Bend*, 137 F.4th 654, 663 n. 7 (7th Cir. 2025) (citing *Gitlow v. New York*, 268 U.S. 652, 666, 45 S.Ct. 625 (1925)).

Circulating petitions is "core political speech" and is where the First Amendment protection is "at its zenith." *Buckley,* 525 U.S. at 186–87 (1999) (quoting *Meyer v. Grant*, 486 U.S. 414, 422, 425 (1988)). Because residency requirements for petition circulators, like those imposed by Act 126, are severe burdens on free speech, nearly every court that has considered such requirements has applied strict scrutiny and struck them down on First Amendment grounds. *E.g. Lerman v. Bd. of Elections in City of New York*, 232 F.3d 135 (2d Cir. 2000) (invalidating New York's residency requirement for witnessing candidate designating petitions as a violation of the First Amendment); *Chandler v. City of Arvada*, 292 F.3d 1236 (10th Cir. 2002) (invalidating a city regulation prohibiting nonresidents from circulating petitions as a violation of the First Amendment); *Yes on Term Limits v. Savage*, 550 F.3d 1023 (10th Cir. 2008) (invalidating Oklahoma's statutory ban on nonresident petition circulators as a violation of the First Amendment); *Nader v. Blackwell,* 545 F.3d 459 (6th Cir. 2008) (striking down a residency requirement for petition circulators as a

violation of the First Amendment); *Nader v. Brewer*, 531 F.3d 1028 (9th Cir. 2008) (invalidating Arizona's residency requirement for nomination petition circulators as a violation of the First Amendment); *Pierce v. Jacobsen*, 44 F.4th 853 (9th Cir. 2022) (striking down Montana's residency requirement for petition circulators as a violation of the First Amendment); *Libertarian Party of Va. v. Judd*, 718 F.3d 308 (4th Cir. 2013) (invalidating Virginia's residency requirement for petition circulation as a violation of the First Amendment); *Wilmoth v. Sec'y of New Jersey*, 731 Fed. Appx. 97 (3d Cir. 2018) (finding New Jersey's residency requirement for circulators imposed severe burden on First Amendment rights, and remanding for further proceedings); *We the People PAC v. Bellows*, 40 F.4th 1 (1st Cir. 2022) (affirming an injunction against Maine's residency requirement for petition circulators on First Amendment grounds); *but see Initiative & Referendum Inst. v. Jaeger*, 241 F.3d 614 (8th Cir. 2001) (upholding North Dakota's residency requirement).[10]

"Strict scrutiny is applicable 'where the government restricts the overall quantum of speech available to the election or voting process.... [It] is employed where the quantum of speech is limited due to restrictions on ... the available pool of circulators or other supporters of a candidate or initiative, as in *ACLF* and *Meyer*.'"

[10] The terms "strict scrutiny", "exacting scrutiny", and "heightened scrutiny" have been used interchangeably by courts assessing the constitutionality of residency requirements under the First Amendment. But regardless of the terminology, courts have routinely assessed (1) whether the restriction imposes a severe or substantial burden on speech; and (2) whether the severe or substantial burden, when present, is narrowly tailored to a compelling state interest. Throughout this brief, Plaintiff uses the term "strict scrutiny" in reference to this standard, which the Court should apply when analyzing the constitutionality of the residency requirements in Act 126.

*Chandler*, 292 F.3d at 1241–42 (quoting *Campbell v. Buckley*, 203 F.3d 738, 745 (10th Cir. 2000)). The Seventh Circuit has made clear that residency requirements must meet strict scrutiny. *Krislov*, 226 F.3d at 862–63 (effectively applying strict scrutiny when concluding that a residency requirement imposed a "substantial burden" on the plaintiff's "speech and associational interests" and that the "substantial burden" was not "narrowly tailored to serve a compelling state interest.").[11] And this is because such requirements directly burden the communicative aspect of petition circulation, which is core, political speech. *Meyer*, 486 U.S. at 420; *see also Buckley*, 525 U.S. at 186 (reaffirming *Meyer*'s strict scrutiny standard for direct burdens on petition circulation).

Indeed, a residency-type restriction on who may circulate "decreases the pool of potential circulators", "limit[s] the number of voices who will convey [the proponents'] message", and "cut[s] down 'the size of the audience [proponents] can reach.'" *Buckley,* 525 U.S. at 194–95 (1999) (quoting *Meyer*, 486 U.S. at 422–23). And here, Act 126's residency requirements impose a severe burden by making it "more difficult for the candidates to disseminate their political views, to choose the most effective means of conveying their message, to associate in a meaningful way with the prospective solicitors for the purposes of eliciting political change, to gain access to the ballot, and to utilize the endorsement of their candidacies which can be implicit

[11] *See also Krislov*, 226 F.3d at 862, n. 6 ("We note that even if the statute did not place a substantial burden on First Amendment rights we would still subject it to exacting scrutiny because it places more than a minimal burden on core political speech.") (citations omitted).

in a solicitor's efforts to gather signatures on the candidates' behalf" and so "to survive, the statute must withstand exacting scrutiny." *Krislov*, 226 F.3d at 862.

Under Act 126, only "qualified elector[s] of this state" are eligible to circulate nomination papers for candidates running for office. Wis. Stat. §§ 8.10(3), 8.15(4)(a), 8.20(3), as amended by Act 126; *See also* Plaintiff's Statement of Proposed Material Facts, ¶ 4. The same "qualified elector of this state" requirement applies to circulators of recall petitions. Wis. Stat. §§ 8.40(2), and 9.10(2)(em)2, as amended by Act 126; *See also* Plaintiff's Statement of Proposed Material Facts, ¶ 4. A narrow carve-out exists only for presidential and vice-presidential nomination papers. *See* Wis. Stat. § 8.20(3), as amended by 2025 Wisconsin Act 126; *See also* Plaintiff's Statement of Proposed Material Facts, ¶ 5. And to be a "qualified elector" of the state, a person must—among other things—have resided in Wisconsin for at least 28 consecutive days before any election. Wis. Stat. § 6.02; *See also* Plaintiff's Statement of Proposed Material Facts, ¶ 6.

Defendants' guidance to candidates and political parties confirms the practical effect of this change: whereas circulators "could [previously] be residents of other states who *would* have been eligible to vote in Wisconsin if they lived in the state," under Act 126, "circulators must be residents of Wisconsin for voting purposes." Dkt. 1-1:21 (Ex. 2) (emphasis in original); *See also* Dkt. 1-1:15, ¶ 29; Dkt. 30:7–8, ¶ 29; Plaintiff's Statement of Proposed Material Facts, ¶¶ 15–16. Defendants further updated the official "Nomination Paper for Partisan Office" template and publicly announced on social media that "circulators must live in WI & be qualified to vote in

the state." Dkt. 1-1:14–15, ¶¶ 28, 31; 19–20 (Ex. 1), 25 (Ex. 3); Dkt. 30:7–8, ¶¶ 28, 31; Plaintiff's Statement of Proposed Material Facts, ¶¶ 13–14; 18–19.

Plaintiff seeks to engage out-of-state circulators to help candidates for public office that it supports in the State of Wisconsin gather nomination signatures, including during the next signature gathering period (for the Spring 2027 Election) which opens on December 1, 2026, and ends on January 5, 2027, but the residency requirements imposed by Act 126 prohibit it from doing so. Second Jacob Decl. ¶¶ 11–17; Plaintiff's Statement of Proposed Material Facts, ¶¶ 33–40. These requirements—which impede core, protected political speech—severely burden Plaintiff's First Amendment right to support and associate with candidates of its choosing to advance its political beliefs and goals. Second Jacob Decl. ¶¶ 6–9, 12–15; Plaintiff's Statement of Proposed Material Facts, ¶¶ 27–31, 34–37. Therefore, Act 126 is subject to strict scrutiny.

## II. Act 126's Residency Requirements Are Not Narrowly Tailored to Serve Any Compelling State Interest

Because Act 126 imposes a severe burden on core, protected political speech, it "can stand only if [it] survive[s] strict scrutiny," which "'requires the Government to prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest.'" *Reed v. Town of Gilbert*, 576 U.S. 155, 171 (2015) (quoting *Citizens United v. Federal Election Comm'n*, 588 U.S. 310, 340 (2010) (cleaned up)). Defendants bear the burden of establishing both elements. *Id.*; *See also Krislov,* 226 F.3d at 863. They cannot do so. Indeed, like many other laws that have previously tried to impose residency requirements on circulators, the severe burden imposed by

Act 126 is not narrowly tailored to serve any compelling state interest and is therefore unconstitutional.

Whether a compelling interest exists is a question of law that is assessed by "examining the specific facts of the case." *Krislov,* 226 F.3d at 863. "Where the material facts are undisputed, the necessity of the chosen means also involves a question of law." *Id.* And, importantly, narrow tailoring requires the government to "demonstrate that alternative measures that burden substantially less speech would fail to achieve the government's interests, not simply that the chosen route is easier." *McCullen v. Coakley*, 573 U.S. 464, 495 (2014). Here, Defendants have no compelling interest in Act 126's residency requirements, and even if they did, Act 126 is not narrowly tailored to any such interest.

In *Krislov*, for example, three interests were advanced (and ultimately rejected) in defense of Illinois' district residency requirement, two of which are relevant here. 226 F.3d at 863.[12] The first—an interest in "increas[ing] the probability that only valid signatures will be collected"—was rejected because a resident circulator would likely have the same risk of obtaining an invalid signature. *Id.* at 865. The second—an interest in "preventing citizens of other states from having any influence on Illinois elections"—was illegitimate in the eyes of the Court because such laws are "harmful to the unity of our Nation" and "penalize and discriminate against

[12] The third interest asserted was specific to the Illinois law's restriction that circulators live within the district they are circulating for–which is not relevant here. *Krislov*, 266 F.3d at 864.

candidates who wish to associate with and utilize the speech of non-residents." *Id.* at 866.

Similarly, the Western District of Wisconsin in *Frami* considered and ultimately rejected each of the interests advanced in defense of the residency requirements challenged there. *Frami,* 255 F. Supp. 2d at 968–71. One interest—that the number of circulators is "'an initial gauge of support among the electorate'"—was rejected because Wisconsin's minimum signature requirement performs that function, and the Defendant had "failed to explain why the signature requirement by itself is insufficient to separate the wheat from the chaff in terms of frivolous candidacies or why the number of petition circulators a candidate employes provides a more reliable measure of candidate support than the signature requirement alone." *Id.* at 968–69 (citation omitted).

Two other interests—namely, a compelling interest in preventing electoral fraud and in ensuring that circulators remain subject to Wisconsin's judicial process—were also rejected. *Id.* at 970. On these arguments, the Court held that while fraud prevention is a compelling state interest, the facts of the case did not support a residency requirement to further that interest. Indeed, Wisconsin's other existing statutory safeguards—requiring circulators to provide their name and address and certify under penalty of fine or imprisonment that the information provided is accurate—"suggest[ed] that the residency requirement [was] not narrowly tailored to facilitate the state's ability to locate out-of-state petition circulators and discourage fraud." *Frami*, 255 F. Supp. 2d at 970. The Defendant had also failed to

allege "that the state has experienced problems in the past with non-resident petition circulators" and therefore failed to show that the "recited harms are real, not merely conjectural" *Id.* at 971.

Here, as in *Krislov* and *Frami*, there is no compelling interest justifying the residency requirements imposed by Act 126, and even if there were, Act 126 is not narrowly tailored to further any such interest.

First, Wisconsin law already requires each person who signs a nomination paper to be a qualified elector of the jurisdiction or district the candidate seeks to represent, *e.g.* Wis. Stat. §§ 8.10(4), 8.15(3), 8.20(5), so any interest in ensuring valid signatures on nomination papers is not justified by a categorical ban on out-of-state *circulators*. *Krislov*, 226 F.3d at 865. Second, by its own terms, Act 126 operates to "penalize and discriminate against candidates who wish to associate with and utilize the speech of non-residents." *Id.* at 866. And as the Seventh Circuit said in *Krislov*, "preventing citizens of other States from having any influence on [Wisconsin] elections" is illegitimate. *Id. See also Frami,* 255 F. Supp. at 969 (likewise assessing and rejecting this argument).

Third, Act 126 cannot be justified as a measure of candidate support. As the Court concluded in *Frami*, it is the signature requirement—not the identity of the person collecting those signatures—that measures the depth of a candidate's support among the electorate. 255 F. Supp. 2d at 968–69. Nothing about Act 126 changes the number of signatures a candidate must collect, *see* Wis. Stat. §§ 8.10(3) 8.15(6),

8.20(4), and Defendants have not (and cannot) explain why excluding an entire class of willing circulators provides any additional measure of candidate viability.

Fourth, Act 126 cannot be justified on fraud-prevention grounds. Under strict scrutiny, the burden is on Defendants to demonstrate that the restriction is necessary to address real, documented harms, instead of merely "posit[ing] the existence of the disease sought to be cured." *Krislov*, 226 F.3d at 865 (quoting *Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622, 664 (1994)). And here, the record does not demonstrate that Act 126's residency restrictions are justified by—or, in any case, narrowly tailored to—an interest in preventing fraud.

In response to Plaintiff's motion for a temporary restraining order and preliminary injunction, Defendants submitted a declaration and exhibits indicating that, in 2026, the Wisconsin Elections Commission found probable cause to believe that multiple persons violated Wisconsin law during efforts to recall Representative Robin Vos by falsely listing addresses that were not their residence and/or by falsifying, fraudulently defacing, or destroying a recall petition. Dkt. 14:5–6, 25–26; 15, ¶¶ 49–50; 15-3. Defendants also indicated that, in a separate proceeding, Representative Vos asserted that four out-of-state convicted felons circulated 94 recall papers, multiple people indicated they had not signed a recall petition (yet their names were listed), and one woman was approached in a parking lot, asked to sign a petition, and prevented from leaving until she did so. Dkts. 14:5–7; 15, ¶¶ 46–48; 15-1; 15-2. But none of these issues justify Act 126.

As to falsification, fraud, and defacement, Wisconsin law already has mechanisms to deal with this, and Act 126—which, again, requires circulators to certify that they are a "qualified elector of this state"—does not prevent such unlawful behavior by petition signers or circulators. *Compare* Wis. Stat. §§ 12.13 (Election fraud), 12.60 (Penalties) *with* 2025 Wisconsin Act 126. Furthermore, there are many standards a person must satisfy to lawfully circulate papers in Wisconsin. Wis. Stat. § 6.03, for example, disqualifies "[a]ny person convicted of … [a] felony …" from voting, and therefore, any person convicted of a felony is not permitted to circulate papers because they are not a "qualified circulator" pursuant to Wis. Stat. § 5.02(16g). Act 126's residency requirements have no bearing on that disqualification.

Defendants are likely to contend, as they did in their response to Plaintiff's motion for a temporary restraining order and preliminary injunction, that Act 126's residency requirements are narrowly tailored to a compelling state interest because Wisconsin's challenge process has a quick turnaround time, and Wisconsin needs to be able to subpoena out-of-state circulators in the event of challenges or in order to prosecute unlawful circulator activity. *See* Dkt. 14:4–7, 25–28.

But, as noted above, even if Defendants can show that one or more of these interests is compelling, Act 126 needs to be narrowly tailored towards that end, and it is not. In *Krislov*, for example, the Seventh Circuit noted (without deciding) that a permissible means of achieving this end *could be* a requirement that "non-citizens register with the Board of Elections and agree to submit to the jurisdiction of the [Wisconsin] courts." 226 F.3d at 866, n.7 (citation omitted); *See also Frami*, 255 F.

Supp. 2d at 970. But unlike this approach or any other mechanism for addressing whatever problems Defendants may proffer in defense of Act 126 (the constitutionality of which is not at issue here, and which Plaintiff does not take a position on), Act 126 is a *categorical ban* on out-of-state circulators and is plainly not narrowly tailored. Moreover, Courts have "recognized that the risk of fraud is more remote at the petition stage of a ballot initiative or candidate election than at the time of voting." *Frami*, 255 F. Supp. 2d at 969–70 (citing *Meyer*, 486 U.S. at 427; *Lerman*, 232 F.3d at 140; *Krislov*, 226 F.3d at 865).

As explained above, none of the evidence provided by Defendants demonstrates that the severe burden imposed by Act 126 is narrowly tailored to further a compelling state interest. And as to any interests Defendants might assert beyond those already addressed above or foreclosed by *Krislov* and *Frami*, Plaintiff maintains Defendants have no compelling interest justifying Act 126, and even if they do, Act 126 is not narrowly tailored to further those interests.

Indeed, this Court should conclude—like the Seventh Circuit, Western District of Wisconsin, and myriad other courts—that "circulating nominating petitions necessarily entails political speech, [and] it follows that the First and Fourteenth Amendments compel States to allow their candidates to associate with nonresidents for political purposes and to utilize non-residents to speak on their behalf in soliciting signatures for ballot access petitions." *Krislov*, 226 F.3d at 866.

## III. Plaintiff Continues to Suffer Injury and Permanent Injunctive Relief is Warranted

A permanent injunction is warranted where a plaintiff demonstrates (1) actual success on the merits, (2) irreparable harm absent an injunction, (3) that the balance of equities favors relief, and (4) that an injunction serves the public interest. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). Each element is satisfied here.

First, Plaintiff succeeds on the merits for the reasons set forth above: Act 126's residency requirements impose a severe burden on core, protected political speech and cannot survive strict scrutiny review.

Second, the loss of First Amendment freedoms, "for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). Plaintiff has already been unable to work with out-of-state circulators to support Wisconsin candidates since Act 126 was enacted on March 27, 2026, and will suffer further injury in just a few months because nomination papers for the Spring 2027 election can begin circulating on December 1, 2026. Second Jacob Decl. ¶¶ 10–17; Plaintiff's Statement of Proposed Material Facts, ¶¶ 32–40. Indeed, Plaintiff seeks to engage non-resident circulators to gather signatures on behalf of the candidates it supports during the upcoming signature gathering period (and has entered into an agreement for this purpose), but is unable to do so unless Act 126 is declared unconstitutional and enjoined. Second Jacob Decl. ¶¶ 10–17; Plaintiff's Statement of Proposed Material Facts, ¶¶ 33–40.

Third, the balance of equities favors Plaintiff. Defendants have no legitimate interest in enforcing a law that is unconstitutional on its face while Plaintiff's core

speech and associational rights, along with those of all out-of-state circulators and the organizations and candidates seeking to engage them, remain suppressed. Finally, "injunctions protecting First Amendment freedoms are always in the public interest." *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006). Act 126's residency requirements do not merely affect Plaintiff—they categorically exclude an *entire class* of willing speakers from participating in Wisconsin's nomination paper and petition circulation process This chills exactly the kind of political speech and association that the First Amendment most zealously protects.

## CONCLUSION

For the foregoing reasons, Plaintiff Americans for Citizen Voting PAC respectfully asks this Court to grant summary judgment in its favor, declare that the residency requirements imposed by 2025 Wisconsin Act 126, as codified in Wis. Stat. §§ 8.10(3), 8.15(4)(a), 8.20(3), 8.40(2), and 9.10(2)(em)2., are unconstitutional under the First and Fourteenth Amendments, and permanently enjoin Defendants from enforcing them.

Dated: September 1, 2026.

Respectfully Submitted,

WISCONSIN INSTITUTE FOR LAW & LIBERTY

*Electronically signed by Nathalie E. Burmeister*

Lucas T. Vebber (#1067543)
Daniel P. Lennington (#1088694)
Nathalie E. Burmeister (#1126820)

1241 N. Franklin Place
Milwaukee, WI 53202
Phone: (414) 727-9455

lucas@will-law.org
dan@will-law.org
nathalie@will-law.org

*Attorneys for Plaintiff*