UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

AMERICANS FOR CITIZEN VOTING PAC,

Plaintiff,

Case No. 2:26-cv-786

v.

MEAGAN WOLFE, et al.,

Defendants.

**PLAINTIFF'S STATEMENT OF PROPOSED MATERIAL FACTS**

Pursuant to Civ. L. R. 56 (b)(1)(C), Plaintiff Americans for Citizen Voting PAC ("ACV PAC") hereby submits the following statement of proposed material facts:

1. To obtain ballot access, candidates for Wisconsin public office generally must collect signatures on nomination papers from electors who reside within the jurisdiction or district of the position and/or office they seek. *See* Wis. Stat. §§ 8.10, 8.15, 8.20; Wis. Admin. Code § EL 2.05.

2. The number of signatures each candidate must obtain varies by the office sought, but for some positions, the number of required signatures can be as high as 2,000 per candidate. *See* Wis. Stat. §§ 8.10(3) 8.15(6), 8.20(4).

3. 2025 Wisconsin Act 126 ("Act 126") was signed into law by Governor Tony Evers on March 27, 2026, and published on March 28, 2026. *See* 2025 Wisconsin Act 126.[1] *See also* Dkt. 1-1:11, ¶ 6; 13, ¶ 21; Dkt. 30:2, ¶ 6; 5, ¶ 21.

4. Act 126 amends Wis. Stat. §§ 8.10(3), 8.15(4)(a), 8.20(3), 8.40(2), and 9.10(2)(em)2. to require that any nomination paper and/or recall petition circulators be "a qualified elector of this state." *See* 2025 Wisconsin Act 126.

5. The only exception to the "qualified elector of this state" requirement imposed by Act 126 is with respect to presidential and vice-presidential nomination papers. *See* Wis. Stat. § 8.20(3), as amended by 2025 Wisconsin Act 126.

6. Under Wis. Stat. § 6.02, a "qualified elector" of Wisconsin is a U.S. citizen, age 18 or older, who has resided in Wisconsin for at least 28 consecutive days before any election. *See* Wis. Stat. § 6.02.

7. In 2001, Wis. Stat. § 8.15(4)(a) required nomination-paper circulators to "… reside[ ] within the district which the candidate named therein will represent …". Wis. Stat. § 8.15(4)(a).[2] *See also* Dkt. 1-1:14, ¶¶ 25–26; Dkt. 30:6–7, ¶¶ 25–26.

8. That prior residency requirement was challenged in federal court, held unconstitutional, and enjoined in *Frami v. Ponto*, 255 F. Supp. 2d 962 (W.D. Wis. 2003). *Id.*

9. Following *Frami*, Wisconsin removed the circulator residency requirement from its statutes via 2005 Wisconsin Act 451, and the requirement

[1] Available at https://docs.legis.wisconsin.gov/2025/related/acts/126.

[2] Available at https://docs.legis.wisconsin.gov/2001/statutes/statutes/8/15.

remained out of Wisconsin law until Act 126 reinserted it. *Compare* 2005 Wisconsin Act 451[3] *with* 2025 Wisconsin Act 126; *See also* Dkt. 1-1:13–14, ¶¶ 20, 27; Dkt. 30:5, 7, ¶¶ 20, 27.

10. The Wisconsin Elections Commission is charged with implementing Wisconsin's election statutes, including the provisions of Act 126, and with supporting Wisconsin's municipal and county clerks. Dkt. 1-1:13, ¶ 16; 17, ¶ 42; Dkt. 30:4, ¶ 16; 10, ¶ 42.

11. Defendant Meagan Wolfe is the Administrator of the Wisconsin Elections Commission and is sued in her official capacity. Dkt. 1-1:13, ¶ 15; Dkt. 30:4, ¶ 15.

12. Defendants Ann S. Jacobs, Mark L. Thomsen, Carrie Riepl, Don M. Millis, Robert F. Spindell, Jr., and Marge Bostelmann are Commissioners of the Wisconsin Elections Commission and are sued in their official capacities. Dkt. 1-1:13, ¶ 16; Dkt. 30:4, ¶ 16.

13. After Act 126 was enacted, the Wisconsin Elections Commission updated its "Nomination Paper for Partisan Office" template to add "I am a qualified elector of Wisconsin" to the "Certification of Circulator." Dkt. 1-1:14–15, ¶ 28; 19–20 (Ex. 1); Dkt. 30:7, ¶ 28.

14. Exhibit 1 to Plaintiff's Complaint is a true and correct copy of that template. *Id.*

[3] Available at https://docs.legis.wisconsin.gov/2005/related/acts/451.

15. In addition, the Wisconsin Elections Commission sent a "communication" to "Wisconsin Candidates and Political Parties" stating that, under Act 126, "Any person who is circulating nomination papers for the 2026 Fall Election cycle must reside in Wisconsin and must be qualified to vote in the state." Dkt. 1-1:15, ¶ 29; 21–24 (Ex. 2); Dkt. 30:7–8, ¶ 29.

16. Exhibit 2 to Plaintiff's Complaint is a true and correct copy of that memorandum. *Id.*

17. Nomination papers for the November 2026 general election began to be circulated on April 15, 2026. Dkt. 1-1:15, ¶ 30; Dkt. 30:8, ¶ 30.

18. On that day, the Wisconsin Elections Commission posted on its X.com account (@WI_Elections): "It's go time! Candidates can begin circulating nomination papers today for the Aug. 11 election! FYI: Under a new law, circulators must live in WI & be qualified to vote in the state." Dkt. 1-1:15, ¶ 31; 25 (Ex. 3); Dkt. 30:8, ¶ 31.

19. Exhibit 3 to Plaintiff's Complaint is a true and correct copy of that post (as displayed on X.com). *Id.*

20. Defendants have enforced and will continue to enforce the residency requirements of Act 126 against nomination paper and recall petition circulators. Dkt. 1-1:14–15, ¶¶ 28–31; 17, ¶ 42; 19–25 (Exs. 1–3); Dkt. 30:7–8, ¶¶ 28–31; 10, ¶ 42.

21. The next signature gathering period (for Wisconsin's Spring 2027 Election) opens on December 1, 2026, and ends on January 5, 2027. *See* Wis. Stat. § 8.10(2)(a).

22. Paul Jacob is the Chairman of Plaintiff Americans for Citizen Voting PAC ("ACV PAC"). Second Jacob Decl. ¶ 1.

23. In this role, Paul Jacob oversees all aspects of ACV PAC. Second Jacob Decl. ¶ 2.

24. ACV PAC is a federal political action committee registered with the Federal Elections Commission as a Hybrid PAC since December 27, 2023. Second Jacob Decl. ¶ 3.

25. ACV PAC maintains its principal place of business in Fairfax, Virginia. Second Jacob Decl. ¶ 4.

26. ACV PAC does not accept corporate contributions into its contribution account and is eligible to support candidates for state and federal office in the State of Wisconsin. Second Jacob Decl. ¶ 5.

27. ACV PAC's core mission is to promote election integrity by advocating for policies that ensure only United States citizens can vote in American elections, and this mission includes supporting candidates throughout the country who advance these goals. Second Jacob Decl. ¶ 6.

28. One way ACV PAC advances its mission is by engaging in independent expenditures to support candidates who are aligned with ACV PAC's goals. Second Jacob Decl. ¶ 7.

29. This activity is advanced through its non-contribution account. Second Jacob Decl. ¶ 7.

30. Gathering nomination signatures for candidates for public office is another way in which ACV PAC advances its mission and supports those candidates. Second Jacob Decl. ¶ 8.

31. In the State of Wisconsin, ACV PAC seeks to make independent expenditures to hire out-of-state residents to help collect nomination signatures on behalf of candidates for public office that it supports. Second Jacob Decl. ¶ 9.

32. During the Spring of 2026, ACV PAC wanted to work with out-of-state residents to collect nomination signatures on behalf of Wisconsin candidates during the signature-gathering period for the 2026 Partisan Primary, but the residency requirements imposed by Act 126 prohibited ACV PAC from doing so. Second Jacob Decl. ¶ 10.

33. ACV PAC now seeks to advance its mission by helping candidates for public office that it supports in the State of Wisconsin gather nomination signatures, including during the next signature gathering period (for the Spring 2027 Election) which opens on December 1, 2026, and ends on January 5, 2027. Second Jacob Decl. ¶ 11.

34. Because of the changes to Wisconsin law implemented by 2025 Wisconsin Act 126 ("Act 126"), ACV PAC is required to engage with only Wisconsin electors in collecting nomination signatures and is prohibited from working with out-of-state residents to gather nomination signatures for candidates, including for the upcoming Spring 2027 Election. Second Jacob Decl. ¶ 12.

35. As a result, Act 126 significantly limits the pool of individuals and firms ACV PAC is permitted to work with to advance its mission. Second Jacob Decl. ¶ 13.

36. The residency and registration requirements imposed by Act 126 impede ACV's ability to communicate its political messages by limiting its ability to support candidates of its choosing, including by limiting who ACV PAC may associate with to advance its goals. Second Jacob Decl. ¶ 14.

37. As a result, Act 126 directly harms ACV PAC's ability to advance its political beliefs, and to associate with candidates and supporters of its choosing. Second Jacob Decl. ¶ 15.

38. In furtherance of its mission and in anticipation of the possibility of a favorable decision in this case, ACV PAC has entered into a Petition Agreement with DRW Campaigns, Inc., to engage in signature gathering on nomination papers in support of Wisconsin state candidates for the Spring 2027 Election. Second Jacob Decl. ¶ 16.

39. DRW Campaigns, Inc. is based in Michigan and regularly hires petition circulators from around the country who are not qualified electors in Wisconsin. Second Jacob Decl. ¶ 16.

40. The signature-gathering services to be provided under ACV PAC's Petition Agreement with DRW Campaigns, Inc., for the gathering period commencing December 1, 2026, are contingent upon the issuance of an order enjoining Act 126. Second Jacob Decl. ¶ 17.

Dated: September 1, 2026.

Respectfully Submitted,

WISCONSIN INSTITUTE
FOR LAW & LIBERTY

*Electronically signed by Nathalie E. Burmeister*

Lucas T. Vebber (#1067543)
Daniel P. Lennington (#1088694)
Nathalie E. Burmeister (#1126820)

1241 N. Franklin Place
Milwaukee, WI 53202
Phone: (414) 727-7361

lucas @will-law.org
dan@will-law.org
nathalie@will-law.org

*Attorneys for Plaintiff*