UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

AMERICANS FOR CITIZEN VOTING PAC,

*Plaintiff*,

*v.*

Case No. 2:26-cv-786

MEAGAN WOLFE, et al.,

*Defendants*.

**BRIEF OF AMICI CURIAE PETE KARAS, GREEN PARTY CANDIDATE FOR WISCONSIN SECRETARY OF STATE, AND THE WISCONSIN GREEN PARTY, IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Skylar R. Croy
*Wisconsin Bar No.* 1117831
HURLEY BURISH, S.C.
33 E. Main Street, Suite 400
Madison, WI 53703
scroy@hurleyburish.com
(608) 257-0945

*Counsel for Pete Karas & the Wisconsin Green Party*

**Table of Contents**

I. Introduction: 2025 Wisconsin Act 126 sorts petitions by the threat they pose to the politicians who passed it. .......... 3

II. Statement of Interests: The Green Party and its candidates have always paid for their place on the ballot, and Act 126 raises the price. .......... 5

III. Arguments: Act 126 burdens core political speech, and nothing the State says explains the line it drew. .......... 7

A. A Wisconsinite must circulate a petition to recall a state legislator, but an Illinoisan may circulate a referendum to Wisconsin voters. .......... 7

B. The State never feared fraud; it resented a recall. .......... 8

C. Act 126 puts its heaviest burden on the parties with the thinnest infrastructure. .......... 10

D. Precedent already recognizes that residency requirements like this one hurt minor parties. .......... 13

IV. Conclusion: This Court should declare Act 126 unconstitutional and enjoin its enforcement. .......... 15

## I. Introduction: 2025 Wisconsin Act 126 sorts petitions by the threat they pose to the politicians who passed it.

Ask who may circulate a petition in Wisconsin, and the answer now turns on what that petition can do to state legislators. Act 126 divides petitions into four categories:

(1) nomination papers for every office except President/Vice President;[1]

(2) recall petitions;[2]

(3) presidential nomination papers;[3] and

(4) referendums.[4]

The first two threaten the legislators who drafted and voted for Act 126—Republicans and Democrats alike. (Those two parties hold all 132 seats in the Legislature.) These legislators have an interest in limiting *who* runs against them, and don't want to face a recall. The second two categories don't. And Act 126 imposes a residency requirement on only the first two: anyone who circulates a nomination paper or recall petition must live in Wisconsin. The State's asserted interest—preventing fraud—can't stretch to cover that line. And Act 126's legislative history, set out below, confirms what the line really protects: incumbents.

---

[1] Wis. Stat. §§ 8.10(3), 8.15(4)(a), 8.20(3).
[2] Wis. Stat. § 9.10(2)(em)2.; *see also* Wis. Stat. § 8.40(2)(b).
[3] Wis. Stat. § 8.20(3).
[4] Wis. Stat. § 8.40(2)(a); *see also* Wis. Stat. § 9.20(2).

This Court should declare Act 126 unconstitutional. Circulating a petition is "core political speech," so the State must justify the line it drew.[5] Here, it can't. Preventing fraud doesn't explain why an Illinois resident may circulate a referendum but not a recall. And the one interest that does explain the line—protecting incumbents—the State cannot admit, let alone defend.

Protecting incumbents has a cost: Act 126 hobbles minor parties and grassroots causes. It arms the well-off major parties with one more blunderbuss to fire at anyone who challenges their rule. And minor parties without a fully staffed statewide field operation lean on volunteers who cross state lines. In Wisconsin—a state that already sharply restricts ballot access—losing those volunteers lands hard.[6] This Court should restore the rule Wisconsin lived under for more than twenty years and enjoin Act 126.[7]

---

[5] *See, e.g.*, *Krislov v. Rednour*, 226 F.3d 851, 858 (7th Cir. 2000) (quoting *Meyer v. Grant*, 486 U.S. 414, 421–22 (1988)).

[6] *See generally Hawkins v. WEC*, 948 N.W.2d 877 (Wis. 2020).

[7] *Frami v. Ponto*, 255 F. Supp. 2d 962, 964 (W.D. Wis. 2003).

## II. Statement of Interests: The Green Party and its candidates have always paid for their place on the ballot, and Act 126 raises the price.

Pete Karas is running for Wisconsin Secretary of State and against two-party rule itself.[8] He's a small-business owner, a former member of the Racine City Council, and a member of the Green Party—the State's premier minor party.[9] And getting his name on the ballot as a Green Party candidate took a fight.

Before Act 126, Karas counted on out-of-state circulators to collect the signatures that the law demands for ballot access.[10] Lacking the statewide infrastructure that the major parties command, minor-party candidates like Karas have long relied on precedent permitting nonresident circulators.[11] Act 126 snatched that option away in late March 2026—just before the circulation period—forcing Karas to rebuild his petition drive at the last minute.[12] He used no out-of-state circulators at all.[13]

Even with a smaller pool of volunteer circulators, Karas still gathered nearly 3,000 signatures.[14] For Secretary of State, the law demands 2,000, but he wanted

[8] Unsworn Decl. Pete Karas, ¶¶2–3; *see also Pete Karas' Platform,* Pete Karas WI Sec'y State (last visited Sept. 20, 2026), https://petekaras.com/platform.
[9] Unsworn Decl. Pete Karas, ¶¶2, 4; *see also About Pete Karas*, Pete Karas WI Sec'y State (last visited Sept. 20, 2026), https://petekaras.com/about-pete.
[10] Unsworn Decl. Pete Karas, ¶¶5–9.
[11] *See, e.g.*, *Krislov*, 226 F.3d at 866; *Frami*, 255 F. Supp. 2d at 964.
[12] 2025 Wis. Act 126; *see* Unsworn Decl. Pete Karas, ¶11.
[13] Unsworn Decl. Pete Karas, ¶12.
[14] Unsworn Decl. Pete Karas, ¶11.

more than the bare minimum.[15] That cushion, he presumed, would put his place on the ballot beyond dispute. It didn't.

A man tied to the Democratic Party tried to invalidate thousands of Karas's signatures, claiming that they may have been collected by out-of-state circulators.[16] They weren't, but beating the challenge cost Karas's campaign $13,000 in legal fees.[17]

Karas is only the latest Green Party candidate forced to defend his place on the ballot. The Green Party formed to address environmental justice, and it now runs candidates for everything from city council to President. The Democratic Party has long treated the Green Party as a competitor for votes and has tried to keep it off the ballot.[18] That history (analyzed below) explains why the Green Party fears more than losing out-of-state circulators—Act 126 handed its opponents one more weapon.

---

[15] Wis. Stat. § 8.15(6)(a).

[16] Unsworn Decl. Pete Karas, ¶13; *see also* M.D. Kittle, *Dems Show Just How Low They Can Go in Latest Ballot Schemes*, Federalist (June 17, 2026), https://thefederalist.com/2026/06/17/dems-show-just-how-low-they-can-go-in-latest-ballot-schemes/.

[17] Unsworn Decl. Pete Karas, ¶14; *see also* Rita Maniotis, *Pete Karas Beats a Costly Challenge*, Wis. Green Party (June 21, 2026), https://www.wisconsingreenparty.org/pete_karas_beats_a_costly_challenge.

[18] *Infra* Section III.C; *see also* Unsworn Decl. Pete Karas, ¶17.

## III. Arguments: Act 126 burdens core political speech, and nothing the State says explains the line it drew.

Under Act 126, a Wisconsin resident must circulate candidate nomination papers and recall petitions, while nonresidents may circulate presidential nomination papers and referendums. Preventing fraud doesn't distinguish nomination papers and recall petitions from the petitions Act 126 left alone. But one other characteristic does: whether the petition can cost a legislator a seat. Moreover, Act 126's burden falls on those least able to absorb it: minor parties and grassroots causes. Act 126 strips volunteers from candidates with no paid field operation. And it rests on a record no better than the empty one that doomed a nearly identical requirement more than twenty years ago.[19]

### A. A Wisconsinite must circulate a petition to recall a state legislator, but an Illinoisan may circulate a referendum to Wisconsin voters.

Act 126 didn't impose a residency requirement on *all* petition circulators in Wisconsin. The Act didn't even change the legal definition of a "qualified circulator": "'Qualified circulator' means a qualified elector of this state or any U.S. citizen age 18 or older who, if he or she were a resident of this state, would not be disqualified from voting under s. 6.03."[20] That definition survives untouched. The Act instead requires that a "qualified circulator" certify that he or she is also a

[19] *Frami*, 255 F. Supp. 2d at 970.
[20] Wis. Stat. § 5.02(16g).

"qualified elector of this state" for nomination and recall petitions.[21] But for presidential elections, the pre-Act 126 standard remains.[22] And for all other petitions, including referendums, that standard also governs:

> The certification of a qualified circulator stating … that, except as provided in par. (b) [about recall petitions], the circulator is a qualified elector of this state, *or if not a qualified elector of this state, that the circulator is a U.S. citizen age 18 or older who, if he or she were a resident of this state, would not be disqualified from voting under s. 6.03* ….[23]

The takeaway: a Wisconsin resident must circulate a petition to recall a state legislator, but a resident of Illinois may circulate a petition to place a question before Wisconsin voters. WEC guidance confirms as much.[24]

### B. The State never feared fraud; it resented a recall.

Although the State may claim lofty motives for Act 126, the motives that surface in the legislative record don't explain the line the Legislature drew. And that matters. Under Supreme Court precedent, "[u]nderinclusiveness raises serious doubts about whether the government is in fact pursuing the interest it invokes …."[25]

Act 126's legislative history begins with a recall aimed at the Speaker of the Wisconsin Assembly. Some in Republican Robin Vos's own party didn't think him

---

[21] *E.g.*, 2025 Wis. Act 126, § 2.
[22] *Id.* § 3.
[23] Wis. Stat. § 8.40(2)(a) (emphasis added).
[24] *See* dkt. #1-1, at 21.
[25] *Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786, 802 (2011).

loyal enough to President Donald Trump.[26] Among other things, they were upset that Speaker Vos wouldn't let the Legislature try to decertify Joe Biden's lawful 2020 victory (something Amici applaud him for).[27] Speaker Vos then faced two recall petitions, the second of which, in particular, drew on out-of-state circulators.[28] It barely failed.[29]

During the public hearing, legislators left no doubt why they were passing this law: the second Speaker Vos recall.[30] Legislators complained that *one* of the out-of-state circulators in that recall effort may have had a criminal record and that others were connected to "duplicate" and "questionable" signatures.[31]

But here, the State isn't foiling fraud; it's resenting a recall. A forged signature is forged—whether it's on a recall petition or a referendum. And a nonresident who circulates a referendum hides no better than one who circulates a recall. If this law were really about preventing fraud, Act 126 would carve out

---

[26] Molly Beck, *Racine County Man Launches Bid to Recall Speaker Robin Vos over Trump, Election Issues*, Milwaukee J. Sentinel (Jan. 10, 2024), https://www.jsonline.com/story/news/politics/2024/01/10/racine-county-man-launches-bid-to-recall-speaker-robin-vos/72177921007/.
[27] *Id.*
[28] *Assembly Committee on Campaigns and Elections*, WisEye (June 3, 2025) ["June 3 Meeting"], https://wiseye.org/2025/06/03/assembly-committee-on-campaigns-and-elections-47/.
[29] Rich Kremer, *Wisconsin Elections Commission Rules Second Vos Recall Effort Has Failed*, Wis. Pub. Radio (June 27, 2024), https://www.wpr.org/news/wisconsin-elections-commission-rules-second-vos-recall-effort-has-failed; *see also* Anya van Wagtendonk, *Following Failed Robin Vos Recalls, Rules for Petition Circulators Could Change in Wisconsin*, Wis. Pub. Radio (June 4, 2025), https://www.wpr.org/news/wisconsin-rules-recall-petition-assembly-proposal-vos.
[30] June 3 Meeting, *supra*.
[31] *Id.*

nothing. Indeed, at the public hearing, the legislators (briefly) discussed the exception for presidential nomination papers and struggled to defend it beyond noting possible constitutional issues with a residency requirement for presidential elections.[32] The carve-outs make Act 126 underinclusive—a serious First Amendment problem.

### C. Act 126 puts its heaviest burden on the parties with the thinnest infrastructure.

The major-party legislators who passed Act 126 were safeguarding their own jobs; Act 126's burden falls unevenly on those who would challenge their rule. For context, WEC does not police the residency requirement—private challengers do—so the Act is easy to weaponize: it hands any challenger a new ground for forcing a candidate to defend nomination papers. That expense lands on minor-party candidates like Karas, who beat a challenge but paid for the privilege. And the constitutional injury compounds for a candidate who must gather thousands of signatures without the county organizations and paid circulators that the major parties command. For more than twenty years, Wisconsin ran its elections without this requirement.[33] In all that time, the State can muster only one recall—the second Vos recall—in which a circulator's qualifications may have contributed to fraud. Even if that recall involved fraud, that one episode across two decades is

---

[32] *Id.*
[33] *Frami*, 255 F. Supp. 2d at 964.

not a pattern, and it cannot carry a categorical residency rule. It's time to return to the pre-Act 126 standard.

Neither Karas nor the Green Party is a stranger to nomination-paper challenges. Most notably, in 2020, the Green Party's presidential and vice-presidential candidates filed nearly double the 2,000 required signatures and lost their place on the ballot anyway.[34] A private challenger alleged, on information and belief, that some papers listed a stale address for the vice-presidential candidate, and WEC's administrator then certified only 1,789 signatures.[35] The candidate had simply moved during the nomination period.[36] But the Green Party, small and unstaffed, had no attorney on retainer ready to fight.[37] To quote the Green Party's presidential candidate: "We couldn't find a damn lawyer. … You know, we went to the usual progressive lawyers[,] and they wouldn't return our calls. So then we had to get on Google and find election lawyers."[38] The Green Party could not reach court immediately, and it lost on a pseudo-laches theory.[39] One dissenting justice called this result the "ultimate voter suppression."[40]

---

[34] *Hawkins*, 948 N.W.2d at 881 (Roggensack, C.J., dissenting).
[35] *Id.* at 878 (majority opinion); *id.* at 880–82 (Roggensack, C.J., dissenting).
[36] *See id.* at 881–82 (Roggensack, C.J., dissenting); *see also id.* at 886–87 (Ziegler, J., dissenting).
[37] Shawn Johnson, *Wisconsin Supreme Court Rejects Green Party Effort to Get on Presidential Ballot*, Wis. Pub. Radio (Sept. 14, 2020), https://www.wpr.org/justice/wisconsin-supreme-court-rejects-green-party-effort-get-presidential-ballot.
[38] *Id.*
[39] *Hawkins*, 948 N.W.2d at 879–80 (majority opinion).
[40] *Id.* at 884 (Ziegler, J., dissenting); *see also id.* at 898 (Rebecca Grassl Bradley, J., dissenting).

History nearly repeated itself in 2024, when a Democratic staffer tried to knock the Green Party off Wisconsin's presidential ballot.[41] Although that challenge failed, it was a scary time to be a Green.[42] Given this history, the Green Party now distrusts every ballot-access "reform" that the two major parties propose.

Act 126 does more than arm challengers; it shrinks the pool of people who may gather signatures in the first place. A statewide candidate must gather thousands of signatures within a fixed window.[43] A major-party candidate draws circulators from party organizations in each of Wisconsin's seventy-two counties. Minor parties have no such network. They rely on volunteers—some from communities in Illinois, Michigan, and Minnesota that share media markets and commuting corridors with southern, northern, and western Wisconsin. Act 126 drains those volunteers from the pool. And that loss cuts deepest for the candidates who had the fewest to begin with. A major-party candidate who loses

---

[41] *See, e.g.*, Amy Sikma, *Wisc. Democrats Move to Block Third-Party Candidate Jill Stein from Ballot—Which Would Likely Boost Harris Among Anti-Israel Voters*, N.Y. Post (Aug. 15, 2024), https://nypost.com/2024/08/15/us-news/wisconsin-democrats-move-to-block-jill-stein-from-ballot-which-would-likely-boost-kamala-harris-among-pro-palestine-voters/.

[42] *See, e.g.*, Scott Bauer, *Green Party's Jill Stein Will Remain on Wisconsin's 2024 Ballot After State Supreme Court Rejects Hearing Challenge*, PBS Wis. (Aug. 26, 2024), https://pbswisconsin.org/news-item/green-partys-jill-stein-will-remain-on-wisconsins-2024-ballot-after-state-supreme-court-rejects-hearing-challenge/.

[43] Wis. Stat. § 8.15(1), (6)(a).

circulators runs a harder petition drive. For minor-party candidates, the volunteers who remain might not be enough.

A minor party pays a further price when its one statewide candidate comes up short. In Wisconsin, automatic ballot access for the presidential election depends on running a state-office candidate who draws at least 1% of the vote in the previous gubernatorial election.[44] Had Karas *actually* been struck—and so received no votes—the Green Party wouldn't get its chance at automatic access to the 2028 presidential ballot.

**D. Precedent already recognizes that residency requirements like this one hurt minor parties.**

Wisconsin has tried this before—and last time, it lost in court to a minor party. It should lose here too. *Frami* began with two Constitution Party candidates and two volunteers who circulated their nomination papers; one volunteer lived in Michigan.[45] Both candidates collected the signatures the law demanded—a congressional candidate gathered more than 1,000, and a county register-of-deeds candidate gathered the required 200.[46] Both were denied a place on the ballot anyway, solely because circulators who lived in the wrong place had gathered some of the signatures.[47]

---

[44] *See* Bauer, *supra*.
[45] *Frami*, 255 F. Supp. 2d at 964–65.
[46] *Id.*
[47] *Id.*

The Western District of Wisconsin found that the residency requirement made a small minor party's path to the ballot "significantly more difficult," and the court rejected every interest the State offered, including preventing fraud.[48] The State couldn't produce serious evidence of a problem with nonresident petition circulators, and the court emphasized that the State must do more than simply "posit the existence of the disease sought to be cured."[49]

Following *Frami*, the Legislature repealed the residency requirement.[50] For roughly twenty years, Wisconsin permitted nonresident circulators, and the Green Party and others built their petition efforts accordingly. That interval matters. *Frami* rested on an empty record of fraud. The State defends Act 126 after two decades of experience under the very rule that it now says invites fraud—and the record before the Legislature shriveled to one controversial recall effort. Even assuming that single recall involved fraud, it is still a single recall.

---

[48] *Id.* at 965–71.
[49] *Id.* at 970 (quoting *Krislov*, 226 F.3d at 865).
[50] 2005 Wis. Act 451.

## IV. Conclusion: This Court should declare Act 126 unconstitutional and enjoin its enforcement.

A legislature may not sort petitions by the threat they pose to its members. Act 126 does exactly that, and the bill is already in: Karas's campaign paid $13,000 to prove he had complied with a law he never violated. If Act 126 survives, every minor-party candidate in Wisconsin will gather signatures knowing that any challenger can inflict that cost on the strength of nothing more than a guess about where a volunteer lives. This Court should grant Plaintiff's Motion for Summary Judgment, declare Act 126 unconstitutional, and enjoin its enforcement.

Dated this 21st day of September, 2026.

Respectfully submitted,

PETE KARAS, GREEN PARTY CANDIDATE FOR WISCONSIN SECRETARY OF STATE, AND THE WISCONSIN GREEN PARTY,

s/ Skylar R. Croy
Skylar R. Croy
*Wisconsin Bar No.* 1117831
HURLEY BURISH, S.C.
33 E. Main Street, Suite 400
Madison, WI 53703
scroy@hurleyburish.com
(608) 257-0945

*Counsel for Pete Karas & the Wisconsin Green Party*