IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

---

AMERICANS FOR CITIZEN VOTING PAC,

Plaintiff,

v. Case No. 26-CV-0786

MEAGAN WOLFE, et al.,

Defendants.

---

**SECOND DECLARATION OF ROBERT KEHOE**
**IN SUPPORT OF DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT**

---

I, Robert Kehoe declare pursuant to 28 U.S.C. § 1746 and under the penalty of perjury, that the following is true and correct.

1. I am an adult resident of the State of Wisconsin and am presently in Dane County.

2. Since June 2022, I have served as the Deputy Administrator of the Wisconsin Elections Commission (the "Commission"). I previously served as the Technology Director of the Commission, from October 2018 until my appointment as Deputy Administrator.

3. The Commission is a governmental agency responsible for administering and enforcing election laws in Wisconsin. As the Commission's Deputy Administrator, I assist the Administrator, who serves as Wisconsin's

chief elections officer. I am additionally responsible for day-to-day supervision of the agency's election administration, information technology, and elections security staff.

4. I make this declaration based upon my personal knowledge and in response to Plaintiff's complaint.

5. On April 29, 2026, Plaintiff, Americans for Citizen Voting PAC, filed a complaint in state court raising constitutional challenges to 2025 Wis. Act 126 ("Act 126"), enacted on March 27, 2026. The case has now been removed to federal court.

6. Act 126 amended provisions of Wisconsin law to require a circulator of nomination papers and recall petitions to be a "qualified elector of this state," except as to nomination papers for presidential/vice-presidential candidates and referenda petitions.

7. A circulator subject to Act 126's requirements is a person who obtains signatures on a candidate's nomination papers for the candidate to be placed on the ballot for a particular office, or for a recall election to occur.

8. If a circulator is a qualified elector of the candidate's district, or of an incumbent official's district for a recall petition, the circulator may also sign the nomination paper or petition.

9. Act 126's provisions, where applicable, now require a circulator to be a person who is qualified to vote in Wisconsin. The person does not have to

be registered to vote in Wisconsin to be a circulator; rather, the person just must be someone who could vote in Wisconsin.

10. Following enactment of Act 126, on April 6, 2026, the Commission approved a memo regarding Act 126 and updated nomination paper templates to reflect Act 126's changes. A true and correct copy of that memo is attached to Plaintiff's complaint as Exhibit 2.

11. Additionally, one of the updated nomination paper templates approved following Act 126's enactment, the Nomination Paper for Partisan Office, is attached to Plaintiff's complaint as Exhibit 1.

12. The 2026 General Election includes elections for Governor, Lieutenant Governor, Attorney General, Secretary of State, Treasurer, U.S. House of Representatives, Wisconsin State Senate, Wisconsin State Assembly, and county officers other than supervisors and county executives. Additionally, municipalities and counties with vacancies may hold elections on the day of the General Election, with any primary occurring on the day of the Partisan Primary.

13. Pursuant to Wisconsin law, potential candidates for the 2026 Fall Partisan Primary and General Election were able to start circulating nomination papers on April 15, 2026. Wis. Stat. §§ 8.15(1) (partisan candidates), 8.20(8)(a) (independent candidates).

14. There are roughly 130 state and congressional offices and over 150 county offices for which elections will be held in these upcoming elections, where Act 126's circulator requirements apply.

15. Pursuant to Wisconsin law, the nomination papers for those elections had to be filed by June 1, 2026. Wis. Stat. §§ 8.15(1), 8.20(8)(a).

16. Wisconsin law requires that for state offices and offices in the U.S. Senate and House of Representatives, nomination papers must be filed with the Commission. For county offices, they must be filed with the county clerk or, in Milwaukee County, with the county board of election commissioners. Wis. Stat. §§ 8.15(8), 8.20(7); *see also* Wis. Stat. § 5.02(23).

17. Wisconsin statutes and regulations impose specific requirements, including certifications, as to nomination papers and recall petitions. *See generally* Wis. Stat. §§ 8.15, 8.20, 9.10(2)(em); Wis. Admin. Code EL § 2.05. These include a required circulator certification statement. *See id.*

18. Both before and after Act 126, Wisconsin law has required that nomination papers include a certification of a qualified circulator, providing the following, with a signature and date:

a. his or her residence with street and number, if any;

b. attesting that he or she personally circulated the nomination paper and personally obtained each of the signatures;

c. that he or she knows that they are electors of the ward, aldermanic district, municipality or county, as the nomination papers require;

d. that he or she knows they signed the paper with full knowledge of its content;

e. that he or she knows their respective residences given;

f. that he or she knows each signer signed on the date stated opposite his or her name;

g. that he or she intends to support the candidate; and

h. that he or she is aware that falsifying the certification is punishable under Wisconsin law (Wis. Stat. § 12.13(3)(a)).

*See* Wis. Stat. §§ 8.15(4)(a), 8.20(3).

19. After Act 126, that certification must be the certification of a qualified circulator "who is a qualified elector of this state." 2025 Wis. Act 126, §§ 2–3.

20. Under Wisconsin law both before and after Act 126, a person may only circulate nomination papers for one candidate per office per election. Wis. Stat. § 8.04.

21. And each candidate for public office bears the responsibility for assuring that their nomination papers are prepared, circulated, signed, and filed in compliance with applicable law and administrative code requirements. Wis. Admin. Code EL § 2.05(3)(a).

22. As to recall petitions, both before and after Act 126, Wisconsin law also provided that no signature may be counted if the circulator fails to sign the certification of circulator or if the circulator was not qualified to be a circulator. Wis. Stat. §§ 9.10(2)(em), 8.40(2). Unlike the nomination paper

certification, the recall petition circulator signature does not require any attestation of support. Like the circulator certification for nomination papers, the circulator certification for a recall petition requires the circulator to sign and date a certification attesting that he or she: personally circulated the petition and obtained each signature; knows that they are electors of the jurisdiction or district in which the petition is circulated; knows that they signed with full knowledge of its content; knows their respective residences given; knows that each signer signed on the date opposite his or her name; and knows that falsifying the certification is punishable under Wis. Stat. § 12.13(3)(a). Wis. Stat. § 8.40(2).

23. After Act 126, the circulator must now be a "qualified elector of this state" to be a circulator and for the signatures on a recall petition to, in turn, be counted. 2025 Wis. Act 126, § 6.

24. Even prior to Act 126, circulators were most commonly from Wisconsin. For example, the Commission staff examined nomination papers submitted by candidates who attained ballot access for U.S. Representative contests in the 2024 General Election, which requires at least 1,000 valid signatures. Staff calculated that approximately 4.1% of all nomination papers were circulated by individuals residing outside of Wisconsin.

25. Wisconsin law has also long provided how many signatures are required on nomination papers for the respective offices, including, for example:

a. For statewide offices, 2,000 to 4,000 elector signatures are required, Wis. Stat. § 8.15(6)(a);

b. For U.S. Representatives, 1,000 to 2,000 elector signatures are required, Wis. Stat. § 8.15(6)(b);

c. For Wisconsin State Senators, 400 to 800 signatures are required, Wis. Stat. § 8.15(6)(c);

d. For Wisconsin State Assembly Representatives, 200 to 400 elector signatures are required, Wis. Stat. § 8.15(6)(d); and

e. For a petition to recall a state officer, signatures of electors equal to at least 25% of the vote cast for the Office of Governor at the last election within the same district or territory as that of the officeholder being recalled, Wis. Stat. § 9.10(1)(b).

26. Additionally, prior to and after Act 126, for an elector's signature to be valid and thus counted towards the total signatures, the signing elector—not the circulator, but a person signing nomination papers to be counted as one of the required elector signatures—must live within the county, district, or jurisdiction that the candidate seeks to represent, or in which the recall petition is circulated. Wis. Stat. §§ 8.10(4)(a), 8.15(3), 8.20(5), 9.10(2)(e)5.; Wis. Admin. Code EL § 2.05(6)(h)5.

27. As a practical matter, Wisconsin law did not and does not prevent others from accompanying a circulator while the circulator is obtaining signatures, or limit whether persons accompanying a circulator must be

qualified to vote in or otherwise even reside in Wisconsin. Any additional person could be present during the circulation of the nomination papers or recall petitions to advocate for a candidate or for the recall petition, whether or not they are qualified to vote or reside in Wisconsin.

28. Challenges may be made to the validity of nomination papers and recall petitions. Wis. Admin. Code EL §§ 2.07, 2.11; *see also* Wis. Stat. § 8.07.

29. For nomination papers, such challenges must be made by the third calendar day after the filing deadline for the challenged papers; for recall petitions, a challenge must be made within 10 days of the petition being offered for filing. Wis. Admin. Code EL § 2.07(3)(b); Wis. Stat. § 9.10(3)(b), (4)(a). So, as to nomination papers filed by June 1, 2026, for the 2026 Partisan Primary and General Election, that would mean that challenges had to be made by June 4, 2026. Wis. Admin. Code EL § 2.07(3)(b).

30. Challenges to nomination papers must be filed with the respective filing officer: for state and federal offices, this means with the Commission, and for county offices, this means the county clerk. Wis. Admin. Code EL §§ 2.07(2), 2.05(1)(i).

31. Any order on a challenge to nomination papers made by a county filing officer may be appealed to the Commission. Wis. Admin. Code EL § 2.07(7).

32. If the circulator line on a nomination paper page is facially deficient, the Commission will strike the entire page. *See* Wis. Admin. Code EL § 2.05(1)(h), (6)(g). Commission staff review circulator certifications to ensure they are in the proper format and that the required information is present. *See* Wis. Admin. Code EL § 2.05(1)(h).

33. Issues related to circulator certifications on nomination papers have been a common basis for challenges to nomination papers filed with the Commission. Issues related to the dating of the circulator signature are particularly common, as, for example, no signature on a nomination paper may be counted if the signature is dated after the date of the circulator certification. *See* Wis. Admin. Code EL § 2.05(6)(g).

34. Challenges as to nomination papers must be decided by the filing officer not later than the date for certifying candidates to the ballot. Wis. Admin. Code EL § 2.07(3)(h). Any aspect of a circulator statement is subject to challenges. Wis. Admin. Code EL § 2.07(5)(c). For the 2026 Partisan Primary and General Election, that meant the Commission had to certify the candidates to the ballot by June 10, 2026.

35. The Commission was required to provide a notice to each county clerk, certifying the list of candidates for the Partisan Primary and General Election, as soon as possible after the deadline for determining ballot arrangement on June 10, 2026. Wis. Stat. § 10.06(1)(h).

36. Challengers have a narrow window to submit challenges, and the Commission or local filing officer thus has a narrow window in which to decide the challenge.

37. County clerks also have an extremely narrow window to provide ballots for the 2026 Partisan Primary Election. For example, after receiving the certifications from the Commission no later than June 10, 2026, regarding what state and federal offices must appear on the Partisan Primary ballot, they had to arrange to have those ballots printed and delivered to each municipal clerk in the county by June 24, 2026. Wis. Stat. § 7.10(1)(a), (2), (3)(a). In turn, the municipal clerks had to send absentee ballots to the voters with an absentee ballot request on file by June 25, 2026. Wis. Stat. § 7.15(1)(cm). Notably, this included military and overseas voters. *See* Wis. Stat. §§ 7.22, 7.24; 52 U.S.C. § 20302(a)(8).

38. Separate from consideration of verified challenges, the Commission's statutory authority and duty to administer Wisconsin laws relating to elections includes authority to investigate violations of Wisconsin's election laws upon the filing of complaints with the Commission. Wis. Stat. §§ 5.05, 5.06.

39. This investigative authority includes the authority to subpoena persons and records and to retain a special investigator. Wis. Stat. § 5.05(1)(b), (2m)(c)4.–5. The Commission also has authority to initiate civil prosecutions

related to such violations, and refer such violations to prosecutors for potential criminal prosecutions upon a probable cause finding. Wis. Stat. § 5.05.

40. The Commission may also investigate compliance with election laws by local election officials after receiving a complaint or on its own motion. Wis. Stat. § 5.06. Regarding ballot access, such a complaint must be filed within 10 days of the action of the local election official. *See* Wis. Stat. § 5.06(3). If the Commission finds probable cause of a violation, it may issue a corrective order to the official. Wis. Stat. § 5.06(6).

41. In 2024, there were multiple unsuccessful petitions to recall Speaker of the Wisconsin State Assembly, Robin Vos.

42. The Commission found that the first recall petition did not obtain enough valid signatures, and the recall petitioner did not amend the petition to address the insufficiencies.

43. Attached as Exhibit A is a true and correct copy of a verified challenge to a recall petition from Speaker Vos to the Commission, dated March 21, 2024.

44. The verified challenge that the Commission received from Speaker Vos, dated March 21, 2024, alleged that, with the help of a private investigator, Vos determined that four out-of-state convicted felons circulated 94 submitted recall petition pages of signatures. (Ex. A:5.)

45. The verified challenge that the Commission received from Speaker Vos, dated March 21, 2024, argued that dozens of petition pages had to be stricken because, it alleged that Vos, with the use of a private investigator, identified out-of-state circulators for those pages whose listed addresses in Arizona could not be verified. (Ex. A:6.)

46. The verified challenge that the Commission received from Speaker Vos, dated March 21, 2024, challenged 32 petition pages on grounds that those pages included circulator signature dates that pre-dated the signature dates on the petition pages. (Ex. A:6–7.)

47. The verified challenge that the Commission received from Speaker Vos, dated March 21, 2024, alleged that 21 people had signed affidavits stating that their names were fraudulently included in the recall petitions. (Ex. A:8.)

48. The verified challenge that the Commission received from Speaker Vos, dated March 21, 2024, alleged that the circulators who forged signatures included Rich Clotaire, with an address in Florida. (Ex. A:8.)

49. The verified challenge that the Commission received from Speaker Vos, dated March 21, 2024, alleged that the circulators who forged signatures included Lavelle Hester Bey, with an address in New York. (Ex. A:8.)

50. The verified challenge that the Commission received from Speaker Vos, dated March 21, 2024, Exhibit A to Robert Kehoe's Second Declaration, alleged that the circulators who forged signatures included Jason Lopez, with an address in Florida. (Ex. A:8.)

51. The verified challenge that the Commission received from Speaker Vos, dated March 21, 2024, Exhibit A to Robert Kehoe's Second Declaration, alleged that the circulators who forged signatures included Carlo Green, with an address in Florida. (Ex. A:8.)

52. The verified challenge that the Commission received from Speaker Vos, dated March 21, 2024, alleged that at least three minors had their names fraudulently added to the recall petitions. (Ex. A:8.)

53. The verified challenge that the Commission received from Speaker Vos, dated March 21, 2024, alleged that a woman who signed the recall petition was told that it was a petition supporting "women's rights." (Ex. A:8.)

54. The verified challenge that the Commission received from Speaker Vos, dated March 21, 2024, alleged that the circulator who collected the woman's signature who said she was told that it was a petition supporting "women's rights" listed an address in Mississippi. (Ex. A:8–9.)

55. The verified challenge that the Commission received from Speaker Vos, dated March 21, 2024, alleged that a man who is not a citizen of

Wisconsin or the United States, residing in the country under a visa, was approached by a woman and told he did not need to be eligible to vote to sign the petition. (Ex. A:9.)

56. The verified challenge that the Commission received from Speaker Vos, dated March 21, 2024, alleged that the signature of the man who is not a citizen of Wisconsin or the United States, residing in the country under a visa, who was approached by a woman and told he did not need to be eligible to vote to sign the petition, was collected by a woman who listed an address in Arizona. (Ex. A:9.)

57. The verified challenge that the Commission received from Speaker Vos, dated March 21, 2024, alleged that a man's signature appeared on the recall petition, dated February 27, 2024, even though he had been held at the Racine County Jail since February 4, 2024. (Ex. A:9–10.)

58. The verified challenge that the Commission received from Speaker Vos, dated March 21, 2024, alleged that the man's signature that appeared on the recall petition, dated February 27, 2024, even though he had been held at the Racine County Jail since February 4, 2024, was allegedly collected by Lavelle Hester Bey, with a listed address in New York. (Ex. A:9–10.)

59. The group seeking to recall Speaker Vos filed a second petition.

60. Attached as Exhibit B is a true and correct copy of a verified challenge to a recall petition from Speaker Vos to the Commission, dated June 7, 2024.

61. The verified challenge that the Commission received from Speaker Vos, dated June 7, 2024, alleged that multiple out-of-state circulators provided non-existent addresses. (Ex. B:8.)

62. The verified challenge that the Commission received from Speaker Vos, dated June 7, 2024, alleged that at least four circulators forged names on petitions. (Ex. B:12–16.)

63. The verified challenge that the Commission received from Speaker Vos, dated June 7, 2024, alleged that circulators had confirmed criminal records from Arkansas, Maryland, Florida, Arizona, North Carolina, Texas, Ohio, and Illinois. (Ex. B:16–18.)

64. The verified challenge that the Commission received from Speaker Vos, dated June 7, 2024, Exhibit B to Robert Kehoe's Second Declaration, alleged that for out-of-state felons, it was difficult to determine if they had completed their criminal sentences. (Ex. B:18.)

65. The verified challenge that the Commission received from Speaker Vos, dated June 7, 2024, alleged that individuals were falsely told that the recall petition was a petition to prevent farmland from being sold to China. (Ex. B:18.)

66. The Commission is required to keep many components of its investigation and consideration of complaints filed with it for violations of Wisconsin's elections law confidential by law, but a letter referring a matter to a prosecutor for potential prosecution upon a finding of probable cause is an exception.

67. As reflected in a letter issued by the Commission on February 27, 2026, that is subject to public disclosure and a true and correct copy of which is attached to this declaration as Exhibit C, in May of 2025, the Commission under Wis. Stat. § 5.05(2m)(c)4. found probable cause to believe that persons had, among other things, falsely listed an address that was not their residence on the circulator certification of a petition to recall Speaker Vos that they signed.

68. As further reflected in that February 27, 2026, letter, the Commission also found probable cause to believe that multiple persons violated Wis. Stat. § 12.13(3)(a), which prohibits falsifying or fraudulently defacing or destroying a recall petition, among other documents.

69. As further reflected in that February 27, 2026, letter, the Commission found that credible evidence was submitted to the Commission from several individuals who attested that they did not actually sign the recall petition, without rebuttal from the involved circulators.

70. As further reflected in that February 27, 2026, letter, the persons whom the Commission found probable cause to believe had violated Wis. Stat. § 12.13(3)(a) included Rich Clotaire, with a Florida address.

71. As further reflected in that February 27, 2026, letter, the persons whom the Commission found probable cause to believe had violated Wis. Stat. § 12.13(3)(a) included Carlo Green, with a Florida address.

72. As further reflected in that February 27, 2026, letter, the persons whom the Commission found probable cause to believe had violated Wis. Stat. § 12.13(3)(a) included Lavelle Hester Bay, with a New York address.

73. As further reflected in that February 27, 2026, letter, the persons whom the Commission found probable cause to believe had violated Wis. Stat. § 12.13(3)(a) included Jason Lopez, with a Florida address.

74. As a general matter, it can be more difficult for the Commission to discern the veracity of information about individuals who do not reside in Wisconsin. While criminal conviction records, for example, are generally easy to research in Wisconsin through Wisconsin Circuit Court Case Access, other states may not have comparable resources. While Commission staff are able to use official state and county resources to look up a Wisconsin address, for any out of state address, the Commission, as well as any local filing officer, would need to rely on other publicly available resources, such as Google Maps.

75. While the Commission could potentially seek a warrant regarding an individual residing in Wisconsin, its statutory subpoena powers do not extend to those living outside the state. *See* Wis. Stat. § 5.05(2m)(c)4.

76. There is a very short timeframe for deciding challenges to nomination papers. Without subpoena power, the additional time required to obtain the testimony of an out-of-state circulator would impede a potential challenger's ability to present relevant information relevant to a challenge about the circulator. The Commission's or local filing officer would likewise have difficulty considering and deciding challenges to potentially incorrect or fraudulent papers.

77. Attached as Exhibit D is a true and correct copy of a verified challenge filed on June 4, 2026, by Gregory Walz-Chojnacki against the nomination papers of Pete Karas. This is a public document and can be downloaded from the Commission's Badger Voter's website for free as a nomination data request.

*Pursuant to 28 U.S.C. § 1746, I verify under penalty of perjury that the statements in the declaration are true and correct and based upon my personal knowledge.*

Executed October 1, 2026.

ROBERT KEHOE