| STATE OF WISCONSIN | WISCONSIN ELECTIONS COMMISSION |
|---|---|

In RE: the matter of:

Recall Petition Filed against Representative Vos

## REPRESENTATIVE ROBIN VOS' VERIFIED CHALLENGE TO THE RECALL PETITION

### INTRODUCTION

The recall petition filed against Speaker of the Assembly Robin Vos fails for the following reasons.

First, the petition has fallen woefully short of the minimum signature threshold. Although the petition included 10,702 submitted signatures, WEC's own review whittled down the numbers significantly. The initial review performed shortly after the signatures were turned in resulted in just 5,905 signatures in what used to be the 63rd Assembly District (the District Speaker Vos was elected to in 2022). However, only 3,364 signatures were verified in the current 33rd Assembly District, which was created last month with the new legislative maps signed by Governor Evers. As noted below, these numbers are certainly lower, as confirmed by subsequent reviews by WEC.

The recall petitions were also plagued with fraud and criminality. As set forth in greater detail below, there were numerous problems running through the petition, from the circulators to the signers. As to the circulators, several have felony convictions, names were forged on signature pages (including those of children), and addresses could not be verified. Turning to the signers, hundreds of them signed multiple times, used illegible writing, or provided incomplete address information. A follow up review of these problems will result in a greater reduction of signatures.

Finally, even leaving aside the petition's failure to gather sufficient signatures, the recall effort must be rejected for legal reasons. The recall nomination papers were circulated by listing the 63rd Assembly District, which Speaker Vos was elected to in 2022. However, in December 2023, the Wisconsin Supreme Court enjoined the 2022 legislative maps from being used in any future elections. As a result, a recall cannot occur in the District listed on the recall petitions.

For the reasons set forth below, WEC should decline to certify the recall petition.

## BACKGROUND

On January 10, 2024, Matthew Snorek submitted to WEC a "Statement of Intent to Circulate Recall Petition" against Speaker Vos. The basis for the recall was:

> Vos is blocking fair elections in WI. Vos mislead [sic] the WI Assembly in the impeachment process of Meghan [sic] Wolfe. Vos said he will "try as hard as I can to make sure Donald Trump is not the nominee in 2024. Vos supported the unlawful drop boxes. Wisconsin must move "Forward" without Vos in power.

The recall petition template indicated that it was for "Robin Vos 63rd Assembly District" and that all of the qualified electors were from the 63rd Assembly District.

Under Wis. Stat. § 9.10(1)(b), "a petition for recall of an officer shall be signed by electors equal to at least 25 percent of the vote cast for the office of governor at the last election within the same district or territory as that of the officeholder being recalled." WEC has determined that the number of signatures necessary to trigger a recall election in the old 63rd Assembly District is 6,850.

However, Speaker Vos no longer resides in the 63rd Assembly District. Based on new Legislative maps that became effective on February 20, 2024, Speaker Vos now resides in the 33rd Assembly District. As set forth in a Memorandum from Attorney Hunzicker on March 12, 2024, WEC has not yet determined the number of signatures necessary to trigger a recall election in the current 33rd Assembly District.

## ARGUMENT

### I. Regardless of the District Used, the Recall Petition Failed to Gather Sufficient Signatures

WEC can reject the recall petition on the grounds that insufficient signatures were gathered. On March 11, 2024, Snorek submitted 1,346 recall petitions with 10,702 signatures. Each and every recall petition states that "the undersigned qualified electors of the 63rd Assembly District petition for the recall of Robin Vos 63rd Assembly." An initial WEC staff review determined that only 9,053 signatures were "potentially valid." However, using the two Assembly Districts which could possibly serve as the District for the recall, Snorek and the petitioners fell woefully short. WEC determined that 5,905 signatures fell within the previous 63rd Assembly District, while just 3,364 were submitted in the current 33rd Assembly District.

A subsequent review was conducted by WEC and completed on March 15. This review narrowed the signatures down to 5,393 in the old 63rd Assembly District and 2,758 in the new 33rd Assembly District. These numbers were arrived at by adding up the totals from WEC's second review of the submitted petitions. The numbers relied on the following color coding:

- Yellow (the old 63rd and the new 66th) = 2,664 signatures
- Blue (the old 63rd the new 33rd) = 2,729 signatures
- Pink (the new 66th) = 3,611 signatures
- Green (the new 33rd, but not the old 63rd) = 29 signatures

Speaker Vos' internal review reached a similar conclusion. Of the 10,702 signatures submitted, Vos has identified 4,329 as falling outside of the old 63rd Assembly District and 6,617 falling outside of the new 33rd Assembly District. (Fernholz Aff., Exs. 1-2.)

6,850 valid signatures are necessary to trigger a recall in the old 63rd Assembly District. While WEC has not yet determined the number necessary to conduct a recall in the new 33rd

Assembly District, the number is surely higher than 2,758 or even 3,364. Leaving aside the legal deficiencies with the recall, it fails for the straightforward reason that it did not collect enough signatures. Depending on which Assembly District WEC determines is the appropriate District for the recall, Speaker Vos challenges all signatures that fall outside of either the old 63rd or the new 33rd Assembly District.

## II. Numerous Circulators' Petitions Must be Stricken

In addition to submitting thousands of signatures from individuals who do not reside within the old 63rd or the new 33rd Assembly Districts, hundreds (if not thousands) of signatures are subject to challenge due to the failure of circulators to comply with the law.

Wisconsin imposes requirements on circulators of a recall petition. For example, a circulator must attest:

(a) To his or her residence with street and number;

(b) That he or she personally circulated the petition and obtained the signatures;

(c) That he or she knows the signers are "electors of the jurisdiction or district in which the petition is circulated"

(d) That the signers signed the petition "with full knowledge of its content;"

(e) That the circulator knows the residences of the signers are accurate;

(f) That the signers signed on the date listed next to their names; and

(g) That the circulator is a qualified elector in Wisconsin. If the circulator is not a Wisconsin resident, he or she must be a U.S. citizen aged 18 or older, and must be eligible to vote if her or she were a Wisconsin resident. In other words, an out-of-state circulator cannot be disqualified from voting for any reason under Wis. Stat. § 6.03 (*e.g.*, a convicted felon).

Wis. Stat. § 8.40(2). A circulator who violates any of these provisions is guilty of a Class I felony. *See* §§ 8.40(2), 12.13(3)(a), 12.60(1)(a).

As set forth below, there is strong reason to believe that several of these provisions were violated.

### A. Four Out-of-State Convicted Felons Submitted 94 Recall Petitions

Wisconsin does not permit convicted felons to vote, unless they have completed the term of their sentence, including probation or extended supervision. Wis. Stat. §§ 6.03(1)(b), 304.078(3). Anyone who is not eligible to vote is likewise not eligible to circulate recall petitions. Wis. Stat. § 8.40(2).

With the assistance of a private investigator, Speaker Vos has identified four convicted felons who purportedly were circulators for the recall. Those individuals and their publicly available criminal history are as follows:

- Carlo Green, 6404 Sandpebble Ave., Temple Terrace, FL 33637. Green was found guilty of dealing in stolen property and submitting false information to a pawnbroker. Green circulated pages 78-94.
- Luther Thigpen, 355 Hall Road, Vickburg, MS 39180. Thigpen was found guilty of grand larceny and receiving stolen property. Thigpen circulated pages 479-485, 1181-1199, and 1200-1202.
- Jovany Jean, 9620 NW 49th Street, Sunrise, FL 33351. Jean was found guilty of burglary of an unoccupied dwelling. Jovany circulated pages 455-59, and 796-811.
- Jamon Parson, 725 Central Ave., Vicksburg, MS 39180. Parson has been found guilty of burglary four times. Parson circulated pages 476, 995-1019, and 1331.

(Rodriguez Aff., Ex. 1.)

If these circulators had not completed the terms of their sentences, they would be prohibited from voting in Wisconsin, and thus prohibited from serving as circulators. As such, WEC should verify whether each of these individuals would be eligible to vote in Wisconsin, and thus eligible to serve as circulators. *See* Wis. Stat. § 9.10(2)(em)2. If not, then all 94 petition pages must be excluded.

### B. 52 Petition Pages Must be Stricken Because the Circulators Did Not Provide a Valid or Confirmable Address

Circulators of recall petitions must include their "residence with street and number" on each signature page. Wis. Stat. § 8.40(2). With the help of licensed private investigator Zach Rodriguez, Speaker Vos has identified several circulators whose addresses cannot be verified:

- John Libby, 20403 N. Lake Pleasant Road, Peoria, AZ. This is an address for a UPS Store. Libby circulated pages 171-77, 1228, 1231, and 1272-73.
- Howard Cairo, 307 Croley Court, Nashville, TN 37209. Rodriguez could not locate a match for this name and address. It also appears there is an outstanding arrest warrant for Cairo. Cairo circulated pages 454, 780-95.
- Marissa Nicole Milano, 9635 N. 7th St., Phoenix, AZ 85068. This address is a Post Office location. Milano circulated page 434.
- Rayelyn Victoria Romero, 3847 S. Mill Ave., Tempe, AZ 85282. This address could not be verified, and the only address that Rodriguez could match for this individual was in Long Beach, California. Romera circulated pages 435 and 1229.
- Leticia Victoria Perkins, also at 3847 S. Mill Ave., Tempe, AZ 85282. This address could not be verified, and the only address that Rodriguez could match for this individual was in Long Beach, California. Perkins circulated page 436.

(Rodriguez Aff., Ex. 1.)

Finally, the following pages do not include full address information for circulators: 685, 688, 721, 751, 816, 834, 1062, 1119, 1120, 1122-25, 1146, 1252, 1254, 1255, 1314, 1319, and 1320. Speaker Vos challenges all signatures on these nomination papers.

### C. 32 Petition Pages Include Dates From Circulators That Pre-Date Signature Dates on the Petitions

Wisconsin law provides that a "signature on a petition sheet may not be counted if . . . . [t]he signature is dated after the date of the certification contained on the petition sheet." Wis. Stat. § 9.10(2)(e)3. The following petition page numbers violated this statute: 75, 132, 164, 306, 389, 510, 561, 656-59, 661, 681-84, 686-91, 696, 722, 909, 912, 1026, 1194, 1272, and 1283.

Speaker Vos challenges all signatures on these petitions in which the date of the signer post-dates the date of the circulators' signature.

### D. Petition Pages With Missing Dates Must be Discarded

A circulator must attest that he or she "knows that each signer signed on the date stated opposite his or her name." Wis. Stat. § 8.40(2). Dates are missing from pages 721 and 802, and thus those pages should not be counted.

## III. Hundreds of Signers Must be Stricken or Reviewed

While information included in a petition is "entitled to a presumption of validity," signatures of individuals are subject to challenge. Wis. Admin. Code EL 2.05(4).[1] For example, "[o]nly one signature per person for the same office is valid." EL 2.05(11). Speaker Vos has identified 333 duplicate signatures. (Fernholz Aff., Ex. 3.)

A signer must provide a "complete address, including municipality of residence for voting purposes, and the street and number, if any, of the residence." Wis. Admin. Code EL 2.05(12). If the address of the signer "is missing or incomplete," it cannot be counted, "unless residency can be determined by the information provided on the nomination paper." EL 2.07(15)(c). 471 signers did not provide their correct municipality. (Fernholz Aff., Ex. 4.) And 831 signers provided illegible or incomplete address information. (Fernholz Aff., Ex. 5.) "No signature may be counted when the residency of the circulator cannot be determined by the information given on the nomination paper." EL 2.05(14). Accordingly, Speaker Vos challenges these signatures.

---

[1] While Wis. Admin. Code EL 2.05 applies to nomination papers, the same standards are incorporated into recall petitions. Wis. Admin. Code EL 2.09(5).

## IV. The Recall Was Plagued By Fraud and Criminality

As has been publicly reported, an alarming number of people have come forth to state that their names were fraudulently included in the recall petitions.[2] Twenty-one of those individuals have signed affidavits, which are being submitted as part of this challenge.[3] The circulators who forged these signatures are Ritch Clotaire of 4149 W. Sample Road, Coconut Creek, FL, Lavelle Hester Bey of 2405 1st Avenue, New York, NY, John Libby of 20403 Lake Pleasant Rd., Peoria, AZ, Jason Lopez of 705 Truman Street, Lake Worth, FL, Carlo Green of 6404 Sandpebble Ave., Temple Terrace, FL, Curtis Peterson of 222 S. 3rd Street #319, Milwaukee, WI, Jason Lopez of 705 Truman St., Lake Worth, FL, and Jade Hilton of 5142 Westbrook Place, Union City, GA.

Perhaps even more disturbing, at least three minors had their names fraudulently added to the recall petitions.[4] Regardless of whether these children would be old enough to vote on election day, children are not permitted to sign recall petitions. *See* Wis. Admin. Code EL 2.05(15)(d). The circulator who forged these signatures is David Melnikov of 7 Oak Creek Drive, Buffalo Grove, IL.

Liz Tymus' name appears on the recall petition at page 469. However, she signed an affidavit that she was approached by two men in the parking lot who asked her if she would sign a petition supporting "women's rights." (Tymus Aff., ¶3.) The men prevented her from getting into her vehicle and told her that she could not get into her vehicle unless she signed the petition. (Id., ¶¶5-6.) It was not until later that Tymus realized she had been coerced into signing the recall

---

[2] *See, e.g.,* https://www.wkow.com/news/politics/racine-co-da-investigating-reports-of-fraudulent-signatures-on-speaker-robin-vos-recall-petition/article_1dfeccd8-e630-11ee-9a54-ab4afcb74a81.html.

[3] See the affidavits of Samuel Wahlen, Marie Mutter, Christopher Mutter, Keith Mann, David Fallon, Beverly Boos, Casey Smith, Darlene Mich, Leon Mich, Susan Brouwers, Philip Hein, Susan Hein, Amy Grimes, Samantha Hertner, Patrick Albers, Jennifer Grandi, Robert Grandi, Nicole Krierim, Michael La Pointe, Dawn Haggerty, and Thayer Hills.

[4] See the affidavits of Heidi LaFave, Kristen Hoffman, and Steven Wicklund.

petition. (Id., ¶6.) When she realized what had happened, she requested that the "Recall Vos" petitioners remove her signature. (Id., ¶7.) This request was not honored. (Id., ¶8.) The circulator who collected Tymus' signature was Xavier Lee, who purportedly resides at 101 Olde Trace Drive, Vicksburg, MS.

Sharon Ciborowski noticed that her mother Jean Ciborowski's signature appears at page 200, line 4. (Ciborowski Aff., ¶3.) Jean's name also appears on page 199. Sharon is Jean's power of attorney, as Jean is incapacitated and thus unable to sign the recall petition. (Id., ¶4.) *See* Wis. Stat. § 9.10(2)(e)6. Sharon never consented to having her mother's name added to the recall petition. (Id.) Jean Ciborowski's two signatures were collected by the aforementioned Jason Lopez, who purportedly resides at 705 Truman Street, Lake Worth, FL.

Max Acevedo is not a citizen of Wisconsin or the United States. (Acevedo Aff., ¶1.) He is currently residing in the country under a visa. (Id.) He was approached by a woman and asked to sign a petition. (Id., ¶3.) English is not his first language, so he did not understand what the woman was asking him to sign. (Id., ¶4.) He told the woman that he was not eligible to vote, but the woman told him that he did not need to be eligible to vote to sign the petition. (Id., ¶¶5-6.) Acevedo signed the petition, and subsequently learned that he inadvertently signed the recall petition. (Id., ¶¶7-9.) His signature appears at page 436, line 3, and was collected by Leticia Victoria Perkins, who purportedly resides at 3847 S. Mill Ave., Tempe, AZ.

Preston Kite allegedly signed the recall petition on February 27, 2024, at page 10, line 6. But how could that be, as Kite has been held in Racine County Jail since February 4, 2024. See https://inmate.kenoshajs.org/NewWorld.InmateInquiry/kenosha/Inmate/Detail/-794174. Kite is currently facing charges for possession of child pornography, child sexual exploitation, lewd/lascivious behavior (exposure), exposing his genitals to a child, possession of obscene


Case 2:26-cv-00786-LA Filed 10/01/26 Page 9 of 15 Document 52-1

materials involving sexual contact with an animal, and bestiality for engaging in sexual contact with an animal. *See* Racine County Case Nos. 2024CF164, 2024CF247. His signature was allegedly collected by the aforementioned Lavelle Hester Bey, who purportedly resides at 2405 1st Avenue, New York, NY.

Michael Lawrence has signed an affidavit attesting that he witnessed a recall circulator telling bar patrons that he was collecting signatures to allow Donald Trump to appear on the presidential ballot. (Lawrence Aff.) It is a felony for a circulator to fraudulently procure signatures by misrepresenting the nature of the recall petition. *See* Wis. Stat. § 8.40(2) (Circulator must attest that he "knows that [signers] signed the paper with full knowledge of its content.").

This may just be the tip of the iceberg. Speaker Vos challenges all of these signatures and respectfully requests that WEC make appropriate criminal referrals for the election fraud committed by the circulators responsible for these crimes.

## V. Because the Wisconsin Supreme Court Has Enjoined Any Election From Occurring in the Old 63rd Assembly District, the Recall Was Improperly Initiated and Cannot Proceed

On December 22, 2023, the Wisconsin Supreme Court held that the legislative districts which were in place in the 2022 elections violated Wisconsin Constitution's contiguous-territory requirement. *Clarke v. Wisconsin Elections Comm'n*, 2023 WI 79, ¶¶ 34, 77, 410 Wis. 2d 1, 998 N.W.2d 370. As a remedy, the court enjoined WEC from using the then-current maps "in all future elections." *Id.*, ¶¶ 56, 77. The court further provided the remedial maps must be adopted prior to the 2024 elections. *Id.* The decision did not provide any exceptions, and the statewide injunction remains in effect today, prohibiting any elections under the maps which have been determined unconstitutional.

On February 19, 2024, Governor Evers signed Senate Bill 488, which created new legislative districts. *See* 2023 Wis. Act 94 (published February 20, 2024). The law provides that it "applies, with respect to special or recall elections, to offices filled or contested concurrently with the 2024 general election." *Id.*, §2(2). For the 2024 State Assembly and Senate races, candidates may begin circulating nomination papers on April 15 and must have them submitted by June 1 for the August 13 primary. *See* Wis. Stat. § 8.15(1). As set forth in Attorney Hunzicker's March 12 Memorandum, the projected timeframe from this recall election would have nomination papers due April 23, a primary on May 21, with the general election on June 18. In other words, the recall would be running *concurrently* with the partisan primary for the 2024 general election.

The *Clarke* injunction combined with 2023 Wis. Act 94 means that the old 63rd Assembly District, which Speaker Vos was elected to in November 2022, cannot be used for any future elections. Based on the new legislative maps, Speaker Vos' current residence places him in the 33rd Assembly District. This is the only District in which a recall election could conceivably take place.

The Attorney General's Office has reached the same conclusion in a prior redistricting dispute. Following the 1980 census, the Wisconsin Legislature and the Governor were unable to agree on new legislative district boundaries. The matter went to litigation before a three-judge federal panel, and on February 22, 1982, the court "entered an order declaring the current reapportionment scheme unconstitutional and enjoining the defendant state Elections Board from preparing for or administering any elections using the current Senate and Assembly districts." *Wisconsin State AFL-CIO v. Elections Bd.*, 543 F. Supp. 630, 632 (E.D. Wis. 1982). The court subsequently dissolved the injunction and entered a final order with new legislative maps. *Id.* at

639. The court's order was to "be effective for the 1982 legislative elections and thereafter until such time as a valid constitutional redistricting plan is enacted into law." *Id.*

Following the court's decision, Senate President Fred Risser requested a formal opinion from Attorney General Bronson La Follette on how the old district map would be applied to elections held before November 1982. The Attorney General issued a formal opinion on August 19, 1982, that answered the following two questions thusly:

> 1. Are the electors of the old district or the electors of the new district required to sign petitions to recall a holdover senator?
>
> Answer: Electors of the new district.
>
> 2. Are the electors of the old district or those of the new district entitled to vote in a special election to fill a vacancy in the office of a holdover senator?
>
> Answer: Only electors of the new district.

No. OAG 48-82, 1982 WL 188344, at *1 (Wis. A.G. Aug. 19, 1982). As the Attorney General opined, "the old districts cannot be utilized for purposes of nomination and election after June 17, 1982 [the date of the federal court's order]. For purposes of nomination and election, the new legislative district lines became effective that date." *Id.* The Attorney General further determined that "neither recall elections nor elections to fill a vacancy can be based on an apportionment plan which has been found unconstitutional." *Id.* at *3.

As to the question of whether potential recall signatures must come from the district lines used in the 1980 elections or the ones to be used in the 1982 elections, the Attorney General was emphatic:

> In regard to recall petitions, the state constitution provides that '[s]uch petition shall be signed by electors . . . in the . . . district from which such officer is to be recalled.' It does not require signatures by electors in the district from which the officer was elected although the districts would in the usual event be identical.

*Id.*

This recall effort was doomed from the start, as it was initiated three weeks after the Wisconsin Supreme Court explicitly stated that the prior Assembly Districts were unconstitutional and thus could not be the basis for a recall (or any) election. Because the recall cannot proceed in the 63rd Assembly District, the recall was improperly initiated and must be rejected out of hand.

## VI. No Recall Election Can Proceed in the New 33rd Assembly District Because the Recall Petitions Never Referenced this District and the District Did Not Exist When the Recall Was Initiated

For the reasons stated above, the recall cannot occur under the prior 63rd Assembly District. But conducting a recall election in the new 33rd Assembly District is just as problematic, if for different reasons. Attorney Hunzinger's March 12 Memorandum analyzed the possibility of a recall election under the new 33rd Assembly District. But it would be improper for WEC to order a recall election for the District where Speaker Vos currently resides. This is so because the recall petitions all state that that the signatories are "qualified electors of the 63rd Assembly District." The signatories (at least those who actually were in old 63rd Assembly District) in effect attested to a recall for an Assembly District that no longer exists.

WEC cannot transform the recall petitions into something they are not. Petitioner Snorek never sought a recall election for the 33rd Assembly District, and not a single elector attested that he or she was supporting a recall in the 33rd.[5] As such, WEC cannot certify a recall for the new 33rd Assembly District.

[5] Moreover, the current 33rd Assembly District did not come into existence until February 20, 2024. Accordingly, any signatures before that date could not possibly constitute a request to conduct a recall election under Speaker Vos' current Assembly District.

## CONCLUSION

For the reasons set forth herein, WEC should decline to certify the recall petition.

Dated at Waukesha, Wisconsin this 21st day of March, 2024.

CRAMER MULTHAUF LLP
Attorneys for Respondent, Robin Vos

BY: *Electronically signed by Matthew M. Fernholz*
Matthew M. Fernholz, SBN: 1065765
Michael A. Snider, SBN: 1070388

CRAMER MULTHAUF LLP
1601 East Racine Avenue • Suite 200
P.O. Box 558
Waukesha, WI 53187-0558
(262) 542-4278
mmf@cmlawgroup.com
mas@cmlawgroup.com

## VERIFICATION

I, Robin Vos, being first duly sworn upon oath, state that I personally read the Verified Challenge to the Recall Petition, and that the information contained therein is true and correct based on my personal knowledge, or where not based upon personal knowledge, I believe the information to be true based upon information and belief. I reserve the right to supplement or change any information provided in the Verified Challenge to the Recall Petition based upon new information or evidence that becomes available to me.

[signature]
Robin Vos

Subscribed and sworn to before me
this 20 day of March, 2024

[signature]
Notary Public, State of Wisconsin
Commission expires: 1/30/2028

4870-7318-1359, v. 1

CHRISTOPHER OLMSTEAD
NOTARY PUBLIC
STATE OF WISCONSIN