IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

AMERICANS FOR CITIZEN VOTING PAC,

Plaintiff,

v. Case No. 26-CV-0786

MEAGAN WOLFE, et al.,

Defendants.

**DEFENDANTS' STATEMENT OF PROPOSED MATERIAL FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Defendants Meagan Wolfe, in her official capacity as Administrator of the Wisconsin Elections Commission, and Ann S. Jacobs, Mark L. Thomsen, Carrie Riepl, Don M. Millis, Marge Bostelmann, and Robert F. Spindell, Jr., in their official capacities as Commissioners of the Wisconsin Elections Commission, by and through their attorneys, file the following proposed findings of fact in support of their motion for summary judgment, which is being filed today.

1. Following the enactment of 2025 Wis. Act 126 ("Act 126"), on April 6, 2026, the Wisconsin Elections Commission ("the Commission") approved a memo regarding Act 126 and updated nomination paper templates

to reflect Act 126's changes. That memo is attached to Plaintiff's complaint as Exhibit 2. (Second Kehoe Decl. ¶ 10 (filed herewith); Dkt. 1-1:21–24.)

2. The Commission staff examined nomination papers submitted by candidates who attained ballot access for U.S. Representative contests in the 2024 General Election and found that only approximately 4.1% of all nomination papers submitted by these candidates were circulated by individuals residing out of Wisconsin. (Second Kehoe Decl. ¶ 24.)

3. As a practical matter, Wisconsin law did not and does not prevent others from accompanying a circulator while the circulator is obtaining signatures. (Second Kehoe Decl. ¶ 27.)

4. As a practical matter, Wisconsin law did not and does not limit whether persons accompanying a circulator must be qualified to vote in or otherwise even reside in Wisconsin. (Second Kehoe Decl. ¶ 27.)

5. As a practical matter, any additional person could be present during the circulation of the nomination papers or recall petition to advocate for a candidate or for the recall petition, whether or not they are qualified to vote or reside in Wisconsin. (Second Kehoe Decl. ¶ 27.)

6. Issues related to circulator certifications on nomination papers have been a common basis for challenges to nomination papers filed with the Commission. (Second Kehoe Decl. ¶ 33.)

7. Issues related to the dating of the circulator signature are particularly common, as, for example, no signature on a nomination paper may be counted if the signature is dated after the date of the circulator certification. (Second Kehoe Decl. ¶ 33.)

8. Candidates often turn in nomination papers from circulators who appear to have signed their pages on the first day of circulation rather than the final day, which invalidates any signatures collected on a later date unless a correcting affidavit is filed showing that the circulator indeed collected the subsequent signatures. (Second Kehoe Decl. ¶ 33.)

9. Any aspect of a circulator statement is subject to challenges. (Second Kehoe Decl. ¶ 34.)

10. Where the Commission is the filing officer by law and nomination papers are filed with the Commission, if the circulator line for a nomination paper page is facially deficient, the Commission will strike the entire page. (Second Kehoe Decl. ¶ 32.)

11. Where the Commission is the filing officer by law for recall petitions and recall petitions are filed with the Commission, if the circulator line for a recall petition page is facially deficient, the Commission will strike the entire page. (Second Kehoe Decl. ¶ 32.)

12. For the 2026 Fall Partisan Primary and 2026 General Election, there are roughly 130 state and congressional offices and over 150 county

offices for which elections are held, where Act 126's circulator requirements apply. (Second Kehoe Decl. ¶ 14.)

13. For the 2026 Partisan Primary and General Election, nomination papers had to be filed by June 1, 2026. (Second Kehoe Decl. ¶ 15.)

14. For the 2026 Partisan Primary and General Election, challenges to nomination papers had to be made by June 4, 2026, with exceptions for a small number of offices with extended filing deadlines. (Second Kehoe Decl. ¶ 29.)

15. For the 2026 Partisan Primary and General Election, the Commission had to certify the candidates to the ballot by June 10, 2026. (Second Kehoe Decl. ¶ 34.)

16. The Commission's roles also include investigating violations of Wisconsin's election laws and referral for criminal prosecutions, and potential civil prosecutions for such violations. (Second Kehoe Decl. ¶¶ 38–39.)

17. In 2024, there were multiple unsuccessful petitions to recall Speaker of the Wisconsin State Assembly, Robin Vos. (Second Kehoe Decl. ¶ 41.)

18. The first recall effort did not obtain enough valid signatures, and the group seeking recall did not address the insufficiencies. (Second Kehoe Decl. ¶ 42.)

19. The Commission received a verified challenge to a recall petition from Speaker Vos, dated March 21, 2024. (Second Kehoe Decl. ¶ 43.)

20. Exhibit A to the Second Declaration of Robert Kehoe is a true and correct copy of the verified challenge that the Commission received from Speaker Vos, dated March 21, 2024. (Second Kehoe Decl. ¶ 43; Ex. A.)

21. The verified challenge that the Commission received from Speaker Vos, dated March 21, 2024, Exhibit A to Robert Kehoe's Second Declaration, alleged that, with the help of a private investigator, Vos determined that four out-of-state convicted felons circulated 94 submitted recall petition pages of signatures. (Second Kehoe Decl. ¶ 44; Ex. A:5.)

22. The verified challenge that the Commission received from Speaker Vos, dated March 21, 2024, Exhibit A to Robert Kehoe's Second Declaration, argued that dozens of petition pages had to be stricken because, it alleged that Vos, with the use of a private investigator, identified out-of-state circulators for those pages whose listed addresses in Arizona could not be verified. (Second Kehoe Decl. ¶ 45; Ex. A:6.)

23. The verified challenge that the Commission received from Speaker Vos, dated March 21, 2024, Exhibit A to Robert Kehoe's Second Declaration, challenged 32 petition pages on grounds that those pages included circulator signature dates that pre-dated the signature dates on the petition pages. (Second Kehoe Decl. ¶ 46; Ex. A:6–7.)

24. The verified challenge that the Commission received from Speaker Vos, dated March 21, 2024, Exhibit A to Robert Kehoe's Second Declaration, alleged that 21 people had signed affidavits stating that their names were fraudulently included in the recall petitions. (Second Kehoe Decl. ¶ 47; Ex. A:8.)

25. The verified challenge that the Commission received from Speaker Vos, dated March 21, 2024, Exhibit A to Robert Kehoe's Second Declaration, alleged that the circulators who forged signatures included Rich Clotaire, with an address in Florida. (Second Kehoe Decl. ¶ 48; Ex. A:8.)

26. The verified challenge that the Commission received from Speaker Vos, dated March 21, 2024, Exhibit A to Robert Kehoe's Second Declaration, alleged that the circulators who forged signatures included Lavelle Hester Bey, with an address in New York. (Second Kehoe Decl. ¶ 49; Ex. A:8.)

27. The verified challenge that the Commission received from Speaker Vos, dated March 21, 2024, Exhibit A to Robert Kehoe's Second Declaration, alleged that the circulators who forged signatures included Jason Lopez, with an address in Florida. (Second Kehoe Decl. ¶ 50; Ex. A:8.)

28. The verified challenge that the Commission received from Speaker Vos, dated March 21, 2024, Exhibit A to Robert Kehoe's Second Declaration, alleged that the circulators who forged signatures included Carlo Green, with an address in Florida. (Second Kehoe Decl. ¶ 51; Ex. A:8.)

29. The verified challenge that the Commission received from Speaker Vos, dated March 21, 2024, Exhibit A to Robert Kehoe's Second Declaration, alleged that at least three minors had their names fraudulently added to the recall petitions. (Second Kehoe Decl. ¶ 52; Ex. A:8.)

30. The verified challenge that the Commission received from Speaker Vos, dated March 21, 2024, Exhibit A to Robert Kehoe's Second Declaration, alleged that a woman who signed the recall petition was told that it was a petition supporting "women's rights." (Second Kehoe Decl. ¶ 53; Ex. A:8.)

31. The verified challenge that the Commission received from Speaker Vos, dated March 21, 2024, Exhibit A to Robert Kehoe's Second Declaration, alleged that the circulator who collected the woman's signature who said she was told that it was a petition supporting "women's rights" listed an address in Mississippi. (Second Kehoe Decl. ¶ 54; Ex. A:8–9.)

32. The verified challenge that the Commission received from Speaker Vos, dated March 21, 2024, Exhibit A to Robert Kehoe's Second Declaration, alleged that a man who is not a citizen of Wisconsin or the United States, residing in the country under a visa, was approached by a woman and told he did not need to be eligible to vote to sign the petition. (Second Kehoe Decl. ¶ 55; Ex. A:9.)

33. The verified challenge that the Commission received from Speaker Vos, dated March 21, 2024, Exhibit A to Robert Kehoe's Second Declaration,

alleged that the signature of the man who is not a citizen of Wisconsin or the United States, residing in the country under a visa, who was approached by a woman and told he did not need to be eligible to vote to sign the petition, was collected by a woman who listed an address in Arizona. (Second Kehoe Decl. ¶ 56; Ex. A:9.)

34. The verified challenge that the Commission received from Speaker Vos, dated March 21, 2024, Exhibit A to Robert Kehoe's Second Declaration, alleged that a man's signature appeared on the recall petition, dated February 27, 2024, even though he had been held at the Racine County Jail since February 4, 2024. (Second Kehoe Decl. ¶ 57; Ex. A:9–10.)

35. The verified challenge that the Commission received from Speaker Vos, dated March 21, 2024, Exhibit A to Robert Kehoe's Second Declaration, alleged that the man's signature that appeared on the recall petition, dated February 27, 2024, even though he had been held at the Racine County Jail since February 4, 2024, was allegedly collected by Lavelle Hester Bey, with a listed address in New York. (Second Kehoe Decl. ¶ 58; Ex. A:9–10.)

36. The Commission also received a verified challenge to a second recall petition from Speaker Vos, dated June 7, 2024. (Second Kehoe Decl. ¶ 59.)

37. Exhibit B to Robert Kehoe's Second Declaration is a true and correct copy of the verified challenge that the Commission received from Speaker Vos, dated June 7, 2024. (Second Kehoe Decl. ¶ 60; Ex. B.)

38. The verified challenge that the Commission received from Speaker Vos, dated June 7, 2024, Exhibit B to Robert Kehoe's Second Declaration, alleged that multiple out-of-state circulators provided non-existent addresses. (Second Kehoe Decl. ¶ 61; Ex. B:8.)

39. The verified challenge that the Commission received from Speaker Vos, dated June 7, 2024, Exhibit B to Robert Kehoe's Second Declaration, alleged that at least four circulators forged names on petitions. (Second Kehoe Decl. ¶ 62; Ex. B:12–16.)

40. The verified challenge that the Commission received from Speaker Vos, dated June 7, 2024, Exhibit B to Robert Kehoe's Second Declaration, alleged that circulators had confirmed criminal records from Arkansas, Maryland, Florida, Arizona, North Carolina, Texas, Ohio, and Illinois. (Second Kehoe Decl. ¶ 63; Ex. B:16–18.)

41. The verified challenge that the Commission received from Speaker Vos, dated June 7, 2024, Exhibit B to Robert Kehoe's Second Declaration, alleged that for out-of-state felons, it was difficult to determine if they had completed their criminal sentences. (Second Kehoe Decl. ¶ 64; Ex. B:18.)

42. The verified challenge that the Commission received from Speaker Vos, dated June 7, 2024, Exhibit B to Robert Kehoe's Second Declaration, alleged that individuals were falsely told that the recall petition was a petition to prevent farmland from being sold to China. (Second Kehoe Decl. ¶ 65; Ex. B:18.)

43. Separate from consideration of verified challenges, part of the Commission's authority also includes investigation of complaints filed with the Commission alleging violations of Wisconsin elections laws, and referral to prosecutors for potential criminal prosecution upon a finding of probable cause, in accordance with Wis. Stat. § 5.05. (Second Kehoe Decl. ¶ 38.)

44. The Commission is required to keep many components of its investigation and consideration of complaints filed with it for violations of Wisconsin's elections law confidential by law, but a letter referring a matter to a prosecutor for potential prosecution upon a finding of probable cause is an exception. (Second Kehoe Decl. ¶ 66.)

45. On February 27, 2026, the Commission issued a letter finding probable cause to believe that persons violated elections law upon a complaint of Robin Vos and referring the matter to the Racine County District Attorney's Office. (Second Kehoe Decl. ¶ 67; Ex. C.)

46. Exhibit C to Robert Kehoe's Second Declaration is a true and correct copy of the February 27, 2026, letter issued by the Commission finding

probable cause to believe that persons violated elections law upon a complaint of Robin Vos and referring the matter to the Racine County District Attorney's Office. (Second Kehoe Decl. ¶ 67; Ex. C.)

47. As reflected in that February 27, 2026, letter, Exhibit C to Robert Kehoe's Second Declaration, the Commission found probable cause to believe that persons had, among other things, falsely listed an address that was not their residence on the circulator certification of a petition to recall Speaker Vos that they signed. (Second Kehoe Decl. ¶ 67; Ex. C.)

48. As further reflected in that February 27, 2026, letter, Exhibit C to Robert Kehoe's Second Declaration, the Commission also found probable cause to believe that multiple persons violated Wis. Stat. § 12.13(3)(a), which prohibits falsifying or fraudulently defacing or destroying a recall petition. (Second Kehoe Decl. ¶ 68; Ex. C.)

49. As further reflected in that February 27, 2026, letter, Exhibit C to Robert Kehoe's Second Declaration, the Commission found that credible evidence was submitted to the Commission from several individuals who attested that they did not actually sign the recall petition, without rebuttal from the involved circulators. (Second Kehoe Decl. ¶ 69; Ex. C.)

50. As further reflected in that February 27, 2026, letter, Exhibit C to Robert Kehoe's Second Declaration, the persons whom the Commission found

probable cause to believe had violated Wis. Stat. § 12.13(3)(a) included Rich Clotaire, with a Florida address. (Second Kehoe Decl. ¶ 70; Ex. C.)

51. As further reflected in that February 27, 2026, letter, Exhibit C to Robert Kehoe's Second Declaration, the persons whom the Commission found probable cause to believe had violated Wis. Stat. § 12.13(3)(a) included Carlo Green, with a Florida address. (Second Kehoe Decl/ ¶ 71; Ex. C.)

52. As further reflected in that February 27, 2026, letter, Robert Kehoe's Second Declaration Exhibit C, the persons whom the Commission found probable cause to believe had violated Wis. Stat. § 12.13(3)(a) included Lavelle Hester Bay, with a New York address. (Second Kehoe Decl. ¶ 72; Ex. C.)

53. As further reflected in that February 27, 2026, letter, Robert Kehoe's Second Declaration Exhibit C, the persons whom the Commission found probable cause to believe had violated Wis. Stat. § 12.13(3)(a) included Jason Lopez, with a Florida address. (Second Kehoe Decl. ¶ 73; Ex. C.)

54. As a general matter, it can be more difficult for the Commission to discern the veracity of information about individuals who do not reside in Wisconsin. (Second Kehoe Decl. ¶ 74.)

55. Commission staff are able to use official state and county resources to look up a Wisconsin address. (Second Kehoe Decl. ¶ 74.)

56. For any out of state address, the Commission and any local filing officer would need to rely on other publicly available resources, such as Google maps, to look up on address. (Second Kehoe Decl. ¶ 74.)

57. Criminal conviction records are generally easy to research in Wisconsin through Wisconsin Circuit Court Case Access (WCCA). (Second Kehoe Decl. ¶ 74.)

58. Other states may not have resources for searching criminal conviction records comparable to WCCA. (Second Kehoe Decl. ¶ 74.)

59. The Commission's statutory subpoena powers do not extend to those living outside the state. (Second Kehoe Decl. ¶ 75.)

60. Given the very short statutory timeframes for submission of challenges to nomination papers and recall petitions and their resolution, any additional hurdles in verifying information impedes a potential challenger's ability to determine information relevant to a challenge about a circulator, and impedes the Commission or a local filing officer's ability to consider challenges and address potentially incorrect or fraudulent papers. (Second Kehoe Decl. ¶ 76.)

Defendants respectfully request that the Court find the above facts in support of their motion for summary judgment.

Dated this 1st day of October 2026.

Respectfully submitted,

JOSHUA L. KAUL
Attorney General of Wisconsin

Electronically signed by:

s/ Charlotte Gibson
CHARLOTTE GIBSON
Assistant Attorney General
State Bar #1038845

HANNAH S. JURSS
Assistant Attorney General
State Bar #1081221

Attorneys for Defendants

Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 957-5218 (CG)
(608) 266-8101 (HSJ)
(608) 294-2907 (Fax)
Charlie.Gibson@wisdoj.gov
Hannah.Jurss@wisdoj.gov

## CERTIFICATE OF SERVICE

I certify that on October 1, 2026, I electronically filed the foregoing Defendants' Statement of Proposed Material Facts in Support of Motion for Summary Judgment with the clerk of court using the CM/ECF system, which will accomplish electronic notice and service for all participants who are registered CM/ECF users.

Dated this 1st day of October 2026.

Electronically signed by:

s/ Charlotte Gibson
CHARLOTTE GIBSON
Assistant Attorney General