IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

---

AMERICANS FOR CITIZEN VOTING PAC,

Plaintiff,

v. Case No. 26-CV-0786

MEAGAN WOLFE, et al.,

Defendants.

---

**DEFENDANTS' RESPONSE TO PLAINTIFF'S STATEMENT OF PROPOSED MATERIAL FACTS (DKT. 44)**

---

Defendants Meagan Wolfe, in her official capacity as Administrator of the Wisconsin Elections Commission, and Ann S. Jacobs, Mark L. Thomsen, Carrie Riepl, Don M. Millis, Marge Bostelmann, and Robert F. Spindell, Jr., in their official capacities as Commissioners of the Wisconsin Elections Commission, by and through their attorneys, responds to Plaintiff's statement of proposed materials facts, (Dkt. 44), as follows:

1. To obtain ballot access, candidates for Wisconsin public office generally must collect signatures on nomination papers from electors who reside within the jurisdiction or district of the position and/or office they seek. *See* Wis. Stat. §§ 8.10, 8.15, 8.20; Wis. Admin. Code § EL 2.05.

**RESPONSE**: This assertion is a legal conclusion, not a factual matter, and should therefore be disregarded by the Court.

2. The number of signatures each candidate must obtain varies by the office sought, but for some positions, the number of required signatures can be as high as 2,000 per candidate. *See* Wis. Stat. §§ 8.10(3), 8.15(6), 8.20(4).

**RESPONSE**: This assertion is a legal conclusion, not a factual matter, and should therefore be disregarded by the Court.

3. 2025 Wisconsin Act 126 ("Act 126") was signed into law by Governor Tony Evers on March 27, 2026, and published on March 28, 2026. *See* 2025 Wisconsin Act 126. *See also* Dkt. 1-1:11, ¶ 6; 13, ¶ 21; Dkt. 30:2, ¶ 6; 5, ¶ 21.

**RESPONSE**: No dispute.

4. Act 126 amends Wis. Stat. §§ 8.10(3), 8.15(4)(a), 8.20(3), 8.40(2), and 9.10(2)(em)2. to require that any nomination paper and/or recall petition circulators be "a qualified elector of this state." *See* 2025 Wisconsin Act 126.

**RESPONSE**: This assertion is a legal conclusion, not a factual matter, and should therefore be disregarded by the Court.

5. The only exception to the "qualified elector of this state" requirement imposed by Act 126 is with respect to presidential and vice-presidential nomination papers. *See* Wis. Stat. § 8.20(3), as amended by 2025 Wisconsin Act 126.

**RESPONSE**: This assertion is a legal conclusion, not a factual matter, and should therefore be disregarded by the Court.

6. Under Wis. Stat. § 6.02, a "qualified elector" of Wisconsin is a U.S. citizen, age 18 or older, who has resided in Wisconsin for at least 28 consecutive days before any election. *See* Wis. Stat. § 6.02.

**RESPONSE**: This assertion is a legal conclusion, not a factual matter, and should therefore be disregarded by the Court.

7. In 2001, Wis. Stat. § 8.15(4)(a) required nomination-paper circulators to ". . . reside[ ] within the district which the candidate named therein will represent . . .". Wis. Stat. § 8.15(4)(a). *See also* Dkt. 1-1:14, ¶¶ 25–26; Dkt. 30:6–7, ¶¶ 25–26.

**<u>RESPONSE</u>**: This assertion is a legal conclusion, not a factual matter, and should therefore be disregarded by the Court.

8. That prior residency requirement was challenged in federal court, held unconstitutional, and enjoined in *Frami v. Ponto*, 255 F. Supp. 2d 962 (W.D. Wis. 2003). *Id.*

**<u>RESPONSE</u>**: This assertion is a legal conclusion, not a factual matter, and should therefore be disregarded by the Court.

9. Following *Frami*, Wisconsin removed the circulator residency requirement from its statutes via 2005 Wisconsin Act 451, and the requirement remained out of Wisconsin law until Act 126 reinserted it. *Compare* 2005 Wisconsin Act 451 *with* 2025 Wisconsin Act 126; *See also* Dkt. 1-1:13–14, ¶¶ 20, 27; Dkt. 30:5, 7, ¶¶ 20, 27.

**<u>RESPONSE</u>**: This assertion is a legal conclusion, not a factual matter, and should therefore be disregarded by the Court.

10. The Wisconsin Elections Commission is charged with implementing Wisconsin's election statutes, including the provisions of Act 126, and with supporting Wisconsin's municipal and county clerks. Dkt. 1-1:13, ¶ 16; 17, ¶ 42; Dkt. 30:4, ¶ 16; 10, ¶ 42.

**<u>RESPONSE</u>**: No dispute.

11. Defendant Meagan Wolfe is the Administrator of the Wisconsin Elections Commission and is sued in her official capacity. Dkt. 1-1:13, ¶ 15; Dkt. 30:4, ¶ 15.

**<u>RESPONSE</u>**: No dispute.

12. Defendants Ann S. Jacobs, Mark L. Thomsen, Carrie Riepl, Don M. Millis, Robert F. Spindell, Jr., and Marge Bostelmann are Commissioners of the Wisconsin Elections Commission and are sued in their official capacities. Dkt. 1-1:13, ¶ 16, Dkt. 30:4, ¶ 16.

**RESPONSE**: No dispute.

13. After Act 126 was enacted, the Wisconsin Elections Commission updated its "Nomination Paper for Partisan Office" template to add "I am a qualified elector of Wisconsin" to the "Certification of Circulator." Dkt. 1-1:14–15, ¶ 28; 19–20 (Ex. 1); Dkt. 30:7, ¶ 28.

**RESPONSE**: No dispute.

14. Exhibit 1 to Plaintiff's Complaint is a true and correct copy of that template. *Id.*

**RESPONSE**: No dispute.

15. In addition, the Wisconsin Elections Commission sent a "communication" to "Wisconsin Candidates and Political Parties" stating that, under Act 126, "Any person who is circulating nomination papers for the 2026 Fall Election cycle must reside in Wisconsin and must be qualified to vote in the state." Dkt. 1-1:15, ¶ 29; 21–24 (Ex. 2); Dkt. 30:7–8, ¶ 29.

**RESPONSE**: Defendants object to this proposed fact because the cited evidentiary material does not support it. Fed. R. Civ. P. 56(c). Defendants admit that the Wisconsin Elections Commission sent a "communication" to "Wisconsin Candidates and Political Parties," a true and correct copy of which is Exhibit 2 to Plaintiff's complaint. But as Exhibit 2 provides, the "communication" stated that under Act 126, "[a]ny person who is circulating nomination papers for the 2026 Fall Election cycle must reside in Wisconsin and must be qualified to vote in Wisconsin." (*See* Dkt. 1-1:22 (Ex. A:22).)

16. Exhibit 2 to Plaintiff's Complaint is a true and correct copy of that memorandum. *Id.*

**RESPONSE**: No dispute.

17. Nomination papers for the November 2026 general election began to be circulated on April 15, 2026. Dkt. 1-1:15, ¶ 30; Dkt. 30:8, ¶ 30.

**RESPONSE**: No dispute.

18. On that day, the Wisconsin Elections Commission posted on its X.com account (@WI_Elections): "It's go time! Candidates can begin circulating nomination papers today for the Aug. 11 election! FYI: Under a new law, circulators must live in WI & be qualified to vote in the state." Dkt. 1-1:15, ¶ 31; 25 (Ex. 3); Dkt. 30:8, ¶ 31.

**RESPONSE**: No dispute.

19. Exhibit 3 to Plaintiff's Complaint is a true and correct copy of that post (as displayed on X.com). *Id.*

**RESPONSE**: No dispute.

20. Defendants have enforced and will continue to enforce the residence requirements of Act 126 against nomination paper and recall petition circulators. Dkt. 1-1:14–15, ¶¶ 28–31; 17, ¶ 42; 19–25 (Exs. 1–3); Dkt. 30:7–8, ¶¶ 28–31; 10, ¶ 42.

**RESPONSE**: Defendants dispute to the extent the proposed fact alleges that Defendants will act to enforce Act 126 beyond their entrusted roles pursuant to Wisconsin statute and rule; those roles consist of consideration of challenges to nomination papers where the Commission is the filing officer, investigating violations of Wisconsin's election laws and referral for potential criminal prosecutions, and potential civil prosecutions for such violations. (*See* Second Kehoe Decl. ¶¶ 38–40.) That dispute is ultimately immaterial for

purposes of summary judgment. No dispute that Defendants have and will implement Act 126's requirements in accordance with their statutory and administrative authority and duties.

21. The next signature gathering period (for Wisconsin's Spring 2027 Election) opens on December 1, 2026, and ends on January 5, 2027. *See* Wis. Stat. § 8.10(2)(a).

**RESPONSE**: No dispute that the signature gathering period for the 2027 Spring Election will open on December 1, 2026, and end on January 5, 2027. There could be special elections or recall petitions with signature gathering periods prior to those times, *see* Wis. Stat. §§ 8.06, 8.40, but that is ultimately immaterial for purposes of summary judgment.

22. Paul Jacob is the Chairman of Plaintiff Americans for Citizen Voting PAC ("ACV PAC"). Second Jacob Decl. ¶ 1.

**RESPONSE**: No dispute.

23. In this role, Paul Jacob oversees all aspects of ACV PAC. Second Jacob Decl. ¶ 2.

**RESPONSE**: No dispute.

24. ACV PAC is a federal political action committee registered with the Federal Elections Commission as a Hybrid PAC since December 27, 2023. Second Jacob Decl. ¶ 3.

**RESPONSE**: No dispute.

25. ACV PAC maintains its principal place of business in Fairfax, Virginia. Second Jacob Decl. ¶ 4.

**RESPONSE**: No dispute.

26. ACV PAC does not accept corporate contributions into its contribution account and is eligible to support candidates for state and federal office in the State of Wisconsin. Second Jacob Decl. ¶ 5.

**RESPONSE**: No dispute.

27. ACV PAC's core mission is to promote election integrity by advocating for policies that ensure only United States citizens can vote in American elections, and this mission includes supporting candidates throughout the country who advance these goals. Second Jacob Decl. ¶ 6.

**RESPONSE**: No dispute.

28. One way ACV PAC advances its mission is by engaging in independent expenditures to support candidates who are aligned with ACV PAC's goals. Second Jacob Decl. ¶ 7.

**RESPONSE**: No dispute.

29. This activity is advanced through its non-contribution account. Second Jacob Decl. ¶ 7.

**RESPONSE**: No dispute.

30. Gathering nomination signatures for candidates for public office is another way in which ACV PAC advances its mission and supports those candidates. Second Jacob Decl. ¶ 8.

**RESPONSE**: No dispute.

31. In the State of Wisconsin, ACV PAC seeks to make independent expenditures to hire out-of-state residents to help collect nomination signatures on behalf of candidates for public office that it supports. Second Jacob Decl. ¶ 9.

**RESPONSE**: No dispute.

32. During the Spring of 2026, ACV PAC wanted to work with out-of-state residents to collect nomination signatures on behalf of Wisconsin candidates during the signature-gathering period for the 2026 Partisan

Primary, but the residency requirements imposed by Act 126 prohibited ACV PAC from doing so. Second Jacob Decl. ¶ 10.

**RESPONSE**: No dispute that Plaintiff wishes to contract with an out-of-state circulator firm. Defendants dispute that Act 126 limits the pool of individuals Plaintiff can "work with," as Act 126 does not prevent ACV PAC from working with anyone in Wisconsin, but rather only limits who may serve as circulators of nomination papers and recall petitions. (*See* Second Kehoe Decl. ¶ 27.)

33. ACV PAC now seeks to advance its mission by helping candidates for public office that it supports in the State of Wisconsin gathering nomination signatures, including during the next signature gathering period (for the Spring 2027 Election) which opens on December 1, 2026, and ends on January 5 ,2027. Second Jacob Decl. ¶ 11.

**RESPONSE**: No dispute.

34. Because of the changes to Wisconsin law implemented by 2025 Wisconsin Act 126 ("Act 126"), ACV PAC is required to engage with only Wisconsin electors in collecting nomination signatures and is prohibited from working with out-of-state residents to gather nomination signatures for candidates, including for the upcoming Spring 2027 Election. Second Jacob Decl. ¶ 12.

**RESPONSE**: Defendants object to the assertion that because of Act 126, ACV PAC is "required to engage with only Wisconsin electors in collecting nomination signatures and is prohibited from working with out-of-state residents to gather nomination signatures." That proposed fact lacks foundation. Fed. R. Evid. 602; Fed. R. Civ. P. 56(c), (e). The cited evidence does not provide factual support for the assertion. Defendants also dispute that

assertion, as Act 126 does not prevent ACV PAC from working with anyone in Wisconsin, but rather only limits who may serve as circulators of nomination papers and recall petitions. (*See* Second Kehoe Decl. ¶ 27.) That dispute is ultimately immaterial for purposes of summary judgment. Defendants do not dispute that Act 126, where it applies, prohibits out-of-state residents from serving as circulators.

35. As a result, Act 126 significantly limits the pool of individuals and firms ACV PAC is permitted to work with to advance its mission. Second Jacob Decl. ¶ 13.

**RESPONSE**: Defendants object to the proposed fact as lacking foundation. Fed. R. Evid. 602; Fed. R. Civ. P. 56(c), (e). The cited evidence does not provide factual support for the proposed fact. Defendants dispute that Act 126 "significantly limits the pool of individuals and firms ACV PAC is permitted to work with," as Act 126 does not prevent ACV PAC from working with anyone in Wisconsin, but rather only limits who may serve as circulators of nomination papers and recall petitions. (*See* Second Kehoe Decl. ¶ 27.) Further, the question of what significantly limiting the relevant pool of circulators means is a legal question, meaning that Plaintiff's assertion is a legal conclusion, not a factual matter. It should therefore be disregarded by the Court.

36. The residency and registration requirements imposed by Act 126 impede ACV's ability to communicate its political messages by limiting its

ability to support candidates of its choosing, including by limiting who ACV PAC may associate with to advance its goals. Second Jacob Decl. ¶ 14.

**<u>RESPONSE</u>**: This assertion is a legal conclusion, not a factual matter, and should be disregarded by the Court. Further, Defendants object to it as lacking foundation, conclusory, and going to an ultimate legal conclusion. Fed. R. Evid. 602, 701; Fed. R. Civ. P. 56(c), (e). The cited evidence does not provide factual support for the assertions.

37. As a result, Act 126 directly harms ACV PAC's ability to advance its political beliefs, and to associate with candidates and supporters of its choosing. Second Jacob Decl. ¶ 15.

**<u>RESPONSE</u>**: This assertion is a legal conclusion, not a factual matter, and should therefore be disregarded by the Court. Further, Defendants object to it as lacking foundation, conclusory, and going to an ultimate legal conclusion. Fed. R. Evid. 602, 701; Fed. R. Civ. P. 56(c), (e). The cited evidence does not provide factual support for the assertion.

38. In furtherance of its mission and in anticipation of the possibility of a favorable decision in this case, ACV PAC has entered into a Petition Agreement with DRW Campaigns, Inc. to engage in signature gathering on nomination papers in support of Wisconsin state candidates for the Spring 2027 Election. Section Jacob Decl. ¶ 16.

**<u>RESPONSE</u>**: No dispute.

39. DRW Campaigns, Inc. is based in Michigan and regularly hires petition circulators from around the country who are not qualified electors in Wisconsin. Second Jacob Decl. ¶ 16.

**<u>RESPONSE</u>**: No dispute.

40. The signature-gathering services to be provided under ACV PAC's Petition Agreement with DRW Campaigns, Inc., for the gathering period commencing December 1, 2026, are contingent upon the issuance of an order enjoining Act 126. Second Jacob Decl. ¶ 17.

**RESPONSE**: No dispute.

Dated this 1st day of October 2026.

Respectfully submitted,

JOSHUA L. KAUL
Attorney General of Wisconsin

Electronically signed by:

s/ Charlotte Gibson
CHARLOTTE GIBSON
Assistant Attorney General
State Bar #1038845

HANNAH S. JURSS
Assistant Attorney General
State Bar #1081221

Attorneys for Defendants

Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 957-5218 (CG)
(608) 266-8101 (HSJ)
(608) 294-2907 (Fax)
Charlie.Gibson@wisdoj.gov
Hannah.Jurss@wisdoj.gov

## CERTIFICATE OF SERVICE

I certify that on October 1, 2026, I electronically filed the foregoing Defendants' Response to Plaintiff's Statement of Proposed Material Facts (Dkt. 44) with the clerk of court using the CM/ECF system, which will accomplish electronic notice and service for all participants who are registered CM/ECF users.

Dated this 1st day of October 2026.

Electronically signed by:

s/ Charlotte Gibson
CHARLOTTE GIBSON
Assistant Attorney General