UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

AMERICANS FOR CITIZEN VOTING PAC,

Plaintiff,

v.

Case No. 2:26-cv-786

MEAGAN WOLFE, et al.,

Defendants.

---

**PLAINTIFF'S COMBINED RESPONSE AND REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

---

WISCONSIN INSTITUTE FOR
LAW & LIBERTY

Lucas T. Vebber (#1067543)
Daniel P. Lennington (#1088694)
Nathalie E. Burmeister (#1126820)

1241 N. Franklin Place
Milwaukee, WI 53202
Phone: (414) 727-9455

lucas@will-law.org
dan@will-law.org
nathalie@will-law.org

*Attorneys for Plaintiff*

## TABLE OF CONTENTS

ARGUMENT ........ 3

I. Act 126's residency requirements impose a severe burden on core, protected political speech that is subject to strict scrutiny ........ 3

A. Plaintiff has established that the law imposes a severe burden and does not need to show more. ........ 5

B. Both petition and ballot access circulation are protected core political speech, and exempting Presidential elections does not save Act 126. ........ 9

II. Act 126 is not narrowly tailored to any compelling interest. ........ 12

III. Act 126 is facially invalid, regardless of the election or type of office and a permanent injunction is appropriate here. ........ 16

CONCLUSION ........ 17

## ARGUMENT

Wisconsin has tried this before. In *Krislov v. Rednour*, 226 F.3d 851 (7th Cir. 2000), the Seventh Circuit held that a residency requirement for nomination-paper circulators imposes a severe burden on core political speech and violates the First Amendment. Three years later, the Western District of Wisconsin applied *Krislov* to strike down a virtually identical Wisconsin statute in *Frami v. Ponto*, 255 F. Supp. 2d. 962 (W.D. Wis. 2003). Act 126 reimposes the same categorical ban on out-of-state circulators.

Collecting signatures is "core political speech" entitled to the highest protection. *Buckley v. Am. Constitutional L. Found.*, 525 U.S. 182, 186 (1999). Act 126 excludes every non-Wisconsin resident from that speech. That exclusion is a severe burden; it is not narrowly tailored to any compelling interest, and it is facially unconstitutional.

There are no material facts in dispute in this litigation, and both parties agree that summary judgment is appropriate to resolve the merits of this case. For the reasons in Plaintiff's opening brief (Dkt. 42), and as further explained herein, Plaintiff's motion for summary judgment should be granted and Defendants' cross motion should be denied.

### I. Act 126's residency requirements impose a severe burden on core, protected political speech that is subject to strict scrutiny.

As explained in Plaintiff's opening brief, Act 126's residency requirements severely burden Plaintiff's ability to engage in core, protected political speech. Collecting signatures (whether for ballot access or for a petition) is "core political

speech" and is where the First Amendment protection is "at its zenith." *Buckley*, 525 U.S. at 183 (quoting *Meyer v. Grant*, 486 U.S. 414, 425 (1988)). Because residency requirements for petition circulators, like those imposed by Act 126, are severe burdens on free speech, strict scrutiny applies and the Defendants bear the burden of showing the residency requirements serve a compelling interest and are narrowly tailored to serving that interest.

Applying both *Meyer* and *Buckley* here makes clear that collecting signatures for candidate ballot access or a petition amount to core political speech. Further, since Act 126's residency restrictions make it more difficult to engage in that speech, they are severe burdens on core political speech and are subject to the highest scrutiny.

In reviewing such a restriction, courts begin with "two non-exhaustive considerations" to determine whether the restriction "imposes such a severe burden on core political speech that it triggers strict scrutiny. *Pierce v. Jacobsen*, 44 F.4th 853, 860 (9th Cir. 2022). The first consideration is the extent to which a restriction limits the number of voices carrying the initiative proponent's message and the size of the audience the proponent can reach. *Meyer*, 486 U.S. at 422–23. The second consideration is the extent to which a restriction makes it less likely a proponent will get enough signatures to place the issue on the ballot, thereby limiting the ability to make the issue "the focus of statewide discussion." *Id.* at 423.

In *Meyer*, the Supreme Court struck down a Colorado law that made it a felony to pay circulators of petitions for ballot initiatives. *Meyer*, 486 U.S. at 416. The Court explained that such activity involves "interactive communication concerning political

change" and that First Amendment protection for that activity is "at its zenith." *Id.* at 422; *id.* at 425. Analyzing the restrictions imposed by that Colorado law, the Court explained that first "it limits the number of voices who will convey appellees' message and the hours they can speak and, therefore, limits the size of the audience they can reach." *Id.* at 422–23. And second, the Court explained that the challenged restrictions make "it less likely that appellees will garner the number of signatures necessary" and limit their ability to advance their political goals. *Id.* at 423. In striking down the challenged restrictions, the Court noted that the "First Amendment protects [the challenger's] right not only to advocate their cause but also to select what they believe to be the most effective means for so doing." *Id.* at 424.

About a decade after *Meyer*, the Supreme Court reaffirmed these principles and expanded on them in *Buckley*. 525 U.S. 182 (1999). In *Buckley*, the Court considered another Colorado law, this time requiring that circulators be registered voters in the State of Colorado. The Court cited to *Meyer* and noted that, like the restriction struck down previously, Colorado's registered voter requirement would limit the number of voices who could convey the messages, which would "consequently, cut down 'the size of the audience [proponents] can reach.'" *Buckley*, 525 U.S. at 195 (quoting *Meyer*, 486 U.S. at 423). The Court applied strict scrutiny and struck down the challenged Colorado requirement.

### A. Plaintiff has established that the law imposes a severe burden and does not need to show more.

Defendants try to twist the analysis around here and argue that "it is Plaintiff's job to show significant burdens on its ability to get its candidates' messages to the

voters and their names on the ballots[.]" (Dkt. 51, at 26). They argue that Act 126 "does not reduce the pool from the baseline of all Wisconsin adults because almost every Wisconsin adult can be a circulator" and that "Plaintiff is free to contract with whatever professional firm it wants—the firm simply must hire (or contract with) Wisconsinites to serve as its circulators on the ground." (Dkt. 51, at 24, 26. They claim Plaintiff "suggests a different rule of law" that is not supported by the caselaw. (Dkt. 51, at 26). But all the Plaintiff has done here is ask the Court to apply the existing well-established two-part analysis from *Meyer*, neither part of which requires Plaintiff itself to show what Defendants argue.

The proper legal question is not whether Plaintiff sufficiently showed a severe burden to them; rather, the question is whether the statute itself imposes a severe burden. That's the focus of the two considerations the Supreme Court put forward in *Meyer*, and that should be the Court's focus here.

As Plaintiff explained in its opening brief, Plaintiff "seeks to engage out-of-state circulators to help candidates for public office that it supports in the State of Wisconsin gather nomination signatures" (Dkt. 42, at 22), but Wisconsin's Act 126 residency requirements prevent them from doing that. And *Meyer* makes clear that a restriction that clearly imposes a burden on core political speech, like Act 126, is unlawful because the "First Amendment protects [Plaintiff's] right not only to advocate their cause but also to select what they believe to be the most effective means for so doing." *Meyer*, 486 U.S. at 424.

The residency requirement challenged here produces the same kind of burden as the restrictions challenged in *Meyer* and *Buckley*. Act 126 excludes every non-Wisconsinite from engaging in a form of core political speech in the state, and that's true *regardless* of how many in-state residents remain eligible to participate. As the Ninth Circuit explained in *Pierce v. Jacobsen*, "[t]he residency requirement fully excludes all persons who support a particular initiative but are not [state] residents from engaging in petition circulation—a form of core political speech. While [state residents] can still act as circulators, the requirement necessarily reduces the number of circulators available to carry initiative proponents' messages, thereby limiting the size of the audience an initiative proponent can reach." 44 F.4th at 860. Here, the number of circulators is reduced significantly even though Wisconsinites can still act as circulators.

Other Circuits have held similarly. In *We the People PAC v. Bellows*, 40 F.4th 1 (1st Cir. 2022), the First Circuit noted: "The relevant question, though, is not how many Maine residents might be willing to circulate a petition if paid to do so. The relevant question is whether the residency requirement excludes from the pool of potential circulators a sufficiently significant number of individuals—including professional circulators that could enhance the reach of the campaign—who may reside outside of Maine." *Id.* at 16. That holding is consistent with the Supreme Court's holding in *Meyer* that the First Amendment protects not only an individual's right to advocate for their cause, but "also to select what they believe to be the most effective means for so doing." *Meyer*, 486 U.S. at 424.

In *We the People PAC*, the defendants argued, as Defendants do here, that there was "no record evidence that Maine's residency requirement" increased costs sufficient to constitute a severe burden and apply strict scrutiny. 40 F.4th at 17. But the First Circuit rejected that argument because the challenged restriction still amounted to a limitation on "the number of voices who will convey" the message of the challengers. *Id.*

Nor does the Defendants' fallback suggestion that Plaintiff could simply hire Wisconsin residents fare any better. *Meyer* made clear that the "First Amendment protects [Plaintiff's] right not only to advocate their cause but also to select what they believe to be the most effective means for so doing." *Meyer*, 486 U.S. at 424. Plaintiff has made clear that it seeks to associate with non-Wisconsin residents. Forcing it to forego that choice and instead hire only Wisconsin residents is a choice that the First Amendment prohibits the state from forcing upon them. Defendants' suggestion that "out-of-state individuals can accompany the Wisconsin circulator . . . and advocate for a candidate," (Dkt. 51, at 26), does not cure the problem that Plaintiff has the right to "select what they believe to be the most effective means." *Meyer*, 486 U.S. at 424.

Lastly, Defendants argue that of "the seven statutory attestations, six have nothing to do with speech" and cite to an Eleventh Circuit stay decision in *Florida Decides Healthcare Inc. v. Florida Secretary of State*, 2025 WL 3738554, *4 (11th Cir. Sept. 9, 2025) for the proposition that "such tasks do not implicate the First Amendment." (Dkt. 51, at 23). But the entire process of collecting signatures is protected First Amendment activity. The entire purpose is interactive, face-to-face

communication directly with voters. That's the very activity that *Meyer* and *Buckley* held to be core political speech, as explained herein. The remaining certifications are inseparable from that communicative act. Defendants cite to *Clark v. Community for Creative Non-Violence*, 468 U.S. 288 (1984) for the proposition that activities do not acquire First Amendment protection just because they are combined with activity that involves speech. But that misses the point altogether—collecting signatures itself is core political speech; the certifications Wisconsin requires do not change that fact.

The conclusion in *Florida Decides Healthcare* from the Eleventh Circuit is what the Seventh Circuit rejected in *Krislov* and is against the majority of federal courts who have considered these issues.

### B. Both petition and ballot access circulation are protected core political speech, and exempting presidential elections does not save Act 126.

Defendants' response also tries to break the caselaw into different analyses for Petition Circulation and Ballot Access Circulation (or "candidate signature gathering"). But both are core political speech, and both are protected First Amendment activities. They involve the same elements of political speech that *Meyer* and *Buckley* protected: face-to-face communication with voters about a political message and the collection of signatures to place a matter (or a candidate) before the voters. Restricting the number of voices who can carry that message necessarily reduces the size of the audience that can be reached in both cases. Wisconsin's

decision to exempt presidential contests does not alter the analysis for the non-presidential candidate and recall petitions that Act 126 does regulate.

Federal courts have consistently refused to create a categorical distinction between the two. In *Nader v. Brewer*, 531 F.3d 1028 (9th Cir. 2008), the Ninth Circuit held that a residency requirement for a candidate "creates a severe burden on [the candidate] and his out-of-state supporters' speech, voting and associational rights. Because the restriction creates a severe burden on plaintiffs' First Amendment rights, strict scrutiny applies. This is a conclusion we believe to be mandated by the Supreme Court in *Buckley*." *Id*. at 1036. The Ninth Circuit further explained, "[f]ederal courts have generally looked with favor on requiring petition circulators to agree to submit to jurisdiction for purposes of subpoena enforcement, and the courts have viewed such a system to be a more narrowly tailored means than a residency requirement to achieve the same result." *Id*. at 1037.

The Sixth Circuit, likewise, applied *Buckley* and determined that candidate-ballot-access circulating was "core political speech, and any regulation of that speech is subject to exacting scrutiny." *Nader v. Blackwell*, 545 F.3d 459, 475 (6th Cir. 2008). And the Sixth Circuit explicitly held that "enforcement of the residence requirement" violated the Constitution. *Id.* at 476. These decisions rest on the *Meyer* and *Buckley* framework from the Supreme Court, that excluding non-residents from circulating petitions imposes a severe burden on core political speech—not any special rule unique to presidential elections, as Defendants attempt to argue.

And this Circuit made that clear in *Krislov*. 226 F.3d 851 (7th Cir. 2000). In that case, the Seventh Circuit struck down Illinois' residency requirements for candidate-petition circulators in both district-specific and statewide races. *Id.* at 856. That case controls here. First, the Seventh Circuit rejected the defendant's argument that "*Buckley* and *Meyer* are distinguishable, as they involved ballot access petitions for initiatives and not candidates[,]" noting that "[t]his is not a particularly relevant distinction." *Id.* at 861. The Seventh Circuit went on to strike down Illinois' residency requirement for circulators, explaining: "Because circulating nominating petitions necessarily entails political speech, it follows that the First and Fourteenth Amendments compel States to allow their candidates to associate with nonresidents for political purposes and to utilize non-residents to speak on their behalf in soliciting signatures for ballot access petitions." *Id.* at 866. That's the case here, and nothing Defendants have put forward can evade the binding holding in *Krislov.*

Defendants' attempt to argue that Wisconsin's exemption of presidential elections from its Act 126 residency requirements is unavailing. While true that *Anderson v. Celebrezze*, 460 U.S. 780 (1983), discussed distinct national interests for presidential elections, none of the cases cabin the First Amendment analysis of residency requirements for circulators. And *Krislov*'s clearly binding holding controls this case. The residency requirements impose a severe burden and are subject to strict scrutiny under the First Amendment.

## II. Act 126 is not narrowly tailored to any compelling interest.

Defendants argue that "[u]nder exacting scrutiny, the State need not use the least restrictive means available, so long as its method does not burden more speech than necessary to serve its compelling interests." (Dkt. 51, at 20). But even under that standard, Act 126 fails because less-restrictive alternatives remain available. The categorical ban the state has imposed burdens more speech than necessary.

Defendants argue that Act 126 "promotes two compelling interests": that fraudulent circulators could be held criminally liable, and that "fast-moving ballot challenges . . . can be properly considered and decided." (Dkt. 51, at 27). But even assuming these interests are compelling, Act 126 still fails narrow tailoring and is unconstitutional.

First, Defendants rely heavily on a recall-petition investigation and the difficulty of extraditing out-of-state circulators. *See* Dkt. 51, at 21, 28. But categorically banning all out-of-state residents from participating is not a narrowly tailored response to isolated instances of purported fraud. And in this instance, relying on unproven allegations of fraud or probable cause referrals for further investigation is a stretch.

What's more, federal courts have consistently held that interests in preventing fraud could be served by less-restrictive means than a categorical ban on non-residents, specifically by requiring non-resident circulators to simply consent to jurisdiction of the state's court system and to accept service of process. The Seventh Circuit explicitly recognized this in *Krislov*, 226 F.3d at 866, n.7.

Other circuits have held the same. The Ninth Circuit explained, "[f]ederal courts have generally looked with favor on requiring petition circulators to agree to submit to jurisdiction for purposes of subpoena enforcement, and the courts have viewed such a system to be a more narrowly tailored means than a residency requirement to achieve the same result." *Nader v. Brewer*, 531 F.3d 1028, 1037 (9th Cir. 2008). The Fourth Circuit has similarly held that requiring petition circulators to agree to jurisdiction is a more narrowly tailored solution. *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 318 (4th Cir. 2013). And the Tenth Circuit held "requiring non-residents to sign agreements providing their contact information and swearing to return in the event of a protest is a more narrowly tailored option that Oklahoma has failed to prove would be ineffective." *Yes On Term Limits, Inc. v. Savage*, 550 F.3d 1023, 1030 (10th Cir. 2008).

In response to Plaintiff proposing this narrow tailoring, the Defendants argue that "Wisconsin's six-day process requires far more speed" and that an advanced consent requirement "might work for slow-moving civil investigation" but is inadequate here. (Dkt. 51, at 30). Of course, the obvious response to that is that there is no guarantee that in-state circulators would be available and participate either. As the Fourth Circuit held in *Judd*, "[t]here are few guarantees in life, however, and it is hardly an iron-clad proposition that a similarly situated resident witness will be amenable to service and comply with a lawfully issued subpoena." 718 F.3d at 318. Defendants offer no evidence that such a consent mechanism is unavailable or would

be ineffective in Wisconsin, nor do they explain why the existing circulator certification and attestation requirements are insufficient here.

Defendants' reliance on a single recall investigation does not change the narrow-tailoring analysis here. Specifically, they say the Commission "found probable cause to believe that people had falsely listed an address that was not their residence" (Dkt. 51, at 6) and "probable cause to believe that multiple individuals violated Wisconsin law prohibiting falsifying or fraudulently defacing or destroying a recall petition." (Dkt. 51, at 7). They also state that, in one of the challenges, it was alleged that "some of the out-of-state circulators did have felony convictions." (Dkt. 51, at 28). Defendants then argue this distinguishes this case from *Frami*, because "*Frami* described the 'more significant' hurdle . . . as the lack of any evidence, or even an allegation that the State had experienced fraud problems" and Defendants argued "[t]hat is not the case here." (Dkt. 51, at 29).

But allegations and "probable cause" findings from a single recall do not justify a categorical ban on every non-Wisconsin resident. Especially here, where Wisconsin law already criminalizes such conduct. Act 126 does nothing to prevent fraud from Wisconsin electors. What *Frami* held was that existing certification and penalty requirements *already* facilitated locating circulators and deterring fraud, and that the ban on out-of-state circulators was not narrowly tailored. *Frami*, 255 F. Supp. 2d at 970. Defendants' attempt to distinguish *Frami* fails because the core holding in that case was that the existing state law tools were sufficient and so an outright ban on out-of-state circulators was not narrowly tailored. As explained herein, other

federal courts have reached the same conclusions. *See, e.g.*, *Nader v. Brewer*, 531 F.3d at 1037; *Judd*, 718 F.3d at 318; *Yes on Term Limits*, 550 F.3d at 1030.

Act 126 is underinclusive in ways that undermine Defendants' argument that the law is narrowly tailored. Act 126 exempts presidential electors and local referendum questions. Defendants argue that *Anderson v. Celebrezze*, 460 U.S. 780 (1983) requires that exemption. (Dkt. 51, at 18–19). But *Anderson* just addressed the relative weight of state interests in presidential elections; it did not explain why the same fraud prevention concerns that purportedly compel a residency ban for non-presidential candidates do not apply to presidential candidates. Under Act 126, non-residents can circulate presidential nomination papers and local referendum petitions yet are barred from every other nomination paper and from recall petitions. Under Act 126, Plaintiff could, for example, use out-of-state circulators to put together a local referendum petition asking a local government to take some action, but they could not use those same out-of-state circulators to launch a recall against a local elected official who refused to take that action. A forged signature is a forged signature whether it appears on a recall petition or a local referendum petition. Defendants think these exemptions show narrow tailoring, but the reality is the opposite.

At bottom, Act 126 is not narrowly tailored to the state's purported compelling interests.

## III. Act 126 is facially invalid, regardless of the election or type of office and a permanent injunction is appropriate here.

Defendants argue that a facial challenge here fails because the law "applies to candidates for hundreds of offices in Wisconsin, with different signature requirements and geographic scope." (Dkt. 51, at 31). But this is the very type of overbroad statute that a facial challenge is appropriate for.

The overbreadth doctrine allows a challenger "to vindicate the rights of the silenced, as well as society's broader interest in hearing them speak." *U.S. v. Hansen*, 599 U.S. 762, 770 (2023). "If the challenger demonstrates that the statute 'prohibits a substantial amount of protected speech' relative to its 'plainly legitimate sweep,' then society's interest in free expression outweighs its interest in the statute's lawful applications, and a court will hold the law facially invalid" *Id.* (citations omitted).

Act 126's residency requirements categorically exclude an entire class of willing speakers from participating in Wisconsin's nomination paper and petition circulation process. As Defendants noted, this is true regardless of the election or type of office (with the exception of presidential elections, which Act 126 does not regulate). Because Act 126 imposes a severe burden on core political speech in *every* application to which it extends, and because it lacks a plainly legitimate sweep, it is facially invalid.

Act 126 regulates core political speech, and "all political speech is protected." *Wis. Right to Life, Inc. v. Barland*, 751 F.3d 804, 836 (7th Cir. 2014). For this reason, the regulations must be written with "narrow specificity." *Id.* (quoting *Buckley v. Valeo*, 424 U.S. 1, 41 n.48 (1976)).

The residency restrictions in Act 126 fail this standard. On its face, Act 126 prohibits every person who is not an eligible Wisconsin voter from circulating nomination papers or recall petitions for any covered office or election. The plain operation of the statute is to categorically ban every single one of those individuals from participating in the process.

The unconstitutional applications of the statute are both real and substantially disproportionate to any plainly legitimate sweep the statute may have, and no limiting construction could save the statute. The statute categorically bans all non-residents from engaging in core political speech, and as explained herein, Act 126 imposes severe burdens on core political speech.

And finally, an injunction is especially appropriate here: "[i]njunctions protecting First Amendment freedoms are always in the public interest." *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006). And as Plaintiff explained in its opening brief, a permanent injunction preventing Defendants from enforcing Act 126's statewide residency requirement is warranted. (Dkt. 42, at 29–30). Defendants do not seriously even respond to that argument, offering only a footnote (Dkt. 51, at 31 at n. 6). This Court should enjoin the challenged statutes.

## CONCLUSION

For the foregoing reasons, Plaintiff Americans for Citizen Voting PAC respectfully asks this Court to grant summary judgment in its favor, declare that the residency requirements imposed by 2025 Wisconsin Act 126, as codified in Wis. Stat. §§ 8.10(3), 8.15(4)(a), 8.20(3), 8.40(2), and 9.10(2)(em)2., are unconstitutional under

the First and Fourteenth Amendments, and permanently enjoin Defendants from enforcing them.

Dated: October 15, 2026.

Respectfully Submitted,

WISCONSIN INSTITUTE FOR LAW & LIBERTY

*Electronically signed by Lucas T. Vebber*

Lucas T. Vebber (#1067543)
Daniel P. Lennington (#1088694)
Nathalie E. Burmeister (#1126820)

1241 N. Franklin Place
Milwaukee, WI 53202
Phone: (414) 727-9455

lucas@will-law.org
dan@will-law.org
nathalie@will-law.org

*Attorneys for Plaintiff*