UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

AMERICANS FOR CITIZEN VOTING PAC,

Plaintiff,

Case No. 2:26-cv-786

v.

MEAGAN WOLFE, et al.,

Defendants.

**PLAINTIFF'S REPLY TO DEFENDANTS' RESPONSE TO PLAINTIFF'S STATEMENT OF PROPOSED MATERIAL FACTS (DKT. 54)**

Pursuant to Civ. L. R. 56 (b)(3)(B) and this Court's August 11, 2026, scheduling order (Dkt. 40), Plaintiff hereby submits the following reply to any additional facts[1] submitted in the Defendants' Response to Plaintiff's Statement of Proposed Material Facts (Dkt. 54).

1. To obtain ballot access, candidates for Wisconsin public office generally must collect signatures on nomination papers from electors who reside within the jurisdiction or district of the position and/or office they seek. *See* Wis. Stat. §§ 8.10, 8.15, 8.20; Wis. Admin. Code § EL 2.05.

**RESPONSE: This assertion is a legal conclusion, not a factual matter, and should therefore be disregarded by the Court.**

**REPLY: The cited statutes and administrative code speak for themselves and the requirements they impose can be accepted by this Court.**

[1] Proposed facts that were not disputed are not included in this reply.

2. The number of signatures each candidate must obtain varies by the office sought, but for some positions, the number of required signatures can be as high as 2,000 per candidate. *See* Wis. Stat. §§ 8.10(3) 8.15(6), 8.20(4).

**RESPONSE: This assertion is a legal conclusion, not a factual matter, and should therefore be disregarded by the Court.**

**REPLY: The cited statutes speak for themselves and the requirements they impose can be accepted by this Court.**

4. Act 126 amends Wis. Stat. §§ 8.10(3), 8.15(4)(a), 8.20(3), 8.40(2), and 9.10(2)(em)2. to require that any nomination paper and/or recall petition circulators be "a qualified elector of this state." *See* 2025 Wisconsin Act 126.

**RESPONSE: This assertion is a legal conclusion, not a factual matter, and should therefore be disregarded by the Court.**

**REPLY: The cited statutes speak for themselves and the requirements they impose can be accepted by this Court.**

5. The only exception to the "qualified elector of this state" requirement imposed by Act 126 is with respect to presidential and vice-presidential nomination papers. *See* Wis. Stat. § 8.20(3), as amended by 2025 Wisconsin Act 126.

**RESPONSE: This assertion is a legal conclusion, not a factual matter, and should therefore be disregarded by the Court.**

**REPLY: The cited statute speaks for itself and the exception it outlines can be accepted by this Court.**

6. Under Wis. Stat. § 6.02, a "qualified elector" of Wisconsin is a U.S. citizen, age 18 or older, who has resided in Wisconsin for at least 28 consecutive days before any election. *See* Wis. Stat. § 6.02.

**RESPONSE: This assertion is a legal conclusion, not a factual matter, and should therefore be disregarded by the Court.**

**REPLY: The cited statute speaks for itself and the requirements it imposes can be accepted by this Court.**

7. In 2001, Wis. Stat. § 8.15(4)(a) required nomination-paper circulators to "… reside[ ] within the district which the candidate named therein will represent …". Wis. Stat. § 8.15(4)(a).[2] *See also* Dkt. 1–1:14, ¶¶ 25–26; Dkt. 30:6–7, ¶¶ 25–26.

**RESPONSE: This assertion is a legal conclusion, not a factual matter, and should therefore be disregarded by the Court.**

**REPLY: The cited statute speaks for itself and the requirements it imposes can be accepted by this Court.**

8. That prior residency requirement was challenged in federal court, held unconstitutional, and enjoined in *Frami v. Ponto*, 255 F. Supp. 2d 962 (W.D. Wis. 2003). *Id.*

**RESPONSE: This assertion is a legal conclusion, not a factual matter, and should therefore be disregarded by the Court.**

**REPLY: The United States District Court for the Western District of Wisconsin's decision in *Frami v. Ponto*, 255 F. Supp. 2d 962 (W.D. Wis. 2003) speaks for itself and can be accepted by this Court.**

9. Following *Frami*, Wisconsin removed the circulator residency requirement from its statutes via 2005 Wisconsin Act 451, and the requirement remained out of

[2] Available at https://docs.legis.wisconsin.gov/2001/statutes/statutes/8/15.

Wisconsin law until Act 126 reinserted it. *Compare* 2005 Wisconsin Act 451[3] *with* 2025 Wisconsin Act 126; *See also* Dkt. 1–1:13–14, ¶¶ 20, 27; Dkt. 30:5, 7, ¶¶ 20, 27.

**RESPONSE: This assertion is a legal conclusion, not a factual matter, and should therefore be disregarded by the Court.**

**REPLY: The cited Acts speak for themselves and their respective modifications to Wisconsin law can be accepted by this Court.**

15. In addition, the Wisconsin Elections Commission sent a "communication" to "Wisconsin Candidates and Political Parties" stating that, under Act 126, "Any person who is circulating nomination papers for the 2026 Fall Election cycle must reside in Wisconsin and must be qualified to vote in the state." Dkt. 1–1:15, ¶ 29; 21–24 (Ex. 2); Dkt. 30:7–8, ¶ 29.

**RESPONSE: Defendants object to this proposed fact because the cited evidentiary material does not support it. Fed. R. Civ. P. 56(c). Defendants admit that the Wisconsin Elections Commission sent a "communication" to "Wisconsin Candidates and Political Parties," a true and correct copy of which is Exhibit 2 to Plaintiff's complaint. But as Exhibit 2 provides, the "communication" stated that under Act 126, "[a]ny person who is circulating nomination papers for the 2026 Fall Election cycle must reside in Wisconsin and must be qualified to vote in Wisconsin." (*See* Dkt. 1-1:22 (Ex. A:22).)**

**REPLY: Defendants correctly point out that Plaintiff mis-transcribed the quoted language from Exhibit 2 to Plaintiff's complaint. Plaintiff apologizes for the error in quoted language, and agrees that the correct quotation, as Defendants point out, is: "Any person who is circulating nomination papers for the 2026 Fall Election cycle must reside in Wisconsin and must be qualified to vote in *Wisconsin*," and not "qualified to vote in *the state*" as Plaintiffs originally misquoted. (emphasis added to indicate corrected language). Dkt. 1–1:15, ¶ 29; 21–24 (Ex. 2) at 22; Dkt. 30:7–8, ¶ 29. This proposed material fact with the corrected quoted language can therefore be accepted by this Court.**

---

[3] Available at https://docs.legis.wisconsin.gov/2005/related/acts/451.

20. Defendants have enforced and will continue to enforce the residency requirements of Act 126 against nomination paper and recall petition circulators. Dkt. 1–1:14–15, ¶¶ 28–31; 17, ¶ 42; 19–25 (Exs. 1–3); Dkt. 30:7–8, ¶¶ 28–31; 10, ¶ 42.

**RESPONSE: Defendants dispute to the extent the proposed fact alleges that Defendants will act to enforce Act 126 beyond their entrusted roles pursuant to Wisconsin statute and rule; those roles consist of consideration of challenges to nomination papers where the Commission is the filing officer, investigating violations of Wisconsin's election laws and referral for potential criminal prosecutions, and potential civil prosecutions for such violations (*See* Second Kehoe Decl. ¶¶ 38–40.) That dispute is ultimately immaterial for purposes of summary judgment. No dispute that Defendants have and will implement Act 126's requirements in accordance with their statutory and administrative authority and duties.**

**REPLY: Defendants do not dispute that Defendants have enforced and will continue to enforce the residency requirements of Act 126 in accordance with their statutory and administrative authority and duties. Therefore, this proposed material fact can be accepted by this Court.**

21. The next signature gathering period (for Wisconsin's Spring 2027 Election) opens on December 1, 2026, and ends on January 5, 2027. *See* Wis. Stat. § 8.10(2)(a).

**RESPONSE: No dispute that the signature gathering period for the 2027 Spring Election will open on December 1, 2026, and end on January 5, 2027. There could be special elections or recall petitions with signature gathering periods prior to those times, *see* Wis. Stat. §§ 8.06, 8.40, but that is ultimately immaterial for purposes of summary judgment.**

**REPLY: Defendants do not dispute that the signature gathering period for Wisconsin's Spring 2027 Election opens on December 1, 2026, and ends on January 5, 2027, and therefore, this proposed material fact can be accepted by this Court.**

32. During the Spring of 2026, ACV PAC wanted to work with out-of-state residents to collect nomination signatures on behalf of Wisconsin candidates during

the signature-gathering period for the 2026 Partisan Primary, but the residency requirements imposed by Act 126 prohibited ACV PAC from doing so. Second Jacob Decl. ¶ 10.

**RESPONSE: No dispute that Plaintiff wishes to contract with an out-of-state circulator firm. Defendants dispute that Act 126 limits the pool of individuals Plaintiff can "work with," as Act 126 does not prevent ACV PAC from working with anyone in Wisconsin, but rather only limits who may serve as circulators of nomination papers and recall petitions. (*See* Second Kehoe Decl. ¶ 27.)**

**REPLY: Defendants appear not to dispute that Plaintiff sought to work with out-of-state residents to collect nomination signatures. The remainder of Defendants' response is a purely legal argument that can be disregarded by this Court. Plaintiff's proposed fact—that ACV PAC sought to work with out-of-state residents to collect nomination signatures and could not do so because of the residency requirements imposed by Act 126 can be accepted by this Court.**

34. Because of the changes to Wisconsin law implemented by 2025 Wisconsin Act 126 ("Act 126"), ACV PAC is required to engage with only Wisconsin electors in collecting nomination signatures and is prohibited from working with out-of-state residents to gather nomination signatures for candidates, including for the upcoming Spring 2027 Election. Second Jacob Decl. ¶ 12.

**RESPONSE: Defendants object to the assertion that because of Act 126, ACV PAC is "required to engage with only Wisconsin electors in collecting nomination signatures and is prohibited from working with out-of-state residents to gather nomination signatures." That proposed fact lacks foundation. Fed. R. Evid. 602; Fed. R. Civ. P. 56(c), (e). The cited evidence does not provide factual support for the assertion. Defendants also dispute that assertion, as Act 126 does not prevent ACV PAC from working with anyone in Wisconsin, but rather only limits who may serve as circulators of nomination papers and recall petitions. (*See* Second Kehoe Decl. ¶ 27.) That dispute is ultimately immaterial for purposes of summary judgment. Defendants do not dispute that Act 126, where it applies, prohibits out-of-state residents from serving as circulators.**

**REPLY: Defendants do not dispute that Act 126, where it applies, prohibits out-of-state residents from serving as circulators. Therefore, this proposed fact can be accepted by this Court.**

35. As a result, Act 126 significantly limits the pool of individuals and firms ACV PAC is permitted to work with to advance its mission. Second Jacob Decl. ¶ 13.

**RESPONSE: Defendants object to the proposed fact as lacking foundation. Fed. R. Evid. 602; Fed. R. Civ. P. 56(c), (e). The cited evidence does not provide factual support for the proposed fact. Defendants dispute that Act 126 "significantly limits the pool of individuals and firms ACV PAC is permitted to work with," as Act 126 does not prevent ACV PAC from working with anyone in Wisconsin, but rather only limits who may serve as circulators of nomination papers and recall petitions. (*See* Second Kehoe Decl. ¶ 27.) Further, the question of what significantly limiting the relevant pool of circulators means is a legal question, meaning that Plaintiff's assertion is a legal conclusion, not a factual matter. It should therefore be disregarded by the Court.**

**REPLY: Defendants do not appear to dispute that the changes to Wisconsin law implemented by Act 126 prevent ACV PAC from engaging anyone but Wisconsin electors to gather nomination signatures. Further, Defendants do not dispute that Act 126, where it applies, prohibits out-of-state residents from serving as circulators (*see* Defendants' Response to ¶ 34). That this limits the pool of individuals and firms ACV PAC is permitted to work with to advance its mission of collecting nomination signatures, can be accepted by this Court.**

36. The residency and registration requirements imposed by Act 126 impede ACV's ability to communicate its political messages by limiting its ability to support candidates of its choosing, including by limiting who ACV PAC may associate with to advance its goals. Second Jacob Decl. ¶ 14.

**RESPONSE: This assertion is a legal conclusion, not a factual matter, and should be disregarded by the Court. Further, Defendants object to it as lacking foundation, conclusory, and going to an ultimate legal**

**conclusion. Fed. R. Evid. 602, 701; Fed. R. Civ. P. 56(c), (e). The cited evidence does not provide factual support for the assertions.**

**REPLY: Defendants do not appear to dispute that the changes to Wisconsin law implemented by Act 126 prevent ACV PAC from engaging anyone but Wisconsin electors to gather nomination signatures for candidates of its choosing. Further, Defendants do not dispute that Act 126, where it applies, prohibits out-of-state residents from serving as circulators (*see* Defendants' Response to ¶ 34). That this limits ACV PAC's ability to support candidates of its choosing, including by limiting who ACV PAC may associate with to advance its goals of supporting candidates of its choosing can be accepted by this Court.**

37. As a result, Act 126 directly harms ACV PAC's ability to advance its political beliefs, and to associate with candidates and supporters of its choosing. Second Jacob Decl. ¶ 15.

**RESPONSE: This assertion is a legal conclusion, not a factual matter, and should therefore be disregarded by the Court. Further, Defendants object to it as lacking foundation, conclusory, and going to an ultimate legal conclusion. Fed. R. Evid. 602, 701; Fed. R. Civ. P. 56(c), (e). The cited evidence does not provide factual support for the assertion.**

**REPLY: Defendants do not appear to dispute that the changes to Wisconsin law implemented by Act 126 prevent ACV PAC from engaging anyone but Wisconsin electors to gather nomination signatures. Further, Defendants do not dispute that Act 126, where it applies, prohibits out-of-state residents from serving as circulators (*see* Defendants' Response to ¶ 34). That this directly harms ACV PAC's ability to advance its political beliefs, and to associate with candidates and supporters of its choosing, can be accepted by this Court.**

Dated: October 15, 2026.

Respectfully Submitted,

WISCONSIN INSTITUTE
FOR LAW & LIBERTY

*Electronically signed by Lucas T. Vebber*

Lucas T. Vebber (#1067543)
Daniel P. Lennington (#1088694)
Nathalie E. Burmeister (#1126820)

1241 N. Franklin Place
Milwaukee, WI 53202
Phone: (414) 727-9455

lucas@will-law.org
dan@will-law.org
nathalie@will-law.org

*Attorneys for Plaintiff*